| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| DAVID B. GOLUBCHIK (SBN 185520)<br>TODD M. ARNOLD (SBN 221868)<br>LINDSEY L, SMITH (SBN 265401)<br>LEVENE, NEALE, BENDER, YOO &<br>GOLUBCHIK L.L.P.<br>2818 La Cienega Avenue<br>Los Angeles, California 90034<br>Telephone: (310) 229-1234<br>Facsimile: (310) 229-1244<br>Email: dbg@lnbyg.com; tma@lnbyg.com;<br>lls@lnbyb.com<br><br>Attorneys for Debtor and Debtor in Possession | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

| In re:<br><br>**CRESTLLOYD, LLC,**<br><br>Debtor and Debtor in Possession | CASE NO.: 2:21-bk-18205-DS<br><br>Chapter 11 Case<br><br>**NOTICE OF LODGMENT OF ORDER IN BANKRUPTCY CASE RE:**<br><br>**DEBTOR'S MOTION FOR AN ORDER: (1) APPROVING THE SALE OF THE DEBTOR'S REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, WITH THE EXCEPTION OF ENUMERATED EXCLUSIONS; (2) FINDING THAT THE BUYER IS A GOOD FAITH PURCHASER; (3) AUTHORIZING AND APPROVING THE PAYMENT OF CERTAIN CLAIMS FROM SALE PROCEEDS; (4) WAIVING THE FOURTEEN-DAY STAY PERIOD SET FORTH IN BANKRUPTCY RULE 6004(h); AND (5) PROVIDING RELATED RELIEF** |

PLEASE TAKE NOTE that the order titled **ORDER GRANTING DEBTOR'S MOTION FOR AN ORDER: (1) APPROVING THE SALE OF THE DEBTOR'S REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, WITH THE EXCEPTION OF ENUMERATED EXCLUSIONS; (2) FINDING THAT THE BUYER IS A GOOD FAITH PURCHASER; (3) AUTHORIZING AND APPROVING THE PAYMENT OF CERTAIN CLAIMS FROM SALE PROCEEDS; (4) WAIVING THE FOURTEEN-DAY STAY PERIOD SET FORTH IN BANKRUPTCY RULE 6004(h); AND (5) PROVIDING RELATED RELIEF** was lodged on March 24, 2022 and is attached.  This order relates to the motion, which is docket number 142.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

DAVID B. GOLUBCHIK (State Bar No. 185520)
TODD M. ARNOLD (State Bar No. 221868)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: dbg@lnbyg.com; tma@lnbyg.com

Attorneys for Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| In re: | Case No.: 2:21-bk-18205-DS |
|---|---|
| CRESTLLOYD, LLC, | Chapter 11 Case |
| Debtor and Debtor in Possession. | **ORDER GRANTING DEBTOR'S MOTION FOR AN ORDER:** |

**ORDER GRANTING DEBTOR'S MOTION FOR AN ORDER:**
**(1)     APPROVING THE SALE OF THE DEBTOR'S REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS,  ENCUMBRANCES, AND INTERESTS, WITH THE EXCEPTION OF ENUMERATED EXCLUSIONS;**
**(2)     FINDING THAT THE BUYER IS A GOOD FAITH PURCHASER;**
**(3)     AUTHORIZING AND APPROVING THE PAYMENT OF CERTAIN CLAIMS FROM SALE PROCEEDS;**
**(4)     WAIVING THE FOURTEEN-DAY STAY PERIOD SET FORTH IN BANKRUPTCY RULE 6004(h); AND**
**(5)     PROVIDING RELATED RELIEF**

Hearing:
Dates and Times:      March 18, 2022, at 11:00 a.m.
                                March 21, 2022, at 11:30 a.m.
Place:           Courtroom 1639
                       255 E. Temple St.
                       Los Angeles, CA 90012
                       **VIA ZOOMGOV ONLY**

A hearing was held on March 18, 2022, at 11:00 a.m. Pacific time and a continued hearing was held on March 21, 2022, at 11:30 a.m. Pacific time, both at the above-referenced location, for the Court to consider approval of the motion (the "Sale Motion") [Dkt. 142] filed by Crestlloyd, LLC, the Chapter 11 debtor and debtor in possession herein (the "Debtor"), pursuant to Sections 105(a), 363(b), (f), (m) and (n) of 11 U.S.C. §101 *et seq.* (the "Bankruptcy Code"),[1] Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "FRBP"), and any applicable Local Bankruptcy Rules (the "LBR"), for the entry of an order (the "Sale Order"):

(1)     pursuant to 11 U.S.C. §§ 363(b) and (f), approving the sale of the Debtor's real property located at 944 Airole Way, Los Angeles, CA 90077 (APN 4369-026-021) (the "Property") to (a) Richard Saghian or his approved assignee (the "Buyer"), who was the winning Bidder[2] at the Auction conducted pursuant to the Bid Procedures approved by the Court, free and clear of any and all liens, claims, encumbrances, and interests, with the exception of Items A1, C, D, E, F, 1-6, 8-12, and 17 (the "Excepted Items") set forth in the preliminary title report for the Property (the "Title Report") lodged concurrently with this Sale Order as **Exhibit "1,"** with such liens, claims, encumbrances, and interests to attach to the proceeds of the sale with the same validity, extent and priority and subject to the same defenses and avoidability, if any, as before the closing of the sale of the Property to the Buyer, provided that the claims of any taxing authorities or governmental units (as defined in 11 U.S.C. § 101(27)) apportioned to the Debtor prior to the close of the sale that are secured by liens included in the non-Excepted Items shall be paid in full upon the close of escrow, for a purchase price of $126 million (the "Purchase Price"),[3] pursuant to the California Residential Purchase Agreement and Joint Escrow Instructions and related sale documents (the "Purchase Agreement") attached to the Sale Motion as Exhibit "2,"[4] or (b) any bidder (each an "Overbidder") that makes a higher and better offer

---

[1] Unless otherwise stated all section references herein are to the Bankruptcy Code.

[2] Any capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Debtor's Sale Motion and *Motion To: (1) Approve Auction And Bid Procedures Regarding The Sale Of Real Property And (2) Set Scheduling For A Motion To Approve The Sale Of Real Property* (the "Bid Procedures Motion") [Dkt. 88], which was granted by an order of the Court [Dkt. 105] with the scheduling regarding the Auction, Sale Motion and closing of the sale of the Property amended by a further order of the Court [Dkt. 115] (the "Bid Procedures Orders").

[3] As discussed in the Sale Motion, prior to the payment of taxes, commissions, and escrow expenses paid out of escrow, the Debtor will receive a total of $137.97 million in consideration comprised of the Purchase Price of $126 million, plus a $11.970 million Rebate from the Auctioneer (both as defined and discussed in the Sale Motion).

[4] The Purchase Agreement attached to the Sale Motion included the form of the Supplemental Addendum approved by the Court, a fully executed copy of which was filed as Docket No. 217.

1   for the Property that is approved by the Court, with any such sale also being free and clear of any and

2   all liens, claims, encumbrances, and interests other than the Excepted Items set forth in the Title Report

3   for the Property, provided that the claims of any taxing authorities or governmental units (as defined

4   in 11 U.S.C. § 101(27)) apportioned to the Debtor prior to the close of the sale that are secured by liens

5   included in the non-Excepted Items shall be paid in full upon the close of escrow;

6             (2)    pursuant to 11 U.S.C. § 363(m) finding that the Buyer is a "good faith"

7   purchaser entitled to the protections afforded under 11 U.S.C. § 363(m);

8             (3)    authorizing the Debtor to pay from the proceeds of the sale of the Property

9   out of escrow on closing (a) the outstanding balance of the debtor in possession loan (the "DIP Loan")

10   provided by Hankey Capital, LLC ("Hankey"), which is secured by a first priority lien and which DIP

11   Loan and first priority lien were approved by a prior order of the Court, (b) Hankey's senior

12   receivership certificate loan, which was an advance of funds on a senior secured basis to the pre-petition

13   receivership estate, as evidenced by Hankey's Proof of Claim No 19 in the asserted amount of

14   $848,511, (c) Hankey's first priority pre-petition loan in the principal amount of $82.5 million, subject

15   to accounting to be received from Hankey, as described in Hankey's Proof of Claim No. 20, (d) the

16   claims of any taxing authorities or governmental units (as defined in 11 U.S.C. § 101(27)) apportioned

17   to the Debtor prior to the close of the sale that are secured by liens included in the non-Excepted Items,

18   (e) a commission equal to two percent (2%) of the Purchase Price to be paid to and split equally between

19   (i) The Beverly Hills Estates ("TBHE") and Compass ("Compass" and, with TBHE the "Debtor's

20   Brokers"), whose employment and respective one percent (1%) commission were previously approved

21   by the Court, and (ii) TBHE and Hilton & Hyland (the "Buyer's Brokers"), with any split between the

22   Debtor's Brokers and the Buyer's Brokers to be determined by them, and (f) any other customary

23   escrow closing fees and charges allocated to the Debtor;

24             (4)    waiving the 14-day stay period set forth in Rule 6004(h) of the FRBP to

25   enable the sale of the Property to close as quickly as possible; and

26             (5)    providing such other relief as is appropriate under the circumstances.

27        Upon consideration of (1) the Notice of the Sale Motion [Dkt. 143], (2) Sale Motion, the

28   Memorandum of Points and Authorities, declarations, and exhibits attached to, and in support of, the

Sale Motion [Dkt. 142], (3) the Notice of Sale of Estate Property pursuant to LBR 6004-2 [Dkt. 150],

(4) any and all oppositions to the Sale Motion (the "Oppositions"), including, but not limited to, those

filed by American Truck & Tool Rental [Dkt. 191], J&E Texture, Inc. [Dkt. 192], Yogi Securities

Holdings, LLC. [Dkt. 193], Nile Niami [Dkt. 196], Inferno Investment Inc. [Dkt. 198], Italian Luxury

Group, LLC and Italian Luxury Design, LLC [Dkt. 201], Yvonne Niami [Dkt. 202] (in the form of a

declaration as opposed to a formal opposition), and any Memoranda of Points and Authorities,

declarations (the "Opposition Declarations"), and exhibits attached to, and in support of, the

Oppositions, (5) the Debtor's omnibus reply to the Oppositions [Dkt. 208], (6) the Debtor's evidentiary

objections to portions of, and/or certain exhibits to, the Opposition Declarations (the "Evidentiary

Objections"), (7) the Buyer's statement in support of the Sale Motion [Dkts. 194 and 195] and reply to

the Oppositions, but only as to a good faith finding under Section 363(m) [Dkts. 205 and 206], (8) the

notice of lodging of the Buyer's signed Supplemental Addendum to the Purchase Agreement in form

required by the Court pursuant to the Bid Procedures Orders [Dkt. 217], (9) all other evidence duly

admitted by the Court in connection with consideration of the foregoing, including the live testimony

at the hearing on the Sale Motion that was not excluded by the Court pursuant to an evidentiary

objection sustained by the Court, (10) the entire record in this case, (11) the arguments, representations

and statements of counsel made at the hearing on the Sale Motion, and (12) the findings of fact and

conclusions of law set forth on the record by the Court at the hearing relating to the Sale Motion and

the matters addressed by this Sale Order, which are incorporated herein by this reference to the extent

not inconsistent with this Sale Order.

**IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:**

A.      The findings and conclusions set forth in this Sale Order constitute the Court's

findings of fact and conclusions of law pursuant to FRBP 7052, made applicable to this proceeding

pursuant to FRBP 9014.

B.      To the extent any of the following findings of fact constitute conclusions of law,

they are adopted as such, and to the extent any of the following conclusions of law constitute findings

of fact, they are adopted as such.

C.    The Court has jurisdiction over this matter and over the property of the Debtor's estate, including the Property to be sold, transferred or conveyed pursuant to the Purchase Agreement, pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of the Debtor's chapter 11 case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    The statutory and other predicates for the relief sought in the Sale Motion are (1) 11 U.S.C. §§ 105 and 363, (2) FRBP 2002, 6004, 9006, 9007, and 9014, and (3) any applicable LBRs.

E.    This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

F.    Notwithstanding FRBP 6004(h), and to any extent necessary under FRBP 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by FRBP 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and this Sale Order shall be effective immediately upon entry.

G.    On October 26, 2021 (the "Petition Date"), the Debtor commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code.  The Debtor is operating its estate and managing its financial affairs as a debtor in possession pursuant to Sections 1107 and 1108.

H.    Notice of the Sale Motion has been provided, and a reasonable opportunity to object or be heard regarding the relief requested by the Sale Motion has been afforded, to all interested persons and entities, including, without limitation: (1) the Office of the United States Trustee, (2) the Debtor, (3) all of the Debtor's known creditors, (4) all parties appearing on the Title Report (even parties to the Excepted Items where addresses are available), and (5) all parties requesting special notice (the "Notice Parties").

I.    As evidenced by the proofs of service filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion was provided in accordance with (1) Sections 102(1), 105(a) and 363(b), FRBP 2002, 6004, 9006, 9007, and 9014, the LBR, as modified by the Bid Procedures Orders, and (2) the procedural due process requirements of the United States Constitution.

J.    The Property and the Auction thereof were extensively and adequately marketed.

5

K.      The Debtor's notice of the Sale Motion was sufficient and reasonably calculated to provide all interested parties with timely and proper notice of (1) the proposed sale of the Property to the Buyer, (2) the deadline for objecting to the proposed sale of the Property to the Buyer, and (3) the hearing for the Court to approve the Debtor's proposed sale of the Property to the Buyer.

L.      The disclosures made by the Debtor concerning the Sale Motion, the Purchase Agreement, and the proposed sale of the Property to the Buyer were sufficient, complete and adequate.

M.      The Debtor and its professionals conducted a sale process in good faith and in accordance with the Bid Procedures Orders.

N.      There is no evidence of fraud or collusion between the Buyer and the Debtor or any of their respective professionals, nor between the Buyer and any other person or entity, in, or with respect to, the conduct of the Auction of the Property.

O.      The Debtor and its professionals did not foreclose the opportunity for Overbidders to present offers for the Property after the conclusion of the Auction on March 3, 2022, and the Debtor advised the Court and other parties in interest that any bona fide offers made after March 3, 2022 would be presented to the Court in connection with the hearing on the Sale Motion.  Despite the foregoing, and the passage of over two weeks between the conclusion of the Auction on March 3, 2022 and the final hearing on the Sale Motion on March 21, 2022, no Overbidder provided a bona fide offer (*i.e.*, an offer supported by proof of funds necessary to close the transaction and secured by a deposit in a percentage of the offer price equal to the percentage deposit paid by the Buyer and on the same terms as the Buyer other than the purchase price to be paid) to the Court or the Debtor.

P.      The offer of the Buyer, upon the terms and conditions set forth in the Purchase Agreement, including the consideration to be realized by the Debtor pursuant to the Purchase Agreement totaling $126 million, plus the $11.970 million Rebate from the Auctioneer, for a total of $137.97 million in consideration: (1) is fair and reasonable, (2) represents optimal value for the Property under the circumstances, (3) is in the best interests of the Debtor, its bankruptcy estate and the creditors thereof, and (4) constitutes full and adequate consideration and reasonably equivalent value for the Property under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform

Fraudulent Conveyance Acts and any other applicable laws of the United States, any state, territory or possession, or the District of Columbia.

Q.    The Court is not making a determination at this juncture as to whether the $11.970 million Rebate from the Auctioneer is or is not subject to any liens of any alleged Secured Creditors, and any and all claims, arguments, and defenses regarding whether and to what extent the Rebate may be subject to any liens of any alleged Secured Creditors are preserved and not waived or abandoned.

R.    Approval of the Sale Motion, the Purchase Agreement, and the consummation of the transactions contemplated thereby are in the best interests of the Debtor, its bankruptcy estate, and creditors and other parties in interest, and, based on the foregoing and the other reasons set forth herein and on the record at the hearing on the Sale Motion, there is a valid business purpose for selling the Property to the Buyer pursuant to the terms of the Purchase Agreement and the decision to do so represents a reasonable exercise of the Debtor's business judgment.

S.    The Buyer is not an "insider," as that term is defined in Section 101(31), of the Debtor.  The Buyer is buying the Property in "good faith," as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the benefits and protections of Section 363(m).  The Buyer has proceeded in good faith in all respects in connection with the Debtor's chapter 11 case in that, *inter alia*: (1)(a) the form of the Purchase Agreement, other than the Purchase Price and identity of the Buyer, which was required to be used by all Bidders, was prepared and approved by the Court before the Auction pursuant to the Bid Procedures Order and (b) the Property was sold pursuant to an Auction conducted in accordance with the Bid Procedures Orders in all material respects, such that the terms of the Purchase Agreement are the result of arms-length negotiations between the Debtor and the Buyer, (2) the Buyer in no way induced the chapter 11 filing by the Debtor, and (3) all payments to be made by the Buyer in connection with the purchase of the Property have been disclosed.

T.    The Purchase Agreement was negotiated and entered into in good faith, based upon arms-length bargaining and negotiation, and without collusion or fraud of any kind.  Neither the Debtor nor the Buyer has engaged in any conduct that would cause or permit (1) the application of, or otherwise implicate, Section 363(n) with respect to the Purchase Agreement or to the consummation of the sale transaction and transfer of the Property to the Buyer, or (2) costs or damages to be imposed under

1  Section 363(n).  Specifically, the Buyer has not acted in a collusive manner with any person or entity,

2  and the Purchase Price was not controlled by any agreement among other interested parties.

3        U.      Upon entry of this Sale Order, provided there is no stay pending appeal ordered,

4  the Debtor's execution of the Purchase Agreement and any other documents contemplated thereby is

5  approved, and the Debtor and the Buyer, and any cooperating brokers, escrow company, title company

6  and their respective agents and representatives, are authorized to consummate the transaction

7  contemplated by the Purchase Agreement and this Sale Order and to sign any and all documents

8  necessary to enable the Debtor and the Buyer, and any cooperating brokers, escrow company, to

9  consummate such transaction.  This Sale Order shall be effective as a determination that, on and as of

10  the Closing, all "Interests" (as defined below) of any kind or nature whatsoever (except for the Excepted

11  Items) have been unconditionally released, discharged, and terminated in, on, or against the Property.

12        V.      Subject to the terms of the Purchase Agreement, the sale and transfer of the

13  Property is a legal, valid, and effective transfer of the Property under all applicable provisions of the

14  Bankruptcy Code, including, without limitation, Sections 105(a) and 363, and all applicable

15  requirements of such Sections have been complied with in respect thereof.

16        W.      On the close of the sale of the Property to the Buyer pursuant to the Purchase

17  Agreement (the "Closing Date"), with the exception of the Excepted Items, the Property shall be sold

18  to the Buyer free and clear of any and all "Interests" (as defined below), with such Interests to attach

19  to the proceeds from and of the sale of the Property and the Rebate from the Auctioneer (the "Sale

20  Proceeds") with the same validity, extent and priority and subject to the same defenses and avoidability,

21  if any, as before the closing of the sale of the Property to the Buyer.  Without limiting the foregoing in

22  any way, the sale of the Property to the Buyer shall be free and clear of Interests, including, without

23  limitation, the Interests listed below in this paragraph W, with such Interests to attach to the Sale

24  Proceeds[5] with the same extent, validity, and priority and subject to the same defenses and avoidability,

25  if any, as before the closing of the sale of the Property to the Buyer:

26

27  _____

28  [5] Pursuant to paragraph 10, *infra*, the Interests described as exceptions A, B, 26 and 33 in the Title Report and the Interest
described as "Receiver's Certificate #2 (Hankey Capital/Theodore Lanes)" will be paid with the Sale Proceeds at the time
of Closing. These Interests are marked with an asterisk ("*") in the chart, *infra*.

8

| Exception on Title Report | Item | Recording Date | Instrument No. (LA County Official Records) |
|---|---|---|---|
| 7 | Deed of Trust in favor of Inferno Investment Inc. as assignee | March 13, 2013 | #2013-384037 (DT) |
| | | November 10, 2015 | #2015-1375607 (ASDT) |
| | | November 10, 2015 | #2015-1375608 (MOD) |
| | | November 6, 2018 | #2018-1122920 (SUBN) |
| 13 | Deed of Trust in favor of Hankey Capital, LLC | November 6, 2018 | #2018-1122917 (DT) |
| | | August 31, 2020 | #2020-1030024 (MOD) |
| | | March 5, 2021 | #2021-367447 (NOD) |
| | | June 14, 2021 | #2021-934061 (NTS) |
| 14 | Memorandum of Agreement (Profit Participation Agreement) in favor of Hankey Capital, LLC | November 6, 2018 | #2018-1122919 (MOA) |
| | | August 31, 2020 | #2020-1030294 (MOA) |
| 15 | Deed of Trust in favor of YOGI Securities Holdings, LLC | November 7, 2018 | #2018-1126580 (DT) |
| 16 | Deed of Trust in favor of YOGI Securities Holdings, LLC | September 23, 2019 | #2019-0989746 (DT) #2021-0765458 |
| 18 | Any rights of the parties in possession of a portion of, or all of, said Land, which rights are not disclosed by the public records. | NA | NA |
| 19 | Matters which may be disclosed by an inspection and/or by a correct ALTA/NSPS Land Title Survey of said Land that is satisfactory to the Company, and/or by inquiry of the parties in possession thereof. | NA | NA |
| 20 | Mechanic's lien by American Truck & Tool Rentals Inc. | June 29, 2020 | #2020-709010 (ML) |
| | | May 5, 2021 | #2021-717597 (LP) |
| 21 | Mechanic's lien by J&E Texture, Inc. | June 30, 2020 | #2020-712043 (ML) |

| Exception on Title Report | Item | Recording Date | Instrument No. (LA County Official Records) |
|---|---|---|---|
| | | December 14, 2020 | #2020-1647158 (LP) |
| | | May 5, 2021 | #2021-717597 (LP) |
| 22 | Deed of Trust in favor of Hilldun Corporation | September 4, 2020 | #2020-1058770 (DT) |
| 23 | Mechanic's lien by JMS Air Conditioning and Appliance Services, Inc. | May 6, 2021 | #2021-722265 (ML) |
| 24 | Mechanic's lien by Calgrove Rentals, Inc. | June 1, 2021 | #2021-868958 (ML) |
| 25 | Mechanic's lien by BMC West LLC | July 16, 2021 | #2021-1102584 (ML) |
| 26* | Receiver's Certificate #1 (Hankey Capital/Theodore Lanes) | July 23, 2021 | #2021-1136088 (CTF) |
| 27 | Notice of Pending Lien/Inspection Fees by the City of Los Angeles (reference Invoice No. 7939248) | January 31, 2020 | #2020-124042 (LNN) |
| 28 | Mechanic's lien by Parquet By Dian | September 8, 2021 | #2021-1373746 (ML) |
| 29 | Mechanic's lien by Powertek Electric, Inc. | September 23, 2021 | #2021-1455960 (ML) |
| 30 | Mechanic's lien by Kennco Plumbing, Inc. | October 5, 2021 | #2021-1508207 (ML) |
| | | October 21, 2021 | #2021-1585116 (LP) |
| 31 | Chapter 11 Petition | November 8, 2021 | #2021-1666304 (BK PET) |
| 32 | Any Lien Or Right To A Lien For Services, Labor Or Material Not Shown By The Public Records. | NA | NA |
| 33* | (DIP Loan) Deed of Trust in favor of Hankey Capital, LLC | January 26, 2022 | #2022-103108 (DT) |
| NA* | Receiver's Certificate #2 (Hankey Capital/Theodore Lanes) | NA | NA |
| A* | Property taxes owed for fiscal year 2021-2022 | NA | NA |
| B* | Property taxes owed for fiscal year 2020 | NA | NA |

10

X.    As used in this Sale Order, the term "Interests" includes all of the following, in each case to the extent against or with respect to the Debtor or in, on, or against or with respect to the Property: liens (as defined in section 101(37) of the Bankruptcy Code, and whether consensual, statutory, possessory, judicial or otherwise), claims (as defined in section 101(5) of the Bankruptcy Code), debts (as defined in section 101(12) of the Bankruptcy Code), encumbrances, obligations, liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights, or interests of any kind or nature whatsoever, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of this Chapter 11 Case, and whether imposed by agreement, understanding, law, equity, or otherwise, including, but not limited to, (i) mortgages, deeds of trust, pledges, charges, security interests, hypothecations, encumbrances, easements, servitudes, leases, subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, rights of use or possession, subleases, leases, condition sale arrangements, or any similar rights, (ii) all claims, including, without limitation, all rights or causes of action (whether in law or equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtor or any other person, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of this Chapter 11 Case, and whether imposed by agreement, understanding, law, equity or otherwise; (iii) all debts, liabilities, obligations, contractual rights and claims; (iv) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents or any similar rights.  Notwithstanding anything to the contrary in this paragraph, the term "Interest" shall not include the Excepted Items.

11

Y.      The Debtor is the sole and lawful owner of the Property.  The transfer of the Property to the Buyer pursuant to the Purchase Agreement and this Sale Order is a legal, valid, and effective transfer of the Property and shall vest the Buyer with all rights, title and interest of the Debtor to the Property free and clear of any and all Interests.  Except as specifically provided in the Purchase Agreement and this Sale Order, the Buyer shall not assume or become liable for any Interests relating to the Property. This Sale Order shall be effective as a determination that, on and as of the Closing, all Interests of any kind or nature whatsoever (except for the Excepted Items) have been unconditionally released, discharged, and terminated in, on, or against the Property.

Z.      The sale of the Property is hereby approved free and clear of any liens, claims, and Interests of any kind, regardless of whether they are explicitly referenced in this Sale Order. With respect to each creditor asserting an Interest, one or more of the requirements set forth in Sections 363(f) has been satisfied, as follows (1) as to Hankey, because it consented to the sale of the Property pursuant to the Sale Motion and therefore the requirements of Section 363(f)(2) are satisfied as to Hankey; and (2) as to all other alleged Secured Creditors, because (a) Hankey has a senior lien on the Property pursuant to its DIP Loan and the interim and final orders of this Court approving the DIP Loan and (b) there is a mechanism under California state law – namely a foreclosure sale of the Property – whereby Hankey could foreclose on the Property and sell it free and clear of the junior liens of the other alleged Secured Creditors and, therefore, compel them to accept money satisfaction of their liens. All holders of Interests are adequately protected by having their Interests, if any, satisfied from the Sale Proceeds as requested in the Sale Motion and allowed pursuant to this Sale Order, or attach to the Sale Proceeds with the same extent, validity, and priority and subject to the same defenses and avoidability, if any, as before the Closing Date.

AA.     The Buyer would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its estate, and creditors and parties in interest, if either: (1) the sale of the Property to the Buyer was not free and clear of all Interests or (2) the Buyer would, or in the future could, be liable for any such Interests or any claims against the Debtor based upon successor or vicarious liability or otherwise.  The Buyer shall not

be responsible for any Interests or any such claims against the Debtor and Buyer based upon successor or vicarious liability or otherwise.

BB.    The Buyer is acting in good faith, pursuant to Section 363(m), in closing the transactions contemplated by the Purchase Agreement at any time on or after the entry of this Sale Order and cause has been shown as to why this Sale Order should not be subject to the stay provided by FRBP 6004(h).

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1.    The Sale Motion is **GRANTED**.

2.    All Evidentiary Objections are hereby OVERRULED.

3.    All objections, responses, and requests for continuance concerning the Sale Motion are resolved in accordance with the terms of this Sale Order and as set forth in the record of the Court at the hearing on the Sale Motion.  To the extent any such objection, response or request for continuance was not otherwise withdrawn, waived, mooted, or settled, it, and all reservations of rights contained therein, is OVERRULED and DENIED.

4.    Provided there is no stay pending appeal of this Sale Order, upon the entry of this Sale Order, pursuant to Sections 363(b), (f), and (m), (a) the sale of the Property free and clear of any and all Interests to the Buyer for the Purchase Price of $126 million pursuant to the Purchase Agreement is hereby approved, and (b) the Debtor and the Buyer, and any escrow and title companies, are authorized to take any and all actions reasonably necessary to consummate the sale of the Property pursuant to the Purchase Agreement and this Sale Order.

5.    Upon the closing of the sale transaction pursuant to the Purchase Agreement, escrow shall transfer the net Purchase Price to the Debtor pursuant to instructions from the Debtor.

6.    Upon the closing of the sale transaction pursuant to the Purchase Agreement, escrow or Concierge, however the case may be, shall transfer the $11.970 million Rebate from the Auctioneer to the Debtor pursuant to instructions from the Debtor.

7.    The Buyer is hereby deemed to be a "good faith" purchaser entitled to the benefits and protections afforded under Section 363(m).

13

8.      The 14-day stay period set forth in FRBP 6004(h) is hereby waived to enable the sale of the Property to close as quickly as possible.

9.      A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the county recorder to cancel any encumbrances of record, other than the Excepted Items.

10.      On the Closing Date, the Debtor and the escrow company are authorized and directed to pay from the Sale Proceeds, (a) the outstanding balance of the DIP Loan in the principal amount of $12 million, plus all accrued interest, fees and costs, provided by Hankey, which is secured by a first priority lien and which DIP Loan and first priority lien were approved by prior orders of the Court (payoff amount = $12,065,166.67, as of March 23, 2022, with per diem interest of $2,833.33 thereafter), (b) Hankey's senior receivership certificate loans in the principal amount of $827,745, plus all accrued interest, fees and costs, which were advances of funds on a senior secured basis to the pre-petition receivership estate, as evidenced by Hankey's Proof of Claim No 19 (payoff amount = $882,540.56, as of March 23, 2022, with per diem interest of $229.93 thereafter), (c) the claims of any taxing authorities or governmental units (as defined in 11 U.S.C. § 101(27)) apportioned to the Debtor prior to the close of the sale that are secured by liens included in the non-Excepted Items (payoff amount = approximately $2,649,078.30), (d) a commission equal to two percent (2%) of the Purchase Price to be paid to and split equally between (i) the Debtor's Brokers (The Beverly Hills Estates and Compass), whose employment and one percent (1%) commission were previously approved by the Court's Employment Order, and (ii) the Buyer's Brokers (The Beverly Hills Estates and Hilton & Hyland), whose one percent (1%) commission was previously approved by the Court's Employment Order, with any split between the Debtor's Brokers and the Buyer's Brokers to be determined by them (payoff amount = $2,520,000), and (e) any other customary escrow closing fees and charges allocated to the Debtor, including, but not limited to, Sub-Escrow Fee, Wire Fee, Owner's Title Policy, Settlement or Closing Fee to Escrow, and Notary Services (payoff amount = approximately $318,052.50).

11.      The Buyer has not assumed and/or is otherwise not obligated for any of the Debtor's liabilities.  Consequently, upon entry of this Sale Order, all persons, governmental units (as defined in Sections 101(27) and 101(41)), and all holders of Interests based upon or arising out of

14

liabilities retained by the Debtor are hereby enjoined from taking any action against the Buyer or the Property, including asserting any setoff, right of subrogation or recoupment of any kind, or to recover any Interests or enforce any claims or causes of action or on account of any liabilities of the Debtor.

12.     Subject to the Excepted Items and except to the extent needed to enforce the terms of the Purchase Agreement, pursuant to Sections 105 and 363, all persons and entities, including, but not limited to, the Debtor and any holders of Interests, shall be forever barred, prohibited, estopped and permanently enjoined from (a) after the Closing Date, asserting, prosecuting or otherwise pursuing such Interests, whether by payment, setoff, or otherwise, directly or indirectly, against the Buyer, his affiliates, successors or assigns, and his current affiliates, officers, directors, employees, managers, partners, members, financial advisors, attorneys, agents, and representatives, or the Property, and (b) taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Property to the Buyer pursuant to the terms of this Sale Order.

13.     Subject to the terms of the Purchase Agreement, the Purchase Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtor and the Buyer, without further action or order of the Court, provided, however, that any such waiver, modification, amendment, or supplement materially and substantially conforms to, and effectuates, the Purchase Agreement and any related agreements.

14.     The failure specifically to include any particular provision of the Purchase Agreement or any related agreements in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtor and the Buyer that the Purchase Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Sale Order prior to the Closing Date.

15.     This Sale Order and the Purchase Agreement shall be binding upon and govern the acts of all persons and entities, including, without limitation, the Debtor's bankruptcy estate, the Debtor and its successors and assigns, including, without limitation, any chapter 11 trustee or examiner hereinafter appointed for the Debtor's bankruptcy estate or any chapter 7 trustee appointed if the case is converted from chapter 11, all creditors of the Debtor (whether known or unknown), the Buyer and

15

his successors and assigns, the Property, filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required to report or insure any title in or to the Property or who may be required by operation of law, the duties of its office or contract, to accept, file, register, or otherwise record or release any documents or instruments that reflect that the Buyer is the owner of the Property free and clear of all Interests, except as otherwise provided in the Purchase Agreement and this Sale Order, and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

16.    The provisions of this Sale Order are non-severable and mutually dependent.

17.    Notwithstanding FRBP 6004 and 7062, this Sale Order shall be effective and enforceable immediately upon entry, and the Sale Motion or notice thereof shall be deemed to provide sufficient notice of the Debtor's request for waiver of the otherwise applicable stay of this Sale Order. In the absence of any person or entity obtaining a stay pending appeal, the Debtor and the Buyer, and any cooperating brokers, escrow company, and title company, are free to close under the Purchase Agreement at any time, subject to the terms of this Sale Order and the Purchase Agreement.

18.    To the extent that there is any conflict between this Sale Order and the Purchase Agreement, this Sale Order shall control.

19.    The Court shall retain exclusive jurisdiction to interpret, implement and enforce the terms and provisions of this Sale Order and the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor is a party or that have been assigned by the Debtor to the Buyer in all respects, and to decide any disputes concerning this Sale Order and the Purchase Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Purchase Agreement and this Sale Order, including, but not limited to, retaining jurisdiction to (a) interpret, implement and enforce the terms, conditions and provisions of the Bid Procedures Order, this Sale Order and the Court-approved Purchase Agreement, (b) determine the status, nature and extent of the Property; and (c) protect the Buyer against any Interests against the Debtor or the Property of any kind or nature whatsoever

attaching to the proceeds of the sale.  Any proceeding commenced pursuant to this paragraph may be commenced as a contested matter.

**IT IS SO ORDERED.**

# # #

1  DAVID B. GOLUBCHIK (State Bar No. 185520)
   TODD M. ARNOLD (State Bar No. 221868)
2  LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
3  2818 La Cienega Avenue
   Los Angeles, California 90034
4  Telephone: (310) 229-1234
   Facsimile: (310) 229-1244
5  Email: dbg@lnbyg.com; tma@lnbyg.com

6  Attorneys for Debtor and Debtor in Possession

7
                  **UNITED STATES BANKRUPTCY COURT**
8
                  **CENTRAL DISTRICT OF CALIFORNIA**
9
                      **LOS ANGELES DIVISION**
10

11 | In re:                                    | Case No.: 2:21-bk-18205-DS

12 | CRESTLLOYD, LLC,                          | Chapter 11 Case

13 |    Debtor and Debtor in Possession.       | **EXHIBIT "1" TO ORDER GRANTING DEBTOR'S**
14 |                                           | **MOTION FOR AN ORDER:**
   |                                           | **(1)    APPROVING THE SALE OF THE DEBTOR'S**
15 |                                           | **REAL PROPERTY FREE AND CLEAR OF ALL**
   |                                           | **LIENS, CLAIMS, ENCUMBRANCES, AND**
16 |                                           | **INTERESTS, WITH THE EXCEPTION OF**
   |                                           | **ENUMERATED EXCLUSIONS;**
17 |                                           | **(2)    FINDING THAT THE BUYER IS A GOOD**
18 |                                           | **FAITH PURCHASER;**
   |                                           | **(3)    AUTHORIZING AND APPROVING THE**
19 |                                           | **PAYMENT OF CERTAIN CLAIMS FROM SALE**
   |                                           | **PROCEEDS;**
20 |                                           | **(4)    WAIVING THE FOURTEEN-DAY STAY**
   |                                           | **PERIOD SET FORTH IN BANKRUPTCY RULE**
21 |                                           | **6004(h); AND**
22 |                                           | **(5)    PROVIDING RELATED RELIEF**

23 |                                           | Hearing:
   |                                           | Dates and Times:   March 18, 2022, at 11:00 a.m.
24 |                                           |                    March 21, 2022, at 11:30 a.m.
25 |                                           | Place:             Courtroom 1639
   |                                           |                    255 E. Temple St.
26 |                                           |                    Los Angeles, CA 90012
   |                                           |                    **VIA ZOOMGOV ONLY**
27

28

                                  1

1    Exhibit "1" referenced in the *Order Granting Debtor's Motion For An Order: (1)*

2    *Approving The Sale Of The Debtor's Real Property Free And Clear Of All Liens, Claims,*

3    *Encumbrances, And Interests, With The Exception Of Enumerated Exclusions; (2) Finding That The*

4    *Buyer Is A Good Faith Purchaser; (3) Authorizing And Approving The Payment Of Certain Claims*

5    *From Sale Proceeds; (4) Waiving The Fourteen-Day Stay Period Set Forth In Bankruptcy Rule*

6    *6004(h); And (5) Providing Related Relief* is attached hereto as **Exhibit "1."**

7    Dated: March 24, 2022                CRESTLLOYD, LLC

8
                                        */s/ David B. Golubchik*
9                                        DAVID B. GOLUBCHIK
                                        TODD M. ARNOLD
10                                       LEVENE, NEALE, BENDER, YOO
                                            & GOLUBCHIK L.L.P.
11                                       Attorneys for Debtor and Debtor in Possession

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>EXHIBIT "1"</u>**

# Chicago Title Company

725 South Figueroa Street, Suite 200, Los Angeles, CA 90017
Phone:  (213) 488-4300 ● Fax:  (213) 488-4377

Issuing Policies of Chicago Title Insurance Company

ORDER NO.:  **00166345-994-LT2-1TW**

Chicago Title Company / Los Angeles
725  S. Figueroa St., Suite 200
Los Angeles, CA 90017
ATTN:  Mike Slinger
Email:  mike.slinger@ctt.com
REF:

Main Office Line:  **(213) 488-4300**

Title Officer:  Ted Tan/Jennifer Wright (LA/Comm)
Title Officer Phone:  (213) 488-4394
Title Officer Fax:  (213) 488-4360
Title Officer Email:  TeamX77@ctt.com

PROPERTY:   **944 ARIOLE WAY, LOS ANGELES, CA**

## PRELIMINARY REPORT

*In response to the application for a policy of title insurance referenced herein, **Chicago Title Company** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.*

*The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One. Copies of the policy forms should be read. They are available from the office which issued this report.*

*This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.*

*The policy(s) of title insurance to be issued hereunder will be policy(s) of Chicago Title Insurance Company, a Florida corporation.*

***Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Attachment One of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.***

***It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.***

Chicago Title Company

By: _____
Authorized Signature

By: *[signature]*
Michael J. Nolan
President

ATTEST: *[signature]*
Marjorie Nemzura
Secretary

*[corporate seal: CHICAGO TITLE INSURANCE COMPANY · CORPORATE SEAL]*

**Chicago Title Company**

725 South Figueroa Street, Suite 200, Los Angeles, CA 90017
Phone:  (213) 488-4300  ●  Fax:  (213) 488-4377

## PRELIMINARY REPORT

---

**EFFECTIVE DATE:**  **February 4, 2022 at 7:30 a.m.**

**ORDER NO.:  00166345-994-LT2-1TW**

The form of policy or policies of title insurance contemplated by this report is:

Preliminary Report Only

1.  THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO COVERED BY THIS REPORT IS:

A Fee

2.  TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS VESTED IN:

CRESTLLOYD, LLC, a California limited liability company, in receivership by Order of the Superior Court of California, County of Los Angeles, West District, Case No. 21SMCV01113, a certified copy thereof being recorded July 20, 2021 as Instrument No. 2021-1113331 of Official Records, wherein Theodore Lanes was duly appointed as receiver, subject to the terms, provisions and restrictions set out in said Order, and subject to proceedings pending in the bankruptcy court where a petition for relief was filed October 26, 2021 on behalf of Crestlloyd, LLC in U.S. District, Court Central District of California, Case No. B18205.

3.  THE LAND REFERRED TO IN THIS REPORT IS DESCRIBED AS FOLLOWS:

See Exhibit A attached hereto and made a part hereof.

# EXHIBIT "A"

# LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623 PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" 'WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET; THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE HAVING A LENGTH OF 115.83 FEET.

APN: **4369-026-021**

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.:  00166345-994-LT2-1TW

# EXCEPTIONS

**AT THE DATE HEREOF, ITEMS TO BE CONSIDERED AND EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN SAID POLICY FORM WOULD BE AS FOLLOWS:**

A1.    Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2022-2023.

A.    Property taxes, including any personal property taxes and any assessments collected with taxes are as follows:

Tax Identification No.:    4369-026-021
Fiscal Year:    2021-2022
1st Installment:    $701,465.73, Paid (payment late and penalty applies)
**Penalty:**    **$70,146.57**
2nd Installment:    $701,465.71, Unpaid
Penalty:    $70,156.57

B.    Said property has been declared tax defaulted for non-payment of delinquent taxes for the fiscal year 2020

APN No.:    4369-026-021

Amounts to redeem for the above-stated fiscal year (and subsequent years if any) are:

Amount:    $1,832,407.68 by February 28, 2022

C.    An assessment by the improvement district shown below:

Series:    AD #1
District:    County of Los Angeles
For:    MRCA-Brush Fire Clear'g Dist #1
Bond issued:    August 6, 2003

Said assessment is collected with the county/city property taxes.

Said assessment is also disclosed by a Notice of Amended Assessment, recorded January 26, 2015 as Instrument No. 2015-089995 of Official Records.

D.    The herein described property lies within the boundaries of a Community Facilities District (CFD) as follows:

CFD No:    2016-1
For:    Fire Prevention, Wildlife Corridor and Open Space Protection and other associated purposes
Disclosed by:    Notice of Special Tax Lien
Recording Date:    January 13, 2017
Recording No.:    20170055098, Official Records

This property, along with all other parcels in the CFD, is liable for an annual special tax. This special tax is included with and payable with the general property taxes of the County of Los Angeles.

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.:  00166345-994-LT2-1TW

# EXCEPTIONS
## (Continued)

E.  The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of Chapter 3.5 (commencing with Section 75) or Part 2, Chapter 3, Articles 3 and 4, respectively, of the Revenue and Taxation Code of the State of California as a result of the transfer of title to the vestee named in Schedule A or as a result of changes in ownership or new construction occurring prior to Date of Policy.

F.  The herein described property lies within the boundaries of a Community Facilities District (CFD) as follows:

CFD No:            2020-1
For:               Local Fire Prevention, Water Quality and Open Space Measure and other associated purposes
Disclosed by:      Notice of Special Tax Lien
Recording Date:    February 10, 2021
Recording No.:     2021-0235371, Official Records

This property, along with all other parcels in the CFD, is liable for an annual special tax. This special tax is included with and payable with the general property taxes of the County of Los Angeles.

1.  Water rights, claims or title to water, whether or not disclosed by the public records.

2.  Easement(s) for the purpose(s) shown below and rights incidental thereto as delineated or as offered for dedication, on the map of said Tract No. 22727;

Purpose:    Drainage
Affects:    That portion of said land as shown on said map

3.  Covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including but not limited to those based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, citizenship, immigration status, primary language, ancestry, source of income, gender, gender identity, gender expression, medical condition or genetic information, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law, as set forth in the document

Recording Date:    November 13, 1947
Recording No:      1860, Official Records

Said covenants, conditions and restrictions provide that a violation thereof shall not defeat the lien of any mortgage or deed of trust made in good faith and for value.

Modification(s) of said covenants, conditions and restrictions

Recording Date:    February 7, 1949
Recording No:      2309, Official Records

Modification(s) of said covenants, conditions and restrictions

Recording Date:    April 15, 1949
Recording No:      2654, Official Records

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.:  00166345-994-LT2-1TW

## EXCEPTIONS
### (Continued)

4.      Covenant and agreement wherein the owners agree to hold said Land as one parcel and not to sell any portion thereof separately. Said covenant is expressed to run with the Land and be binding upon future owners.

Recording Date:          June 22, 1981
Recording No.:           81-620826, Official Records

Reference is hereby made to said document for full particulars.

5.      An instrument entitled Master Covenant and Agreement

Executed by:             Michael t. Walkup and Edith A. Press
In favor of:             City of Los Angeles
Recording Date:          December 22, 1994
Recording No:            94-2260589, Official Records

Reference is hereby made to said document for full particulars.

6.      Matters contained in that certain document

Entitled:                Certificate of Compliance
Dated:                   L.A. No. 94-062
Executed by:             City of Los Angeles Department of City Planning
Recording Date:          December 22, 1994
Recording No:            94-2260586, Official Records

Reference is hereby made to said document for full particulars.

7.      A deed of trust to secure an indebtedness in the amount shown below,

Amount:                  $14,040,000.00
Dated:                   March 13, 2013
Trustor/Grantor          Crestlloyd LLC, a California limited liability company
Trustee:                 First American Title Insurance Company, a California corporation
Beneficiary:             Inferno Realty, L.P., as to an undivided $7,040,000.00 and Maybach Corporation Holdings, Inc., as to an undivided $7,000,000.00 interest, as tenants in common
Recording Date:          March 13, 2013
Recording No:            20130384037, Official Records

By various assignments, the beneficial interest thereunder is now held of record in:

Assignee:                Inferno Investment Inc.
Recording Date:          November 10, 2015
Recording No:            20151375607, Official Records

An agreement to modify the terms and provisions of said deed of trust as therein provided

Executed by:             Crestlloyd, LLC, a California Limited Liability Company and Inferno Investment Inc.
Recording Date:          November 10, 2015
Recording No:            20151375608, Official Records

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.:  00166345-994-LT2-1TW

# EXCEPTIONS
## (Continued)

An agreement recorded November 6, 2018 as Instrument No. 20181122920, Official Records which states that this instrument was subordinated to the document or interest described in the instrument

Recording Date:        November 6, 2018
Recording No.:         20181122917, Official Records

8.      Covenant and agreement wherein the owners agree to hold said Land as one parcel and not to sell any portion thereof separately. Said covenant is expressed to run with the Land and be binding upon future owners.

Recording Date:        September 5, 2013
Recording No.:         20131298666, Official Records

Reference is hereby made to said document for full particulars.

9.      An instrument entitled Master Covenant and Agreement Regarding On-Site BMP Maintenance

Executed by:           Nile Niami
In favor of:           City of Los Angeles
Recording Date:        September 24, 2013
Recording No:          20131385742, Official Records

Reference is hereby made to said document for full particulars.

10.     An instrument entitled Master Covenant and Agreement Regarding On-Site BMP Maintenance

Executed by:           Nile Niami
In favor of:           City of Los Angeles
Recording Date:        February 7, 2014
Recording No:          20140139714, Official Records

Reference is hereby made to said document for full particulars.

11.     An irrevocable offer to dedicate an easement over a portion of said Land for

Purpose(s):            Public street
Recording Date:        June 4, 2014
Recording No:          20140578201, Official Records

Said offer was accepted by resolution, a certified copy of which was recorded April 10, 2015 as Instrument No. 20150395929, of Official Records..

12.     An instrument entitled Covenant and Agreement Regarding Maintenance of Building

Executed by:           Nile Niami
In favor of:           City of Los Angeles
Recording Date:        February 17, 2016
Recording No:          20160172858, Official Records

Reference is hereby made to said document for full particulars.

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.:  00166345-994-LT2-1TW

## EXCEPTIONS
## (Continued)

13.    A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $82,500,000.00 |
| Dated: | October 25, 2018 |
| Trustor/Grantor | Crestlloyd, LLC, a California limited liability company |
| Trustee: | Chicago Title Company |
| Beneficiary: | Hankey Capital, LLC, a California limited liability company |
| Recording Date: | November 6, 2018 |
| Recording No: | 20181122917, Official Records |

An agreement to modify the terms and provisions of said deed of trust as therein provided

| | |
|---|---|
| Recording Date: | August 31, 2020 |
| Recording No: | 20201030024 of Official Records |

A notice of default under the terms of said trust deed

| | |
|---|---|
| Executed by: | Chicago Title Company |
| Recording Date: | March 5, 2021 |
| Recording No: | 2021-0367447 of Official Records |

A notice of trustee's sale under said deed of trust

| | |
|---|---|
| Executed by: | Chicago Title Company, trustee |
| Date, Time and Place of Sale: | July 12, 2021 at 11:00 am by the fountain located at 400 Civic Center Plaza, Pomona, CA 91766 |
| Recording Date: | June 14, 2021 |
| Recording No: | 2021-0934061 of Official Records |

14.    Matters contained in that certain document

| | |
|---|---|
| Entitled: | Memorandum of Agreement |
| Executed by: | Hankey Capital, LLC, a California limited liability company and Crestlloyd, LLC, a California limited liability company |
| Recording Date: | November 6, 2018 |
| Recording No: | 20181122919, Official Records |

| | |
|---|---|
| Recording Dare: | August 31, 2020 |
| Recording No.: | 20201030294 of Official Records |

Reference is hereby made to said document for full particulars.

15.    A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $30,188,235.00 |
| Dated: | October 16, 2018 |
| Trustor/Grantor | Crestlloyd, LLC, a California limited liability company |
| Trustee: | Chicago Title Company |
| Beneficiary: | YOGI Securities Holdings, LLC, a Nevada limited liability company |
| Recording Date: | November 7, 2018 |
| Recording No: | 20181126580, Official Records |

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.:  00166345-994-LT2-1TW

## EXCEPTIONS
### (Continued)

16.     A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $6,196,810.64 |
| Dated: | September 18, 2019 |
| Trustor/Grantor | Crestlloyd, LLC, a California limited liability company |
| Trustee: | Chicago Title Company |
| Beneficiary: | YOGI Securities Holdings, LLC, a Nevada limited liability company |
| Recording Date: | September 23, 2019 |
| Recording No: | 20190989746, Official Records |

The effect of a Substitution of Trustee and Full Reconveyance, recorded January 14, 2021 as Instrument No. 2021-076458 of Official Records.

(Note: We will require evidence of the full payment or satisfaction of said deed of trust as there does not appear to be an off-setting transaction of record.)

17.     An instrument entitled Covenant and Agreement Regarding Maintenance of Building

| | |
|---|---|
| Executed by: | Crestlloyd, LLC |
| In favor of: | City of Los Angeles |
| Recording Date: | December 2, 2019 |
| Recording No: | 20191317943, Official Records |

Reference is hereby made to said document for full particulars.

18.     Any rights of the parties in possession of a portion of, or all of, said Land, which rights are not disclosed by the public records.

19.     Matters which may be disclosed by an inspection and/or by a correct ALTA/NSPS Land Title Survey of said Land that is satisfactory to the Company, and/or by inquiry of the parties in possession thereof.

20.     A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | American Truck & Tool Rentals Inc./American Rentals |
| Amount: | $97,050.34 |
| Recording Date: | June 29, 2020 |
| Recording No: | 20200709010 of Official Records |

A Notice of Pending Action to foreclose said lien

| | |
|---|---|
| County: | Los Angeles |
| Court: | Superior |
| Case No.: | 20SMCV01229 (consolidated with 20SMCV01264) |
| Recording Date: | May 5, 2021 |
| Recording No: | 2021-0717597 of Official Records |

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.:  00166345-994-LT2-1TW

## EXCEPTIONS
## (Continued)

21.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | J&E Texture, Inc. |
| Amount: | $214,147.50 |
| Recording Date: | June 30, 2020 |
| Recording No: | 20200712043 of Official Records |

A Notice of Pending Action to foreclose said lien

| | |
|---|---|
| County: | Los Angeles |
| Court: | Superior |
| Case No.: | 20SMCV01229 |
| Recording Date: | December 14, 2020 |
| Recording No: | 2020-01647158 of Official Records |

A Notice of Pending Action to foreclose said lien

| | |
|---|---|
| County: | Los Angeles |
| Court: | Superior |
| Case No.: | 20SMCV01229 (consolidated with 20SMCV01264) |
| Recording Date: | May 5, 2021 |
| Recording No: | 2021-0717597 of Official Records |

22.    A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $5,000,000.00 |
| Dated: | February 11, 2020 |
| Trustor/Grantor | CRESTLLOYD, LLC, a California limited liability company |
| Trustee: | Pacific Coast Title Company |
| Beneficiary: | Hilldun Corporation, a New York corporation |
| Recording Date: | September 4, 2020 |
| Recording No: | 20201058770 of Official Records |

23.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | JMS Air Conditioning and Appliance Services, Inc. |
| Amount: | $51,290.00 |
| Recording Date: | May 6, 2021 |
| Recording No: | 2021-0722265 of Official Records |

24.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Calgrove Rentals Inc. |
| Amount: | $12,338.95 |
| Recording Date: | June 1, 2021 |
| Recording No: | 2021-0868958 of Official Records |

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.:  00166345-994-LT2-1TW

## EXCEPTIONS
### (Continued)

25.    A claim of mechanic's lien or materialman's lien

Claimant:            BMC West LLC
Amount:              $2,398.60
Recording Date:      July 16, 2021
Recording No:        2021-1102584 of Official Records

26.    A Receiver's Certificate #1

In favor of:         Hankey Capital, LLC and Theodore Lanes, in his capacity as Receiver
Amount:              $577,745.00
Case No.:            21SMCV01113 Superior Court Los Angeles County
Recording Date:      July 23, 2021
Recording No:        2021-1136088 of Official Records

27.    A Notice of Pending Lien

Executed by:         City of Los Angeles
Recording Date:      January 31, 2020
Recording No:        2020-0124042 of Official Records

28.    A claim of mechanic's lien or materialman's lien

Claimant:            Parquet By Dian
Amount:              $40,846.00
Recording Date:      September 8, 2021
Recording No:        2021-1373746 of Official Records

29.    A claim of mechanic's lien or materialman's lien

Claimant:            Powertek Electric, Inc.
Amount:              $40,480.00
Recording Date:      September 23, 2021
Recording No:        2021-1455960 of Official Records

30.    A claim of mechanic's lien or materialman's lien

Claimant:            Kennco Plumbing, Inc.
Amount:              $85,560.17
Recording Date:      October 5, 2021
Recording No:        2021-1508207 of Official Records

A Notice of Pending Action to foreclose said lien

County:              Los Angeles
Court:               Superior
Case No.:            21SMCV01656
Recording Date:      October 21, 2021
Recording No:        20211585116 of Official Records

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.:  00166345-994-LT2-1TW

# EXCEPTIONS
## (Continued)

31.    A Chapter 11 Petition

Debtor's Name:          Crestlloyd, LLC
Recording Date:         November 8, 2021
Recording No:           20211666304 of Official Records

**32.    ANY LIEN OR RIGHT TO A LIEN FOR SERVICES, LABOR OR MATERIAL NOT SHOWN BY THE PUBLIC RECORDS.**

33.    A deed of trust to secure an indebtedness in the amount shown below,

Amount:                 $12,000,000.00 and $120,000.00
Dated:                  December 13, 2021
Trustor/Grantor         Crestlloyd, LLC, a California limited liability company, debtor and debtor in possession in a pending Chapter 11 bankruptcy case commenced on October 26, 2021
Trustee:                Chicago Title Company
Beneficiary:            Hankey Capital, LLC, a California limited liability company
Recording Date:         January 26, 2022
Recording No:           20220103108, Official Records

**PLEASE REFER TO THE "INFORMATIONAL NOTES" AND "REQUIREMENTS" SECTIONS WHICH FOLLOW FOR INFORMATION NECESSARY TO COMPLETE THIS TRANSACTION.**

---

**END OF EXCEPTIONS**

---

# REQUIREMENTS SECTION

1.  Unrecorded matters which may be disclosed by an Owner's Affidavit or Declaration. A form of the Owner's Affidavit/Declaration is attached to this Preliminary Report/Commitment. This Affidavit/Declaration is to be completed by the record owner of the land and submitted for review prior to the closing of this transaction. Your prompt attention to this requirement will help avoid delays in the closing of this transaction. Thank you.

    The Company reserves the right to add additional items or make further requirements after review of the requested Affidavit/Declaration.

2.  The Company will require the following documents for review prior to the issuance of any title insurance predicated upon a conveyance or encumbrance from the entity named below:

    Limited Liability Company:        Crestlloyd, LLC, a California limited liability company

    a)    A copy of its operating agreement, if any, and all amendments, supplements and/or modifications thereto, certified by the appropriate manager or member.

    b)    If a domestic Limited Liability Company, a copy of its Articles of Organization and all amendments thereto with the appropriate filing stamps.

    c)    If the Limited Liability Company is member-managed, a full and complete current list of members certified by the appropriate manager or member.

    d)    A current dated certificate of good standing from the proper governmental authority of the state in which the entity is currently domiciled.

    e)    If less than all members, or managers, as appropriate, will be executing the closing documents, furnish evidence of the authority of those signing.

    f)    If Limited Liability Company is a Single Member Entity, a Statement of Information for the Single Member will be required.

    g)    Each member and manager of the LLC without an Operating Agreement must execute in the presence of a notary public the Certificate of California LLC (Without an Operating Agreement) Status and Authority form.

3.  In order to complete this report, the Company requires a Statement of Information to be completed by the following party(s),

    Party(s):                All Individual Parties

    The Company reserves the right to add additional items or make further requirements after review of the requested Statement of Information.

    NOTE:  The Statement of Information is necessary to complete the search and examination of title under this order. Any title search includes matters that are indexed by name only, and having a completed Statement of Information assists the Company in the elimination of certain matters which appear to involve the parties but in fact affect another party with the same or similar name. Be assured that the Statement of Information is essential and will be kept strictly confidential to this file.

---

## END OF REQUIREMENTS

---

Chicago Title Company
ORDER NO.:  00166345-994-LT2-1TW

## REQUIREMENTS
### (Continued)

## INFORMATIONAL NOTES SECTION

1.    The Company is not aware of any matters which would cause it to decline to attach CLTA Endorsement Form 116 indicating that there is located on said Land Single Family Residential property, known as 944 Ariole Way, located within the city of Los Angeles, California, , to an Extended Coverage Loan Policy.

2.    Note:  The policy of title insurance will include an arbitration provision. The Company or the insured may demand arbitration. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. Please ask your escrow or title officer for a sample copy of the policy to be issued if you wish to review the arbitration provisions and any other provisions pertaining to your Title Insurance coverage.

3.    Notice: Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

---

### END OF INFORMATIONAL NOTES

Ted Tan/Jennifer Wright (LA/Comm)/tt6

**WIRE SAFE**™ | Inquire before you wire!

# Wire Fraud Alert

*This Notice is not intended to provide legal or professional advice. If you have any questions, please consult with a lawyer.*

All parties to a real estate transaction are targets for wire fraud and many have lost hundreds of thousands of dollars because they simply relied on the wire instructions received via email, without further verification. **If funds are to be wired in conjunction with this real estate transaction, we strongly recommend verbal verification of wire instructions through a known, trusted phone number prior to sending funds.**

In addition, the following non-exclusive self-protection strategies are recommended to minimize exposure to possible wire fraud.

- **NEVER RELY** on emails purporting to change wire instructions. Parties to a transaction rarely change wire instructions in the course of a transaction.

- **ALWAYS VERIFY** wire instructions, specifically the ABA routing number and account number, by calling the party who sent the instructions to you. DO NOT use the phone number provided in the email containing the instructions, use phone numbers you have called before or can otherwise verify. **Obtain the phone number of relevant parties to the transaction as soon as an escrow account is opened**. DO NOT send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.

- **USE COMPLEX EMAIL PASSWORDS** that employ a combination of mixed case, numbers, and symbols. Make your passwords greater than eight (8) characters. Also, change your password often and do NOT reuse the same password for other online accounts.

- **USE MULTI-FACTOR AUTHENTICATION** for email accounts. Your email provider or IT staff may have specific instructions on how to implement this feature.

For more information on wire-fraud scams or to report an incident, please refer to the following links:

*Federal Bureau of Investigation:*
*http://www.fbi.gov*

*Internet Crime Complaint Center:*
*http://www.ic3.gov*

*TM and © Fidelity National Financial, Inc. and/or an affiliate. All rights reserved*

**Chicago Title Company**

725 South Figueroa Street, Suite 200, Los Angeles, CA 90017
Phone: (213) 488-4300 ● Fax: (213) 488-4377

# Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment.  Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the filed rate.   As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative.  These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for such discount.  These discounts only apply to transactions involving services rendered by the FNF Family of Companies.  This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

Not all discounts are offered by every FNF Company. The discount will only be applicable to the FNF Company as indicated by the named discount.

| **FNF Underwritten Title Company** | **Underwritten by FNF Underwriters** |
|---|---|
| CTC – Chicago Title company | CTIC – Chicago Title Insurance Company |
| CLTC – Commonwealth Land Title Company | CLTIC - Commonwealth Land Title Insurance Company |
| FNTC – Fidelity National Title Company of California | FNTIC – Fidelity National Title Insurance Company |
| FNTCCA - Fidelity National Title Company of California | FNTIC - Fidelity National Title Insurance Company |
| TICOR – Ticor Title Company of California | CTIC – Chicago Title Insurance Company |
| LTC – Lawyer's Title Company | CLTIC – Commonwealth Land Title Insurance Company |
| SLTC – ServiceLink Title Company | CTIC – Chicago Title Insurance Company |

**Available Discounts**

**DISASTER LOANS (CTIC, CLTIC, FNTIC)**
The charge for a Lender's Policy (Standard or Extended coverage) covering the financing or refinancing by an owner of record, within twenty-four (24) months of the date of a declaration of a disaster area by the government of the United States or the State of California on any land located in said area, which was partially or totally destroyed in the disaster, will be fifty percent (50%) of the appropriate title insurance rate.

**CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (CTIC, FNTIC)**
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be fifty percent (50%) to seventy percent (70%) of the appropriate title insurance rate, depending on the type of coverage selected. The charge for a lender's policy shall be forty (40%) to fifty percent (50%) of the appropriate title insurance rate, depending on the type of coverage selected.

## FIDELITY NATIONAL FINANCIAL, INC.
## PRIVACY NOTICE

Effective August 1, 2021

Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF," "our," or "we") respect and are committed to protecting your privacy. This Privacy Notice explains how we collect, use, and protect personal information, when and to whom we disclose such information, and the choices you have about the use and disclosure of that information.

A limited number of FNF subsidiaries have their own privacy notices.  If a subsidiary has its own privacy notice, the privacy notice will be available on the subsidiary's website and this Privacy Notice does not apply.

### Collection of Personal Information
FNF may collect the following categories of Personal Information:
- contact information (*e.g.*, name, address, phone number, email address);
- demographic information (*e.g.*, date of birth, gender, marital status);
- identity information (*e.g.* Social Security Number, driver's license, passport, or other government ID number);
- financial account information (*e.g.* loan or bank account information); and
- other personal information necessary to provide products or services to you.

We may collect Personal Information about you from:
- information we receive from you or your agent;
- information about your transactions with FNF, our affiliates, or others; and
- information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities or through others.

### Collection of Browsing Information
FNF automatically collects the following types of Browsing Information when you access an FNF website, online service, or application (each an "FNF Website") from your Internet browser, computer, and/or device:
- Internet Protocol (IP) address and operating system;
- browser version, language, and type;
- domain name system requests; and
- browsing history on the FNF Website, such as date and time of your visit to the FNF Website and visits to the pages within the FNF Website.

Like most websites, our servers automatically log each visitor to the FNF Website and may collect the Browsing Information described above. We use Browsing Information for system administration, troubleshooting, fraud investigation, and to improve our websites. Browsing Information generally does not reveal anything personal about you, though if you have created a user account for an FNF Website and are logged into that account, the FNF Website may be able to link certain browsing activity to your user account.

### Other Online Specifics
<u>Cookies</u>. When you visit an FNF Website, a "cookie" may be sent to your computer. A cookie is a small piece of data that is sent to your Internet browser from a web server and stored on your computer's hard drive. Information gathered using cookies helps us improve your user experience. For example, a cookie can help the website load properly or can customize the display page based on your browser type and user preferences. You can choose whether or not to accept cookies by changing your Internet browser settings. Be aware that doing so may impair or limit some functionality of the FNF Website.

<u>Web Beacons</u>. We use web beacons to determine when and how many times a page has been viewed. This information is used to improve our websites.

<u>Do Not Track</u>. Currently our FNF Websites do not respond to "Do Not Track" features enabled through your browser.

<u>Links to Other Sites</u>.  FNF Websites may contain links to unaffiliated third-party websites. FNF is not responsible for the privacy practices or content of those websites. We recommend that you read the privacy policy of every website you visit.

### Use of Personal Information
FNF uses Personal Information for three main purposes:
- To provide products and services to you or in connection with a transaction involving you.
- To improve our products and services.
- To communicate with you about our, our affiliates', and others' products and services, jointly or independently.

### When Information Is Disclosed
We may disclose your Personal Information and Browsing Information in the following circumstances:
- to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure;
- to nonaffiliated service providers who provide or perform services or functions on our behalf and who agree to use the information only to provide such services or functions;

- to nonaffiliated third party service providers with whom we perform joint marketing, pursuant to an agreement with them to jointly market financial products or services to you;
- to law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order; or
- in the good-faith belief that such disclosure is necessary to comply with legal process or applicable laws, or to protect the rights, property, or safety of FNF, its customers, or the public.

The law does not require your prior authorization and does not allow you to restrict the disclosures described above. Additionally, we may disclose your information to third parties for whom you have given us authorization or consent to make such disclosure. We do not otherwise share your Personal Information or Browsing Information with nonaffiliated third parties, except as required or permitted by law. We may share your Personal Information with affiliates (other companies owned by FNF) to directly market to you. Please see "Choices with Your Information" to learn how to restrict that sharing.

We reserve the right to transfer your Personal Information, Browsing Information, and any other information, in connection with the sale or other disposition of all or part of the FNF business and/or assets, or in the event of bankruptcy, reorganization, insolvency, receivership, or an assignment for the benefit of creditors. By submitting Personal Information and/or Browsing Information to FNF, you expressly agree and consent to the use and/or transfer of the foregoing information in connection with any of the above described proceedings.

## Security of Your Information
We maintain physical, electronic, and procedural safeguards to protect your Personal Information.

## Choices With Your Information
If you do not want FNF to share your information among our affiliates to directly market to you, you may send an "opt out" request as directed at the end of this Privacy Notice. We do not share your Personal Information with nonaffiliates for their use to direct market to you without your consent.

Whether you submit Personal Information or Browsing Information to FNF is entirely up to you. If you decide not to submit Personal Information or Browsing Information, FNF may not be able to provide certain services or products to you.

For California Residents: We will not share your Personal Information or Browsing Information with nonaffiliated third parties, except as permitted by California law. For additional information about your California privacy rights, please visit the "California Privacy" link on our website (https://fnf.com/pages/californiaprivacy.aspx) or call (888) 413-1748.

For Nevada Residents: You may be placed on our internal Do Not Call List by calling (888) 714-2710 or by contacting us via the information set forth at the end of this Privacy Notice. Nevada law requires that we also provide you with the following contact information: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; Phone number: (702) 486-3132; email: BCPINFO@ag.state.nv.us.
For Oregon Residents: We will not share your Personal Information or Browsing Information with nonaffiliated third parties for marketing purposes, except after you have been informed by us of such sharing and had an opportunity to indicate that you do not want a disclosure made for marketing purposes.

For Vermont Residents: We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures.

## Information From Children
The FNF Websites are not intended or designed to attract persons under the age of eighteen (18).We do not collect Personal Information from any person that we know to be under the age of thirteen (13) without permission from a parent or guardian.

## International Users
FNF's headquarters is located within the United States. If you reside outside the United States and choose to provide Personal Information or Browsing Information to us, please note that we may transfer that information outside of your country of residence. By providing FNF with your Personal Information and/or Browsing Information, you consent to our collection, transfer, and use of such information in accordance with this Privacy Notice.

## FNF Website Services for Mortgage Loans
Certain FNF companies provide services to mortgage loan servicers, including hosting websites that collect customer information on behalf of mortgage loan servicers (the "Service Websites"). The Service Websites may contain links to both this Privacy Notice and the mortgage loan servicer or lender's privacy notice. The sections of this Privacy Notice titled When Information is Disclosed, Choices with Your Information, and Accessing and Correcting Information do not apply to the Service Websites. The mortgage loan servicer or lender's privacy notice governs use, disclosure, and access to your Personal Information. FNF does not share Personal Information collected through the Service Websites, except as required or authorized by contract with the mortgage loan servicer or lender, or as required by law or in the good-faith belief that such disclosure is necessary: to comply with a legal process or applicable law, to enforce this Privacy Notice, or to protect the rights, property, or safety of FNF or the public.

**Your Consent To This Privacy Notice; Notice Changes**

By submitting Personal Information and/or Browsing Information to FNF, you consent to the collection and use of the information in accordance with this Privacy Notice. We may change this Privacy Notice at any time. The Privacy Notice's effective date will show the last date changes were made. If you provide information to us following any change of the Privacy Notice, that signifies your assent to and acceptance of the changes to the Privacy Notice.

**Accessing and Correcting Information; Contact Us**

If you have questions, would like to correct your Personal Information, or want to opt-out of information sharing for affiliate marketing, visit FNF's Opt Out Page or contact us by phone at (888) 714-2710 or by mail to:

Fidelity National Financial, Inc.
601 Riverside Avenue,
Jacksonville, Florida 32204
Attn: Chief Privacy Officer

## ATTACHMENT ONE (Revised 05-06-16)

### CALIFORNIA LAND TITLE ASSOCIATION
### STANDARD COVERAGE POLICY – 1990

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)  Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

    (b)  Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.  Defects, liens, encumbrances, adverse claims or other matters:
    (a)  whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
    (b)  not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
    (c)  resulting in no loss or damage to the insured claimant;
    (d)  attaching or created subsequent to Date of Policy; or
    (e)  resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.  Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6.  Any lien or right to a lien for services, labor or material not shown by the public records.

### CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
### ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE

### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.  Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
    a.  building;
    b.  zoning;
    c.  land use;
    d.  improvements on the Land;
    e.  land division; and
    f.  environmental protection.
    This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

2.  The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.

3.  The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.

4.  Risks:
    a.  that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
    b.  that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;

© **California Land Title Association. All rights reserved.**
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

    c.   that result in no loss to You; or

    d.   that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.

5.   Failure to pay value for Your Title.

6.   Lack of a right:

    a.   to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and

    b.   in streets, alleys, or waterways that touch the Land.

    This Exclusion does not limit the coverage described in Covered Risk 11 or 21.

7.   The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.

8.   Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

9.   Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

•   For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

| | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 5,000.00 |

## 2006 ALTA LOAN POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.   (a)   Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

       (i)   the occupancy, use, or enjoyment of the Land;

       (ii)   the character, dimensions, or location of any improvement erected on the Land;

       (iii)  the subdivision of land; or

       (iv)  environmental protection;

       or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

    (b)   Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.   Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.   Defects, liens, encumbrances, adverse claims, or other matters

    (a)   created, suffered, assumed, or agreed to by the Insured Claimant;

    (b)   not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

    (c)   resulting in no loss or damage to the Insured Claimant;

    (d)   attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13 or 14); or

    (e)   resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.   Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5.   Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.

6.   Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

    (a)   a fraudulent conveyance or fraudulent transfer, or

    (b)   a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.

7.   Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

### EXCEPTIONS FROM COVERAGE

{Except as provided in Schedule B - Part II,{ t{or T}his policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

© California Land Title Association. All rights reserved.

The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

## {PART I

{The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor or material not shown by the Public Records.}

## PART II

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:}

## 2006 ALTA OWNER'S POLICY (06-17-06)

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i)   the occupancy, use, or enjoyment of the Land;
    (ii)  the character, dimensions, or location of any improvement erected on the Land;
    (iii) the subdivision of land; or
    (iv)  environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a) created, suffered, assumed, or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c) resulting in no loss or damage to the Insured Claimant;
    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
    (a) a fraudulent conveyance or fraudulent transfer; or
    (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

{The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown in the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor or material not shown by the Public Records. }
7.  {Variable exceptions such as taxes, easements, CC&R's, etc. shown here.}

© California Land Title Association. All rights reserved.
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

**ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY – ASSESSMENTS PRIORITY (04-02-15)**

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
      (i)  the occupancy, use, or enjoyment of the Land;
      (ii)  the character, dimensions, or location of any improvement erected on the Land;
      (iii)  the subdivision of land; or
      (iv)  environmental protection;
      or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
    (b)  Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;
    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c)  resulting in no loss or damage to the Insured Claimant;
    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.
6.  Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.
7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.
8.  The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.
9.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
    (a)  a fraudulent conveyance or fraudulent transfer, or
    (b)  a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.
10. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
11. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any  other substances.

---

**© California Land Title Association. All rights reserved.**
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

Insert Map Here

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034

A true and correct copy of the foregoing document entitled **NOTICE OF LODGMENT OF ORDER IN BANKRUPTCY CASE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 24, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Kyra E Andrassy    kandrassy@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com**
- **Todd M Arnold    tma@lnbyg.com**
- **Jerrold L Bregman    jbregman@bg.law, ecf@bg.law**
- **Marguerite Lee DeVoll    mdevoll@watttieder.com, zabrams@watttieder.com**
- **Danielle R Gabai    dgabai@danninggill.com, dgabai@ecf.courtdrive.com**
- **Thomas M Geher    tmg@jmbm.com, bt@jmbm.com;fc3@jmbm.com;tmg@ecf.inforuptcy.com**
- **David B Golubchik    dbg@lnbyg.com, stephanie@lnbyb.com**
- **James Andrew Hinds    jhinds@hindslawgroup.com;mduran@hindslawgroup.com, mduran@hindslawgroup.com**
- **Robert B Kaplan    rbk@jmbm.com**
- **Jane G Kearl    jkearl@watttieder.com**
- **Jennifer Larkin Kneeland    jkneeland@watttieder.com, zabrams@watttieder.com**
- **Michael S Kogan    mkogan@koganlawfirm.com**
- **Noreen A Madoyan    Noreen.Madoyan@usdoj.gov**
- **Ryan D O'Dea    rodea@shulmanbastian.com, lgauthier@shulmanbastian.com**
- **Sharon Oh-Kubisch    sokubisch@swelawfirm.com, gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com**
- **Ronald N Richards    ron@ronaldrichards.com, 7206828420@filings.docketbird.com**
- **Victor A Sahn    vsahn@sulmeyerlaw.com, pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;cblair@ecf.inforuptcy.com**
- **William Schumacher    wschumac@milbank.com, autodocketecf@milbank.com**
- **David Seror    dseror@bg.law, ecf@bg.law**
- **Zev Shechtman    zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com**
- **Mark Shinderman    mshinderman@milbank.com, dmuhrez@milbank.com;dlbatie@milbank.com**
- **Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**
- **Genevieve G Weiner    gweiner@sidley.com, laefilingnotice@sidley.com;genevieve-weiner-0813@ecf.pacerpro.com**
- **Jessica Wellington    jwellington@bg.law, ecf@bg.law**

**2.  SERVED BY UNITED STATES MAIL**: On **March 24, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

1

☐ *Service information continued on attached page*

2

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR,

3

on **March 24, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or

4

email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

5

☐ *Service information continued on attached page*

6

I declare under penalty of perjury under the laws of the United States of America that the foregoing is

7

true and correct.

8

| March 24, 2022 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**