**SMILEY WANG-EKVALL, LLP**
Kyra E. Andrassy, State Bar No. 207959
*kandrassy@swelawfirm.com*
Sharon Oh-Kubisch, State Bar No. 197573
*sokubisch@swelawfirm.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone:    714 445-1000
Facsimile:    714 445-1002

Attorneys for Inferno Investment, Inc.

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>CRESTLLOYD, LLC,<br><br>　　　　Debtor in Possession. | Case No. 2:21-bk-18205-DS<br>Chapter 11<br><br>**LIMITED OPPOSITION OF SECURED CREDITOR INFERNO INVESTMENT, INC. TO FIRST INTERIM APPLICATION OF LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P. FOR APPROVAL OF FEES AND REIMBURSEMENT OF EXPENSES**<br><br>Date:　　May 26, 2022<br>Time:　　11:30 a.m.<br>Crtrm.:　1639 |

**TO THE HONORABLE DEBORAH SALTZMAN, UNITED STATES BANKRUPTCY JUDGE, LEVENE, NEALE, BENDER, YOO & GOLUBCHIK, L.L.P., AND ALL OTHER PARTIES IN INTEREST:**

　　Inferno Investment, Inc. ("Inferno"), the holder of a deed of trust in second priority against the real property located at 944 Airole Way, Los Angeles, CA 90077 (the "Property"), does not object to the allowance of the requested fees and costs of Levene, Neale, Bender, Yoo & Brill, L.L.P., counsel for Crestlloyd, LLC (the "Debtor").  However, to the extent that the application seeks authority to pay fees and costs in an amount that would exceed the amount permitted under the budget prepared by the Debtor for restructuring fees, Inferno does object.

In order to obtain insurance and prepare the Property for sale, the Debtor sought Court authority to obtain a postpetition loan from Hankey Capital in an amount up to $12 million.  The loan agreement permitted the loan proceeds to be used for "solely in accordance with the Budget, which was attached as Exhibit F to the loan agreement, and which allowed a "variance by line item and by each weekly time period of fifteen percent (15.0%) per line item, with any negative variances to carry forward to the next weekly time period."  *Senior Secured Super-Priority Debtor in Possession Credit Agreement*, which was attached as an exhibit to the Debtor's financing motion [Doc. 66].  The relevant portions are attached hereto as Exhibit "A."  That budget contained an allocation for "Professional and UST Fees" of $949,743.  With a 15% line item variance, that would total $1,092,204.45.  The budget that was attached to the loan agreement is provided as Exhibit "B."  The Court approved the Debtor's motion and, in the final order that was entered on January 27, 2022, authorized the Debtor "to use the proceeds from the DIP Loan to pay the Debtor's expenses as set forth in the Budget attached to the Motion as Exhibit 3.  The Debtor must comply with the Budget, but may have a variance by line item and by each weekly time period of fifteen percent (15.0%) per line item, with any negative variances to carry forward to the next weekly time period."  *Final Order:  (I) Authorizing Debtor to Obtain Senior Secured Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Granting Super-Priority Administrative Claims and Senior Liens, and (III) Granting Related Relief* at ¶ 4, a copy of which is attached as Exhibit "C."

In order to obtain the DIP loan and to give Hankey a superpriority lien against the real property, the Debtor had to establish that the junior lienholders were adequately protected.  The motion stated "all alleged secured creditors will be adequately protected by an equity cushion in excess of 20%, whether the Property is valued at the Debtor's estimated value of $325 million or a substantially lower value of $250 million."  *Debtor's Notice of Motion and Motion for Entry of Interim and Final Orders:  (I) Authorizing Debtor to Obtain Senior Secured Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Granting Super-Priority Administrative Claims and Senior Liens,*

*and (III) Granting Related Relief* [Doc. No. 66) at 24. Once approved, the Debtor immediately drew down the entire $12 million facility.

As it turns out, the Property sold for $126 million, the junior lienholders were not adequately protected, and the parties must now resolve how the proceeds remaining will pay off secured debt in the approximate amount of $180 million. At the closing, Hankey Capital was repaid the full amount of its DIP loan. As of the filing of the fee application, the Debtor was apparently still holding $3,673,209.69, all or nearly all of which is attributable to the DIP loan proceeds.

The line item for restructuring fees includes both Sierra Constellation, which was brought in to serve as manager shortly before the filing, counsel for the Debtor, and fees due to the Office of the United States Trustee. The loan documents required Sierra Constellation to file and serve monthly fee statements and to pay itself only after seven days had lapsed without objection. To date, Sierra Constellation has filed monthly fee statements for the period from the petition date through March 31, 2022, in the following amounts:

| Period Covered by the Fee Statement | Amount Sought, with any costs | Document No. |
|---|---:|---:|
| 10/26/21 to 10/31/21 | $20,070.85 | 119 |
| 11/1/21 to 11/30/21 | $148,659.50 | 120 |
| 12/1/21 to 12/31/21 | $142,832.37 | 121 |
| 1/1/22 to 1/31/22 | $199,071.31 | 125 |
| 2/1/22 to 2/28/22 | $146,598.50 | 188 |
| 3/11/22 to 3/31/22 | $171,527.38 | 291 |
| **TOTAL** | **$828,759.91** | |

Not including amounts paid or due to the UST, this leaves $263,444.50 in loan proceeds that are available for restructuring fees and UST expenses. However, the Debtor's counsel is seeking authority to pay $484,455.47 in fees and expenses. The

Debtor is not authorized to do so pursuant to the Court orders it has obtained to date. Accordingly, Inferno objects to the payment of fees and expenses in an amount greater than the amount authorized to be paid in the Budget. The loan proceeds are not truly "unencumbered" and cannot be used without regard to the Budget that the Debtor prepared which allowed variances by line item. To the extent that the Debtor spent less than it projected it would for other line items, this should have resulted in a reduction in the amount borrowed under the DIP loan facility or the return of the excess proceeds to Hankey which would then mean that more money was available to pay the junior lienholders. The Debtor was not permitted to draw down the entire facility and then to use it without regard to the limitations contained in its Budget.

      Accordingly, Inferno objects to the payment of fees and expenses to the extent that they would exceed the amount permitted in the Budget and various Court orders, and requests entry of an order that permits the payment of fees and costs of counsel to the Debtor in an amount that, together with what has already been paid to Sierra Constellation and the UST, does not exceed $1,092,204.45.

DATED: May 12, 2022

Respectfully submitted,

SMILEY WANG-EKVALL, LLP

By:     /s/ Kyra E. Andrassy
    KYRA E. ANDRASSY
    Attorneys for Inferno Investment, Inc.

# EXHIBIT "A"

# SENIOR SECURED SUPER-PRIORITY DEBTOR IN POSSESSION CREDIT AGREEMENT

Borrower:   CRESTLLOYD, LLC

Lender:   HANKEY CAPITAL, LLC

or cause the direction of the management or policies of the controlled Person, whether through ownership of stock, any other equity interest or membership interest, by contract or otherwise.

**Aggregate Commitment:** The aggregate of the Commitment for this Loan, as reduced from time to time by any principal payments made by or on behalf of Borrower and any principal reductions otherwise required under and pursuant to the terms of the Loan Documents. The Aggregate Commitment as of the Closing Date is Twelve Million and No/100ths Dollars ($12,000,000.00) plus the amount of the Facility Fee; provided, however, that in no event shall the Aggregate Commitment exceed the maximum principal amount of the Loan approved by the Bankruptcy Court pursuant to the Final Order.

**Agreement:** As defined in the Preamble.

**Asset Sale:** The sale, lease, conveyance, disposition or other transfer or assignment by Borrower of any of its assets (including by way of a sale-leaseback transaction and including the sale or other transfer of any of the equity interests or membership interests of any Subsidiary of such Person), including any or all of the Collateral, and the assignment of any its executory contracts and unexpired leases.

**Availability Period:** The period commencing on the Closing Date and ending on the Maturity Date.

**Avoidance Actions:** Claims and causes of action that first arise on or after the Filing Date under Bankruptcy Code chapter 5 and the proceeds thereof and property received thereby, whether by judgment, settlement, or otherwise.

**Bankruptcy Code:** Title 11 of the United States Code.

**Bankruptcy Court:** The United States Bankruptcy Court for the Central District of California, Central Division, or any other court then having jurisdiction over the Chapter 11 Case.

**Borrower:** As defined in the Preamble.

**Borrowing Date:** Any date that an Advance is made.

**Budget:** Budget shall refer to that certain cash budget of expenditures contemplated by Borrower to be made out of the Advance, attached hereto as **Exhibit F**, and also attached to the Interim Order and the Final Order. Borrower shall comply with the Budget, but may have a variance by line item and by each weekly time period of fifteen percent (15.0%) per line item, with any negative variances to carry forward to the next weekly time period.

**Business Day:** Any day other than a Saturday, Sunday, or a legal holiday on which banks in the State of California are required or permitted to close.

**Carve Out:** All fees and costs incurred by the Borrower after the Filing Date as a debtor in possession, including, without limitation, fees and costs required to be paid to the Clerk of the Bankruptcy Court and the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a) in the Chapter 11 Case, except such fees that result from the sale of Collateral or any portion thereof,

(the "**Deferred Extension Fee**").  The Deferred Extension Fee shall be payable on the Maturity Date, as extended by the Extension Option.  The Deferred Extension Fee shall bear interest at the Interest Rate from the date on which notice to elect to defer the Extension Fee is given until paid.  The Extension Option shall expire unless duly and timely exercised by Borrower on or before February 28, 2022.  For avoidance of doubt, in the event Borrower duly and timely exercises the Extension Option, the Maturity Date shall become April 30, 2022, and Borrower's obligation to make monthly interest payments shall continue.

**3.2**   **Use of Loan Proceeds.**  Loan Proceeds shall be used solely in accordance with the Budget, including for payment of the Facility Fee, Lender's reasonable attorneys' fees and costs incurred in making and documenting the Loan, title insurance premiums, escrow fees, the Extension Fee, and the Carve Out and Borrower's working capital needs and to administer the Chapter 11 Case, including insurance, repair, maintenance and construction costs with respect to the Property.  With respect to the fees and costs of the Manager of the Debtor, Manager shall file monthly fee statements and, absent an objection within seven (7) days thereafter, the fees and costs may be paid in full.  In the event of an objection, the undisputed portion may be paid without prejudice to the balance subject to order of the Court.  Without limiting the foregoing, no Loan Proceeds or proceeds of the Collateral may be used:  (a) to finance in any way any investigation, action, suit, arbitration, proceeding, application, motion, or litigation of any type, provided that the Loan Proceeds may be used to review and investigate claims asserted against the estate, including claims of Lender:  (i) adverse to the interests of Lender or its rights or remedies under this Agreement, or the other Loan Documents, (ii) adverse to the interests of Lender under any pre-petition financing arrangement with, or equity interest in, Borrower, (iii) for monetary, injunctive or any other relief whatsoever against Lender, or (iv) to prevent, hinder, or otherwise delay the exercise by Lender of any rights and remedies under the Loan Documents, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Bankruptcy Court or otherwise) by Lender upon any of the Collateral; (b) to make any distribution under a Restructuring Plan; (c) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consent of Lender; or (d) to pay any fees or similar amount to any Person in connection with any Asset Sale (including so-called "topping" or "breakup" fees) without the prior written consent of Lender.

**3.3**   **Payment; Prepayments and Reduction of Aggregate Commitment.**

(a)   **Mandatory Prepayments.**

(i)   <u>Asset Sale Prepayments</u>.  Upon the consummation of any Asset Sale, other than sales of assets to the extent permitted pursuant to <u>Section 8.3(b)</u> of this Agreement, Borrower shall make a mandatory prepayment of the Loan from the Net Cash Proceeds in an amount equal to the lesser of such Net Cash Proceeds and the aggregate outstanding Obligations.

(ii)   <u>Proceeds of any Indebtedness</u>.  Upon receipt of any proceeds arising from the incurrence of any Indebtedness, Borrower shall make a mandatory prepayment of the Loan in an amount equal to the lesser of (x) one hundred percent (100%) of the proceeds so received and (y) the aggregate amount of the outstanding Obligations.

12

# EXHIBIT "B"

**Crestlloyd, LLC**
*Preliminary DIP Budget Forecast*
*($USD)*

| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| First Projected Week | 12/17/2021 *Filed Ch 11 on 10/26* | | | | | | | | | | | | | | |
| Forecast Period Counter | | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | |
| Week ending Friday | | Week of 12/17/21 | Week of 12/24/21 | Week of 12/31/21 | Week of 1/7/22 | Week of 1/14/22 | Week of 1/21/22 | Week of 1/28/22 | Week of 2/4/22 | Week of 2/11/22 | Week of 2/18/22 | Week of 2/25/22 | Week of 3/4/22 | Week of 3/11/22 | 13-Week Total |
| **Beginning Cash Balance** | | - | $ 6,084,564 | $ 4,309,262 | $ 3,567,172 | $ 2,807,582 | $ 2,383,192 | $ 2,116,102 | $ 1,831,912 | $ 1,470,259 | $ 1,311,069 | $ 1,044,579 | $ 928,679 | $ 752,779 | $ - |
| **Disbursements:** | | | | | | | | | | | | | | | |
| Construction | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Insurance | | 4,000,000 | 983,213 | - | - | - | - | - | - | - | - | - | - | - | 4,983,213 |
| Property Taxes | | 701,466 | - | - | - | - | - | - | - | - | - | - | - | - | 701,466 |
| Security, Cleaning, and General Carry | | 130,320 | 23,440 | 23,440 | 23,440 | 23,440 | 23,440 | 23,440 | 23,440 | 23,440 | 23,440 | 23,440 | 23,440 | - | 388,160 |
| Utilities | | 60,000 | - | - | - | 57,300 | - | - | - | - | 57,300 | - | - | - | 174,600 |
| Furniture Rental | | 60,000 | 50,000 | 25,000 | - | 50,000 | - | 25,000 | - | - | 50,000 | 25,000 | - | - | 285,000 |
| Repairs & Maintenance | | 400,000 | 500,000 | 500,000 | 500,000 | 100,000 | 50,000 | 50,000 | 50,000 | 50,000 | - | - | - | - | 2,200,000 |
| Contingency / Other | | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 100,000 | 100,000 | 100,000 | 50,000 | 50,000 | 50,000 | 50,000 | - | 1,250,000 |
| Total | | 5,501,786 | 1,706,653 | 698,440 | 673,440 | 380,740 | 173,440 | 198,440 | 173,440 | 123,440 | 180,740 | 98,440 | 73,440 | - | 9,982,438 |
| **Restructuring Disbursements:** | | | | | | | | | | | | | | | |
| Professional and UST Fees | | 293,650 | 68,650 | 43,650 | 43,650 | 43,650 | 93,650 | 85,750 | 103,213 | 35,750 | 85,750 | 17,460 | 17,460 | 17,460 | 949,743 |
| Total Restructuring Disbursements | | 293,650 | 68,650 | 43,650 | 43,650 | 43,650 | 93,650 | 85,750 | 103,213 | 35,750 | 85,750 | 17,460 | 17,460 | 17,460 | 949,743 |
| Total Disbursements Before Interest | | 5,795,436 | 1,775,303 | 742,090 | 717,090 | 424,390 | 267,090 | 284,190 | 276,653 | 159,190 | 266,490 | 115,900 | 90,900 | 17,460 | 10,932,181 |
| **Interest and Fees:** | | | | | | | | | | | | | | | |
| Interest & Fees (DIP) | | 120,000 | - | - | 42,500 | - | - | - | 85,000 | - | - | - | 85,000 | - | 332,500 |
| Interest & Fees (Existing debt) | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Interest and Fees | | 120,000 | - | - | 42,500 | - | - | - | 85,000 | - | - | - | 85,000 | - | 332,500 |
| **Total Disbursements** | | $ 5,915,436 | $ 1,775,303 | $ 742,090 | $ 759,590 | $ 424,390 | $ 267,090 | $ 284,190 | $ 361,653 | $ 159,190 | $ 266,490 | $ 115,900 | $ 175,900 | $ 17,460 | $ 11,264,681 |
| Ending Cash Balance Before DIP Draw | | (5,915,436) | 4,309,262 | 3,567,172 | 2,807,582 | 2,383,192 | 2,116,102 | 1,831,912 | 1,470,259 | 1,311,069 | 1,044,579 | 928,679 | 752,779 | 735,319 | (11,264,681) |
| DIP Advances / (repayments) | | 12,000,000 | - | - | - | - | - | - | - | - | - | - | - | - | 12,000,000 |
| **Ending Cash Balance** | | $ 6,084,564 | $ 4,309,262 | $ 3,567,172 | $ 2,807,582 | $ 2,383,192 | $ 2,116,102 | $ 1,831,912 | $ 1,470,259 | $ 1,311,069 | $ 1,044,579 | $ 928,679 | $ 752,779 | $ 735,319 | $ 735,319 |
| **DIP Loan:** | | | | | | | | | | | | | | | |
| Beginning Loan Balance | | - | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | - |
| Advances / (repayments) | | 12,000,000 | - | - | - | - | - | - | - | - | - | - | - | - | 12,000,000 |
| Ending Loan Balance | | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 |

# EXHIBIT "C"

DAVID B. GOLUBCHIK (State Bar No. 185520)
TODD M. ARNOLD (State Bar No. 221868)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: dbg@lnbyg.com; tma@lnbyg.com

Attorneys for Debtor and Debtor in Possession

FILED & ENTERED

JAN 27 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bakchell    DEPUTY CLERK

CHANGES MADE BY COURT

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No. 2:21-bk-18205-DS |
| CRESTLLOYD, LLC, | Chapter 11 |
| Debtor and Debtor in Possession. | **FINAL ORDER:**<br>**(I) AUTHORIZING DEBTOR TO OBTAIN SENIOR SECURED POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE,**<br>**(II) GRANTING SUPER-PRIORITY ADMINISTRATIVE CLAIMS AND SENIOR LIENS, AND**<br>**(III) GRANTING RELATED RELIEF**<br><br><u>Final Hearing</u>:<br>Date:  January 13, 2022<br>Time:  11:30 a.m.<br>Place:  Courtroom 1639<br>          255 East Temple Street<br>          Los Angeles, California 90012<br>          (via ZoomGov) |

A final hearing was held at the above-referenced date, time, and location on the "Motion for Entry of Interim and Final Orders: (I) Authorizing Debtor to Obtain Senior Secured Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Granting Super-Priority Administrative Claims and Senior Liens, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief" (the "Motion," Docket No. 66) filed by debtor and debtor in possession Crestlloyd, LLC. Appearances were noted on the record.

/ / /

The court having considered the Motion, the record in this case, and the arguments and comments of counsel at the hearing, the interim order on the Motion entered on December 10, 2021 (the "Interim Order," Docket No. 70), and for the reasons stated on the record,

THE COURT HEREBY FINDS AS FOLLOWS:

A. This court has jurisdiction over the Debtor's case, the Motion, and the parties and property affected thereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A) and (D). Venue is proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409.

B. Notice of the Motion, the relief requested therein, and the interim hearing and final hearing on the Motion was served by the Debtor on its twenty largest unsecured creditors, all known secured creditors, the United States Trustee for the Central District of California, and any parties who have requested special notice in this case. Under the circumstances, the notice given by the Debtor of the Motion, the relief requested therein, and the interim hearing and final hearing on the Motion constitutes due and sufficient notice thereof and complies with FRBP 4001(c) and any other applicable notice requirements under the FRBP and LBR.

C. The Debtor has an immediate need to obtain the DIP Loan[1] from the Lender to pay for the expenses contained in the Budget. Payment of such expenses is necessary to enable the Debtor to avoid immediate, irreparable harm to the Debtor and its estate.

D. The Debtor sought postpetition financing from a number of sources, including certain existing alleged secured lenders.

E. After reasonable inquiry, the Debtor was unable to obtain adequate credit solely (1) allowable under § 503(b)(1)[2] as an administrative expense, (2) with priority over any and all administrative expenses of the kind specified in §§ 503(b) or 507(b), (3) secured by a lien on property of the estate that is not otherwise subject to a lien, or (4) secured by a junior lien on property of the estate that is subject to a lien.

///

---

[1] All capitalized terms not defined herein are used as defined in the Motion.
[2] All section references are to the Bankruptcy Code unless otherwise stated.

F. To date, the best postpetition financing commitment and terms that have been provided to the Debtor are those offered by the Lender under the DIP Loan Documents.

G. The terms of the DIP Loan are fair and reasonable, reflect the Debtor's reasonable exercise of its business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration.

H. The terms of the DIP Loan have been the subject of negotiations conducted in good faith and at arm's length between the Debtor and the Lender, and all of the Debtor's obligations and indebtedness to the Lender arising under or in connection with the DIP Loan have been extended by the Lender in "good faith" as such term is used in § 364(e), and in express reliance upon the protections set forth therein, and the Lender is entitled to, and is granted, the full protection of § 364(e) in the event that this order or any provision hereof is vacated, reversed, or modified on appeal or otherwise.

I. Any creditors with valid liens on the Collateral will be adequately protected by (1) an equity cushion in excess of 20% and (2) the use of the DIP Loan to fully insure and maintain and preserve the value of the Real Property while the Debtor pursues a near-term sale of the Real Property, for the benefit of creditors.

J. Authorizing the Debtor to consummate the DIP Loan in accordance with the Interim Order and this order to enable the Debtor to pay the expenses in the Budget is in the best interest of the Debtor's estate.

K. Good cause has been shown for the entry of this order.

Based upon the foregoing findings and conclusions, and upon the record made before the court at the interim and final hearings, and good and sufficient cause appearing,

IT IS HEREBY ORDERED AS FOLLOWS:

1. The Motion is granted as set forth in this order.

2. The Debtor is authorized to borrow the DIP Loan, up to the principal amount of $12 million, from the Lender, pursuant to the DIP Loan Documents and to incur and perform all obligations under the DIP Loan Documents subject to the following modifications to the DIP Loan Documents:

a. In Section 1.1 of the Loan Agreement, the definition of "Extension Option" is modified as follows:

*Extension Option: On or before March 21, 2022, Borrower has a one-time option to elect to extend the Maturity Date from March 21, 2022 to May 20, 2022. The sole method by which Borrower may exercise its one-time option is to give written notice to Lender that Borrower elects to extend the Maturity Date pursuant to the Extension Option, in the manner and at the time set forth in Section 3.1(d).*

b. In Section 1.1 of the Loan Agreement, the definition of "Maturity Date" is modified as follows:

*The earlier of: (a) March 21, 2022 or if Borrower has duly and timely elected the Extension Option in writing, May 20, 2022;*

c. Section 3.1, Subsection (d) of the Loan Agreement is modified as follows:

*(d) On or before March 21, 2022, Borrower has a one-time option to elect to extend the Maturity Date from March 21, 2022 to May 20, 2022. The sole method by which Borrower may exercise its one-time option is to give written notice to Lender on or before March 21, 2022 that Borrower elects to extend the Maturity Date pursuant to the Extension Option, accompanied by payment of the Extension Fee by wire transfer in accordance with instructions of Lender; provided, however, Borrower may elect to defer payment of the Extension Fee at the time of giving its written notice to elect the Extension Option, in which case the Extension Fee shall be added to the principal balance of the Loan on the date of such written notice (the "Deferred Extension Fee"). The Deferred Extension Fee shall be payable on the Maturity Date, as extended by the Extension Option. The Deferred Extension Fee shall bear interest at the Interest Rate from the date on which notice to elect to defer the Extension Fee is given until paid. The Extension Option shall expire unless duly and timely exercised by Borrower on or before March 21, 2022. For avoidance of doubt, in the event Borrower duly and timely exercises the Extension Option, the Maturity Date shall become May 20, 2022, and Borrower's obligation to make monthly interest payments shall continue.*

d. Section 8.2, Subsection (l) of the Loan Agreement is modified as follows:

*Auction Sale. Borrower shall schedule an Auction Sale of the Real Property to be conducted by a duly qualified auctioneer on or before March 3, 2022. Terms of the Auction Sale shall include, but shall not be limited to, a closing of the sale of the Real Property on or before March 21, 2022.*

3. The Debtor is authorized and empowered to execute and enter into the DIP Loan Documents, and to perform such other and further acts as may be required in connection with the DIP Loan Documents, subject to the modifications set forth in this order. Upon execution and delivery, the DIP Loan Documents will represent valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with their terms.

4. The Debtor is authorized to use the proceeds from the DIP Loan to pay the Debtor's expenses as set forth in the Budget attached to the Motion as Exhibit 3. The Debtor must comply with the Budget, but may have a variance by line item and by time each weekly time period of fifteen percent (15.0%) per line item, with any negative variances to carry forward to the next weekly time period.

5. Effective immediately upon entry of this order, and without the need to take any action or file or record any deeds of trust, financing statements or other documents, the obligations under the DIP Loan and DIP Loan Documents, including, without limitation, principal, accrued interest, unpaid reasonable fees and expenses, and all other obligations and amounts due from time to time under the Loan Agreement and DIP Loan Documents will be, and are deemed to be (a) an allowed Super-Priority Claim and (b) immediately secured by (i) a valid, binding, continuing, enforceable, fully perfected and unavoidable first position security interest and lien upon the Real Property and all rents, profits and proceeds therefrom (*i.e.,* the Real Property Lien), subject in priority only to the Carve Out, and (ii) valid, binding, continuing, enforceable, fully perfected and unavoidable first position security interests and liens upon all of the Personal Property, other than claims and causes of action under Chapter 5 of the Bankruptcy Code and the proceeds thereof, except that (y) actions under § 549 (and the proceeds thereof) will be included in the Collateral to the extent they concern the recovery of what was, before the avoided transfer, any of the Collateral, and (z) any lien or security interest avoided pursuant to any or all of §§ 550, 551 and 552 will not in any event be senior to the DIP Liens.

6. The Lender is authorized, but not required, to file or record financing statements, deeds of trust, mortgages, notices of lien or similar instruments in any jurisdiction, or take any other action in order to validate and perfect the DIP Liens granted to the Lender hereunder. Regardless of whether the Lender will in its sole discretion choose to file such financing statements, deeds of trust, mortgages, notices of lien or similar instruments, the DIP Liens are deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this order. The automatic stay imposed by § 362 is vacated and modified solely to the extent

///

necessary to permit the creation and perfection of the DIP Liens in and to the Collateral as set forth in this order.

7. The Debtor is prohibited from asserting claims arising under § 506(c) against the Lender or commencing other actions adverse to the Lender's rights and remedies under the DIP Loan Documents.

8. The Debtor is prohibited from incurring debt with priority equal to or greater than the Lender has under the DIP Loan Documents, except and to the extent as expressly provided in the DIP Loan Documents.

9. The Debtor is prohibited from granting or imposing liens on the Collateral other than Permitted Liens (as defined in the DIP Loan Documents).

10. Subject to § 363(k), the Lender, with respect to the DIP Loan and any other allowed prepetition secured claim it has, will have the right to "credit bid" up to the full allowed amount of its allowed secured claims in connection with any sale of the Real Property, including any sale occurring pursuant to § 363 or included as part of a restructuring plan subject to confirmation under § 1129 or a sale or disposition by a chapter 7 trustee under § 725 or otherwise.

11. The DIP Liens, lien priority, administrative priorities and other rights and remedies granted to the Lender pursuant to the DIP Loan Documents and this Final Order may not be modified, altered or impaired in any manner by any other financing or extension of credit or incurrence of indebtedness by the Debtor (pursuant to § 364 or otherwise), or by any dismissal or conversion of this case, or by any other act or omission whatsoever.

12. The automatic stay imposed by § 362(a) is modified to permit (a) the Debtor to grant the DIP Liens and the Super-Priority Claim, and to perform such acts as the Lender may reasonably request to assure the perfection and priority of the DIP Liens; and (b) the implementation of the terms of this Final Order and the DIP Loan Documents.

13. Except as otherwise provided in this order, the terms and provisions of this order will, immediately upon entry of this order by this Court, become valid and binding upon the Debtor, the Lender, all creditors of the Debtor, the Official Committee of Unsecured Creditors, if one is appointed, and all other parties in interest and their respective successors and assigns, including any

trustee or other fiduciary hereafter appointed as a legal representative of the Debtor's estate in this case or in the event this case is converted to chapter 7.

14. The terms of this order and any actions taken pursuant hereto, will survive the entry of any order which may be entered: (a) confirming any plan in this Case; (b) dismissing this Case; (c) converting this Case to any other chapter under the Bankruptcy Code; (d) withdrawing of the references of this Case from this court; and (e) providing for abstention from handling or retaining of jurisdiction of this case in this court. The terms and provisions of this order as well as the protections granted pursuant to this order and the DIP Loan Documents, will continue in full force and effect, and such protections will maintain their priority as provided by this order, until all the obligations of the Debtor to the Lender pursuant to the DIP Loan Documents are indefeasibly paid in full and discharged. The obligations of Debtor under the DIP Loan Documents will not be discharged by the entry of any order confirming a chapter 11 plan, the Debtor having waived such discharge pursuant to § 1141(d)(4). The Debtor may not propose or support any plan that is not conditioned upon the payment in full in cash of all of Debtor's obligations under the DIP Loan Documents on or prior to the effective date of such plan.

15. This order may not be modified, amended or extended without the prior written consent of Hankey, and no such consent will be implied by any action, inaction or acquiescence of Hankey.

16. Any applicable stay, including under FRBP 4001(c), is waived, and this order is immediately effective.

###

Date: January 27, 2022

_____
Deborah J. Saltzman
United States Bankruptcy Judge

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**3200 Park Center Drive, Suite 250, Costa Mesa, CA. 92626**

A true and correct copy of the foregoing document entitled (*specify*): **Limited Opposition of Secured Creditor Inferno Investment, Inc. to First Interim Application of Levene, Neale, Bender, Yoo & Golubchik L.L.P. for Approval of Fees and Reimbursement of Expenses** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **5/12/2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **5/12/2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Deborah J. Saltzman
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1634 / Courtroom 1639
Los Angeles, CA 90012

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 5/12/2022 | Lynnette Garrett | */s/ Lynnette Garrett* |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                 **F 9013-3.1.PROOF.SERVICE**

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Kyra E Andrassy    kandrassy@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- Todd M Arnold    tma@lnbyg.com
- Jerrold L Bregman    jbregman@bg.law, ecf@bg.law
- Marguerite Lee DeVoll    mdevoll@watttieder.com, zabrams@watttieder.com
- Karol K Denniston    karol.denniston@squirepb.com, travis.mcroberts@squirepb.com;sarah.conley@squirepb.com;karol-k-denniston-9025@ecf.pacerpro.com
- Oscar Estrada    oestrada@ttc.lacounty.gov
- Danielle R Gabai    dgabai@danninggill.com, dgabai@ecf.courtdrive.com
- Thomas M Geher    tmg@jmbm.com, bt@jmbm.com;fc3@jmbm.com;tmg@ecf.inforuptcy.com
- David B Golubchik    dbg@lnbyg.com, stephanie@lnbyb.com
- James Andrew Hinds    jhinds@hindslawgroup.com;mduran@hindslawgroup.com, mduran@hindslawgroup.com
- Robert B Kaplan    rbk@jmbm.com
- Jane G Kearl    jkearl@watttieder.com
- Jennifer Larkin Kneeland    jkneeland@watttieder.com, zabrams@watttieder.com
- Michael S Kogan    mkogan@koganlawfirm.com
- Noreen A Madoyan    Noreen.Madoyan@usdoj.gov
- Samuel A Newman    sam.newman@sidley.com, samuel-newman-2492@ecf.pacerpro.com;laefilingnotice@sidley.com
- Ryan D O'Dea    rodea@shulmanbastian.com, lgauthier@shulmanbastian.com
- Sharon Oh-Kubisch    sokubisch@swelawfirm.com, gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com
- Hamid R Rafatjoo    hrafatjoo@raineslaw.com, bclark@raineslaw.com
- Ronald N Richards    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- Victor A Sahn    vsahn@sulmeyerlaw.com, pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;cblair@ecf.inforuptcy.com
- William Schumacher    wschumac@milbank.com, autodocketecf@milbank.com
- David Seror    dseror@bg.law, ecf@bg.law
- Zev Shechtman    zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
- Mark Shinderman    mshinderman@milbank.com, dmuhrez@milbank.com;dlbatie@milbank.com
- Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Genevieve G Weiner    gweiner@sidley.com, laefilingnotice@sidley.com;genevieve-weiner-0813@ecf.pacerpro.com
- Jessica Wellington    jwellington@bg.law, ecf@bg.law

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**F 9013-3.1.PROOF.SERVICE**