DAVID B. GOLUBCHIK (State Bar No. 185520)
TODD M. ARNOLD (State Bar No. 221868)
JONATHAN D. GOTTLIEB (State Bar No. 339650)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: dbg@lnbyg.com; tma@lnbyg.com; jdg@lnbyg.com

Attorneys for Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | ) Case No. 2:21-bk-18205-DS |
| | ) |
| CRESTLLOYD, LLC, | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) **NOTICE OF MOTION AND MOTION** |
| | ) **FOR AUTHORITY TO PAY CERTAIN** |
| | ) **SENIOR SECURED CREDITORS;** |
| | ) **MEMORANDUM OF POINTS AND** |
| | ) **AUTHORITIES; DECLARATION OF** |
| | ) **LAWRENCE R. PERKINS IN SUPPORT** |
| | ) **THEREOF** |
| | ) |
| | ) |
| | ) Date:   May 26, 2022 |
| | ) Time:   11:30 p.m. |
| | ) Place:  Courtroom 1639 |
| | )            255 E. Temple Street |
| | )            Los Angeles, CA  90012 |
| | )            **VIA ZOOMGOV ONLY** |
| | ) |
| | ) |
| | ) |

**TO THE HONORABLE DEBORAH J. SALTZMAN, UNITED STATES BANKRUPTCY JUDGE, AND ALL INTERESTED PARTIES:**

**NOTICE IS HEREBY GIVEN** that Crestlloyd LLC, the debtor and debtor in possession in the above-captioned Chapter 11 bankruptcy case (the "Debtor"), respectfully submits this Motion (the "Motion"), pursuant to 11 U.S.C. §§ 105, 363(b), and 506, for entry of an order authorizing the payment of amounts owed to certain senior secured mechanic's lien creditors: J&E Texture, Inc., American Truck & Tool Rentals Inc., Kennco Plumbing Inc., JMS Air Conditioning, Parquet by Dian, Powertek Electrical Inc., and BMC West LLC. (collectively, the "Mechanic's Lien Creditors").

**NOTICE IS FURTHER GIVEN** that this Motion shall be heard by the Honorable Deborah J. Saltzman, Bankruptcy Judge, in courtroom 1639 of the above-entitled Court, via ZoomGov only, on May 26, 2022 on the Court's 11:30 a.m. calendar.

**NOTICE IS FURTHER GIVEN** that by this Motion the Debtor requests authority to pay the Mechanic's Lien Creditors in the following amounts (the "Payment Amounts"):

| Name | Amount |
|------|--------|
| J&E Texture, Inc. | $292,300.86[1] |
| American Truck & Tool Rentals Inc. | $160,000.00[2] |
| Kennco Plumbing Inc. | $85,560.17 |
| JMS Air Conditioning | $51,290.00 |
| Parquet by Dian | $40,846.00 |
| Powertek Electrical Inc. | $40,480.00 |
| BMC West LLC | $2,399.00 |

---

[1] This amount is per a tentative agreement with J&E that includes interest, but not other fees and expenses that would make the claim higher.

[2] This amount is *reduced* from the secured claim in the amount of $188,087.09 asserted by American pursuant to the *Stipulation With American Truck & Tool Rentals Inc. Re: Allowance And Payment Of Claim* [Dkt. 304] that is pending with the Court.

1

**NOTICE IS FURTHER GIVEN** that this Motion is based on 11 U.S.C. §§ 105, 363(b) and 506, the annexed Memorandum of Points and Authorities and Declaration of Lawrence R. Perkins, such other evidence as may be submitted in connection with the Motion, and oral argument made at the hearing.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule, 9013-1(f), any opposition to this Motion must (1) be in writing and include all reasons and evidence in support of the opposition, (2) be filed at least fourteen (14) days prior to the hearing on this Motion, and (3) be served on the United States Trustee and counsel for Debtors.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(h), the Court may deem the failure of any party to file a timely opposition to this Motion to constitute consent to the granting of this Motion and the relief requested herein.

**WHEREFORE**, the Debtor respectfully requests that this court enter an order:

(1)     granting the Motion;

(2)     authorizing the Debtor to pay the Payment Amounts to the Mechanic's Lien Creditors;

(3)     holding that the payment of the required Payment Amount to a particular Mechanic's Lien Creditor constitutes payment in full of the subject Mechanic's Lien Creditor's claim against the Debtor and the estate; and

(4)     affording such further and other relief as is warranted under the circumstances.

Date: May 5, 2022                    LEVENE, NEALE, BENDER, YOO
                                     & GOLUBCHIK L.L.P.

                                     By:    */s/ David B. Golubchik*
                                          DAVID B. GOLUBCHIK
                                          TODD M. ARNOLD
                                          JONATHAN D. GOTTLIEB
                                          Attorneys for Debtor and
                                          Debtor in Possession

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## BACKGROUND FACTS

On October 26, 2021 (the "Petition Date"), the Debtor commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code. The Debtor is operating its estate and managing its financial affairs as a debtor in possession pursuant to Sections 1107 and 1108.

### A.    SALE OF THE PROPERTY

On the Petition Date, the Debtor's primary asset was the residential property located at 944 Airole Way, Los Angeles, CA 90077 (the "Property"). On March 3, 2022, this Court approved a sale of the Property as evidenced by this Court's *Order Granting Debtor's Motion [the "Sale Motion"] for an Order: (1) Approving The Sale Of The Debtor's Real Property Free And Clear Of All Liens, Claims, Encumbrances, And Interests, With The Exception Of Enumerated Exclusions; (2) Finding That The Buyer Is A Good Faith Purchaser; (3) Authorizing And Approving The Payment Of Certain Claims From Sale Proceeds; (4) Waiving The Fourteen-Day Stay Period Set Forth In Bankruptcy Rule 6004(h); And (5) Providing Related Relief* (the "Sale Order"). A true and correct copy of the Sale Order is attached hereto as **Exhibit "1"**. Pursuant to the Sale Order and the sale of the Property, the estate received $137.97 million of which $126 million includes the purchase price and the remaining $11.970 million consists of an Auctioneer Rebate. Exhibit 1; 4:19-22.

### B.    ALLEGED CLAIMS SECURED BY THE PROPERTY

#### 1.    Inferno Investments Inc.

Pursuant to a Proof of Claim (the "Inferno POC") filed by Inferno Investment Inc. ("Inferno"), Inferno asserts a claim in the amount of $20,902,106.12, which, Inferno asserts, is

secured by a Deed of Trust (the "<u>Inferno Deed of Trust</u>") that was recorded on March 13, 2013. A true and correct copy of the Inferno POC, designated as Claim No. 11, is attached hereto as **Exhibit "2".**

On January 1, 2016, the Debtor and Inferno entered into an agreement (the "<u>Subordination Agreement</u>") whereby the parties agreed that proceeds from the sale of the Property would be distributed in the following manner: "First to repay the loan(s) obtained from a bank or third party parties (excluding [the Debtor] and Inferno) and all other unpaid costs of construction of the [Property]. Second, to [the Debtor] and Inferno, pro rata, in repayment of any loans owing them, together with simple interest thereon at the rate of eight percent (8%) per annum…." A true and correct copy of the Subordination Agreement is attached hereto as **Exhibit "3"**; *see* ¶ 3.

At the sale hearing, Inferno objected to the payment of Mechanic's Lien Creditors' claims at that time based on its argument that the Subordination Agreement "does not state what it states." Since the sale hearing, the Debtor has requested, on numerous occasions, for documentation or other evidence from Inferno that supports a different interpretation of the unambiguous language of the Subordination Agreement. To date, no further convincing evidence was provided by Inferno.

**2.     The Mechanic's Lien Creditors.**

After the initial financing from Inferno, the Debtor commenced construction of its Property. In that respect, the following parties provided goods and/or services in order to improve the Property: J&E Texture, Inc.; American Truck & Tool Rentals Inc.; Kennco Plumbing Inc.; JMS Air Conditioning; Parquet by Dian; Powertek Electrical Inc.; and BMC West LLC. (i.e., the Mechanic's Lien Creditors). Currently, the Mechanic's Lien Creditors possess claims secured by the Property in the following amounts:

| Name | Amount | Recording Date |
|---|---|---|
| J&E Texture, Inc.[3] | $292,300.86[4] | June 30, 2020 |
| American Truck & Tool Rentals Inc.[5] | $160,000.00[6] | June 29, 2020 |
| Kennco Plumbing Inc.[7] | $85,560.17 | October 5, 2021 |
| JMS Air Conditioning[8] [Dkt. 52, ¶ 2.13 (53)] | $51,290.00 | May 6, 2021 |
| Parquet by Dian[9] [Dkt. 52, ¶ 2.16 (54)] | $40,846.00 | September 8, 2021 |
| Powertek Electrical Inc.[10] | $40,480.00 | September 23, 2021 |
| BMC West LLC[11] [Dkt. 52, ¶ 2.2 (48-49)] | $2,399.00 | July 16, 2021 |

### 3. Hankey Capital, LLC and Yogi Securities Holdings, LLC.

Pursuant to one of numerous Proofs of Claims (the "Hankey POC") filed by Hankey Capital, LLC ("Hankey"), Hankey asserts a claim in the amount of $122,638,623.41, which, Hankey asserts, is secured by a Deed of Trust dated November 6, 2018. A true and correct copy of the Hankey POC, designated as Claim No. 20, is attached hereto as **Exhibit "11"**. The Hankey financing was provided after the goods and/or services were provided by one or more subcontractors or other parties to improve the Property. The Debtor is advised and understands that Hankey does not oppose paying the Mechanic's Lien Creditors.

Pursuant to a Proof of Claim ("Yogi POC") filed by Yogi Securities Holdings, LLC ("Yogi"), Yogi asserts a claim in the amount of $24,385,366.77, which Yogi asserts is secured by a Deed of Trust dated August 30, 2019. A true and correct copy of the Yogi POC, designated as Claim No. 27 (amending Claim No. 15), is attached hereto as **Exhibit "12"**. The Yogi financing

---

[3] **Exhibit "4"** (J&E POC, Exhibit A)
[4] This amount is per a tentative agreement with J&E that includes interest, but not other fees and expenses that would make the claim higher.
[5] **Exhibit "5"** (American POC, Exhibit B)
[6] This amount is *reduced* from the secured claim in the amount of $188,087.09 asserted by American pursuant to the *Stipulation With American Truck & Tool Rentals Inc. Re: Allowance And Payment Of Claim* [Dkt. 304] that is pending with the Court.
[7] **Exhibit "6"** (Kennco POC, Exhibit 5)
[8] **Exhibit "7"** (JMS DOT)
[9] **Exhibit "8"** (Parquet DOT)
[10] **Exhibit "9"** (Powertek POC, Attachment p. 1)
[11] **Exhibit "10"** (BMC DOT)

was provided after goods and/or services were provided by one or more subcontractors or other parties to improve the Property.  The Debtor is advised and understands that Yogi does not oppose paying the Mechanic's Lien Creditors.

## II.

## <u>DISCUSSION</u>

Section 363(b)(1) allows a debtor in possession, after a motion and hearing, to use estate property outside of the ordinary course of business. 11 U.S.C. § 363(b).  More notably, the provision codifies the principles of bankruptcy law by granting representatives of the estate flexible and broad authority to maximize the value of the estate. *In re Claar Cellars, LLC*, No. 20-00044-WLH11, 2020 WL 1238924 at *3 (Bankr. E.D. Wash. 2020). However, 363(b)(1) is not a tool to obviate prohibitions found elsewhere in the Bankruptcy Code.  *Id.* at *4; *See also Czyzewski v. Jevic Holding Corporation*, 137 S. Ct. 973, 978 (2017) (denying debtor's structured dismissal where debtor sought to deviate from the basic priority rules that apply under the Bankruptcy Code without the consent of the affected parties). Instead, bankruptcy courts review actions taken pursuant to Section 363(b)(1) under the business judgment standard. *Id.* Under this deferential standard, bankruptcy courts will generally approve actions by the debtor in possession provided that the debtor in possession's decisions to take such action is reasonable as it pertains to the specific needs of the case. *Id.* at *5.

Sections 503, 506, and 507 of the Bankruptcy Code set forth a basic system of priority, which ordinarily determines the order in which assets of the estate will be distributed: secured creditors are highest on the priority list, for they must receive the proceeds of the collateral that secured their claims up to payment in full with interest, fees, and expenses, administrative creditors come next, then priority unsecured creditors, such as those who hold certain claims for taxes or wages, then come general unsecured creditors, and finally equity holders.  11 U.S.C. §§ 503, 506, and 507; *see*

*also Czyzewski*, 137 S. Ct. at 979 (citing 11 U.S.C. §§ 507, 725, 726).  However, "Bankruptcy Courts look to state law to determine lien priority" where competing liens on the same property exist. *Quoting In re McIntyre*, No. 02:08-12110-BR, 2010 WL 11530873, at *4 (C.D. Cal. Apr. 27, 2010), *aff'd*, 470 F. App'x 694 (9th Cir. 2012) (citing *In re Van De Kamp's Dutch Bakeries*, 908 F.2d 517, 519 (9th Cir. 1990) (bankruptcy court must refer to state law to determine priority of competing liens)).

Here, the Mechanic's Lien Creditors, Inferno, Hankey, and Yogi are all alleged secured creditors whose claims are purportedly secured by the Property. Accordingly, the priority of these parties will be determined by California law.

## A.    INFERNO SUBORDINATED ITS LIEN TO THE MECHANIC'S LIEN CREDITORS.

Under California law, different liens on the same property have priority according to the time of their creation. *Fleet Credit Corp. v. TML Bus Sales, Inc.*, 65 F.3d 119, 122 (9th Cir. 1995). Specifically, this "first in time, first in right" system of lien priorities provides that a conveyance recorded first generally has priority over any later-recorded conveyances, regardless of the time of transfer. *Id.*

Despite California's priority scheme, a prior lienholder can, by agreement, subordinate the lien holder's lien to that of others. *Aviel v. Ng*, 161 Cal. App. 4th 809, 816 (1st Dist. 2008); *Collins v. Home Savings & Loan Ass'n*, 205 Cal. App. 2d 86 (2d Dist. 1962) (although different liens on the same property have priority according to the time of their creation, a party may agree to waive or subordinate the priority thus accomplished). Often, this takes the form of a "subordination agreement" whereby a senior lien holder agrees to lower its priority in relation to that of another party holding an interest in the same property. *Ng*, 161 Cal. App. 4th at 816. The rights of priority

under such an agreement extend to and are limited strictly by the express terms and conditions of the agreement. *Resolution Trust Corp. v. BVS Development, Inc.*, 42 F.3d 1206, 1214 (9th Cir. 1994).

Pursuant to the Subordination Agreement, Inferno agreed to subordinate its interest in the Property to those of any third-party lenders and those for any unpaid construction costs. For purposes of this Motion, Inferno's lien was subordinated to those of the Mechanic's Lien Creditors because the Mechanic's Lien Creditors' unpaid claims stem from their construction work on the Property. Accordingly, the Mechanic's Lien Creditors maintain priority over Inferno as a result of the Subordination Agreement.

**B.    THE MECHANIC'S LIEN CREDIOTRS MAINTAIN PRIORITY OVER THE HANKEY AND YOGI INTERESTS.**

A mechanic's lien is entitled to "off-record priority," meaning that the priority of the mechanic's lien relates back to the commencement of work rather than the date of recordation of the lien. *See* Cal. Const. Const. Art. XIV, § 3; Cal. Civ. Code § 8450(a); *Sax v. Clark*, 180 Cal. 287, 288-91, 180 P. 821 (1919); *Greenblatt v. Utley*, 240 F.2d 243, 246 (9th Cir. 1956) ("[t]he lien dates from the time of the commencement of the work"); Miller & Starr, *California Real Estate* 4th ed., §§ 32:6, 10:130 (2021) ("Miller & Starr"). Specifically, Cal. Civ. Code § 8450(a) provides that a mechanic's lien –

> … has priority over a lien, mortgage, deed of trust, or other encumbrances on the work of improvement for the real property to which the work of improvement is situated that (1) attached after commencement of the work of improvement or (2) was unrecorded at the commencement of the work of improvement of which the claimant had no notice.

Cal. Civ. Code § 8450(a).

Moreover, the lien attaches and relates back to when any work is commenced on the project, not when the mechanic's lien holder actually commences work itself. *See Simons Brick Co. v. Hetzel*, 236 P. 357, 360 (Cal. Ct. App. 2d Dist. 1925); *Schrader Iron Works, Inc. v. Lee*, 26 Cal.App.3d 621, 631-32 (3d Dist. 1972); *Parson Brinckerhoff Quade & Douglas, Inc. v. Kern Cty. Emps. ' Ret. Ass'n*, 5 Cal.App.4th 1264, 1268-69 (5th Dist. 1992); *In re KDR Bldg. Specialties, Inc.*, 76 B.R. 778 (Bankr. S.D. Cal. 1987); *Miller & Starr*, §§ 32:6, 10:130 ("[t]he priority of a mechanic's lien relates back to the date work commenced for *all* claimants, no matter when the claimant's work actually began").

Here, work on the Property started as early as March 2, 2014. *See* J&E Opposition to the Sale Motion attached hereto as **Exhibit "13,"** at 1:25 § II, at ¶ 1-3 and Hamilton Declaration annexed to the J&E Opposition to the Sale Motion, ¶¶ 5-6.  For that reason, *all* of the Mechanic's Lien Creditors' claims attached to the Property as early as (and possibly earlier than) March 2014. On the other hand, Hankey and Yogi did not recorded their deeds of trust until 2018 and 2019, respectively. Accordingly, the Mechanic's Lien Creditors maintain priority over both Hankey's and Yogi's security interests because the Mechanic's Lien Creditors' interests attached to the Property prior to those of Hankey and Yogi.

C.    **PAYMENTS TO THE MECHANIC'S LIEN CREDITORS ALLOWS THE DEBTOR TO MAXIMIZE THE VALUE OF THE ESTATE FOR THE BENEFIT OF OTHER CREDITORS**

By allowing the Debtor to pay the Mechanic's Lien Creditors, the Debtor will be able to maximize the value of the estate. Specifically, once the Mechanic's Lien Creditors are paid, monthly interest and attorneys' fees and expenses on their claims will cease to accrue, and the Debtor will be able to use the money that would have otherwise been paid to the Mechanic's Lien Creditors to satisfy other creditors.

# III.

## <u>CONCLUSION</u>

**WHEREFORE,** the Debtor respectfully requests that this Court enter an order:

(1)     granting the Motion;

(2)     authorizing the Debtor to pay the Payment Amounts to the Mechanic's Lien

Creditors

(3)     holding that the payment of the required Payment Amount to a particular

Mechanic's Lien Creditor constitutes payment in full of the subject Mechanic's Lien Creditor's

claim against the Debtor and the estate; and

(4)     affording such further and other relief as is warranted under the circumstances


Dated:  May 5, 2022                     LEVENE, NEALE, BENDER, YOO
                                                      & GOLUBCHIK L.L.P.

                                             By:____*/s/ David B. Golubchik*_____
                                                      DAVID B. GOLUBCHIK
                                                      TODD M. ARNOLD
                                                      JONATHAN D. GOTTLIEB
                                                      Attorneys for Debtor and
                                                      Debtor in Possession

10

## DECLARATION OF LAWRENCE R. PERKINS

I LAWRENCE R. PERKINS, hereby declare as follows:

1.      I am over 18 years of age. I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.      I am the Founder and Chief Executive Officer of SierraConstellation Partners LLC ("SCP") and have nearly 20 years of management consulting and advisory experience with companies undergoing transition. I have enhanced business performance for numerous companies on projects ranging from interim management, profit improvement and working capital management to strategic planning and transaction execution.

3.      I have served in a variety of senior level positions including Financial Advisor, Strategic Consultant, Investment Banker, Financial Executive, and Crisis Manager to numerous middle market companies and believe that I am particularly skilled at assisting clients through challenging situations.

4.      Prior to founding SCP, I was a Senior Managing Director and Regional Leader of a national consulting firm where he was responsible for business development, marketing, staffing, and general management of the firm's western region. I joined the firm in 2010 when it acquired El Molino Advisors, a company I founded in January 2007 and led as the CEO.

5.      I began my career in the strategic consulting group of Arthur Andersen after graduating from the University of Southern California Marshall School of Business. I am currently on the board of several non-profits, and two corporate boards, and am a member of the Young Presidents Organization.

6.      SCP became the Non-Member Manager of the Debtor in October 2021 and is the current Non-Member Manager of the Debtor. I have access to the Debtor's books and records.

7.    On October 26, 2021 (the "<u>Petition Date</u>"), the Debtor commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code. The Debtor is operating its estate and managing its financial affairs as a debtor in possession pursuant to Sections 1107 and 1108.

8.    On the Petition Date, the Debtor's primary asset was the residential property located at 944 Airole Way, Los Angeles, CA 90077 (the "<u>Property</u>"). On March 3, 2022, this Court approved a sale of the Property as evidenced by this Court's *Order Granting Debtor's Motion [the "Sale Motion"] for an Order: (1) Approving The Sale Of The Debtor's Real Property Free And Clear Of All Liens, Claims, Encumbrances, And Interests, With The Exception Of Enumerated Exclusions; (2) Finding That The Buyer Is A Good Faith Purchaser; (3) Authorizing And Approving The Payment Of Certain Claims From Sale Proceeds; (4) Waiving The Fourteen-Day Stay Period Set Forth In Bankruptcy Rule 6004(h); And (5) Providing Related Relief* (the "<u>Sale Order</u>"). A true and correct copy of the Sale Order is attached hereto as **Exhibit "1"**. Pursuant to the Sale Order and the sale of the Property, the estate received $137.97 million of which $126 million includes the purchase price and the remaining $11.970 million consists of an Auctioneer Rebate. Exhibit 1; 4:19-22.

9.    Pursuant to a Proof of Claim (the "<u>Inferno POC</u>") filed by Inferno Investment Inc. ("<u>Inferno</u>"), Inferno asserts a claim in the amount of $20,902,106.12, which, Inferno asserts, is secured by a Deed of Trust (the "<u>Inferno Deed of Trust</u>") that was recorded on March 13, 2013. A true and correct copy of the Inferno POC, designated as Claim No. 11, is attached hereto as **Exhibit "2".**

10.    On January 1, 2016, the Debtor and Inferno entered into an agreement (the "<u>Subordination Agreement</u>") whereby the parties agreed that proceeds from the sale of the Property would be distributed in the following manner: "First to repay the loan(s) obtained from a bank or

third party parties (excluding [the Debtor] and Inferno) and all other unpaid costs of construction

of the [Property]. Second, to [the Debtor] and Inferno, pro rata, in repayment of any loans owing

them, together with simple interest thereon at the rate of eight percent (8%) per annum….” A true

and correct copy of the Subordination Agreement is attached hereto as **Exhibit "3"**.

11.     At the sale hearing, Inferno objected to the payment of Mechanic's Lien Creditors'

claims at that time based on its argument that the Subordination Agreement "does not state what it

states." Since the sale hearing, the Debtor has requested, on numerous occasions, for documentation

or other evidence from Inferno that supports a different interpretation of the unambiguous language

of the Subordination Agreement. To date, no further convincing evidence was provided by Inferno.

12.     I am informed and believe that, after the initial financing from Inferno, the Debtor

commenced construction of its Property. In that respect, I am informed and believe that, the

following parties provided goods and/or services in order to improve the Property: J&E Texture,

Inc.; American Truck & Tool Rentals Inc.; Kennco Plumbing Inc.; JMS Air Conditioning; Parquet

by Dian; Powertek Electrical Inc.; and BMC West LLC. (i.e., the Mechanic's Lien Creditors).

Currently, the Mechanic's Lien Creditors possess claims secured by the Property in the following

amounts:

| Name | Amount | Recording Date |
|---|---|---|
| J&E Texture, Inc.[12] | $292,300.86[13] | June 30, 2020 |
| American Truck & Tool Rentals Inc.[14] | $160,000.00[15] | June 29, 2020 |
| Kennco Plumbing Inc.[16] | $85,560.17 | October 5, 2021 |
| JMS Air Conditioning[17] [Dkt. 52, ¶ 2.13 (53)] | $51,290.00 | May 6, 2021 |

[12] **Exhibit "4"** (J&E POC, Exhibit A)
[13] This amount is per a tentative agreement with J&E that includes interest, but not other fees and expenses that would make the claim higher.
[14] **Exhibit "5"** (American POC, Exhibit B)
[15] This amount is **reduced** from the secured claim in the amount of $188,087.09 asserted by American pursuant to the *Stipulation With American Truck & Tool Rentals Inc. Re: Allowance And Payment Of Claim* [Dkt. 304] that is pending with the Court.
[16] **Exhibit "6"** (Kennco POC, Exhibit 5)
[17] **Exhibit "7"** (JMS DOT)

13

| | | |
|---|---:|---:|
| Parquet by Dian[18] [Dkt. 52, ¶ 2.16 (54)] | $40,846.00 | September 8, 2021 |
| Powertek Electrical Inc.[19] | $40,480.00 | September 23, 2021 |
| BMC West LLC[20] [Dkt. 52, ¶ 2.2 (48-49)] | $2,399.00 | July 16, 2021 |

13.    Pursuant to one of numerous Proofs of Claims (the "Hankey POC") filed by Hankey Capital, LLC ("Hankey"), Hankey asserts a claim in the amount of $122,638,623.41, which, Hankey asserts, is secured by a Deed of Trust dated November 6, 2018. A true and correct copy of the Hankey POC, designated as Claim No. 20, is attached hereto as **Exhibit "11"**. The Hankey financing was provided after the goods and/or services were provided by one or more subcontractors or other parties to improve the Property. The Debtor is advised and understands that Hankey does not oppose paying the Mechanic's Lien Creditors.

14.    Pursuant to a Proof of Claim ("Yogi POC") filed by Yogi Securities Holdings, LLC ("Yogi"), Yogi asserts a claim in the amount of $24,385,366.77, which Yogi asserts is secured by a Deed of Trust dated August 30, 2019. A true and correct copy of the Yogi POC, designated as Claim No. 27 (amending Claim No. 15), is attached hereto as **Exhibit "12"**. I am informed and believe that the Yogi financing was provided after goods and/or services provided by one or more subcontractors or other parties to improve the Property.  The Debtor is advised and understands that Yogi does not oppose paying the Mechanic's Lien Creditors.

///

///

///

---

[18] **Exhibit "8"** (Parquet DOT)
[19] **Exhibit "9"** (Powertek POC, Attachment p. 1)
[20] **Exhibit "10"** (BMC DOT)

15.    In my business judgement, by allowing the Debtor to pay the Mechanic's Lien Creditors, the Debtor will be able to maximize the value of the estate. Specifically, once the Mechanic's Lien Creditors are paid, monthly interest and attorneys' fees and expenses on their claims will cease to accrue, and the Debtor will be able to use the money that would have otherwise been paid to the Mechanic's Lien Creditors to satisfy other creditors.

I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 5th day of May 2022, at Los Angeles, California.

_____
LAWRENCE R. PERKINS

# EXHIBIT 1

1  DAVID B. GOLUBCHIK (State Bar No. 185520)
   TODD M. ARNOLD (State Bar No. 221868)
2  LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
   2818 La Cienega Avenue
3  Los Angeles, California 90034
   Telephone: (310) 229-1234
4  Facsimile: (310) 229-1244
   Email: dbg@lnbyg.com; tma@lnbyg.com
5
   Attorneys for Debtor and Debtor in Possession
6

**FILED & ENTERED**

**MAR 28 2022**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY ilewis      DEPUTY CLERK

7

8                    **CHANGES MADE BY COURT**
   **UNITED STATES BANKRUPTCY COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA**

10              **LOS ANGELES DIVISION**

11  In re:                          Case No. 2:21-bk-18205-DS

12  CRESTLLOYD, LLC,                Chapter 11

13      Debtor and Debtor in Possession.    **ORDER GRANTING DEBTOR'S MOTION
                                        FOR AN ORDER:**
14                                      **(1)    APPROVING THE SALE OF THE
                                        DEBTOR'S REAL PROPERTY FREE AND
15                                      CLEAR OF ALL LIENS, CLAIMS,
                                        ENCUMBRANCES, AND INTERESTS, WITH
16                                      THE EXCEPTION OF ENUMERATED
                                        EXCLUSIONS;**
17                                      **(2)    FINDING THAT THE BUYER IS A
                                        GOOD FAITH PURCHASER;**
18                                      **(3)    AUTHORIZING AND APPROVING
                                        THE PAYMENT OF CERTAIN CLAIMS
19                                      FROM SALE PROCEEDS;**
                                        **(4)    WAIVING THE FOURTEEN-DAY
20                                      STAY PERIOD SET FORTH IN
                                        BANKRUPTCY RULE 6004(h); AND**
21                                      **(5)    PROVIDING RELATED RELIEF**

22                                      Hearing:
                                        Date:    March 21, 2022
23                                      Time:    11:30 a.m.
                                        Place:   Courtroom 1639
24                                               255 East Temple Street
                                               Los Angeles, California 90012
25                                               (via Zoom for Government only)

26

27

28

1    A hearing was held on March 18, 2022, at 11:00 a.m., and a continued hearing was held on

2    March 21, 2022, at 11:30 a.m., on the "Debtor's Motion for an Order: (1) Approving the Sale of the

3    Debtor's Real Property Free and Clear of All Liens, Claims, Encumbrances, and Interests, with the

4    Exception of Enumerated Exclusions; (2) Finding That the Buyer Is a Good Faith Purchaser; (3)

5    Authorizing and Approving the Payment of Certain Claims from Sale Proceeds; (4) Waiving the

6    Fourteen-Day Stay Period Set Forth in Bankruptcy Rule 6004(h); and (5) Providing Related Relief"

7    (the "Sale Motion," Docket No. 142) filed by debtor and debtor in possession Crestlloyd, LLC (the

8    "Debtor"). Appearances were noted on the record on each day of the hearing.

9    The court has considered the Sale Motion, all papers filed in support thereof and in opposition

10    thereto, the record in this case, the testimony of witnesses at the hearing, and the arguments of the

11    parties at the hearing. Based on this record, and for the reasons stated on the record at the hearing,

12    IT IS HEREBY ORDERED that:

13    1.    The Sale Motion is granted.

14    2.    All evidentiary objections filed with respect to the Sale Motion and the oppositions

15    thereto are overruled.

16    3.    Pursuant to § 363(b)[1], the sale of the real property located at 944 Airole Way, Los

17    Angeles, CA 90077 (APN 4369-026-021) (the "Property") to the Buyer for the Purchase Price of

18    $126 million pursuant to the Purchase Agreement[2] is approved.

19    4.    The offer of the Buyer, on the terms and conditions set forth in the Purchase Agreement,

20    including the consideration to be realized by the Debtor pursuant to the Purchase Agreement totaling

21    $126 million, plus the $11.970 million Rebate from the Auctioneer, for a total of $137.97 million in

22    consideration: (1) is fair and reasonable; (2) represents optimal value for the Property under the

23    circumstances; (3) is in the best interests of the Debtor, its bankruptcy estate, and the creditors

24    thereof; and (4) constitutes full and adequate consideration and reasonably equivalent value for the

25    Property under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent

26    ///

27

28    _____
[1] Unless otherwise stated, section references are to the Bankruptcy Code, title 11 of the United States Code.
[2] Capitalized terms not defined herein are used as defined in the Sale Motion.

1    Conveyance Act and any other applicable laws of the United States, any state, territory or possession,

2    or the District of Columbia.

3         5.    The sale of the Property to the Buyer pursuant to the Purchase Agreement will be free

4    and clear of any and all interests pursuant to § 363(f), with the exception of Items A1, C, D, E, F, 1-6,

5    8-12 and 17 (the "Excepted Items") set forth in the preliminary title report attached hereto as Exhibit

6    1, with such interests to attach to the Sale Proceeds with the same validity, extent, and priority as

7    before the closing of the sale.

8         6.    The Debtor and the Buyer, and any escrow and title companies, are authorized to take

9    any and all actions reasonably necessary to consummate the sale of the Property pursuant to the

10    Purchase Agreement and this order.  Lawrence Perkins, on behalf of the Manager of the Debtor, is

11    authorized to execute any and all documents on behalf of the Debtor to effectuate the transactions

12    contemplated by this order.

13         7.    The Buyer is deemed to be a "good faith" purchaser within the meaning of § 363(m).

14         8.    Upon the closing of the sale transaction approved by this order, and according to

15    instructions to be provided by the Debtor, escrow must transfer the net proceeds from the Purchase

16    Price, and either escrow or the Auctioneer must transfer the $11,970,000 Rebate to the Debtor.

17         9.    The 14-day stay of FRBP 6004(h) is waived to enable the sale of the Property to close as

18    quickly as possible.  This order is effective immediately upon entry.  In the absence of any stay

19    pending appeal, the Debtor and the Buyer, and any cooperating brokers, escrow company, and title

20    company, are free to close under the Purchase Agreement at any time, subject to the terms of this

21    order and the Purchase Agreement.

22        10.  A certified copy of this order may be filed with the appropriate clerk and/or recorded

23    with the county recorder to cancel any encumbrances of record, other than the Excepted Items.

24        11.  On the Closing Date, the Debtor and the escrow company are authorized and directed to

25    pay from the Sale Proceeds: (a) the outstanding balance of Hankey's DIP Loan in the principal

26    amount of $12 million, plus all accrued interest, fees and costs (payoff amount: $12,065,166.67, as of

27    March 23, 2022, with per diem interest of $2,833.33 thereafter); (b) Hankey's senior receivership

28    certificate loans in the principal amount of $827,745, plus all accrued interest, fees and costs (payoff

1  amount: $882,540.56, as of March 23, 2022, with per diem interest of $229.93 thereafter); (c) the

2  claims of any taxing authorities or governmental units as defined in § 101(27) apportioned to the

3  Debtor prior to the close of the sale that are secured by liens not included in the Excepted Items

4  (payoff amount: approximately $2,649,078.30); (d) commission equal to 2% of the Purchase Price to

5  be paid to and split equally between the Debtor's Brokers and the Buyer's Brokers, with any split

6  between the Debtor's Brokers and the Buyer's Brokers to be determined by them (payoff amount:

7  $2,520,000); and (e) any other customary escrow closing fees and charges allocated to the Debtor

8  (payoff amount: approximately $318,052.50).

9      12.  The Buyer has not assumed and/or is otherwise not obligated for any of the Debtor's

10  liabilities.  Consequently, upon entry of this Sale Order, all persons, governmental units (as defined in

11  §§ 101(27) and 101(41)), and all holders of interests based upon or arising out of liabilities retained

12  by the Debtor are hereby enjoined from taking any action against the Buyer or the Property, including

13  asserting any setoff, right of subrogation or recoupment of any kind, or to recover any interest or

14  enforce any claims or causes of action or on account of any liabilities of the Debtor.

15      13.  This order is binding upon and governs the acts of all persons and entities with respect to

16  the sale approved by this order, including, without limitation: the Debtor's bankruptcy estate, the

17  Debtor and its successors and assigns, including, without limitation, any chapter 11 trustee or

18  examiner hereinafter appointed or any chapter 7 trustee appointed; all creditors of the Debtor

19  (whether known or unknown); the Buyer and his successors and assigns; the Property; filing agents;

20  filing officers; title agents; recording agencies; secretaries of state; and all other persons and entities

21  who may be required to report or insure any title in or to the Property or who may be required by

22  operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or

23  release any documents or instruments that reflect that the Buyer is the owner of the Property free and

24  clear of any and all liens, claims, encumbrances, and interests other than the Excepted Items, except

25  as otherwise provided in the Purchase Agreement and this order, and each of the foregoing persons

26  and entities is hereby directed to accept for filing any and all of the documents and instruments

27  necessary and appropriate to consummate the transactions contemplated by this order and the

28  Purchase Agreement.

1      14.  To the extent that there is any conflict between this order and the Purchase Agreement,

2  this order controls.

3      15.  The court retains exclusive jurisdiction to interpret, implement and enforce the terms and

4  provisions of this order and the Purchase Agreement, and to decide any disputes concerning this

5  order and the Purchase Agreement, or the rights and duties of the parties hereunder or thereunder or

6  any issues relating to the Purchase Agreement and this order.

7                                                  # # #

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24      Date: March 28, 2022

25                                          Deborah J. Saltzman
                                            United States Bankruptcy Judge
26

27

28

# Exhibit 1



**Chicago Title Company**

725 South Figueroa Street, Suite 200, Los Angeles, CA 90017
Phone:  (213) 488-4300  ●  Fax:  (213) 488-4377

Issuing Policies of Chicago Title Insurance Company

ORDER NO.:  **00166345-994-LT2-1TW**

Chicago Title Company / Los Angeles
725  S. Figueroa St., Suite 200
Los Angeles, CA 90017
ATTN:  Mike Slinger
Email:  mike.slinger@ctt.com
REF:

Main Office Line:  **(213) 488-4300**

Title Officer:  Ted Tan/Jennifer Wright (LA/Comm)
Title Officer Phone:  (213) 488-4394
Title Officer Fax:  (213) 488-4360
Title Officer Email:  TeamX77@ctt.com

PROPERTY:    **944 ARIOLE WAY, LOS ANGELES, CA**

## PRELIMINARY REPORT

*In response to the application for a policy of title insurance referenced herein, **Chicago Title Company** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.*

*The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One. Copies of the policy forms should be read. They are available from the office which issued this report.*

*This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.*

*The policy(s) of title insurance to be issued hereunder will be policy(s) of Chicago Title Insurance Company, a Florida corporation.*

***Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Attachment One of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.***

***It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.***

Chicago Title Company

By: _____
Authorized Signature

By: _____
Michael J. Nolan
President

ATTEST: _____
Marjorie Nemzura
Secretary

 **Chicago Title Company**

725 South Figueroa Street, Suite 200, Los Angeles, CA 90017
Phone:  (213) 488-4300  •  Fax:  (213) 488-4377

# PRELIMINARY REPORT

**EFFECTIVE DATE:**          **February 4, 2022 at 7:30 a.m.**

**ORDER NO.: 00166345-994-LT2-1TW**

The form of policy or policies of title insurance contemplated by this report is:

Preliminary Report Only

1.    THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO COVERED BY THIS REPORT IS:

A Fee

2.    TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS VESTED IN:

CRESTLLOYD, LLC, a California limited liability company, in receivership by Order of the Superior Court of California, County of Los Angeles, West District, Case No. 21SMCV01113, a certified copy thereof being recorded July 20, 2021 as Instrument No. 2021-1113331 of Official Records, wherein Theodore Lanes was duly appointed as receiver, subject to the terms, provisions and restrictions set out in said Order, and subject to proceedings pending in the bankruptcy court where a petition for relief was filed October 26, 2021 on behalf of Crestlloyd, LLC in U.S. District, Court Central District of California, Case No. B18205.

3.    THE LAND REFERRED TO IN THIS REPORT IS DESCRIBED AS FOLLOWS:

See Exhibit A attached hereto and made a part hereof.

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.: 00166345-994-LT2-1TW

# EXHIBIT "A"

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623 PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" 'WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET; THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE HAVING A LENGTH OF 115.83 FEET.

APN: **4369-026-021**

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.: 00166345-994-LT2-1TW

## EXCEPTIONS

**AT THE DATE HEREOF, ITEMS TO BE CONSIDERED AND EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN SAID POLICY FORM WOULD BE AS FOLLOWS:**

A1.    Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2022-2023.

A.    Property taxes, including any personal property taxes and any assessments collected with taxes are as follows:

Tax Identification No.:    4369-026-021
Fiscal Year:    2021-2022
1st Installment:    $701,465.73, Paid (payment late and penalty applies)
**Penalty:**    **$70,146.57**
2nd Installment:    $701,465.71, Unpaid
Penalty:    $70,156.57

B.    Said property has been declared tax defaulted for non-payment of delinquent taxes for the fiscal year 2020

APN No.:    4369-026-021

Amounts to redeem for the above-stated fiscal year (and subsequent years if any) are:

Amount:    $1,832,407.68 by February 28, 2022

C.    An assessment by the improvement district shown below:

Series:    AD #1
District:    County of Los Angeles
For:    MRCA-Brush Fire Clear'g Dist #1
Bond issued:    August 6, 2003

Said assessment is collected with the county/city property taxes.

Said assessment is also disclosed by a Notice of Amended Assessment, recorded January 26, 2015 as Instrument No. 2015-089995 of Official Records.

D.    The herein described property lies within the boundaries of a Community Facilities District (CFD) as follows:

CFD No:    2016-1
For:    Fire Prevention, Wildlife Corridor and Open Space Protection and other associated purposes
Disclosed by:    Notice of Special Tax Lien
Recording Date:    January 13, 2017
Recording No.:    20170055098, Official Records

This property, along with all other parcels in the CFD, is liable for an annual special tax. This special tax is included with and payable with the general property taxes of the County of Los Angeles.

PRELIMINARY REPORT                                                                                    Chicago Title Company
YOUR REFERENCE:                                                                      ORDER NO.: 00166345-994-LT2-1TW

# EXCEPTIONS
## (Continued)

E.    The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of Chapter 3.5 (commencing with Section 75) or Part 2, Chapter 3, Articles 3 and 4, respectively, of the Revenue and Taxation Code of the State of California as a result of the transfer of title to the vestee named in Schedule A or as a result of changes in ownership or new construction occurring prior to Date of Policy.

F.    The herein described property lies within the boundaries of a Community Facilities District (CFD) as follows:

| | |
|---|---|
| CFD No: | 2020-1 |
| For: | Local Fire Prevention, Water Quality and Open Space Measure and other associated purposes |
| Disclosed by: | Notice of Special Tax Lien |
| Recording Date: | February 10, 2021 |
| Recording No.: | 2021-0235371, Official Records |

This property, along with all other parcels in the CFD, is liable for an annual special tax. This special tax is included with and payable with the general property taxes of the County of Los Angeles.

1.    Water rights, claims or title to water, whether or not disclosed by the public records.

2.    Easement(s) for the purpose(s) shown below and rights incidental thereto as delineated or as offered for dedication, on the map of said Tract No. 22727;

| | |
|---|---|
| Purpose: | Drainage |
| Affects: | That portion of said land as shown on said map |

3.    Covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including but not limited to those based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, citizenship, immigration status, primary language, ancestry, source of income, gender, gender identity, gender expression, medical condition or genetic information, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law, as set forth in the document

| | |
|---|---|
| Recording Date: | November 13, 1947 |
| Recording No: | 1860, Official Records |

Said covenants, conditions and restrictions provide that a violation thereof shall not defeat the lien of any mortgage or deed of trust made in good faith and for value.

Modification(s) of said covenants, conditions and restrictions

| | |
|---|---|
| Recording Date: | February 7, 1949 |
| Recording No: | 2309, Official Records |

Modification(s) of said covenants, conditions and restrictions

| | |
|---|---|
| Recording Date: | April 15, 1949 |
| Recording No: | 2654, Official Records |

PRELIMINARY REPORT                                            Chicago Title Company
YOUR REFERENCE:                                     ORDER NO.: 00166345-994-LT2-1TW

# EXCEPTIONS
## (Continued)

4.    Covenant and agreement wherein the owners agree to hold said Land as one parcel and not to sell any portion thereof separately. Said covenant is expressed to run with the Land and be binding upon future owners.

Recording Date:        June 22, 1981
Recording No.:         81-620826, Official Records

Reference is hereby made to said document for full particulars.

5.    An instrument entitled Master Covenant and Agreement

Executed by:           Michael t. Walkup and Edith A. Press
In favor of:           City of Los Angeles
Recording Date:        December 22, 1994
Recording No:          94-2260589, Official Records

Reference is hereby made to said document for full particulars.

6.    Matters contained in that certain document

Entitled:              Certificate of Compliance
Dated:                 L.A. No. 94-062
Executed by:           City of Los Angeles Department of City Planning
Recording Date:        December 22, 1994
Recording No:          94-2260586, Official Records

Reference is hereby made to said document for full particulars.

7.    A deed of trust to secure an indebtedness in the amount shown below,

Amount:                $14,040,000.00
Dated:                 March 13, 2013
Trustor/Grantor        Crestlloyd LLC, a California limited liability company
Trustee:               First American Title Insurance Company, a California corporation
Beneficiary:           Inferno Realty, L.P., as to an undivided $7,040,000.00 and Maybach Corporation Holdings, Inc., as to an undivided $7,000,000.00 interest, as tenants in common
Recording Date:        March 13, 2013
Recording No:          20130384037, Official Records

By various assignments, the beneficial interest thereunder is now held of record in:

Assignee:              Inferno Investment Inc.
Recording Date:        November 10, 2015
Recording No:          20151375607, Official Records

An agreement to modify the terms and provisions of said deed of trust as therein provided

Executed by:           Crestlloyd, LLC, a California Limited Liability Company and Inferno Investment Inc.
Recording Date:        November 10, 2015
Recording No:          20151375608, Official Records

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.: 00166345-994-LT2-1TW

## EXCEPTIONS
## (Continued)

An agreement recorded November 6, 2018 as Instrument No. 20181122920, Official Records which states that this instrument was subordinated to the document or interest described in the instrument

Recording Date:        November 6, 2018
Recording No.:         20181122917, Official Records

8.   Covenant and agreement wherein the owners agree to hold said Land as one parcel and not to sell any portion thereof separately. Said covenant is expressed to run with the Land and be binding upon future owners.

Recording Date:        September 5, 2013
Recording No.:         20131298666, Official Records

Reference is hereby made to said document for full particulars.

9.   An instrument entitled Master Covenant and Agreement Regarding On-Site BMP Maintenance

Executed by:           Nile Niami
In favor of:           City of Los Angeles
Recording Date:        September 24, 2013
Recording No:          20131385742, Official Records

Reference is hereby made to said document for full particulars.

10.  An instrument entitled Master Covenant and Agreement Regarding On-Site BMP Maintenance

Executed by:           Nile Niami
In favor of:           City of Los Angeles
Recording Date:        February 7, 2014
Recording No:          20140139714, Official Records

Reference is hereby made to said document for full particulars.

11.  An irrevocable offer to dedicate an easement over a portion of said Land for

Purpose(s):            Public street
Recording Date:        June 4, 2014
Recording No:          20140578201, Official Records

Said offer was accepted by resolution, a certified copy of which was recorded April 10, 2015 as Instrument No. 20150395929, of Official Records..

12.  An instrument entitled Covenant and Agreement Regarding Maintenance of Building

Executed by:           Nile Niami
In favor of:           City of Los Angeles
Recording Date:        February 17, 2016
Recording No:          20160172858, Official Records

Reference is hereby made to said document for full particulars.

CLTA Preliminary Report Form – Modified (11/17/06)                                Page 7

## EXCEPTIONS
### (Continued)

13.     A deed of trust to secure an indebtedness in the amount shown below,

|              |              |
|--------------|--------------|
| Amount:          | $82,500,000.00 |
| Dated:           | October 25, 2018 |
| Trustor/Grantor  | Crestlloyd, LLC, a California limited liability company |
| Trustee:         | Chicago Title Company |
| Beneficiary:     | Hankey Capital, LLC, a California limited liability company |
| Recording Date:  | November 6, 2018 |
| Recording No:    | 20181122917, Official Records |

An agreement to modify the terms and provisions of said deed of trust as therein provided

| | |
|--|--|
| Recording Date: | August 31, 2020 |
| Recording No:   | 20201030024 of Official Records |

A notice of default under the terms of said trust deed

| | |
|--|--|
| Executed by:     | Chicago Title Company |
| Recording Date:  | March 5, 2021 |
| Recording No:    | 2021-0367447 of Official Records |

A notice of trustee's sale under said deed of trust

| | |
|--|--|
| Executed by:                   | Chicago Title Company, trustee |
| Date, Time and Place of Sale:  | July 12, 2021 at 11:00 am by the fountain located at 400 Civic Center Plaza, Pomona, CA 91766 |
| Recording Date:                | June 14, 2021 |
| Recording No:                  | 2021-0934061 of Official Records |

14.     Matters contained in that certain document

| | |
|--|--|
| Entitled:        | Memorandum of Agreement |
| Executed by:     | Hankey Capital, LLC, a California limited liability company and Crestlloyd, LLC, a California limited liability company |
| Recording Date:  | November 6, 2018 |
| Recording No:    | 20181122919, Official Records |
| Recording Dare:  | August 31, 2020 |
| Recording No.:   | 20201030294 of Official Records |

Reference is hereby made to said document for full particulars.

15.     A deed of trust to secure an indebtedness in the amount shown below,

| | |
|--|--|
| Amount:          | $30,188,235.00 |
| Dated:           | October 16, 2018 |
| Trustor/Grantor  | Crestlloyd, LLC, a California limited liability company |
| Trustee:         | Chicago Title Company |
| Beneficiary:     | YOGI Securities Holdings, LLC, a Nevada limited liability company |
| Recording Date:  | November 7, 2018 |
| Recording No:    | 20181126580, Official Records |

PRELIMINARY REPORT                                                                Chicago Title Company
YOUR REFERENCE:                                                      ORDER NO.: 00166345-994-LT2-1TW

# EXCEPTIONS
## (Continued)

16.   A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $6,196,810.64 |
| Dated: | September 18, 2019 |
| Trustor/Grantor | Crestlloyd, LLC, a California limited liability company |
| Trustee: | Chicago Title Company |
| Beneficiary: | YOGI Securities Holdings, LLC, a Nevada limited liability company |
| Recording Date: | September 23, 2019 |
| Recording No: | 20190989746, Official Records |

The effect of a Substitution of Trustee and Full Reconveyance, recorded January 14, 2021 as Instrument No. 2021-076458 of Official Records.

(Note: We will require evidence of the full payment or satisfaction of said deed of trust as there does not appear to be an off-setting transaction of record.)

17.   An instrument entitled Covenant and Agreement Regarding Maintenance of Building

| | |
|---|---|
| Executed by: | Crestlloyd, LLC |
| In favor of: | City of Los Angeles |
| Recording Date: | December 2, 2019 |
| Recording No: | 20191317943, Official Records |

Reference is hereby made to said document for full particulars.

18.   Any rights of the parties in possession of a portion of, or all of, said Land, which rights are not disclosed by the public records.

19.   Matters which may be disclosed by an inspection and/or by a correct ALTA/NSPS Land Title Survey of said Land that is satisfactory to the Company, and/or by inquiry of the parties in possession thereof.

20.   A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | American Truck & Tool Rentals Inc./American Rentals |
| Amount: | $97,050.34 |
| Recording Date: | June 29, 2020 |
| Recording No: | 20200709010 of Official Records |

A Notice of Pending Action to foreclose said lien

| | |
|---|---|
| County: | Los Angeles |
| Court: | Superior |
| Case No.: | 20SMCV01229 (consolidated with 20SMCV01264) |
| Recording Date: | May 5, 2021 |
| Recording No: | 2021-0717597 of Official Records |

PRELIMINARY REPORT
YOUR REFERENCE:

# EXCEPTIONS
## (Continued)

21.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | J&E Texture, Inc. |
| Amount: | $214,147.50 |
| Recording Date: | June 30, 2020 |
| Recording No: | 20200712043 of Official Records |

A Notice of Pending Action to foreclose said lien

| | |
|---|---|
| County: | Los Angeles |
| Court: | Superior |
| Case No.: | 20SMCV01229 |
| Recording Date: | December 14, 2020 |
| Recording No: | 2020-01647158 of Official Records |

A Notice of Pending Action to foreclose said lien

| | |
|---|---|
| County: | Los Angeles |
| Court: | Superior |
| Case No.: | 20SMCV01229 (consolidated with 20SMCV01264) |
| Recording Date: | May 5, 2021 |
| Recording No: | 2021-0717597 of Official Records |

22.    A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $5,000,000.00 |
| Dated: | February 11, 2020 |
| Trustor/Grantor | CRESTLLOYD, LLC, a California limited liability company |
| Trustee: | Pacific Coast Title Company |
| Beneficiary: | Hilldun Corporation, a New York corporation |
| Recording Date: | September 4, 2020 |
| Recording No: | 20201058770 of Official Records |

23.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | JMS Air Conditioning and Appliance Services, Inc. |
| Amount: | $51,290.00 |
| Recording Date: | May 6, 2021 |
| Recording No: | 2021-0722265 of Official Records |

24.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Calgrove Rentals Inc. |
| Amount: | $12,338.95 |
| Recording Date: | June 1, 2021 |
| Recording No: | 2021-0868958 of Official Records |

PRELIMINARY REPORT                                                    Chicago Title Company
YOUR REFERENCE:                                       ORDER NO.: 00166345-994-LT2-1TW

## EXCEPTIONS
## (Continued)

25.     A claim of mechanic's lien or materialman's lien

        Claimant:            BMC West LLC
        Amount:              $2,398.60
        Recording Date:      July 16, 2021
        Recording No:        2021-1102584 of Official Records

26.     A Receiver's Certificate #1

        In favor of:         Hankey Capital, LLC and Theodore Lanes, in his capacity as Receiver
        Amount:              $577,745.00
        Case No.:            21SMCV01113 Superior Court Los Angeles County
        Recording Date:      July 23, 2021
        Recording No:        2021-1136088 of Official Records

27.     A Notice of Pending Lien

        Executed by:         City of Los Angeles
        Recording Date:      January 31, 2020
        Recording No:        2020-0124042 of Official Records

28.     A claim of mechanic's lien or materialman's lien

        Claimant:            Parquet By Dian
        Amount:              $40,846.00
        Recording Date:      September 8, 2021
        Recording No:        2021-1373746 of Official Records

29.     A claim of mechanic's lien or materialman's lien

        Claimant:            Powertek Electric, Inc.
        Amount:              $40,480.00
        Recording Date:      September 23, 2021
        Recording No:        2021-1455960 of Official Records

30.     A claim of mechanic's lien or materialman's lien

        Claimant:            Kennco Plumbing, Inc.
        Amount:              $85,560.17
        Recording Date:      October 5, 2021
        Recording No:        2021-1508207 of Official Records

        A Notice of Pending Action to foreclose said lien

        County:              Los Angeles
        Court:               Superior
        Case No.:            21SMCV01656
        Recording Date:      October 21, 2021
        Recording No:        20211585116 of Official Records

CLTA Preliminary Report Form – Modified (11/17/06)                              Page 11

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.: 00166345-994-LT2-1TW

# EXCEPTIONS
## (Continued)

31.    A Chapter 11 Petition

|  |  |
|---|---|
| Debtor's Name: | Crestlloyd, LLC |
| Recording Date: | November 8, 2021 |
| Recording No: | 20211666304 of Official Records |

32.    **ANY LIEN OR RIGHT TO A LIEN FOR SERVICES, LABOR OR MATERIAL NOT SHOWN BY THE PUBLIC RECORDS.**

33.    A deed of trust to secure an indebtedness in the amount shown below,

|  |  |
|---|---|
| Amount: | $12,000,000.00 and $120,000.00 |
| Dated: | December 13, 2021 |
| Trustor/Grantor | Crestlloyd, LLC, a California limited liability company, debtor and debtor in possession in a pending Chapter 11 bankruptcy case commenced on October 26, 2021 |
| Trustee: | Chicago Title Company |
| Beneficiary: | Hankey Capital, LLC, a California limited liability company |
| Recording Date: | January 26, 2022 |
| Recording No: | 20220103108, Official Records |

**PLEASE REFER TO THE "INFORMATIONAL NOTES" AND "REQUIREMENTS" SECTIONS WHICH FOLLOW FOR INFORMATION NECESSARY TO COMPLETE THIS TRANSACTION.**

---

**END OF EXCEPTIONS**

---

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.: 00166345-994-LT2-1TW

# REQUIREMENTS SECTION

1.  Unrecorded matters which may be disclosed by an Owner's Affidavit or Declaration. A form of the Owner's Affidavit/Declaration is attached to this Preliminary Report/Commitment. This Affidavit/Declaration is to be completed by the record owner of the land and submitted for review prior to the closing of this transaction. Your prompt attention to this requirement will help avoid delays in the closing of this transaction. Thank you.

    The Company reserves the right to add additional items or make further requirements after review of the requested Affidavit/Declaration.

2.  The Company will require the following documents for review prior to the issuance of any title insurance predicated upon a conveyance or encumbrance from the entity named below:

    Limited Liability Company:    Crestlloyd, LLC, a California limited liability company

    a)  A copy of its operating agreement, if any, and all amendments, supplements and/or modifications thereto, certified by the appropriate manager or member.

    b)  If a domestic Limited Liability Company, a copy of its Articles of Organization and all amendments thereto with the appropriate filing stamps.

    c)  If the Limited Liability Company is member-managed, a full and complete current list of members certified by the appropriate manager or member.

    d)  A current dated certificate of good standing from the proper governmental authority of the state in which the entity is currently domiciled.

    e)  If less than all members, or managers, as appropriate, will be executing the closing documents, furnish evidence of the authority of those signing.

    f)  If Limited Liability Company is a Single Member Entity, a Statement of Information for the Single Member will be required.

    g)  Each member and manager of the LLC without an Operating Agreement must execute in the presence of a notary public the Certificate of California LLC (Without an Operating Agreement) Status and Authority form.

3.  In order to complete this report, the Company requires a Statement of Information to be completed by the following party(s),

    Party(s):    All Individual Parties

    The Company reserves the right to add additional items or make further requirements after review of the requested Statement of Information.

    NOTE:  The Statement of Information is necessary to complete the search and examination of title under this order. Any title search includes matters that are indexed by name only, and having a completed Statement of Information assists the Company in the elimination of certain matters which appear to involve the parties but in fact affect another party with the same or similar name. Be assured that the Statement of Information is essential and will be kept strictly confidential to this file.

---

**END OF REQUIREMENTS**

---

Case 2:21-bk-18205-DS    Doc 247    Filed 03/28/22    Entered 03/28/22 13:58:15    Desc
Main Document    Page 20 of 31

PRELIMINARY REPORT                                                    Chicago Title Company
YOUR REFERENCE:                                          ORDER NO.:  00166345-994-LT2-1TW

## REQUIREMENTS
### (Continued)

Case 2:21-bk-18205-DS    Doc 247    Filed 03/28/22    Entered 03/28/22 13:58:15    Desc
Main Document    Page 21 of 31

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.: 00166345-994-LT2-1TW

# INFORMATIONAL NOTES SECTION

1.  The Company is not aware of any matters which would cause it to decline to attach CLTA Endorsement Form 116 indicating that there is located on said Land Single Family Residential property, known as 944 Ariole Way, located within the city of Los Angeles, California, , to an Extended Coverage Loan Policy.

2.  Note:  The policy of title insurance will include an arbitration provision. The Company or the insured may demand arbitration. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. Please ask your escrow or title officer for a sample copy of the policy to be issued if you wish to review the arbitration provisions and any other provisions pertaining to your Title Insurance coverage.

3.  Notice: Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

## END OF INFORMATIONAL NOTES

Ted Tan/Jennifer Wright (LA/Comm)/tt6

WIRE SAFE ™ | Inquire before you wire!

# Wire Fraud Alert

This Notice is not intended to provide legal or professional advice. If you have any questions, please consult with a lawyer.

All parties to a real estate transaction are targets for wire fraud and many have lost hundreds of thousands of dollars because they simply relied on the wire instructions received via email, without further verification. **If funds are to be wired in conjunction with this real estate transaction, we strongly recommend verbal verification of wire instructions through a known, trusted phone number prior to sending funds.**

In addition, the following non-exclusive self-protection strategies are recommended to minimize exposure to possible wire fraud.

- **NEVER RELY** on emails purporting to change wire instructions. Parties to a transaction rarely change wire instructions in the course of a transaction.

- **ALWAYS VERIFY** wire instructions, specifically the ABA routing number and account number, by calling the party who sent the instructions to you. DO NOT use the phone number provided in the email containing the instructions, use phone numbers you have called before or can otherwise verify. **Obtain the phone number of relevant parties to the transaction as soon as an escrow account is opened**. DO NOT send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.

- **USE COMPLEX EMAIL PASSWORDS** that employ a combination of mixed case, numbers, and symbols. Make your passwords greater than eight (8) characters. Also, change your password often and do NOT reuse the same password for other online accounts.

- **USE MULTI-FACTOR AUTHENTICATION** for email accounts. Your email provider or IT staff may have specific instructions on how to implement this feature.

For more information on wire-fraud scams or to report an incident, please refer to the following links:

*Federal Bureau of Investigation:*
*http://www.fbi.gov*

*Internet Crime Complaint Center:*
*http://www.ic3.gov*

*TM and © Fidelity National Financial, Inc. and/or an affiliate. All rights reserved*

## Chicago Title Company

725 South Figueroa Street, Suite 200, Los Angeles, CA 90017
Phone:  (213) 488-4300  ●  Fax:  (213) 488-4377

### Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment.  Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the filed rate.  As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative.  These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for such discount.  These discounts only apply to transactions involving services rendered by the FNF Family of Companies.  This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

Not all discounts are offered by every FNF Company. The discount will only be applicable to the FNF Company as indicated by the named discount.

| FNF Underwritten Title Company | Underwritten by FNF Underwriters |
|---|---|
| CTC – Chicago Title company | CTIC – Chicago Title Insurance Company |
| CLTC – Commonwealth Land Title Company | CLTIC - Commonwealth Land Title Insurance Company |
| FNTC – Fidelity National Title Company of California | FNTIC – Fidelity National Title Insurance Company |
| FNTCCA - Fidelity National Title Company of California | FNTIC - Fidelity National Title Insurance Company |
| TICOR – Ticor Title Company of California | CTIC – Chicago Title Insurance Company |
| LTC – Lawyer's Title Company | CLTIC – Commonwealth Land Title Insurance Company |
| SLTC – ServiceLink Title Company | CTIC – Chicago Title Insurance Company |

### Available Discounts

**DISASTER LOANS (CTIC, CLTIC, FNTIC)**
The charge for a Lender's Policy (Standard or Extended coverage) covering the financing or refinancing by an owner of record, within twenty-four (24) months of the date of a declaration of a disaster area by the government of the United States or the State of California on any land located in said area, which was partially or totally destroyed in the disaster, will be fifty percent (50%) of the appropriate title insurance rate.

**CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (CTIC, FNTIC)**
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be fifty percent (50%) to seventy percent (70%) of the appropriate title insurance rate, depending on the type of coverage selected. The charge for a lender's policy shall be forty (40%) to fifty percent (50%) of the appropriate title insurance rate, depending on the type of coverage selected.

## FIDELITY NATIONAL FINANCIAL, INC.
## PRIVACY NOTICE

Effective August 1, 2021

Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF," "our," or "we") respect and are committed to protecting your privacy. This Privacy Notice explains how we collect, use, and protect personal information, when and to whom we disclose such information, and the choices you have about the use and disclosure of that information.

A limited number of FNF subsidiaries have their own privacy notices. If a subsidiary has its own privacy notice, the privacy notice will be available on the subsidiary's website and this Privacy Notice does not apply.

### Collection of Personal Information
FNF may collect the following categories of Personal Information:
- contact information (*e.g.*, name, address, phone number, email address);
- demographic information (*e.g.*, date of birth, gender, marital status);
- identity information (*e.g.* Social Security Number, driver's license, passport, or other government ID number);
- financial account information (*e.g.* loan or bank account information); and
- other personal information necessary to provide products or services to you.

We may collect Personal Information about you from:
- information we receive from you or your agent;
- information about your transactions with FNF, our affiliates, or others; and
- information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities or through others.

### Collection of Browsing Information
FNF automatically collects the following types of Browsing Information when you access an FNF website, online service, or application (each an "FNF Website") from your Internet browser, computer, and/or device:
- Internet Protocol (IP) address and operating system;
- browser version, language, and type;
- domain name system requests; and
- browsing history on the FNF Website, such as date and time of your visit to the FNF Website and visits to the pages within the FNF Website.

Like most websites, our servers automatically log each visitor to the FNF Website and may collect the Browsing Information described above. We use Browsing Information for system administration, troubleshooting, fraud investigation, and to improve our websites. Browsing Information generally does not reveal anything personal about you, though if you have created a user account for an FNF Website and are logged into that account, the FNF Website may be able to link certain browsing activity to your user account.

### Other Online Specifics
Cookies. When you visit an FNF Website, a "cookie" may be sent to your computer. A cookie is a small piece of data that is sent to your Internet browser from a web server and stored on your computer's hard drive. Information gathered using cookies helps us improve your user experience. For example, a cookie can help the website load properly or can customize the display page based on your browser type and user preferences. You can choose whether or not to accept cookies by changing your Internet browser settings. Be aware that doing so may impair or limit some functionality of the FNF Website.

Web Beacons. We use web beacons to determine when and how many times a page has been viewed. This information is used to improve our websites.

Do Not Track. Currently our FNF Websites do not respond to "Do Not Track" features enabled through your browser.

Links to Other Sites. FNF Websites may contain links to unaffiliated third-party websites. FNF is not responsible for the privacy practices or content of those websites. We recommend that you read the privacy policy of every website you visit.

### Use of Personal Information
FNF uses Personal Information for three main purposes:
- To provide products and services to you or in connection with a transaction involving you.
- To improve our products and services.
- To communicate with you about our, our affiliates', and others' products and services, jointly or independently.

### When Information Is Disclosed
We may disclose your Personal Information and Browsing Information in the following circumstances:
- to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure;
- to nonaffiliated service providers who provide or perform services or functions on our behalf and who agree to use the information only to provide such services or functions;

Copyright © 2021. Fidelity National Financial, Inc. All Rights Reserved
Order No. 00166345-994-LT2-1TW

- to nonaffiliated third party service providers with whom we perform joint marketing, pursuant to an agreement with them to jointly market financial products or services to you;
- to law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order; or
- in the good-faith belief that such disclosure is necessary to comply with legal process or applicable laws, or to protect the rights, property, or safety of FNF, its customers, or the public.

The law does not require your prior authorization and does not allow you to restrict the disclosures described above. Additionally, we may disclose your information to third parties for whom you have given us authorization or consent to make such disclosure. We do not otherwise share your Personal Information or Browsing Information with nonaffiliated third parties, except as required or permitted by law. We may share your Personal Information with affiliates (other companies owned by FNF) to directly market to you. Please see "Choices with Your Information" to learn how to restrict that sharing.

We reserve the right to transfer your Personal Information, Browsing Information, and any other information, in connection with the sale or other disposition of all or part of the FNF business and/or assets, or in the event of bankruptcy, reorganization, insolvency, receivership, or an assignment for the benefit of creditors. By submitting Personal Information and/or Browsing Information to FNF, you expressly agree and consent to the use and/or transfer of the foregoing information in connection with any of the above described proceedings.

## Security of Your Information
We maintain physical, electronic, and procedural safeguards to protect your Personal Information.

## Choices With Your Information
If you do not want FNF to share your information among our affiliates to directly market to you, you may send an "opt out" request as directed at the end of this Privacy Notice. We do not share your Personal Information with nonaffiliates for their use to direct market to you without your consent.

Whether you submit Personal Information or Browsing Information to FNF is entirely up to you. If you decide not to submit Personal Information or Browsing Information, FNF may not be able to provide certain services or products to you.

For California Residents: We will not share your Personal Information or Browsing Information with nonaffiliated third parties, except as permitted by California law. For additional information about your California privacy rights, please visit the "California Privacy" link on our website (https://fnf.com/pages/californiaprivacy.aspx) or call (888) 413-1748.

For Nevada Residents: You may be placed on our internal Do Not Call List by calling (888) 714-2710 or by contacting us via the information set forth at the end of this Privacy Notice. Nevada law requires that we also provide you with the following contact information: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; Phone number: (702) 486-3132; email: BCPINFO@ag.state.nv.us.
For Oregon Residents:  We will not share your Personal Information or Browsing Information with nonaffiliated third parties for marketing purposes, except after you have been informed by us of such sharing and had an opportunity to indicate that you do not want a disclosure made for marketing purposes.

For Vermont Residents: We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures.

## Information From Children
The FNF Websites are not intended or designed to attract persons under the age of eighteen (18).We do not collect Personal Information from any person that we know to be under the age of thirteen (13) without permission from a parent or guardian.

## International Users
FNF's headquarters is located within the United States. If you reside outside the United States and choose to provide Personal Information or Browsing Information to us, please note that we may transfer that information outside of your country of residence. By providing FNF with your Personal Information and/or Browsing Information, you consent to our collection, transfer, and use of such information in accordance with this Privacy Notice.

## FNF Website Services for Mortgage Loans
Certain FNF companies provide services to mortgage loan servicers, including hosting websites that collect customer information on behalf of mortgage loan servicers (the "Service Websites"). The Service Websites may contain links to both this Privacy Notice and the mortgage loan servicer or lender's privacy notice. The sections of this Privacy Notice titled When Information is Disclosed, Choices with Your Information, and Accessing and Correcting Information do not apply to the Service Websites. The mortgage loan servicer or lender's privacy notice governs use, disclosure, and access to your Personal Information. FNF does not share Personal Information collected through the Service Websites, except as required or authorized by contract with the mortgage loan servicer or lender, or as required by law or in the good-faith belief that such disclosure is necessary: to comply with a legal process or applicable law, to enforce this Privacy Notice, or to protect the rights, property, or safety of FNF or the public.

Copyright © 2021. Fidelity National Financial, Inc. All Rights Reserved
Order No. 00166345-994-LT2-1TW

**Your Consent To This Privacy Notice; Notice Changes**
By submitting Personal Information and/or Browsing Information to FNF, you consent to the collection and use of the information in accordance with this Privacy Notice. We may change this Privacy Notice at any time. The Privacy Notice's effective date will show the last date changes were made. If you provide information to us following any change of the Privacy Notice, that signifies your assent to and acceptance of the changes to the Privacy Notice.

**Accessing and Correcting Information; Contact Us**
If you have questions, would like to correct your Personal Information, or want to opt-out of information sharing for affiliate marketing, visit FNF's Opt Out Page or contact us by phone at (888) 714-2710 or by mail to:

Fidelity National Financial, Inc.
601 Riverside Avenue,
Jacksonville, Florida 32204
Attn: Chief Privacy Officer

## ATTACHMENT ONE (Revised 05-06-16)

**CALIFORNIA LAND TITLE ASSOCIATION
STANDARD COVERAGE POLICY – 1990**

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters:
   (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy; or
   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
   Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.
3. Easements, liens or encumbrances, or claims thereof, not shown by the public records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.
6. Any lien or right to a lien for services, labor or material not shown by the public records.

### CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
### ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE

### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
   a. building;
   b. zoning;
   c. land use;
   d. improvements on the Land;
   e. land division; and
   f. environmental protection.
   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3. The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4. Risks:
   a. that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
   b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;

© **California Land Title Association. All rights reserved.**
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

   c.   that result in no loss to You; or
   d.   that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5.   Failure to pay value for Your Title.
6.   Lack of a right:
   a.   to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   b.   in streets, alleys, or waterways that touch the Land.
   This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7.   The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.
8.   Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
9.   Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
- For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 5,000.00 |

## 2006 ALTA LOAN POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:
1.   (a)   Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
      (i)   the occupancy, use, or enjoyment of the Land;
      (ii)   the character, dimensions, or location of any improvement erected on the Land;
      (iii)   the subdivision of land; or
      (iv)   environmental protection;
      or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b)   Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.   Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.   Defects, liens, encumbrances, adverse claims, or other matters
   (a)   created, suffered, assumed, or agreed to by the Insured Claimant;
   (b)   not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c)   resulting in no loss or damage to the Insured Claimant;
   (d)   attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13 or 14); or
   (e)   resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.   Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5.   Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6.   Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   (a)   a fraudulent conveyance or fraudulent transfer, or
   (b)   a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7.   Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

### EXCEPTIONS FROM COVERAGE

{Except as provided in Schedule B - Part II,{ t{or T}his policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

© **California Land Title Association. All rights reserved.**
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

## {PART I

{The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor or material not shown by the Public Records.}

## PART II

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:}

## 2006 ALTA OWNER'S POLICY (06-17-06)

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i)   the occupancy, use, or enjoyment of the Land;
    (ii)  the character, dimensions, or location of any improvement erected on the Land;
    (iii) the subdivision of land; or
    (iv)  environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a) created, suffered, assumed, or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c) resulting in no loss or damage to the Insured Claimant;
    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
    (a) a fraudulent conveyance or fraudulent transfer; or
    (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

{The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown in the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor or material not shown by the Public Records. }
7.  {Variable exceptions such as taxes, easements, CC&R's, etc. shown here.}

© **California Land Title Association. All rights reserved.**
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

**ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY – ASSESSMENTS PRIORITY (04-02-15)**

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i)   the occupancy, use, or enjoyment of the Land;
    (ii)  the character, dimensions, or location of any improvement erected on the Land;
    (iii) the subdivision of land; or
    (iv)  environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
    (b)  Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;
    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c)  resulting in no loss or damage to the Insured Claimant;
    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.
6.  Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.
7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b) or 25.
8.  The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.
9.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
    (a)  a fraudulent conveyance or fraudulent transfer, or
    (b)  a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.
10. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
11. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any  other substances.

© **California Land Title Association. All rights reserved.**
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

Insert Map Here

# EXHIBIT 2

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Crestlloyd, LLC |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 2:21-bk-18205-DS |

Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1: Identify the Claim

| | | |
|---|---|---|
| **1.** | **Who is the current creditor?** | Inferno Investment, Inc. <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor _____ |
| **2.** | **Has this claim been acquired from someone else?** | ☐ No <br> ☑ Yes. From whom? Inferno Realty, L.P. and Maybach Corporation Holdings, Inc. as original lenders |
| **3.** | **Where should notices and payments to the creditor be sent?** <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** <br><br> c/o Smiley Wang-Ekvall, LLP <br> Name <br> 3200 Park Center Dr., Suite 250 <br> Number    Street <br> Costa Mesa, CA                          92626 <br> City            State            ZIP Code <br><br> Contact phone  714-445-1000 <br><br> Contact email  kandrassy@swelawfirm.com <br><br> Uniform claim identifier for electronic payments in chapter 13 (if you use one): <br> _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ <br><br> **Where should payments to the creditor be sent?** (if different) <br><br> Name <br><br> Number    Street <br><br> City            State            ZIP Code <br><br> Contact phone _____ <br><br> Contact email _____ |
| **4.** | **Does this claim amend one already filed?** | ☑ No <br> ☐ Yes. Claim number on court claims registry (if known) _____       Filed on ____ / ____ / ____ <br>                                                                      MM / DD / YYYY |
| **5.** | **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No <br> ☐ Yes. Who made the earlier filing? _____ |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  ___  ___  ___  ___

**7. How much is the claim?** $_____20,902,106.12__  **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Secured loans to debtor; Amount above is as of October 25, 2021

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:**  Deed of Trust _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ 200,000,000.00 ++

**Amount of the claim that is secured:** $ 20,902,106.12

**Amount of the claim that is unsecured:** $_____0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**  $ 20,902,106.12

**Annual Interest Rate** (when case was filed)_____%  See attached

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**  $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| | |
|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br>☐ Yes. *Check all that apply:* |

<table>
<tr><td></td><td></td><td style="text-align:right">Amount entitled to priority</td></tr>
<tr><td>☐</td><td>Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).</td><td>$_____</td></tr>
<tr><td>☐</td><td>Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).</td><td>$_____</td></tr>
<tr><td>☐</td><td>Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).</td><td>$_____</td></tr>
<tr><td>☐</td><td>Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).</td><td>$_____</td></tr>
<tr><td>☐</td><td>Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).</td><td>$_____</td></tr>
<tr><td>☐</td><td>Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.</td><td>$_____</td></tr>
</table>

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:    Sign Below

| | |
|---|---|
| **The person completing this proof of claim must sign and date it. FRBP 9011(b).**<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.** | *Check the appropriate box:*<br><br>☐  I am the creditor.<br>☑  I am the creditor's attorney or authorized agent.<br>☐  I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>☐  I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct.<br><br>Executed on date  <u>01/04/2022</u><br>               MM / DD / YYYY |

<u>/s/ Kyra E. Andrassy</u>
Signature

**Print the name of the person who is completing and signing this claim:**

| | |
|---|---|
| Name | <u>Kyra Elizabeth Andrassy</u><br>First name         Middle name           Last name |
| Title | <u>Counsel for Inferno Investment, Inc.</u> |
| Company | <u>Smiley Wang-Ekvall, LLP</u><br>Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | <u>3200 Park Center Drive, Suite 250</u><br>Number      Street |
| | <u>Costa Mesa</u>        <u>CA</u>     <u>92626</u><br>City              State    ZIP Code |
| Contact phone | <u>714-445-1000</u>        Email <u>kandrassy@swelawfirm.com</u> |

## Investissement Inferno

date:                    2021-10-25

### AIROLE FUNDS FROM INFERNO COMPANIES - SECURED AMOUNTS

| ref # | Secured Amount | From | to | # of months | interest rate | TYPE | Secured Interest |
|---|---|---|---|---|---|---|---|
| Deed 1 | 3,925,545.00 $ | 2013-03-13 | 2021-03-05 | 96 | 8% | compound | 3,340,365 |
| | 7,265,909.83 $ | 2021-03-06 | 2021-10-25 | 7 | 9% | compound | 374,596 |
| | | | | | | | |
| Deed 2 | 14,040,000.00 $ | 2013-03-13 | 2015-10-19 | 31 | 8% | simple | 2,901,600 |
| Deed 2 - modified | 7,000,000.00 $ | 2015-10-20 | 2021-03-05 | 65 | 8% | simple | 3,033,333 |
| | 7,000,000.00 $ | 2021-03-06 | 2021-10-25 | 7 | 8% | simple | 326,667 |
| | | | | | Total secured Interest to oct 25, 2021 | | 9,976,561 |

Note: Combined value of Deeds 1 and 2 = $ 10 925 545   ($3 925 545 + $7 000 000)

### Summary of Loans - secured

| | Secured Amount |
|---|---|
| | 10,925,545.00 |
| Interest | 9,976,561.12 |
| **TOTAL** | 20,902,106.12 |

PromissoryNote-3.9M

## PROMISSORY NOTE
## SECURED BY DEED OF TRUST

$3,925,545.00           LOS ANGELES, CALIFORNIA           March 13, 2013

FOR VALUE RECEIVED, the undersigned, ("Borrower") promises to pay to INFERNO INVESTMENT INC., ("Lender") at 85 St. Paul Street West, Suite 500, Montreal, Quebec, CANADA H2Y3V4, or at such other place as the holder hereof may designate, in lawful money of the United States of America, the principal sum of Three Million Nine Hundred Twenty-Five Thousand Five Hundred Forty-Five and no/100th Dollars ($3,925,545.00), together with interest on the outstanding principal balance until paid in full in accordance with the terms, conditions and provisions set forth in this Promissory Note (the "Note").

INTEREST RATE. Interest on the outstanding principal balance of this Note shall be compounded annually and shall accrue at the per annum rate (the "Note Rate") of eight percent (8%) from the date of each disbursement of funds.

ADDITIONAL CONSIDERATION. Due to the fact that the security for this Note is a deed of trust third in priority to a first and second deed of trust on the Property, thereby making this loan a "high risk loan", Borrower agrees to pay Lender additional consideration and not as additional interest as follows: Fifty percent (50%) of the net profits derived from the sale of each of the residences located at 271 S. Mapleton Drive, Los Angeles, CA and 1175 Hillcrest, Beverly Hills, CA and Fifteen percent (15%) of the net profits derived from the sale of the residence at 944 Airole, Los Angeles, CA

The additional consideration shall be due and payable, without interest, on the Maturity Date.

PRINCIPAL AND INTEREST PAYMENTS. Principal and interest shall be payable on the Maturity Date.

All payments due hereunder, including payments of principal and/or interest, shall be made to Lender in United States Dollars and shall be in the form of immediately available funds.

MATURITY DATE. The entire unpaid principal balance, all unpaid accrued interest thereon, and all other amounts due hereunder shall be due and payable without demand and/or notice on the date of the sale of the property located at 944 Airole, Los Angeles, California (the "Property"), which is the security for the amount due under this Note.

PREPAYMENT. The principal amount of this Note may be prepaid in whole or in part, without any premium and/or penalty, at any time.

LATE CHARGES. Time is of the essence for all payments and other obligations due under this Note. Borrower acknowledges that if any payment of principal and interest

Y:\Remillard\InfernoInvestment\PromissoryNote-3.9M.wpd                    10/14/15

required under this Note is not received by Lender within seven (7) days after the same becomes due and payable, Lender will incur extra administrative expenses (i.e., in addition to expenses incident to receipt of timely payment) and the loss of the use of funds in connection with the delinquency in payment. Because the actual damages suffered by Lender by reason of such administrative expenses and loss of use of funds would be impracticable or extremely difficult to ascertain, Borrower agrees that one percent (1%) of the amount of the delinquent payment per month, or portion of a month during which the breach is not cured, shall be the amount of damages which Lender is entitled to receive upon such breach, in compensation therefore.

    INSURANCE. Insurance against loss or damage to the Property by fire, windstorm, lightning, tornado and hail and against loss and damage by such other, additional risks as may be now or hereafter embraced by an "all-risk" or "special form" insurance policy shall be maintained by Borrower until amounts due hereunder have been paid in full. The amount of such insurance shall be one hundred percent (100%) of the full replacement cost (insurable value) of the improvements, without reduction for depreciation. The determination of the replacement cost amount shall be adjusted annually to comply with the requirements of the insurer issuing such coverage. Absent such annual adjustment, each policy shall contain inflation guard coverage. Full replacement costs, as used herein, means, with respect to the improvements, the cost of replacing the improvements without regard to deduction for depreciation, exclusive of the cost of excavations, foundations and footings. Each policy shall contain a replacement cost endorsement and either an agreed amount endorsement (to avoid the operation of any co-insurance provisions) or a waiver of co-insurance provisions, all subject to Lender's approval. The maximum deductible shall be Twenty-Five Thousand Dollars ($25,000.00).

    All such insurance shall (i) be with insurers fully licensed and authorized to do business in California and which have and maintain a claims paying ability rating of "B+" or better by Standard & Poor's (or equivalent rating agency) or an "B+ VIII" or better from A.M. Best, (ii) contain the complete addresses of the Property (or a complete legal description), (iii) be for terms of at least one year, with premium prepaid, and (iv) include a standard, non-contributory, beneficiary clause naming the payees of this Note, its successor and assigns, as the first beneficiary.

    Borrower shall, as of the date hereof, deliver to Lender evidence that said insurance policy has been prepaid as required above with an original certificate signed by an authorized agent of the insurance company evidencing such insurance satisfactory to beneficiary. Borrower shall renew all such insurance and deliver to Lender a certificate evidencing such renewal at least thirty (30) days before any such insurance shall expire. Borrower further agrees that each such insurance policy: (i) shall provide for at least thirty (30) days notice to Lender prior to any policy reduction or cancellation due to non-payment of premium; (ii) shall contain an endorsement or agreement by the insurer that any loss shall be payable to Lender in accordance with the terms of such policy notwithstanding any act or negligence of Borrower or any other person which might otherwise result in forfeiture of such insurance; and (iii) in the event that the Property or the improvements constitutes a legal non-conforming use under applicable building, zoning or land use laws or ordinances, shall include an ordinance and law coverage endorsement which will contain Coverage A: "Loss Due to Operation of Law" (with a minimum liability limit equal to

Replacement Cost With Agreed Value Endorsement), Coverage B: "Demolition Cost" and Coverage C: "Increased Cost of Construction" coverages.  In the event Borrower fails to provide, maintain, keep in force or deliver and furnish to Lender the policy of insurance required by this Note or evidence of its replacement or renewal as required herein, Lender may, but shall not be obligated to, procure such insurance and Borrower shall pay all amounts advanced by Lender therefor, together with interest thereon at the Note Rate from and after the date advanced by Lender until actually repaid by Borrower, promptly upon demand by Lender.

WAIVERS.  Borrower hereby waives grace, diligence, presentment, demand, notice of demand, dishonor, notice of dishonor, protest, notice of protest, any and all exemption rights against the indebtedness evidenced by this Note and the right to plead any statute of limitations as a defense to the repayment of all or any portion of this Note, and interest thereon, to the fullest extent allowed by law.  No delay, omission and/or failure on the part of the Lender in exercising any right and/or remedy hereunder shall operate as a waiver of such right and/or remedy or any other right and/or remedy of Lender.

AUTHORITY.  Borrower hereby represents and warrants to Lender that, by her execution below, Borrower has the full power, authority and legal right to execute and deliver this Note and that the indebtedness evidenced hereby constitutes a valid and binding obligation of Borrower.

ACCELERATION,  In the event that all or any part of the Property which is security for this Note shall be sold, assigned, mortgaged, hypothecated, or otherwise transferred, the holder of this Note, shall have the right to declare the entire unpaid balance of principal and interest to be immediately due and payable.

ATTORNEY'S FEES.  If legal action be instituted to enforce collection of amounts due hereunder, Borrower agrees to pay reasonable attorney's fees and costs incurred by the holder of this Note.

IN WITNESS WHEREOF, Borrower has executed this Note on the day and year first above written.

BORROWER:

CRESTLLOYD, LLC, a California
Limited Liability Company

By _____
         Nile Niami, Manager

THIS NOTE IS SECURED BY A DEED OF TRUST IN FAVOR OF CHICAGO TITLE COMPANY.

Y:\Remillard\InfernoInvestment\PromissoryNote-3.9M.wpd        3                                    10/14/15

PromNote-InfernoMaybach14M

MODIFIED
**PROMISSORY NOTE**
**SECURED BY DEED OF TRUST**

$14,040,000.00          LOS ANGELES, CALIFORNIA          March 13, 2013

FOR VALUE RECEIVED, the undersigned, ("Borrower") promises to pay to INFERNO REALTY, LP as to an undivided Seven Million Forty Thousand Dollars ($7,040,000.00) and MAYBACH HOLDINGS CORPORATION, INC., as to an undivided Seven Million Dollars ($7,000,000.00) interest (collectively, "Lender") at 85 St. Paul Street West, Suite 500, Montreal, Quebec, CANADA H2Y3V4, or at such other place as the holder hereof may designate, in lawful money of the United States of America, the principal sum of Fourteen Million Forty Thousand Dollars ($14,040,000.00), together with interest on the outstanding principal balance until paid in full in accordance with the terms, conditions and provisions set forth in this Promissory Note (the "Note").

INTEREST RATE.  Simple interest shall accrue on the outstanding principal balance of this Note at the rate of eight percent (8%) per annum.

PRINCIPAL AND INTEREST PAYMENTS.  Principal and interest shall be payable on the Maturity Date.

All payments due hereunder, including payments of principal and/or interest, shall be made to Lender in United States Dollars and shall be in the form of immediately available funds.

MATURITY DATE.  The entire unpaid principal balance, all unpaid accrued interest thereon, and all other amounts due hereunder shall be due and payable without demand and/or notice on the date of the close of escrow for the sale of the single family residence being constructed by Borrower on the real property located at 944 Airole Way, Los Angeles, California (the "Property").

PREPAYMENT.  The principal amount of this Note may be prepaid in whole or in part, without any premium and/or penalty, at any time.

INSURANCE.  Insurance against loss or damage to the Property by fire, windstorm, lightning, tornado and hail and against loss and damage by such other, additional risks as may be now or hereafter embraced by an "all-risk" or "special form" insurance policy shall be maintained by Borrower until amounts due hereunder have been paid in full.  The amount of such insurance shall be one hundred percent (100%) of the full replacement cost (insurable value) of the improvements, without reduction for depreciation.  The determination of the replacement cost amount shall be adjusted annually to comply with the requirements of the insurer issuing such coverage.  Absent such annual adjustment, each policy shall contain inflation guard coverage.  Full replacement costs, as used herein, means, with respect to the improvements, the cost of replacing the improvements without regard to deduction for depreciation, exclusive of the cost of excavations, foundations and

footings. Each policy shall contain a replacement cost endorsement and either an agreed amount endorsement (to avoid the operation of any co-insurance provisions) or a waiver of co-insurance provisions, all subject to Lender's approval. The maximum deductible shall be Ten Thousand Dollars ($10,000.00).

All such insurance shall (i) be with insurers fully licensed and authorized to do business in California and which have and maintain a claims paying ability rating of "B+" or better by Standard & Poor's (or equivalent rating agency) or an "B+ VIII" or better from A.M. Best, (ii) contain the complete addresses of the Property (or a complete legal description), (iii) be for terms of at least one year, with premium prepaid, and (iv) include a standard, non-contributory, beneficiary clause naming the payees of this Note, its successor and assigns, as the first beneficiary.

Borrower shall, as of the date hereof, deliver to Lender evidence that said insurance policy has been prepaid as required above with an original certificate signed by an authorized agent of the insurance company evidencing such insurance satisfactory to beneficiary. Borrower shall renew all such insurance and deliver to Lender a certificate evidencing such renewal at least thirty (30) days before any such insurance shall expire. Borrower further agrees that each such insurance policy: (i) shall provide for at least thirty (30) days notice to Lender prior to any policy reduction or cancellation due to non-payment of premium; (ii) shall contain an endorsement or agreement by the insurer that any loss shall be payable to Lender in accordance with the terms of such policy notwithstanding any act or negligence of Borrower or any other person which might otherwise result in forfeiture of such insurance; and (iii) in the event that the Property or the improvements constitutes a legal non-conforming use under applicable building, zoning or land use laws or ordinances, shall include an ordinance and law coverage endorsement which will contain Coverage A: "Loss Due to Operation of Law" (with a minimum liability limit equal to Replacement Cost With Agreed Value Endorsement), Coverage B: "Demolition Cost" and Coverage C: "Increased Cost of Construction" coverages. In the event Borrower fails to provide, maintain, keep in force or deliver and furnish to Lender the policy of insurance required by this Note or evidence of its replacement or renewal as required herein, Lender may, but shall not be obligated to, procure such insurance and Borrower shall pay all amounts advanced by Lender therefor, together with interest thereon at the Note Rate from and after the date advanced by Lender until actually repaid by Borrower, promptly upon demand by Lender.

WAIVERS. Borrower hereby waives grace, diligence, presentment, demand, notice of demand, dishonor, notice of dishonor, protest, notice of protest, any and all exemption rights against the indebtedness evidenced by this Note and the right to plead any statute of limitations as a defense to the repayment of all or any portion of this Note, and interest thereon, to the fullest extent allowed by law. No delay, omission and/or failure on the part of the Lender in exercising any right and/or remedy hereunder shall operate as a waiver of such right and/or remedy or any other right and/or remedy of Lender.

AUTHORITY. Borrower hereby represents and warrants to Lender that, by its execution below, Borrower has the full power, authority and legal right to execute and deliver this Note and that the indebtedness evidenced hereby constitutes a valid and binding obligation of Borrower.

ACCELERATION,  In the event that all or any part of the Property which is security for this Note shall be sold, assigned, mortgaged, hypothecated, or otherwise transferred, the holder of this Note, shall have the right to declare the entire unpaid balance of principal and interest to be immediately due and payable.

ATTORNEY'S FEES.  If legal action be instituted to enforce collection of amounts due hereunder, Borrower agrees to pay reasonable attorney's fees and costs incurred by the holder of this Note.

IN WITNESS WHEREOF, Borrower has executed this Note on the day and year first above written.

BORROWER:

Crestlloyd, LLC, a California Limited
Liability Company

By _____
      Nile Niami, Manager

THIS NOTE IS SECURED BY A DEED OF TRUST IN FAVOR OF STEWART TITLE OF CALIFORNIA, INC. AS TRUSTEE.

MODIFICATION

THE ABOVE PROMISSORY NOTE IS AMENDED TO PROVIDE THAT THE FACE AMOUNT OF THE NOTE IS $7,000,000.00 WHICH IS THE PRINCIPAL BALANCE DUE AND OWING AS OF THIS DATE.

DATED: OCTOBER ____, 2015

INFERNO INVESTMENTS INC, a Canadian corporation

By: _____
      Julien Remillard, Director

Y:\NIAMI\944Airole\PromNote-InfernoMaybach14M.wpd          3                               3/13/13

Case 2:21-bk-18205-DS    Doc 61    Filed 01/06/22    Page 11 of Document    Page 11 of
30



**This page is part of your document - DO NOT DISCARD**



# 20151375606



**Pages:**
**0004**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**11/10/15 AT 08:00AM**

| | |
|---|---|
| FEES: | 42.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 42.00 |



**L E A D S H E E T**



201511100300029

00011358907



007215269

**SEQ:**
**01**

DAR - Title Company (Hard Copy)





**THIS FORM IS NOT TO BE DUPLICATED**

T72

WHEN RECORDED, RETURN TO:

11/10/2015

*20151375606*

NAME        INFERNO REALTY LP

MAILING     4-95 KANDAHAR
            MONT TREMBLANT
            QUEBEC J8E1E2
            CANADA

---

### TITLE(S)

---

#### ASSIGNMENT OF NOTE AND DEED OF TRUST/MORTGAGE

---

4369 - 216 - 20

2892 x59

1A

WHEN RECORDED, RETURN TO:

NAME        INFERNO REALTY LP

MAILING     4-95 KANDAHAR
            MONT TREMBLANT
            QUEBEC J8E1E2
            CANADA

### ASSIGNMENT OF NOTE AND DEED OF TRUST/MORTGAGE

The undersigned, MAYBACH CORPORATION, a Canadian Corporation (erroneously named in the Deed of Trust hereafter referred to as "Maybach Holdings Corporation, Inc.") ("Assignor"),for value received, hereby grants, conveys, assigns and transfers to INFERNO REALTY, LP, a California Limited Liability Company ("Assignee") all of its beneficial interest  under the Deed of Trust with Assignment of Rents dated the 13th day of March, 2013 between CRESTLLOYD LLC, a California Limited Liability Company, as Trustor; FIRST AMERICAN TITLE INSURANCE COMPANY, a California Corporation, as Trustee; and Assignor and INFERNO REALTY LP as Beneficiaries, recorded on March 13, 2013, under Document No. 20130384037, records of Los Angeles County, State of California, together with the promissory note  therein described (the "Note"), the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust.

Assignee is not assuming any obligations or liabilities to the maker under the Note or Deed of Trust described herein and shall not be deemed to have assumed any such obligations or liabilities except that Assignee agrees that, at such time as the maker has duly paid and performed all obligations set forth in the Note and Deed of Trust described herein, Assignee will deliver to the maker a full reconveyance under the Deed of Trust.

Dated:    June 2, 2014

MAYBACH CORPORATION, a Canadian Corporation,

By _____

Y:\Remillard\InfernoRealty\AssignNoteMaybachtoRealty-DT.wpd

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

~~ACKNOWLEDGMENT~~ (WB)

STATE OF _New York_

COUNTY OF _Clinton_                               )

On _October 21_, 2015, before me, _Weena L. Boyle_, a notary public, personally appeared _Julien Remillard_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _New York_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


_Weena L. Boyle._        (SEAL)

Weena L. Boyle
Notary Public-New York
Commi... 01BO6011026
My Comm. Exp. July 27, 20_18_

Y:\Remillard\InfernoRealty\AssignNoteMaybachtoRealty-DT.wpd



This page is part of your document - DO NOT DISCARD



## 20151375607



**Pages:**
**0004**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**11/10/15 AT 08:00AM**

| FEES: | 42.00 |
|---|---|
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 42.00 |



**L E A D S H E E T**



201511100300029

00011358908



007215269

**SEQ:**
**02**

DAR - Title Company (Hard Copy)





**THIS FORM IS NOT TO BE DUPLICATED**

T72

RECORDING REQUESTED BY AND
WHEN RECORDED, RETURN TO:

11/10/2015

*20151375607*

NAME       INFERNO INVESTMENT INC.

MAILING    4-95 Kandahar
           Mont Tremblant
           Quebec J8E1E2
           CANADA

## TITLE(S)

### ASSIGNMENT OF NOTE AND DEED OF TRUST/MORTGAGE

WHEN RECORDED, RETURN TO:

NAME        INFERNO INVESTMENT INC.

MAILING     4-95 Kandahar
            Mont Tremblant
            Quebec J8E1E2
            Canada

## ASSIGNMENT OF NOTE AND DEED OF TRUST/MORTGAGE

The undersigned, INFERNO REALTY, LP, a California Limited Partnership ("Assignor"),for value received, hereby grants, conveys, assigns and transfers to INFERNO INVESTMENT INC., ("Assignee") all of its beneficial interest under the Deed of Trust with Assignment of Rents dated the 13th day of March, 2013, between CRESTLLOYD LLC, a California Limited Liability Company, as Trustor; CHICAGO TITLE COMPANY, as Trustee; and Maybach Corporation (erroneously named in the deed of trust as Maybach Holdings Corporation) and INFERNO REALTY LP as Beneficiary recorded on March 13, 2013 under Document No. 20130384037, records of Los Angeles County, State of California, together with the promissory not therein described (the "Note"), the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust.

Assignee is not assuming any obligations or liabilities to the maker under the Note or Deed of Trust described herein and shall not be deemed to have assumed any such obligations or liabilities except that Assignee agrees that, at such time as the maker has duly paid and performed all obligations set forth in the Note and Deed of Trust described herein, Assignee will deliver to the maker a full reconveyance under the Deed of Trust.

Dated: _10/21/_,2015

                              INFERNO REALTY, LP, a California
                              Limited Partnership
                              By:    8393095 Canada, Inc., a Canadian
                                     Corporation, General Partner


                              By _____, Director
                                    Julien Remillard, Director



Y:\Remillard\InfernoRealty\AssignNote DT\$14M-Realty to Inv.#2wpd

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

~~ACKNOWLEDGMENT~~ *we*

STATE OF _New York_

COUNTY OF _Clinton_

On _October 21_, 2015, before me, _Weena L Boyle_, a notary public, personally appeared _Julien Remillard_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _New York_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Weena L Boyle_ (SEAL)

Weena L. Boyle
Notary Public-New York
Commission #01BO6011026
My Comm. Exp. July 27, 20_18_

Y:\Remillard\InfernoRealty\AssignNote DTI$14M-Realty to Inv.#2wpd

This page is part of your document - DO NOT DISCARD




**20151375608**



Pages:
0007

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**11/10/15 AT 08:00AM**

| FEES: | 33.00 |
|---|---|
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 33.00 |



**LEADSHEET**



201511100300029

00011358909



007215269

**SEQ:**
**03**

DAR - Title Company (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**    T72

E213049

RECORDING REQUESTED BY
AND MAIL TAX STATEMENT TO:



11/10/2015

*20151375608*

NFERNO INVESTMENT INC.
4-95 Kandahar
Mont Tremblant
Quebec J8E1E2
Canada

| FOR RECORDER'S USE ONLY |
|---|
| TITLE |
| **MODIFICATION AND SUPPLEMENT TO DEED OF TRUST** |
|  |

3Λ

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO
AND MAIL TAX STATEMENTS TO

NAME            INFERNO INVESTMENT INC.
ADDRESS         4-95 Kandahar
CITY            Mont Tremblant
STATE & ZIP     Quebec J8E1E2, Canada

## MODIFICATION AND SUPPLEMENT TO DEED OF TRUST

THIS AGREEMENT, made this __2/__ day of October, 2015, by and between CRESTLLOYD, LLC., a California Limited Liability Company, hereinafter called Trustor, FIRST AMERICAN TITLE INSURANCE COMPANY, hereinafter called Trustee, and INFERNO INVESTMENT INC., hereinafter called Beneficiary,

WHEREAS, on the 13th day of March, 2013, Trustor did make, execute and deliver to Trustee that certain Deed of Trust recorded on March 13, 2013 as Instrument No. 20130384037 in the office of the County Recorder of Los Angeles County, State of California, securing a promissory note dated March 13, 2013 in favor of INFERNO REALTY, L.P. ("INFERNO"), and MAYBACH CORPORATION erroneously named as MAYBACH CORPORATION HOLDINGS, INC. ("MAYBACH") , as Beneficiary and covering the property described in Exhibit "A" attached hereto, and

WHEREAS, INFERNO INVESTMENT INC. acquired the interest of MAYBACH and INFERNO in the promissory note and deed of trust, and

WHEREAS, the parties desire to modify and supplement said deed of trust in certain particulars

NOW, THEREFORE, for value received the parties hereto do hereby modify and supplement said deed of trust as follows:

This Deed of Trust secures two (2) promissory notes each dated March 13, 2013 one in the face amount of $14,040,000.00 modified to $7,000,000.00 and one in the face amount of $3,925,545.00. The total amount secured by this Deed of Trust is $10,925,545.00.

Trustor does hereby grant and convey the subject real property to Trustee under said deed of trust, together with power of sale and subject to each and all of the terms and conditions of said deed of trust, including this modification and supplement thereto.

IT IS FURTHER AGREED, by and between the parties hereto that in all other respects not inconsistent herewith the terms of said deed of trust which is incorporated herein by reference thereto shall remain in full force and effect and be binding hereon. Said deed of trust modified and supplemented shall constitute one deed of trust.

Beneficiary agrees that this Deed of Trust shall automatically be subordinated to a loan or loans to be made to Trustor by First Republic Bank in an amount not to exceed Thirty Million Dollars ($30,000,000.00) which shall unconditionally be, and remain at all times, a lien or

Y:\Remillard\InfernoInvestment\ModlSuppDeedofTrust.14Mwpd

Case 2:21-bk-18205-DS   Doc 319   Filed 05/17/22   Entered 05/17/22 15:41:11   Desc
Case 2:21-bk-18205-DS   Main Document   01/09/Page 71 of 372   Page 22 of
30

Page 22 of
4

charge on the property herein described, prior and superior to the lien or charge of this deed of trust. Beneficiary covenants and agrees that it will execute any and all documents and perform any and all acts that may be required to ensure the priority of the lien of the deed of trust in favor of First Republic Bank.

Trustee is hereby authorized and directed to endorse a memorandum hereof upon said deed of trust and promissory note.

This agreement shall inure to and bind the heirs, devisees, successors and assigns of the parties hereto.

IN WITNESS WHEREOF, the parties hereto have executed this agreement on the dates set opposite in the attached notaries.

TRUSTOR                                  BENEFICIARY

CRESTLLOYD LLC, a California Limited      INFERNO INVESTMENT INC.
Liability Company


By EXECUTED IN COUNTERPART              By _____
_____                Julien Remillard, Director
   Nile Niami, Manager


Y:\Remillard\InfernoInvestment\ModiSuppDeedofTrust.14Mwpd

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

STATE OF _New York_

COUNTY OF _Clinton_

On _October 21, 2015_, before me, _Weena L. Boyle_
(Insert Name of Notary Public and Title)

_Notary public_, personally appeared _Julien Remillard_,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ~~California~~ _New York_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


Signature _Weena L. Boyle_                    (Seal)

Weena L. Boyle
Notary Public-New York
Qualified in County 01BO6011036
My Commission Exp. July 27, 20__

Y:\Remillard\InfernoInvestment\Mod\SuppDeedofTrust.14Mwpd

charge on the property herein described, prior and superior to the lien or charge of this deed of trust.  Beneficiary covenants and agrees that it will execute any and all documents and perform any and all acts that may be required to ensure the priority of the lien of the deed of trust in favor of First Republic Bank.

Trustee is hereby authorized and directed to endorse a memorandum hereof upon said deed of trust and promissory note.

This agreement shall inure to and bind the heirs, devisees, successors and assigns of the parties hereto.

IN WITNESS WHEREOF, the parties hereto have executed this agreement on the dates set opposite in the attached notaries.

TRUSTOR                                          BENEFICIARY

CRESTLLOYD LLC, a California Limited        INFERNO INVESTMENT INC.
Liability Company


By _____              By _____
    Nile Niami, Manager                         Julien Remillard, Director


                              EXECUTED IN COUNTERPART




Y:\Remillard\InfernoInvestment\Modi\SuppDeedofTrust.14Mwpd

7

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**  CIVIL CODE § 1189

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the
> document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of LOS ANGELES )

On OCTOBER 31, 2015 before me, NIGEL GIBBS, NOTARY PUBLIC ,
_____Date_____          Here Insert Name and Title of the Officer

personally appeared _____Nile N. Ami_____
                              Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

> NIGEL GIBBS
> Commission # 1990441
> Notary Public - California
> Los Angeles County
> My Comm. Expires Oct 4, 2016

I certify under PENALTY OF PERJURY under the laws
of the State of California that the foregoing paragraph
is true and correct.

WITNESS my hand and official seal.

Signature _____
              Signature of Notary Public

_____Place Notary Seal Above_____

———————————— **OPTIONAL** ————————————

*Though this section is optional, completing this information can deter alteration of the document or
fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: Modifications & Supplement Deed of Trust
Document Date: 10-21-16                    Number of Pages: 3
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _____      Signer's Name: _____
☐ Corporate Officer — Title(s): _____   ☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General          ☐ Partner — ☐ Limited ☐ General
☐ Individual      ☐ Attorney in Fact       ☐ Individual      ☐ Attorney in Fact
☐ Trustee        ☐ Guardian or Conservator ☐ Trustee        ☐ Guardian or Conservator
☐ Other: _____                ☐ Other: _____
Signer Is Representing: _____      Signer Is Representing: _____

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
©2015 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

RECORDING REQUESTED BY
AND MAIL TAX STATEMENT TO:


INFERNO INVESTMENT INC.
4-95 Kandahar
Mont Tremblant
Quebec J8E1E2
Canada

FOR RECORDER'S USE ONLY

TITLE                    APN NO.

## MODIFICATION AND SUPPLEMENT TO DEED OF TRUST

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO
AND MAIL TAX STATEMENTS TO

| | |
|---|---|
| **NAME** | INFERNO INVESTMENT INC. |
| **ADDRESS** | 4-95 Kandahar |
| **CITY** | Mont Tremblant |
| **STATE & ZIP** | Quebec J8E1E2, Canada |

## MODIFICATION AND SUPPLEMENT TO DEED OF TRUST

THIS AGREEMENT, made this ___2-/___<sup>st</sup> day of October, 2015, by and between CRESTLLOYD, LLC., a California Limited Liability Company, hereinafter called Trustor, FIRST AMERICAN TITLE INSURANCE COMPANY, hereinafter called Trustee, and INFERNO INVESTMENT INC., hereinafter called Beneficiary,

WHEREAS, on the 13th day of March, 2013, Trustor did make, execute and deliver to Trustee that certain Deed of Trust recorded on March 13, 2013 as Instrument No. 20130384037 in the office of the County Recorder of Los Angeles County, State of California, securing a promissory note dated March 13, 2013 in favor of INFERNO REALTY, L.P. ("INFERNO"), and MAYBACH CORPORATION erroneously named as MAYBACH CORPORATION HOLDINGS, INC. ("MAYBACH") , as Beneficiary and covering the property described in Exhibit "A" attached hereto, and

WHEREAS, INFERNO INVESTMENT INC. acquired the interest of MAYBACH and INFERNO in the promissory note and deed of trust, and

WHEREAS, the parties desire to modify and supplement said deed of trust in certain particulars

NOW, THEREFORE, for value received the parties hereto do hereby modify and supplement said deed of trust as follows:

This Deed of Trust secures two (2) promissory notes each dated March 13, 2013 one in the face amount of $14,040,000,00 modified to $7,000,000.00 and one in the face amount of $3,925,545.00. The total amount secured by this Deed of Trust is $10,925,545.00.

Trustor does hereby grant and convey the subject real property to Trustee under said deed of trust, together with power of sale and subject to each and all of the terms and conditions of said deed of trust, including this modification and supplement thereto.

IT IS FURTHER AGREED, by and between the parties hereto that in all other respects not inconsistent herewith the terms of said deed of trust which is incorporated herein by reference thereto shall remain in full force and effect and be binding hereon. Said deed of trust modified and supplemented shall constitute one deed of trust.

Beneficiary agrees that this Deed of Trust shall automatically be subordinated to a loan or loans to be made to Trustor by First Republic Bank in an amount not to exceed Thirty Million Dollars ($30,000,000.00) which shall unconditionally be, and remain at all times, a lien or

Y:\Remillard\InfernoInvestment\ModiSuppDeedofTrust.14Mwpd

charge on the property herein described, prior and superior to the lien or charge of this deed of trust. Beneficiary covenants and agrees that it will execute any and all documents and perform any and all acts that may be required to ensure the priority of the lien of the deed of trust in favor of First Republic Bank.

Trustee is hereby authorized and directed to endorse a memorandum hereof upon said deed of trust and promissory note.

This agreement shall inure to and bind the heirs, devisees, successors and assigns of the parties hereto.

IN WITNESS WHEREOF, the parties hereto have executed this agreement on the dates set opposite in the attached notaries.

TRUSTOR                                         BENEFICIARY

CRESTLLOYD LLC, a California Limited              INFERNO INVESTMENT INC.
Liability Company

By _____              By _____
    Nile Niami, Manager                       Julien Remillard, Director

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF _New York_

COUNTY OF _Clinton_

On _October 21, 2015_ , before me, _Weena L. Boyle_
(Insert Name of Notary Public and Title)
_Notary public_ , personally appeared _Julien Remillard._ ,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

_we . ___
_New York_

I certify under PENALTY OF PERJURY under the laws of the State of ~~California~~ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Weena L. Boyle_ (Seal)

Weena L. Boyle
Notary Public-New York
Commission # 01BO6011026
My Comm. Exp. July 27, 20_19_

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    **CIVIL CODE § 1189**

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California
County of LOS ANGELES )

On OCTOBER 31, 2015 before me, NIGEL GIBBS, Notary Public,
    Date          Here Insert Name and Title of the Officer

personally appeared      Nile Niami
            Name(s) of Signer(s)

---

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

> **NIGEL GIBBS**
> Commission # 1990441
> Notary Public - California
> Los Angeles County
> My Comm. Expires Oct 4, 2016

Signature _____
         Signature of Notary Public

         Place Notary Seal Above

--- **OPTIONAL** ---

Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**
Title or Type of Document: Modification & Supplement DEED of Trust
Document Date: 10-21-15          Number of Pages: 3
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General
☐ Individual        ☐ Attorney in Fact
☐ Trustee          ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General
☐ Individual        ☐ Attorney in Fact
☐ Trustee          ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

---

©2015 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)    Item #5907

# EXHIBIT 3

## MEMORANDUM OF AGREEMENT

This Memorandum of Agreement is made and entered into this $1st$ day of January, 2016 by and between CRESTLLOYD, LLC, a California Limited Liability Company ("Crestlloyd") and INFERNO INVESTMENTS INC. ("Inferno").

### RECITALS

The parties desire to set forth their respective rights with regard to distribution of proceeds at such time as the residence being constructed by Crestlloyd (as successor to the Company) at 944 Airole Way, Los Angeles, California (the "Residence") is sold.

NOW, THEREFORE, IT IS AGREED AS FOLLOWS:

1.    Incorporation of Recitals.   The above Recital is incorporated herein by this reference as though made a part hereof.

2.    Division of Profits and Losses.   Profits and Losses shall be allocated as follows:  Fifty percent (50%) to Crestlloyd for Developer fee and fifty percent (50%) to Crestlloyd and Inferno in proportion to the money loaned by each to finance the construction of the Residence.

For Example: Assume Inferno loaned $18,000,000.00 and Crestlloyd loaned $41,000,000.00.  Inferno's share of the profits and losses is 15.25% ($18,000,000 ÷ $59,000,000 = 30.5% multiplied by 50% = 15.25%).  Crestlloyd's share of the profits and losses is 84.75% ($41,000,000 ÷ $59,000,000 = 69.5% multiplied by 50% = 34.75%), plus Crestlloyd's Developer fee of 50% = 84.75%.

3.    Distributions.   All proceeds received from a sale, condemnation, financing or refinancing of the Residence shall be distributed in the following manner:

First, to repay the loan(s) obtained from a bank or third parties (excluding Crestlloyd and Inferno) and all other unpaid costs of construction of the Residence.

Second, to Crestlloyd and Inferno, pro rata, in repayment of any loans owing them, together with simple interest thereon at the rate of eight percent (8%) per annum.

Third, to Crestlloyd, the sum of ONE HUNDRED FORTY-FIVE THOUSAND DOLLARS ($145,000.00) as compensation for general office overhead and services rendered by it in connection with the construction of the Residence.

Thereafter, to Crestlloyd and Inferno in accordance with their share of the profits and losses determined in the manner set forth in paragraph 2 above.

IN WITNESS HEREOF, the parties have executed this Memorandum of Agreement, effective as of the date set forth above.

Y:\NIAMI\944Airole\MemoAgt2016.wpd                                                                5/23/16

CRESTLLOYD, LLC, a California
Limited Liability Company

By _____
    Nile Niami, Manager

INFERNO INVESTMENTS INC.

By _____
    Julian Remillard, Director

# EXHIBIT 4

<table>
<tr><td colspan="2"><b>Fill in this information to identify the case:</b></td></tr>
</table>

| | |
|---|---|
| Debtor 1 | CRESTLLOYD, LLC |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 2:21-bk-18205-DS |

## Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

<table>
<tr><td colspan="2"><b>Part 1:    Identify the Claim</b></td></tr>
</table>

**1. Who is the current creditor?**

J&E Texture, Inc.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Jennifer L. Kneeland, Esq.
Name

1765 Greensboro Station Place, Suite 1000
Number    Street

McLean             VA         22102
City               State      ZIP Code

Contact phone  703-749-1026

Contact email  jkneeland@watttieder.com

Where should payments to the creditor be sent? (if different)

Name

Number    Street

City               State      ZIP Code

Contact phone

Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
        MM  / DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$ _____ 366,189.31 . **Does this amount include interest or other charges?**

*See Rider for more detail.

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Breach of contract, labor and materials, secured by perfected lien.

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:**   Recorded Mechanic's Lien and State Court Action to Perfect

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $ 325,000,000.00

**Amount of the claim that is secured:**   $ 284,086.99

**Amount of the claim that is unsecured:** $ _____ 0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $ 366,189.31

**Annual Interest Rate** (when case was filed) 10.00 %

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☐ No

☑ Yes. **Amount necessary to cure any default as of the date of the petition.**   $ _____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check all that apply:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:    Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   01/07/2022
MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| Name | Francisco Gonzalez | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | President | | |
| Company | J&E Texture, Inc. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 181 Exeter Way | | |
| | Number        Street | | |
| | Corona | CA | 92882 |
| | City | State | ZIP Code |
| Contact phone | contact counsel | Email | contact counsel |

Jennifer L. Kneeland, Esq. (admitted *pro hac vice*)
jkneeland@watttieder.com
Marguerite Lee DeVoll, Esq. (admitted *pro hac vice*)
mdevoll@watttieder.com
WATT, TIEDER, HOFFAR & FITZGERALD, LLP
1765 Greensboro Station Place, Suite 1000
McLean, Virginia 22102
Tel: (703) 749-1000
Fax: (703) 893-8029
*Attorneys for J&E Texture, Inc.*

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA—LOS ANGELES DIVISION**

| | |
|---|---|
| In re: | Case No.  2:21-bk-18205-DS |
| **CRESTLLOYD, LLC,** | |
|      Debtor and Debtor in Possession. | Chapter 11 |
| | **RIDER TO PROOF OF CLAIM OF J&E TEXTURE, INC.** |

1.    J&E Texture, Inc. ("J&E" or "Claimant") submits this rider as part of its proof of claim against Crestlloyd, LLC (the "Owner" or the "Debtor").

2.    For the reasons explained below, J&E's claim is both secured and unsecured and liquidated and unliquidated in the amount of not less than $366,189.31 (the "Claim").

3.    With regards to J&E's secured claim, as explained below, J&E filed a mechanic's lien for $214,147.50, which was the estimated approximate reasonable value of all labor, materials and equipment which J&E had furnished to the Debtor and the Project (defined below) under the Contract (defined).  In addition, J&E's secured claim includes pre-judgment interest at the rate of 10% per annum,[1] which continues to accrue at a rate of $58.67 per day.

4.    With regards to J&E's liquidated, unsecured claim, J&E incurred and continues to incur costs and expenses, including attorneys' fees and costs, which it is entitled to recover under the terms of the Contract from the Debtor.  Through December 31, 2021, J&E has incurred

---

[1] *See* Cal. Civ. Code § 3289; *Vowels v. Witt*, 149 Cal.App.2d 257, 308 P.2d 415 (App. 1 Dist. 1957).

$82,102.32 in attorneys' fees and costs under the Contract.

5.    J&E's Claim is summarized as follows:

| Description | Amount |
|---|---|
| Secured Claim (Mechanic's Lien Amounts plus Interest) | |
| Mechanic's Lien – Invoice #854 dated 8/22/2017 | $48,000.00 |
| Mechanic's Lien – Invoice #1152 dated 2/01/2018 | $20,000.00 |
| Mechanic's Lien – Invoice #1155 dated 2/5/2018 | $25,000.00 |
| Mechanic's Lien – Retainage on Extra Work due 6/1/2019 | $22,147.50 |
| Mechanic's Lien – Invoice #2085 dated 6/11/2019 | $99,000.00 |
| **Principal Subtotal** | **$214,147.50** |
| | |
| Pre-Petition Interest – Invoice #854 dated 8/22/2017 | $20,067.95 |
| Pre-Petition Interest – Invoice #1152 dated 2/01/2018 | $7,468.49 |
| Pre-Petition Interest – Invoice #1155 dated 2/5/2018 | $9,308.22 |
| Pre-Petition Interest – Retainage on Extra Work due 6/1/2019 | $5,327.54 |
| Pre-Petition Interest – Invoice #2085 dated 6/11/2019 | $23,543.01 |
| **Pre-Petition Interest Subtotal** | **$65,715.21** |
| | |
| Post-Petition Interest through 1/6/2022 ($58.67/day) | $4,224.28 |
| **Subtotal on Secured Claim** | **$284,086.99** |
| | |
| Unsecured Claim | |
| Pre-Petition Attorneys' Fees and Costs | $73,867.30 |
| Post-Petition Attorneys' Fees and Costs through 12/31/2021 | $8,235.02 |
| **Subtotal on Unsecured Claim** | **$82,102.02** |
| | |
| **TOTAL SECURED AND UNSECURED CLAIM** | **$366,189.31** |

6.    As set forth more fully below, J&E reserves the right to: (a) amend the Claim to state its Claim with more specificity, including to add additional amounts for accruing interest and attorneys' fees; and or (b) if appliable, seek to have the Claim estimated pursuant to 11 U.S.C. § 502(c).

A.    **Basis for Claim**

(1)    **The Contract**

7.    On or about July 1, 2016, J&E and the Debtor entered into a written "Construction Agreement" in which J&E agreed to furnish labor and material to that subject real property and work of improvement located at 944 Airole Way, Los Angeles, California 90077; APN 4369-026-021 (the "Project") for an agreed upon contract price of $925,000.00, which the Debtor agreed to

1  pay ("Contract").

2      8.    In accordance with the Contract and pursuant to extra work ordered by the Debtor

3  for the Project, J&E furnished labor and materials that were used and intended to be used in the

4  Project.

5      9.    J&E performed all of the obligations, conditions, covenants, and promises required

6  to be performed by it in accordance with the Contract, and any other agreements governing J&E's

7  construction and improvement of the Project for the Debtor, except for those terms for which

8  performance has been excused (if applicable).  J&E properly invoiced the Debtor pursuant to the

9  payment terms of those agreements.  J&E reasonably incurred theses costs to construct and improve

10 the Project on the Debtor's behalf and for the Debtor's benefit.  The Debtor failed to pay J&E the

11 full amount due under the Contract for work performed at the Project by J&E.

12     10.    As of October 26, 2021 (the "Petition Date"), the Debtor has failed to pay J&E

13 $214,147.50, plus interest at the legal rate under the terms of the Contract and reasonable attorneys'

14 fees and costs incurred in enforcing the Contract. (*See* Contract, Art. 12).

15             **(2)    The Mechanic's Lien**

16     11.    On June 30, 2020, J&E served on the Debtor and filed a verified Claim of Lien,

17 Instrument No. 20200712043, in the Los Angeles County Recorder's Office, after J&E's completed

18 the agreed-on work and before the expiration of 90 days after completion of the work of

19 improvement, no notice of completion or cessation having been recorded.  In its verified Claim of

20 Lien, J&E claimed a mechanic's lien for supplied labor, services, equipment and/or materials for

21 work at the Project.  J&E's total Claim of Lien is in the amount of $214,147.50, which was the

22 estimated approximate reasonable value of all labor, materials, and equipment which J&E had

23 furnished to the Debtor and the Project, after deducting all proper credits and offsets, together with

24 interest at the rate of 10% per annum from the date that various invoices were due. ***See* Exhibit A.**

25     12.    On September 4, 2020, J&E filed a *Complaint for Breach of Contract and*

26 *Foreclosure of Mechanic's Lien* against the Debtor and other defendants in the Superior Court of

27 the State of California, County of Los Angeles-Santa Monica Courthouse, Case No.

28 20SMCV01229 (the "Mechanic's Lien Foreclosure Action").

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 3 -

1    13.  On October 15, 2020, J&E filed a *Notice of Lis Pendens* against the Project.

2    14.  J&E has complied with all applicable provisions of the California Civil Code

3 required of a mechanic's lien claimant to perfect and maintain a mechanic's lien.

4    **B.**  **Reservation of Rights**

5    15.  J&E reserves all legal, equitable and contractual rights against all parties (including

6 the Debtor) with respect to the Claim.  J&E reserves the right to amend, supplement or modify the

7 Claim at any time.  The obligations due to J&E remain outstanding and additional obligations may

8 continue to be identified.  J&E reserves its right to pursue claims (including but not limited to the

9 claims described herein) against the Debtor based upon additional or alternative legal theories and

10 reserves the right to file additional or other pleadings to assert any of the amounts set forth in this

11 Claim or any amendments thereto, including, without limitation, any postpetition administrative

12 expenses pursuant to the Bankruptcy Code, including sections 503 and 507 thereof.

13    16.  To the extent that the Debtor assets claims against J&E, J&E reserves the right to

14 assert that such claims are subject to rights of setoff and/or recoupment, whether or not arising

15 under the transactions set forth in this Claim.  To the extent that the Debtor or any other party takes

16 any action that would give rise to a counterclaim or other rights or claims that J&E may have against

17 the Debtor, J&E reserves all of its rights.  By filing this Claim, J&E does not waive, and specifically

18 reserves, its respective procedural and substantive defenses to any claim that may be assert against

19 J&E by the Debtor, by any trustee of its estate, by any official committee, or by any other party.

20 J&E reserves all rights accruing to it against the Debtor, and the filing of this Claim is not intended

21 to be, and shall not be construed as, an election of remedy or a waiver of limitation of any rights of

22 J&E.

23    17.  Nothing contained in this Claim shall constitute a waiver of (i) the right to have final

24 orders in non-core matters entered only after de novo review by a United States District Court

25 Judge; (ii) the right to trial by jury in any proceeding triable in this case or any case, controversy,

26 or proceeding related to this case; (iii) the right to have the District Court withdraw the reference

27 in any matter subject to mandatory or discretionary withdrawal; (iv) any objection to the jurisdiction

28 or venue of this Court; (v) an election of remedy, including any election between its contribution

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 4 -

1  and subrogation rights; (v) the right to amend this proof of claim as it becomes further known, fixed

2  and liquidated, and for any and all other lawful purposes; (vi) the right to assert claims for attorneys'

3  fees and costs which continue to accrue and be incurred (and which are not in the amount set forth

4  in this Claim, but to which Claimant is entitled pursuant to its contracts with the Debtor); (vii) the

5  right to assert claims for interest which accrues and continues to accrue (and which is not set forth

6  in this Claim, but to which Claimant is entitled pursuant to its contracts with the Debtor); and/or

7  (viii) any other right, claim, action, defense, setoff, or recoupment, in law or in equity, under any

8  agreement, all of which are expressly reserved.

9  **C.    <u>Documentation</u>**

10      18.    All documents not attached hereto are available upon request from J&E's counsel.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 5 -

# EXHIBIT A



## This page is part of your document - DO NOT DISCARD



# 20200712043

**Pages:**
**0004**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**06/30/20 AT 08:44AM**

| | |
|---|---|
| FEES: | 26.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 101.00 |



**L E A D S H E E T**



202006302870010

00018454212



010890375

**SEQ:**
**01**

DAR - Mail (Intake)



**THIS FORM IS NOT TO BE DUPLICATED**

E625091

ORIGINAL

Recording requested by:
J&E Texture, Inc.
c/o Watt, Tieder, Hoffar & Fitzgerald, LLP



18454212

Batch Number: 10890375

And when recorded mail this document to:

Robert C. Shaia, Esq.
Watt, Tieder, Hoffar & Fitzgerald, LLP
4 Park Plaza, Suite 1000
Irvine, CA 92614

For recorder's use

## MECHANICS' LIEN
### (Cal. Civ. Code § 8416, et seq.)

1.     J&E Texture, Inc. ("Claimant") claims a mechanics lien for the labor, services, equipment and/or materials described in paragraph 2, furnished for a work of improvement on that certain real property located in the City of West Hollywood, County of Los Angeles, State of California, and more particularly described as:

    Property Description:  944 Airole Way, Los Angeles, CA 90077

2.     After deducting all just credits and offsets, the sum of $214,147.50, together with interest at the rate of 10% per annum from dates of various unpaid invoices, is due Claimant for labor, materials, services and equipment relating to installation of drywall at the above-mentioned residential property.

3.     Claimant furnished the labor, services, equipment and/or materials, at the request of:

    Crestlloyd, LLC

4.     The name and address of the owner(s) or reputed owner(s) of the real property is/are:

    Crestlloyd, LLC
    8981 W. Sunset Blvd., Suite 303
    West Hollywood, CA 90069

5.     Claimant's address is:  181 Exeter Way, Corona, CA 92882

Dated ___6/22/___ , 2020

J&E Texture, Inc.

By: _____
Francisco Javier Gonzalez, President

## VERIFICATION

I, Francisco Javier Gonzalez, am the President of Claimant on the foregoing Mechanics Lien and am authorized to make this verification for and on its behalf. I have read the foregoing Mechanics Lien and know the contents of the Mechanics Lien to be true of my own knowledge.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated ____6/22/____, 2020

_____
Francisco Javier Gonzalez

## NOTICE OF MECHANICS LIEN

## ATTENTION!

Upon the recording of the enclosed MECHANICS LIEN with the county recorder's office of the county where the property is located, your property is subject to the filing of a legal action seeking a court-ordered foreclosure sale of the real property on which the lien has been recorded. That legal action must be filed with the court no later than 90 days after the date the mechanics lien is recorded.

The party identified in the enclosed mechanics lien may have provided labor or materials for improvements to your property and may not have been paid for these items. You are receiving this notice because it is a required step in filing a mechanics lien foreclosure action against your property. The foreclosure action will seek a sale of your property in order to pay for unpaid labor, materials, or improvements provided to your property. This may affect your ability to borrow against, refinance, or sell the property until the mechanics lien is released.

BECAUSE THE LIEN AFFECTS YOUR PROPERTY, YOU MAY WISH TO SPEAK WITH YOUR CONTRACTOR IMMEDIATELY, OR CONTACT AN ATTORNEY, OR FOR MORE INFORMATION ON MECHANICS LIENS GO TO THE CONTRACTORS STATE LICENSE BOARD WEB SITE AT www.cslb.ca.gov.

## PROOF OF SERVICE AFFIDAVIT
California Civil Code section 8416

Failure to serve the Mechanic's Lien and Notice of Mechanic's Lien on the owner, or alternatively if the owner cannot be served on the lender or direct contractor, shall cause the Mechanic's Lien to be unenforceable as a matter of law (Civil Code Section 8024(d)). Service of the Mechanic's Lien and Notice of Mechanic's Lien must be by (1) registered mail, (2) certified mail, or (3) first-class mail evidenced by a certificate of mailing, postage prepaid, and to a residence or business address for the owner, lender or contractor. Further, a Proof of Service Affidavit (below) must be completed and signed by the person serving the Mechanic's Lien and Notice of Mechanic's Lien. This page should be completed (either one of the sections below) and recorded with the County Recorder along with the Mechanic's Lien and Notice of Mechanic's Lien.

### PROOF OF SERVICE AFFIDAVIT (ON OWNER)
California Civil Code section 8416(a)(7) and (c)(1)

I,  *Julie  Benton* , declare that I served a copy of this Mechanic's Lien and Notice of Mechanic's Lien by registered mail, certified mail, or first-class mail evidenced by a certificate of mailing, postage prepaid, addressed as follows to the owner(s) or reputed owner(s) of the property:

Company/Person Served:          Crestlloyd, LLC
(Title or capacity of person):   Owner

Service address:  8981 W. Sunset Blvd., Suite 303, West Hollywood, CA 90069

Said service address is the owner's residence, place of business, or address showed by the building permit on file with the permitting authority for the work.

Executed on   *June  24* , 2020, at Irvine, Orange County, California.

*Julie Benton*
Julie Benton

# EXHIBIT 5

| Fill in this information to identify the case: | |
|---|---|
| Debtor 1 | Crestlloyd, LLC |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California ▼ |
| Case number | 2:21-bk-18205-DS |

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1:    Identify the Claim

| | | |
|---|---|---|
| 1. | Who is the current creditor? | American Truck & Tool Rentals Inc.<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. | Has this claim been acquired from someone else? | ☑ No<br>☐ Yes.  From whom? _____ |
| 3. | Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>Shulman Bastian Friedman & Bui LLP (RDO)<br>Name<br>100 Spectrum Center Drive, Suite 600<br>Number     Street<br>Irvine              CA         92618<br>City              State      ZIP Code<br><br>Contact phone 949-340-3400<br><br>Contact email rodea@shulmanbastian.com | **Where should payments to the creditor be sent?** (if different)<br><br>American Truck & Tool Rentals Inc.<br>Name<br>88 W. Victoria Street<br>Number     Street<br>Long Beach        CA         90805<br>City              State      ZIP Code<br><br>Contact phone 562-630-5896<br><br>Contact email Tmurray@American-Rentals.com |
| | | Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br><br>__ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __ |
| 4. | Does this claim amend one already filed? | ☑ No<br>☐ Yes.  Claim number on court claims registry (if known) _____     Filed on _____<br>                                                          MM / DD / YYYY |
| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes.  Who made the earlier filing? _____ |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?** $ _____ 188,087.09 . **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Mechanic's lien (Refer to Attached)

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** Mechanic's lien

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $ _____

Amount of the claim that is secured: $ _____ 188,087.09

Amount of the claim that is unsecured: $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $ _____

Annual Interest Rate (when case was filed) _____ %

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition. $ _____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    01/13/2022
                MM / DD / YYYY

/s/ Ryan D. O'Dea
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Ryan | D. | O'Dea |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorney for Creditor/Claimant | | |
| Company | Shulman Bastian Friedman & Bui LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 100 Spectrum Center Drive, Suite 600 | | |
| | Number    Street | | |
| | Irvine | CA | 92618 |
| | City | State | ZIP Code |
| Contact phone | 949-340-3400 | Email | rodea@shulmanbastian.com |

Case 2:21-bk-18205-DS    Claim 14    Filed 01/19/22    Desc Main Document    Page 4 of
26

ATTACHMENT TO POC

| | |
|---|---|
| Original Amount: | $97,050.34 |
| 18% APR – 31 months of interest (i.e., 31 months) | $45,128.44 |
| Attorneys' fees (as of 1/12/22) | $45,908.31 |
| Total: | $188,087.09 |

Note:  Interest continues to accrue monthly at
the rate of $1,455.76 per month

Assigned for all purposes to: Santa Monica Courthouse, Judicial Officer: Elaine Mandel

Electronically FILED by Superior Court of California, County of Los Angeles on 09/10/2020 05:55 PM Sherri R. Carter, Executive Officer/Clerk of Court, by S. Watson,Deputy Clerk

1 | Ryan D. O'Dea, SBN 273478
2 | Bryan Whitmer-Cabrera, SBN 249170
**SHULMAN BASTIAN FRIEDMAN & BUI LLP**
3 | 100 Spectrum Center Drive, Suite 600
Irvine, California 92618
4 | Telephone: (949) 340-3400
Facsimile: (949) 340-3000
5 | Email: jbastian@shulmanbastian.com
bcabrera@shulmanbastian.com
6 |
7 | Attorneys For Plaintiff,
AMERICAN TRUCK & TOOL RENTALS, INC.
8 |
9 |
10 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
11 |
**COUNTY OF LOS ANGELES – SANTA MONICA COURTHOUSE**
12 |
13 |
14 |
15 | AMERICAN TRUCK & TOOL RENTALS, | Case No.
INC., a California corporation,
16 |
Plaintiff, | **VERIFIED COMPLAINT FOR**
17 | **DAMAGES**
v.
18 | 1. **BREACH OF CONTRACT**
19 | SKYLINE DEVELOPMENT INC., a | 2. **QUANTUM MERUIT**
California corporation; CRESTLLOYD, | 3. **UNJUST ENRICHMENT**
20 | LLC, a California limited liability company; | 4. **OPEN BOOK ACCOUNT**
HANKEY CAPITAL, LLC, a California | 5. **FORECLOSURE OF MECHANIC'S**
21 | limited liability company; DOES 1-25 | **LIEN**
inclusive,
22 |
Defendants. | **DEMAND FOR JURY TRIAL**
23 |
24 |
25 | Plaintiff AMERICAN TRUCK & TOOL RENTALS, INC. hereby complains and alleges
26 | against Defendants SKYLINE DEVELOPMENT INC., a California corporation; CRESTLLOYD,
27 | LLC, a California limited liability company; HANKEY CAPITAL, LLC, a California limited
28 |

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5129-000\1512140.1

1

VERIFIED COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL

1  liability company; DOES 1-25 inclusive, herein after collectively referred to as "Defendants," as
2  follows:

3      1.    Plaintiff AMERICAN TRUCK & TOOL RENTALS, INC. (hereinafter referred to
4  as "AMERICAN" or "Plaintiff") is now and at all times mentioned herein was a corporation duly
5  organized and existing under and by virtue of the laws of the State of California and doing business
6  in this state pursuant to and as authorized by the laws of the State of California and with its principal
7  place of business in the City of Long Beach and is and was an construction equipment renter duly
8  licensed to do business as such in the State of California.

9      2.    Plaintiff is informed and believes and thereon alleges that Defendant SKYLINE
10  DEVELOPMENT INC. (hereinafter referred to as "SKYLINE") is California corporation.
11  SKYLINE is now and at all times mentioned herein was doing business with the Plaintiff in the
12  State of California, County of Los Angeles.

13      3.    Plaintiff is informed and believes and thereon alleges that Defendant
14  CRESTLLOYD, LLC (hereinafter referred to as "CREST") is a California limited liability
15  company. CREST is now and at all times mentioned herein was doing business in the State of
16  California, County of Los Angeles.

17      4.    Plaintiff is informed and believes and thereon alleges that Defendant HANKEY
18  CAPITAL, LLC (hereinafter referred to as "HANKEY") is a California limited liability company.
19  HANKEY is now and at all times mentioned herein was doing business in the State of California,
20  County of Los Angeles.

21      5.    The true names and capacities, whether individual, corporate, associate or otherwise
22  of the Defendants DOES 1 - 25, inclusive, are presently unknown to Plaintiff who therefore sues
23  said Defendants by such fictitious names pursuant to Code of Civil Procedure § 474. Plaintiff is
24  informed and believes, and thereupon alleges, that each of the defendants fictitiously named herein
25  as a DOE, is legally responsible for the events and happenings hereinafter referred to which
26  proximately caused the damages to the Plaintiff as herein alleged. Plaintiff will seek leave of this
27  court to amend the complaint to insert the true names and/or capacities of such fictitiously named
28  Defendants when the same have been ascertained. Wherever in this Complaint reference is made to

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6263-002                                    2
VERIFIED COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL

1 "Defendants," such reference shall include the named defendants herein and DOES 1 - 25, inclusive,

2 unless otherwise stated.

3      6.    At all times mentioned herein, Defendants, including DOES 1 - 25, inclusive, were

4 the agents, servants, employees, representatives, principals, employers, officers, directors, partners,

5 joint venturers, alter egos, and/or co-conspirators of the other Defendants, and were, at all times,

6 acting within the course and scope of such agency, employment, relationship and/or conspiracy,

7 with the permission and consent of the other Defendants. Furthermore, Defendants, and each of

8 them, authorized and ratified the conduct and actions of each of the other Defendants.

9 <div align="center">**JURISDICTION AND VENUE**</div>

10      7.    The amount of damages sought in this action exceeds $25,000.00. This action is

11 properly brought in the County of Los Angeles in that the conduct alleged herein took place in part

12 and the contract was accepted and services were performed in the County of Los Angeles, as well

13 as the work of improvement discussed herein took place in the City of Los Angeles, County of Los

14 Angeles.

15 <div align="center">**FACTS**</div>

16      8.    On or before May 28th, 2019, SKYLINE entered into a contract with CREST to

17 perform the construction of the project known as the 944 Airole Way (the "Project"), located at: 944

18 Airole Way, Los Angeles, CA 90077, APN: 4369-026-021 (the "Property").

19      9.    On or before May 28, 2019, AMERICAN entered into a written contract (the

20 "Contract") with SKYLINE; DOES 1-25 as general contractor covering materials and/or equipment

21 to be provided by AMERICAN in relation to the Project. A true and correct copy of this Contract

22 is attached hereto as **Exhibit A**.

23      10.    At the time of entering into the Contract, CREST; HANKEY; DOES 1-25 were the

24 owners or reputed owners of the Property or had some interest in the Property.

25      11.    Pursuant to the Contract, Plaintiff was to furnish labor, services, equipment or

26 materials including: Bobcat with smooth bucket attachment; Fork attachment; SSV75-18 Track skid

27 steer SVL75; Kubota SSV75-19. In exchange, SKYLINE agreed to pay AMERICAN money, the

28 sum which is one hundred nine thousand, seventy dollars and eighty-five cents ($109,070.85)

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6263-002    **3**

VERIFIED COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL

1  subject to additions and deductions for changes in the work as may be agreed upon, plus 18% interest

2  beginning on June 1, 2019.

3      12.    Plaintiff completely and fully performed pursuant to the Contract. Defendants;

4  DOES 1-25 and each of them have failed and refused to pay Plaintiff accordingly and despite

5  Plaintiff's repeated requests for payment in the outstanding balance amount of $109,070.85.

6  <div align="center">**FIRST CAUSE OF ACTION**</div>

7  <div align="center">**Breach of Contract**</div>

8  <div align="center">**(By Plaintiff As Against SKYLINE; CREST; DOES 1-25)**</div>

9      13.    Plaintiff refers to and incorporates, as though fully set forth herein, Paragraphs 1

10  through 12, inclusive.

11      14.    At all times herein mentioned, CREST; HANKEY; DOES 1-25 was and/or is the

12  owner of the Project and the owner or reputed owner of that certain real property situated in Los

13  Angeles, California, described and located as follows: 944 Airole Way, Los Angeles, CA 90077,

14  APN: 4369-026-021 or had some interest in said Property.

15      15.    On or about January 9, 2018, Plaintiff entered into the Contract with SKYLINE;

16  DOES 1-25 covering labor, services, equipment and/or materials to be provided by Plaintiff in

17  relation to the construction of the Project on the Property.

18      16.    SKYLINE was the general contractor hired by owner CREST; HANKEY; DOES 1-

19  25 to construct the Project.

20      17.    Pursuant to the Contract, Plaintiff performed the work and labor for, and furnished

21  all necessary services, materials, and equipment to be used or consumed in and which were actually

22  used or consumed in the Project and/or contracted with other subcontractors to perform the work

23  and labor for, or to furnish all necessary services, material and equipment to be used in the Project,

24  and performed all other conditions, covenants, and promises under the Contract, on its part to be

25  performed.

26      18.    Plaintiff has paid the claims of all claimants who have furnished labor, services,

27  equipment, and materials as required under the Contract.

28

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6263-002

**4**

VERIFIED COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL

19.  Plaintiff has performed all other conditions, covenants, and promises under the Contract, on its part to be performed.

20.  The whole of the Property on which the Project is situated is required for the convenient use and occupation of the Project.

21.  Although demand therefore has been made since the work was performed and all necessary services, materials, and equipment were furnished, some of the Contract price was or has been paid, and the sum of $109.070.85 is still due and owing thereon to Plaintiff.  Pursuant to the Contract, Plaintiff is entitled to its attorney fees and legal costs in this action.

## SECOND CAUSE OF ACTION

### Quantum Meruit

### (By Plaintiff As Against All Defendants)

22.  Plaintiff refers to and incorporates, as though fully set forth herein, Paragraphs 1 through 21, inclusive.

23.  Within the past two years, in the County of Los Angeles, State of California, Plaintiff furnished labor, services, equipment and/or materials (including Bobcat with smooth bucket attachment; Fork attachment; SSV75-18 Track skid steer SVL75; Kubota SSV75-19) to SKYLINE; CREST; HANKEY; DOES 1-25 and each of them for the Project, and at each of their special instance and request, and for which SKYLINE; CREST; HANKEY; DOES 1-25 promised to pay Plaintiff the reasonable value of such labor and services. The services and labor were furnished by Plaintiff pursuant to the Contract, and are reasonably worth the sum of $109,070.85 for which Plaintiff has not been paid.

24.  At all times mentioned herein, the value of the labor and services furnished and remaining unpaid is at least $109,070.85, plus prejudgment interest at the maximum legal rate.

25.  Although demand in full has been made, there is now due, owing and unpaid from each of the Defendants to Plaintiff in the amount of $109,070.85, plus interest at the statutory rate of 10%, prompt payment penalties of 2% per month on all progress and retention payments wrongfully withheld, and costs of suit, including attorneys' fees, as provided by Civil Code Sections 8800 and 8812.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6263-002

**5**

VERIFIED COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL

## THIRD CAUSE OF ACTION

### Unjust Enrichment

### (By Plaintiff As Against All Defendants)

26.    Plaintiff refers to and incorporates, as though fully set forth herein, Paragraphs 1 through 25, inclusive.

27.    When the Contract was formed, CREST; HANKEY; DOES 1-25 was/were the owner of the Property. SKYLINE was the contractor hired by CREST; HANKEY; DOES 1-25 to construct the Project on the Property. SKYLINE then contracted with Plaintiff to provide equipment including Bobcat with smooth bucket attachment; Fork attachment; SSV75-18 Track skid steer SVL75; Kubota SSV75-19, for use on the Project.

28.    Pursuant to the request of SKYLINE; CREST; HANKEY; DOES 1-25, Plaintiff furnished construction equipment and machines which were used in the Project.  Plaintiff's provision of construction equipment and machines have enriched SKYLINE; CREST; HANKEY: DOES 1-25, though none of these Defendants have compensated Plaintiff in any fashion for the outstanding and remaining amount of $109,070.85 due to Plaintiff. The reasonable value of Plaintiff's rental equipment, labor and/or services is not less than $109,070.85 plus interest.

29.    SKYLINE; CREST; HANKEY: DOES 1-25 have been unjustly enriched by virtue of Plaintiff's provision of construction equipment and machines and in order to avoid injustice, Plaintiff is entitled to recover the sum of at least $109,070.85, together with interest thereon at the maximum legal rate, from Defendants, plus its attorney fees and legal costs pursuant to the Contract.

## FOURTH CAUSE OF ACTION

### Open Book Account

### (By Plaintiff As Against All Defendants)

30.    Plaintiff refers to and incorporates, as though fully set forth herein, Paragraphs 1 through 29, inclusive.

31.    Within two years preceding the commencement of this action, each of the Defendants became indebted to Plaintiff on an open book account for money due in the sum of $109,070.85 for

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6263-002

**6**

VERIFIED COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL

1  labor and services furnished by Plaintiff to each of the Defendants and pursuant to the terms of the

2  Contract.

3      32.    Although demanded by Plaintiff from each of the Defendants, none of the

4  $109,070.85 has been paid by any Defendant to Plaintiff.

5      33.    There is now due, owing and unpaid from each of the Defendants the sum of

6  $109,070.85, with legal interest thereon until paid.

7      34.    As a result of each of the Defendants' failure to pay the sum of $109,070.85, Plaintiff

8  was required to retain legal counsel and has been forced to incur attorney's fees, all of which are

9  recoverable herein pursuant to California Civil Code section 1717.5, and pursuant to the Contract.

10                    **FIFTH CAUSE OF ACTION**

11                    **Foreclosure of Mechanic's Lien**

12        **(By Plaintiff as to Defendants CREST; HANKEY; DOES 1-25)**

13     35.    Plaintiff refers to and incorporates, as though fully set forth herein, Paragraphs 1

14  through 34, inclusive.

15     36.    At all times herein mentioned, CREST; HANKEY; DOES 1-25 were the owner or

16  reputed owner of the Property.

17     37.    All work on the Project has not yet been completed.  To the best of Plaintiff's

18  knowledge, Defendants have not yet recorded a notice of completion or cessation on the Project.

19     38.    After Plaintiff completed and provided all of the equipment/machines required by

20  the Contract, on June 29, 2020, Plaintiff duly filed and recorded in the Los Angeles County

21  Recorders' Office as Document No. 2020-0709010 the claim of lien ("Mechanic's Lien") duly

22  verified by the oath of Tony Murray, Plaintiff's authorizes Agent, a full and correct copy of which

23  is attached hereto as **Exhibit "B,"** and made a part hereof by reference.

24     39.    In this claim of lien, Plaintiff claimed a mechanic's lien on the work of improvement

25  and the Property for the amount of the unpaid Contract price alleged above which price is the

26  reasonable value of all labor, materials, services, and/or equipment Plaintiff has furnished. Plaintiff

27  has further incurred indebtedness in the sum of $500.00, the necessary costs of recording and

28  verifying the claim of lien.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6263-002                              **7**
            VERIFIED COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL

40.    Within the time required by law, Plaintiff duly served its preliminary notice, specifically on or about June 25, 2020. Likewise, on June 29, 2020, and within the time required by law, Plaintiff recorded the Mechanic's Lien and gave notice to the appropriate parties as required by law.

41.    Plaintiff is informed and believes and thereon alleges that each of the Defendants claim to have some right, title, or interest in the above-described Property, the exact nature of which claims are unknown to Plaintiff, but which claims are subject and subordinate to the claim of lien of Plaintiff.

WHEREFORE, Plaintiff prays for judgment as follows:

1.    For the principal sum of $109,070.85 on the First, Second, Third and Fourth Causes of Action, together with pre-judgment interest.

2.    Adjudging on the Fifth Cause of Action that the rights, claims, ownership, liens, titles, and demands of Defendants, and each of them, in the Property are subsequent to and subject to the lien of Plaintiff.

3.    Adjudging on the Fifth Cause of Action that the Mechanic's Lien claimed in the claim of lien be enforced, and that the usual judgment be made for the sale of the Property according to law by a commissioner to be appointed by the court; that the proceeds of the sale be applied in payment of the amounts including interest at the rate of ten percent (10%) per day from the date of completion of the Project, to date of entry of judgment due to Plaintiff; that each of the Defendants and all persons claiming under any of them, subsequent to the mechanic's lien of Plaintiff, whether as lien claimants, judgment creditors, purchasers, encumbrancers, or otherwise, be barred and foreclosed from all rights, claims, interests, or equity of redemption in the Property and every part of the Property when time for redemption has passed.

4.    Adjudging on the Fifth Cause of Action that if there is a deficiency of proceeds to satisfy the amounts due to the Plaintiff, judgment for the deficiency be entered against the Defendants following proceedings prescribed by law.

5.    For the costs of recording the mechanic's lien in the amount of $500.00.

6.    Permitting Plaintiff to become a purchaser at the lien-enforcement sale.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6263-002

8

VERIFIED COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL

7.    For attorneys' fees as allowed by Cal. Civ. Code section 1717.5 and/or Cal. Civ. Code sections 8800 and 8812, and pursuant to the Contract.

8.    For costs of suit herein incurred.

9.    Any other and further relief the court considers proper.

Dated: September 1, 2020                   **SHULMAN BASTIAN FRIEDMAN & BUI LLP**


                                    By:  ___\S\ Bryan Cabrera_____
                                         Ryan D. O'Dea, Esq.
                                         Bryan Cabrera, Esq.,
                                         Attorneys for Plaintiff,
                                         AMERICAN TRUCK & TOOL RENTALS, INC.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6263-002                                        **9**

VERIFIED COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL

<div align="center">

**DEMAND FOR JURY TRIAL**

</div>

Plaintiff in this action hereby demands a trial by jury.

Dated: September 1, 2020                **SHULMAN BASTIAN FRIEDMAN & BUI LLP**


By:    \S\  Bryan Cabrera
          Ryan D. O'Dea, Esq.
          Bryan Cabrera, Esq.,
          Attorneys for Plaintiff,
          AMERICAN TRUCK & TOOL RENTALS, INC.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6263-002

**10**

VERIFIED COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL

**VERIFICATION**

I, Tony Murray, am the Authorized Agent of the Plaintiff in this action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: 9/4        , 2020

Authorized Agent for Plaintiff,
AMERICAN TRUCK & TOOL RENTALS, INC.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6263-002

**11**

VERIFIED COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL

# EXHIBIT A

Case 2:21-bk-18205-DS   Claim 14   Filed 01/18/22   Desc Main Document   Page 17 of
26





Long Beach (562) 630-5896 Fax (310) 885-1406
Cypress **(714) 527-5171** Fax (714) 527-1283
Bellflower **(562) 630-5897** Fax (562) 630-8307

www.american-rentals.com

Tax I.D. No. 33-0036929

HOURS: MON-SAT 7:00 - 5:00

Remit to: 88 Victoria Street, Long Beach CA 90805

PLEASE REMIT FROM FINAL INVOICE.

**EQUIPMENT PROTECTION PLAN:** FOR AN ADDITIONAL FEE OF THE TOTAL RENTAL, OR FIXED AMOUNT, AMERICAN RENTALS, INC., AGREES TO WAIVE CLAIMS FOR DAMAGE TO VEHICLES/EQUIPMENT AS SPECIFIED IN THIS CONTRACT. EQUIPMENT PROTECTION PLAN IS REQUIRED UNLESS CUSTOMER HAS PREVIOUSLY SUPPLIED AMERICAN RENTALS, INC., WITH A CERTIFICATE OF INSURANCE SHOWING THAT PROTECTION IS PROVIDED AMERICAN RENTALS, INC., FOR ANY DAMAGE TO THE RENTED ITEM. CUSTOMER UNDERSTANDS THAT THE EQUIPMENT PROTECTION PLAN IS NOT INSURANCE. CUSTOMER ACCEPTS THE EQUIPMENT PROTECTION PLAN BY INITIALIZING IN THE INDICATED SPACE. ☑

CUSTOMER HAS BEEN GIVEN AND UNDERSTANDS WRITTEN AND/OR ORAL OPERATING AND SAFETY INSTRUCTIONS.  CUSTOMER IS RESPONSIBLE FOR ALL COLLECTION COSTS. SEE PARAGRAPH #15 ON REVERSE SIDE.



By: _Tony Muxxx_

SIGNING FOR CUSTOMER & PERSONALLY
WE SELL TIME • WE CHARGE FOR ALL TIME OUT INCLUDING SATURDAYS, SUNDAYS AND HOLIDAYS.

TO AVOID OVERTIME CHARGE - MAXIMUM USE IS
8 HRS. IN A 24 HOUR PERIOD
CALL OFFICE TO TERMINATE RENTAL
CUSTOMER IS RESPONSIBLE FOR THEFT OF EQUIPMENT
KEEP IT LOCKED
CUSTOMER IS RESPONSIBLE FOR CHECKING WATER AND OIL DAILY.

IF EQUIPMENT FAILS, DO NOT
ATTEMPT TO REPAIR, NOTIFY OUR
OFFICE AT ONCE BY CALLING
1 (877) 975-7368

EXHIBIT B

**This page is part of your document - DO NOT DISCARD**



## 20200709010



**Pages:**
**0004**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**06/29/20 AT 01:35PM**

| | |
|---|---|
| FEES: | 26.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 101.00 |



LEADSHEET



202006290260054

00018445116



010884349

**SEQ:**
**01**

SECURE - Daily - Time Sensitive



**THIS FORM IS NOT TO BE DUPLICATED**



440_5278734_

FOR REFERENCE ONLY: 20200709010

RECORDING REQUESTED BY

**AMERICAN TRUCK & TOOL RENTALS**

WHEN RECORDED MAIL TO:

**AMERICAN TRUCK & TOOL RENTALS
INC/AMERICAN RENTALS
C/O CAPRENOS INC
4345 MURPHY CANYON RD #200
SAN DIEGO CA 92123**

[Space above this line for Recorder's use only]

## CLAIM OF MECHANICS LIEN
(CA Civil Code 8400 et seq)

THE UNDERSIGNED CLAIMANT,

AMERICAN TRUCK & TOOL RENTALS INC/AMERICAN RENTALS

CLAIMS A LIEN FOR LABOR, SERVICES, EQUIPMENT, AND/OR MATERIALS UNDER CALIFORNIA CIVIL CODE SECTION 8416 ET SEQ., UPON THE PREMISES HEREINAFTER DESCRIBED, AND UPON EVERY ESTATE OR INTEREST IN SUCH STRUCTURES, IMPROVEMENTS AND PREMISES HELD BY ANY PARTY HOLDING ANY ESTATE THEREIN.

THE LABOR, SERVICES, EQUIPMENT, AND/OR MATERIALS, WERE FURNISHED FOR THE CONSTRUCTION OF THOSE CERTAIN BUILDINGS, IMPROVEMENTS, OR STRUCTURES, NOW UPON THAT CERTAIN PARCEL OF LAND SITUATED IN THE COUNTY OF

_____ LOS ANGELES _____ STATE OF CALIFORNIA, SAID LAND DESCRIBED AS FOLLOWS:

LEGAL DESCRIPTION:

944 AIROLE WAY
LOS ANGELES CA 90077

APN #4369-026-021

THE MECHANICS LIEN IS CLAIMED FOR THE FOLLOWING GENERALLY DESCRIBED WORK, LABOR, SERVICES, EQUIPMENT OR MATERIALS:

BOBCAT WITH SMOOTH BUCKET
ATTACHMENT; FORK ATTACHMENT;
SSV75-18 TRACK SKID STEER
SVL75; KUBOTA SSV75-19

THE SUM OF _____$97,050.34_____                                                              (date when balance
TOGETHER WITH INTEREST THEREON AT THE RATE OF _18.00_ PERCENT PER ANNUM FROM 06/01/2019   became due)
IS DUE CLAIMANT, AFTER DEDUCTING ALL JUST CREDITS AND OFFSETS, FOR THE LABOR, SERVICES, EQUIPMENT, AND/OR MATERIALS FURNISHED BY CLAIMANT.

CLAIMANT FURNISHED THE LABOR, SERVICES, EQUIPMENT, AND/OR MATERIALS, AT THE REQUEST OF, OR UNDER CONTRACT WITH:

SKYLINE DEVELOPMENT INC

8981 W SUNSET BLVD #303

LOS ANGELES CA 90069

THE OWNER(S) OR REPUTED OWNER(S) OF SAID PREMISES IS/ARE:

CRESTLLOYD LLC
8981 W SUNSET BLVD #303
LOS ANGELES  CA 90069

DATE:     06/25/2020
NAME OF CLAIMANT: AMERICAN TRUCK & TOOL RENTALS INC/AMERICAN RENTALS

BY: _____     Cindee Wood _____
                (Claimant Name)
            (Signature of Claimant or Authorized Agent)
                    [Page 1 of 3]

Forms by Caprenos Inc.

RECORDING REQUESTED BY

**AMERICAN TRUCK & TOOL RENTALS**

WHEN RECORDED MAIL TO:

**AMERICAN TRUCK & TOOL RENTALS
INC/AMERICAN RENTALS
C/O CAPRENOS INC
4345 MURPHY CANYON RD #200
SAN DIEGO CA 92123**

## CLAIM OF MECHANICS LIEN
(CA Civil Code 8400 et seq)

[Space above this line for Recorder's use only]

THE UNDERSIGNED CLAIMANT,

### AMERICAN TRUCK & TOOL RENTALS INC/AMERICAN RENTALS

CLAIMS A LIEN FOR LABOR, SERVICES, EQUIPMENT, AND/OR MATERIALS UNDER CALIFORNIA CIVIL CODE SECTION 8416 ET SEQ., UPON THE PREMISES HEREINAFTER DESCRIBED, AND UPON EVERY ESTATE OR INTEREST IN SUCH STRUCTURES, IMPROVEMENTS AND PREMISES HELD BY ANY PARTY HOLDING ANY ESTATE THEREIN.

THE LABOR, SERVICES, EQUIPMENT, AND/OR MATERIALS, WERE FURNISHED FOR THE CONSTRUCTION OF THOSE CERTAIN BUILDINGS, IMPROVEMENTS, OR STRUCTURES, NOW UPON THAT CERTAIN PARCEL OF LAND SITUATED IN THE COUNTY OF

_____ **LOS ANGELES** _____ STATE OF CALIFORNIA, SAID LAND DESCRIBED AS FOLLOWS:

LEGAL DESCRIPTION:

**944 AIROLE WAY
LOS ANGELES CA 90077**

APN #4369-026-021

THE MECHANICS LIEN IS CLAIMED FOR THE FOLLOWING GENERALLY DESCRIBED WORK, LABOR, SERVICES, EQUIPMENT OR MATERIALS:

**BOBCAT WITH SMOOTH BUCKET
ATTACHMENT; FORK ATTACHMENT;
SSV75-18 TRACK SKID STEER
SVL75; KUBOTA SSV75-19**

THE SUM OF ___**$97,050.34**_____                                    (date when balance
TOGETHER WITH INTEREST THEREON AT THE RATE OF _**18.00**_ PERCENT PER ANNUM FROM**06/01/2019**_____ became due)
IS DUE CLAIMANT, AFTER DEDUCTING ALL JUST CREDITS AND OFFSETS, FOR THE LABOR, SERVICES, EQUIPMENT, AND/OR MATERIALS FURNISHED BY CLAIMANT.

CLAIMANT FURNISHED THE LABOR, SERVICES, EQUIPMENT, AND/OR MATERIALS, AT THE REQUEST OF, OR UNDER CONTRACT WITH:

**SKYLINE DEVELOPMENT INC**

**8981 W SUNSET BLVD #303**

**LOS ANGELES CA 90069**

THE OWNER(S) OR REPUTED OWNER(S) OF SAID PREMISES IS/ARE:

**CRESTLLOYD LLC**

**8981 W SUNSET BLVD #303**

**LOS ANGELES CA 90069**

DATE:    08/25/2020
NAME OF CLAIMANT:AMERICAN TRUCK & TOOL RENTALS INC/AMERICAN RENTALS

# VERIFICATION

I, _Cindee Wood_____ , state: I am the _____ AGENT_____

("Owner of", "President of", "Authorized Agent of", "Partner of", etc.) the claimant named in the foregoing Mechanic's Lien. I have read said Mechanic's Lien and know the contents thereof; the same is true of my own knowledge.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on _____08/25/2020_____ (date), at _____SAN DIEGO, CA_____ (city & state).

_____ Cindee Wood
(Signature of Claimant or Authorized Agent)

## NOTICE OF MECHANICS LIEN
## ATTENTION!

Upon the recording of the enclosed MECHANICS LIEN with the county recorder's office of the county where the property is located, your property is subject to the filing of a legal action seeking a court ordered

foreclosure sale of the real property on which the lien has been recorded. That legal action must be filed with the court no later than 90 days after the date the mechanic's lien is recorded.

The party identified in the enclosed mechanics Lien may have provided labor or materials for improvements to your property and may not have been paid for these items. You are receiving this notice because it is

a required step in filing a mechanic's lien foreclosure action against your property. The foreclosure action will seek a sale of your property in order to pay for unpaid labor, materials, or improvements

provided to your property. This may affect your ability to borrow against, refinance, or sell the property until the mechanic's lien is released.

**BECAUSE THE LIEN AFFECTS YOUR PROPERTY, YOU MAY WISH TO SPEAK WITH YOUR CONTRACTOR IMMEDIATELY, OR CONTACT AN ATTORNEY, OR FOR MORE INFORMATION ON MECHANIC'S LIENS GO TO THE CONTRACTORS' STATE LICENSE BOARD WEBSITE AT www.cslb.ca.gov.**

Please complete and sign at least one (1) of the following proofs of service and record it along with your Mechanic's Lien. Always attempt to serve the owner or reputed owner.  Per California Civil Code Section 8416(c)(2) you must use the "ALTERNATIVE PROOF OF SERVICE AFFIDAVIT" if the owner or reputed owner cannot be served under Civil Code Section 8416(c)(1).  Note that there is no prohibition from using both Proof of Service Affidavits and serving both the owner/reputed owner as well as the construction lender and/or original contractor.

## PROOF OF SERVICE AFFIDAVIT FOR OWNER/REPUTED OWNER
### California Civil Code Section 8416(a)(7), (c)(1)

I, _Cindee Wood_____, declare that I served a copy of the enclosed MECHANIC'S LIEN and NOTICE OF

MECHANIC'S LIEN by Registered Mail, Certified Mail, or First Class Mail, evidenced by a certificate of mailing, postage prepaid,

addressed to the following owner or reputed owner of the Property_____ **CRESTLLOYD LLC** _____
(Name and title of the person served)

at the following address: _____ **6981 W SUNSET BLVD #303 LOS ANGELES  CA 90069** _____
(Owner's residence or place of business or owner's address on building permit or otherwise as per California Civil Code Section 3097(j))

on this date: ___08/25/2020____, Signed at _____ **SAN DIEGO, CA** _____
(Month/Day/Year)                                    (City & State of person making service)

on this date: ___08/25/2020____,                              _Cindee Wood_
(Month/Day/Year)                                    (Signature of person making service)

## ALTERNATE PROOF OF SERVICE AFFIDAVIT
### California Civil Code Section 8416(a)(7), (c)(2)

Use this alternative Proof of Service affidavit if the owner or reputed owner cannot be served per California Civil Code Section 3084 (c)(1)(A), as specified above.  You may also use this alternative Proof of Service Affidavit if you have served the owner or reputed owner and also want to serve the construction lender and/or original contractor as an additional measure.

I, _Cindee Wood_____, declare that the owner or reputed owner of the property specified in the

enclosed MECHANIC'S LIEN and NOTICE OF MECHANIC'S LIEN could not be served by Registered Mail, Certified Mail, or First Class Mail,

evidenced by a certificate of mailing, postage prepaid as specified in California Civil Code Section 8416 (c)(1).  Therefore, pursuant to California Civil

Code Section 8416 (c)(2), I served a copy of the enclosed MECHANIC'S LIEN and NOTICE OF MECHANIC'S LIEN by Registered Mail,

Certified Mail or First Class Mail, evidenced by a certificate of mailing, postage prepaid, addressed to the

construction lender _____ **HANKEY CAPITAL LLC** _____ at the following address:
(Name of construction lender)

_____ **4751 WILSHIRE BLVD #110 LOS ANGELES  CA 90010** _____ or to the
(Construction lender address)

original contractor _____ **SKYLINE DEVELOPMENT INC.** _____ at the following address:
(Name of original contractor)

_____ **6981 W SUNSET BLVD #303 LOS ANGELES  CA 90069** _____
(Original contractor address)

on this date: ___08/25/2020____, Signed at _____ **SAN DIEGO, CA** _____

## Request for Mechanics Lien - California

Reset

Please complete this form, then fax the signed copy to Caprenos at (858) 560-7626.

Job Address 944 Airole Way, Los Angeles, CA 90077

The exact dollar amount that is due on this job is $ 97,050.34

I furnished Bobcat with Smooth Bucket attachment; fork attachment; SSV75-18 Track Skid Steer SVL75; Kubota SSV75
(Type of Materials or Service)

At the request of: Skyline Development Inc.
(Your Customers Name or Company)

| 8981 W Sunset Blvd. #303, | Los Angeles, | CA | 90069 |
|---|---|---|---|
| Street Address | City | State | Zip |

Please check one of the following:

☐ Do not include any interest on this lien form.

☑ My contract provides that I may charge interest at the rate of 18.00 % per annum from the date the balance becomes due. The date this balance became due was
Month 06    Day 1    Year 2019

☐ The legal rate of interest (10% per annum) should be included in this lien form. The date that the unpaid balance became due was: Month _____ Day _____ Year _____

**Attention:** *If Caprenos prepared a Preliminary Notice for you on this job site, please note the number of this notice here:*
*Prelim Number L49546    Log# 111283    .*

*If a Preliminary Notice was prepared by you or someone else for the above jobsite, please be sure to attach a copy to this request.*

Your prepared form will be mailed back to you for your signing. It will come to you in the form of a total package with no guesswork in it for you. You will be instructed to sign each copy and which envelope to place each copy into. All envelopes will be addressed and posted for your convenience.

You will also receive a check list for the lien package. This check list will help you with the follow through as to what you should do after your lien is formally recorded.

**I understand that the preparation of the Mechanics=Lien Form is a service only. Caprenos Inc, assumes no responsibility or liability for the actual recording or the contents of the completed Mechanics=Lien Form.**

I am the    ☐ Owner    ☑ President    ☐ Manager of the company noted below:

American Truck & Tool Rentals, Inc./American Rentals
(Your Companys Full Name)
88 W Victoria St.
(Address)
Long Beach    CA    90805
City    State    Zip

Phone ( 562 ) 630-5896

_____
(Signature)
President / CEO
(Title)

Note: All requests for Lien Form Preparation must be prepaid. Please attach your check in the amount of $200.00 for 5-7 working days or $250.00 for same day service to this request. Thank You

06/22/2020
(Date)

CAPRENOS INC ● 4345 Murphy Canyon Rd Suite 200 ● San Diego, CA  92123 ● (800) 854-2100 ● Fax (858) 560-7626

| THIS IS NOT A LIEN. THIS NOTICE IS GIVEN PURSUANT TO CALIFORNIA CIVIL CODE §§8034(a), 8102, 8200 ET SEQ. PRIVATE WORKS AND CALIFORNIA CIVIL CODE §§8034(b), 8102, 9300 ET SEQ. PUBLIC WORKS. | **Customer Copy** | **CALIFORNIA PRELIMINARY NOTICE** |

**111283**

7196 9004 5231 1128 3024         **L49546**

YOU ARE HEREBY NOTIFIED THAT...

| OWNER or Reputed Owner (on private work) or PUBLIC AGENCY (on public work)  02 |

AMERICAN RENTALS INC                                            2917
88 VICTORIA ST
LONG BEACH CA 90805

CRESTLLOYD LLC/SKYLINE DEV INC
8981 W SUNSET BLVD #303
LOS ANGELES CA 90069

has furnished or will furnish work, labor, services, equipment or material of the following general description:

BUCKET KUBOTA SMOOTH 68, BOBCAT FORK
ATTACHMENT, KUBOTA SSV75-18, TRACK SKID
STEER SVL75, KUBOTA SSV75-19

| CONSTRUCTION LENDER or Reputed Construction Lender, if any.  01 |

HANKEY CAPITAL LLC
4751 WILSHIRE BLVD #110
LOS ANGELES CA 90010

for the building, structure or other work of improvement located at the following address or site:

C #421605
944 AIROLE WY
LOS ANGELES CA

| DIRECT CONTRACTOR or Reputed Direct Contractor, if any. |

310-597-4730
SKYLINE DEVELOPMENT INC
8981 W SUNSET BLVD #303
LOS ANGELES CA 90069

An estimate of the total price of labor, services, equipment and/or materials furnished or to be furnished is:

$ 100,000.00

| SUB CONTRACTOR /person or firm who contracted for the purchase of such labor, services, equipment or materials is: |

310-597-4730
SKYLINE DEVELOPMENT INC
8981 W SUNSET BLVD #303
LOS ANGELES CA 90069

BY: *Cindee Wood*          Agent      Dated: 12/20/2019
     (Signature)              (Title)
     R

**NOTICE TO PROPERTY OWNER**

**EVEN THOUGH YOU HAVE PAID YOUR CONTRACTOR IN FULL, if the person or firm has given you this notice is not paid in full for labor, service, equipment, or material provided or to be provided to your construction project, a lien may be placed on your property. Foreclosure of the lien may lead to loss of all or part of your property. You may wish to protect yourself against this by (1) requiring your contractor to provide a signed release by the person or firm that has given you this notice before making payment to your contractor, or (2) any other method that is appropriate under the circumstances.**
This notice is required by law to be served by the undersigned as a statement of your legal rights. This notice is not intended to reflect upon the financial condition of the contractor or the person employed by you on the construction project.
If you record a notice of cessation or completion of your construction project, you must within 10 days after recording, send a copy of the notice of completion to your contractor and the person or firm that has given you this notice.  The notice must be sent by registered or certified mail. Failure to send the notice will extend the deadline to record a claim of lien.  You are not required to send the notice if you are a residential homeowner of a dwelling containing four or fewer units.

**PROOF OF SERVICE BY MAIL AFFIDAVIT**

I, Cindee Wood, declare that I served copies of the above PRELIMINARY NOTICE (PRIVATE WORK/PUBLIC WORK) by First Class Certified or Registered Mail service, postage prepaid, addressed to each of the parties at the addresses shown above on 12/20/2019. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

BY: *Cindee Wood*          Cindee Wood, Agent
Executed at SAN DIEGO, California on 12/20/2019.

This form prepared by CAPRENOS INC 4345 Murphy Canyon Rd Suite 200, San Diego CA 92123 (800) 854-2100, FAX (858) 560-7626

# EXHIBIT 6

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | **CRESTLLOYD, LLC** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | **21-bk-18205-DS** |

## Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1:    Identify the Claim

| | | |
|---|---|---|
| 1. Who is the current creditor? | **KENNCO PLUMBING, INC.** <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor **none** | |
| 2. Has this claim been acquired from someone else? | ☑ No <br> ☐ Yes. From whom? _____ | |
| 3. Where should notices and payments to the creditor be sent? <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Where should notices to the creditor be sent? <br><br> **Law Offices of Gary A. Weis** <br> Name <br><br> **17451 Sarita Ave.** <br> Number        Street <br><br> **Canyon Country**        **CA**        **91387** <br> City                State        ZIP Code <br><br> Contact phone **661-367-3033** <br><br> Contact email **gary@garyweisattorney.com** <br><br> Uniform claim identifier for electronic payments in chapter 13 (if you use one): <br><br> _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | Where should payments to the creditor be sent? (If different) <br><br> _____ <br> Name <br><br> _____ <br> Number        Street <br><br> _____ <br> City                State        ZIP Code <br><br> Contact phone _____ <br><br> Contact email _____ |
| 4. Does this claim amend one already filed? | ☑ No <br> ☐ Yes. Claim number on court claims registry (if known) _____ | Filed on _____ <br> MM  / DD  / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No <br> ☐ Yes. Who made the earlier filing? _____ | |

**Part 2:    Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6.  Do you have any number you use to identify the debtor? | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____ |
| 7.  How much is the claim? | $ _____ 85,560.17 . Does this amount include interest or other charges?<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8.  What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Plumbing labor and materials, secured by Perfected Lien. |
| 9.  Is all or part of the claim secured? | ☐ No<br>☑ Yes.  The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:**   Recorded Mechanic's Lien and State Court Action to Perfect<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $ 250,000,000.00<br>**Amount of the claim that is secured:** $ 85,560.17<br>**Amount of the claim that is unsecured:** $ 0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $ 85,560.17<br><br>**Annual Interest Rate** (when case was filed) 10.00 %<br>☑ Fixed<br>☐ Variable |
| 10.  Is this claim based on a lease? | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition. $ _____ |
| 11.  Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | Amount entitled to priority |
|---|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one:* | | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | | $_____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3:    Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    12/15/2021
                    MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| Name | Gary A. Weis | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorney at Law | | |
| Company | Law Offices of Gary A. Weis | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 17451 Sarita Ave. | | |
| | Number    Street | | |
| | Canyon Country | CA | 91387 |
| | City | State | ZIP Code |
| Contact phone | 661-367-3033 | Email | gary@garyweisattorney.com |



**KENNCO Plumbing, Inc.**
26575 Ruether Ave
Santa Clarita CA 91350
661-251-5366

# STATEMENT

Statement Date: 12/09/2021

License: 595570

**Billed To:**  Crestlloyd, LLC
8981 W. Sunset Blvd., St. 303
West Hollywood CA 90069

**Project:** Airole Residence
944 Airole Way
Los Angeles CA 90077

| Invoice# | Due Date | Description | Amount | Paid/Credit | Now Due |
|----------|----------|-------------|--------|-------------|---------|
| 19734 | 02/10/2021 | Progress Billing# 34 | 18,414.84 | | 18,414.84 |
| 19741 | 02/12/2021 | KPCO#82 & #83 | 5,571.00 | | 5,571.00 |
| 19797 | 03/24/2021 | Progress Billing# 35 | 19,226.25 | | 19,226.25 |
| 19910 | 06/09/2021 | Progress Billing# 36 | 14,659.11 | | 14,659.11 |
| 20087 | 09/01/2021 | Progress Billing# 37 | 27,688.97 | | 27,688.97 |
| | | **Totals:** | **85,560.17** | | **85,560.17** |

| Current | 1-30 Days | 31-60 Days | 61-90 Days | 91+ Days | Retention |
|---------|-----------|------------|------------|----------|-----------|
| 0.00 | 0.00 | 0.00 | 0.00 | 85,560.17 | 0.00 |

| | *Please Pay This Amount* | **85,560.17** |
|---|---|---|

| | | |
|---|---|---|
| **Contract Summary** | Original Contract Amount | 656,650.00 |
| | Net Changes to Date | 719,114.68 |
| | New Contract Amount | 1,375,764.68 |
| | Total Invoiced to Date | 1,375,764.68 |
| | Remaining Balance on Contract | 0.00 |

*Terms: All invoices are due and payable within  0DY   of receipt. A service charge of  18.00 %
per anum will be computed on all amounts overdue on regular statement dates.*

*Thank you for your prompt payment.*



**KENNCO Plumbing, Inc.**
26575 Ruether Ave
Santa Clarita CA 91350
661-251-5366

License: 595570

# Contract Invoice

Invoice#: 19734

Date: 02/10/2021

**Billed To:** Crestlloyd, LLC
8981 W. Sunset Blvd., St. 303
West Hollywood CA 90069

**Job:** Airole Residence
2248   944 Airole Way
Los Angeles CA 90077

| Due Date: 02/10/2021 | Terms: 0DY | Order# |
|---|---|---|

| Description | Amount |
|---|---|
| Progress Billing# 34 | 18,414.84 |

**Notes:**

---

*A service charge of 18.00% per annum will be charged on all amounts overdue on regular statement dates.*

*Call Kennco Plumbing for your Backflow Prevention Device Tests.*

*Kennco Plumbing has 24 hour Service & Repair for your convenience.*

*Thank you for your prompt payment!*

| Invoice Total: | 18,414.84 |
|---|---|
| Retention: | 0.00 |
| Amount Paid: | 0.00 |
| **Amount Due** | **18,414.84** |



**KENNCO Plumbing, Inc.**
26575 Ruether Ave
Santa Clarita CA 91350
661-251-5366

License: 595570

# Contract Invoice

Invoice#: 19741

Date: 02/12/2021

**Billed To:** Crestlloyd, LLC
8981 W. Sunset Blvd., St. 303
West Hollywood CA 90069

**Job:** Airole Residence
2248   944 Airole Way
Los Angeles CA 90077

**Due Date:** 02/12/2021          **Terms:** 0DY                        **Order#**

| Description | Amount |
|---|---|
| KPCO#82 - Kleen water filters | 2,221.00 |
| KPCO#83 - Fire sprinkler trim | 3,350.00 |

**Notes:**

*A service charge of 18.00% per annum will be charged on all amounts overdue on regular statement dates.*

*Call Kennco Plumbing for your Backflow Prevention Device Tests.*

*Kennco Plumbing has 24 hour Service & Repair for your convenience.*

*Thank you for your prompt payment!*

| | |
|---|---|
| Invoice Total: | 5,571.00 |
| Retention: | 0.00 |
| Amount Paid: | 0.00 |
| **Amount Due** | **5,571.00** |



**KENNCO Plumbing, Inc.**
26575 Ruether Ave
Santa Clarita CA 91350
661-251-5366

License: 595570

# Contract Invoice

Invoice#:  19797

Date: 03/24/2021

**Billed To:**  Crestlloyd, LLC
8981 W. Sunset Blvd., St. 303
West Hollywood CA 90069

**Job:**  Airole Residence
2248   944 Airole Way
Los Angeles CA 90077

---

**Due Date:** 03/24/2021            **Terms:** 0DY                **Order#**

---

| Description | Amount |
|---|---|
| Progress Billing# 35 | 19,226.25 |

**Notes:**

---

*A service charge of 18.00% per annum will be charged on all amounts
overdue on regular statement dates.*

*Call Kennco Plumbing for your Backflow Prevention Device Tests.*

*Kennco Plumbing has 24 hour Service & Repair for your convenience.*

*Thank you for your prompt payment!*

| | |
|---|---|
| Invoice Total: | 19,226.25 |
| Retention: | 0.00 |
| Amount Paid: | 0.00 |
| **Amount Due** | **19,226.25** |



**KENNCO Plumbing, Inc.**
26575 Ruether Ave
Santa Clarita CA 91350
661-251-5366

License: 595570

# Contract Invoice

Invoice#: 19910

Date: 06/09/2021

**Billed To:** Crestlloyd, LLC
8981 W. Sunset Blvd., St. 303
West Hollywood CA 90069

**Job:** Airole Residence
2248   944 Airole Way
Los Angeles CA 90077

**Due Date:** 06/09/2021          **Terms:** 0DY                    **Order#**

| Description | Amount |
|---|---|
| Progress Billing# 36 | 14,659.11 |

**Notes:**

*A service charge of 18.00% per annum will be charged on all amounts overdue on regular statement dates.*

*Call Kennco Plumbing for your Backflow Prevention Device Tests.*

*Kennco Plumbing has 24 hour Service & Repair for your convenience.*

*Thank you for your prompt payment!*

| | |
|---|---|
| Invoice Total: | 14,659.11 |
| Retention: | 0.00 |
| Amount Paid: | 0.00 |
| **Amount Due** | **14,659.11** |



**KENNCO Plumbing, Inc.**
26575 Ruether Ave
Santa Clarita CA 91350
661-251-5366

License: 595570

# Contract Invoice

Invoice#: 20087

Date: 09/01/2021

**Billed To:** Crestlloyd, LLC
8981 W. Sunset Blvd., St. 303
West Hollywood CA 90069

**Job:** Airole Residence
**2248** 944 Airole Way
Los Angeles CA 90077

| Due Date: 09/01/2021 | Terms: 0DY | Order# |
|---|---|---|

| Description | Amount |
|---|---|
| Progress Billing# 37 | 27,688.97 |

**Notes:**

*A service charge of 18.00% per annum will be charged on all amounts
overdue on regular statement dates.*

*Call Kennco Plumbing for your Backflow Prevention Device Tests.*

*Kennco Plumbing has 24 hour Service & Repair for your convenience.*

*Thank you for your prompt payment!*

| Invoice Total: | 27,688.97 |
|---|---|
| Retention: | 0.00 |
| Amount Paid: | 0.00 |
| **Amount Due** | **27,688.97** |

Case 2:21-bk-18205-DS    Doc 319    Filed 05/17/22    Entered 05/17/22 15:41:11    Desc
Case 2:21-bk-18205-DS    Main Document      Page 134 of 372    Desc Exhibit Complaint to
Assigned for all purposes to: Santa Monica Courthouse Judge Craig Karlan Epstein

Electronically FILED by Superior Court of California, County of Los Angeles on 10/07/2021 01:52 PM Sherri R. Carter, Executive Officer/Clerk of Court, by S. Watson,Deputy Clerk

1   Law Offices of Gary A. Weis
    Gary A. Weis - State Bar # 169180
2   17451 Sarita Avenue
    Canyon Country, CA 91387
3   (661) 367-3033 - Telephone
    (661) 251-2764 - Facsimile
4   garyweis@sbcglobal.net

5   Attorneys for Plaintiff
    KENNCO PLUMBING, INC.
6

7               SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                     FOR THE COUNTY OF LOS ANGELES

9                        SANTA MONICA COURTHOUSE

10                       UNLIMITED CIVIL JURISDICTION

11

12  KENNCO PLUMBING, INC., a California      )   CASE NO.:
    Corporation,                             )
13                                           )   COMPLAINT FOR FORECLOSURE OF
                                             )   LIEN AND PRIORITY:
14                        Plaintiff,         )
                                             )   1)    FOR MATERIALS AND SERVICES
15            v.                             )         SOLD AND DELIVERED
                                             )   2)    ACCOUNT STATED
16  CRESTLLOYD LLC, a California limited liability )  3)    OPEN BOOK ACCOUNT
    company dba SKYLINE DEVELOPMENT; THE     )   4)    BREACH OF CONTRACT
17  ONE ON AIROLE LLC, a California limited liability )  5)    FORECLOSURE OF MECHANIC'S
    company; C3 CAPITAL, LLC, a California limited )       LIEN
18  liability company; HANKEY CAPITAL, LLC, a   )   6)    VIOLATION OF PROMPT PAY
    California limited liability company; THEODORE )        STATUTES
19  LANES, an individual; FIRST CREDIT BANK, a  )   7)    DECLARATORY RELIEF -
    California banking corporation; YOGI SECURITY )        PRIORITY
20  HOLDINGS LLC, a Nevada limited liability   )
    company; HILLDUN CORPORATION, a New York  )
21  corporation; FIRST REPUBLIC BANK, a California )
    corporation ;  and DOES 1 TO 100, inclusive,  )   Filed:
22                                           )   Dept.:
                          Defendants.        )   Judge: Hon.
23                                           )
                                             )
24                                           )
                                             )
25                                           )
26  _____

27

28  AMOUNT DUE:      $85,560.17

                              **1**

1 │ Plaintiff complains and alleges as follows:

2 │ COMMON ALLEGATIONS

3 │ 1.    Plaintiff is now and at all times mentioned herein, was a California corporation

4 │ qualified to do business and is now doing business within the jurisdictional boundaries of the

5 │ above-entitled Court and now and at all relevant times held a valid Contractor's License issued by

6 │ the California Contractors State License Board.

7 │ 2.    The true names and capacities, whether individual, corporate, associate or

8 │ otherwise, of Defendants DOES 1 through 100, inclusive, are unknown to Plaintiff who therefore

9 │ sues said Defendants, and each of them, by such fictitious names, and Plaintiff will seek leave of

10 │ Court to amend this Complaint to allege such true names and capacities when ascertained.

11 │ 3.    Plaintiff is informed and believes, and based upon such information and belief

12 │ alleges that each of the Defendants named in the caption of this Complaint, which caption is

13 │ incorporated herein by reference, was an agent and employee or alter-ego of each of the other

14 │ remaining Defendants and was, at all times, acting within the course and scope of such agency and

15 │ employment.

16 │ 4.    The within action is not subject to the provisions of Section 2981, et seq., (Reese-

17 │ Levering Act) and Section 1801, et seq., (Unruh Act) of the Civil Code of the State of California.

18 │ 5.    At all times pertinent to this action, Plaintiff had, and now has, all licenses and has

19 │ complied with all governmental regulations prerequisite to the establishment and enforcement of

20 │ the herein described claim.

21 │ 6.    The obligation hereinafter mentioned was entered into and incurred by the

22 │ Defendants, and each of them, within the jurisdictional limits of the above-captioned Court, which

23 │ Court is the proper place for the trial of this action.

24 │ 7.    The Plaintiff is informed and believes, and based on said information and belief

25 │ allege that at all times mentioned, Defendant:

26 │ 7.    (a)    CRESTLLOYD LLC, a California limited liability company dba SKYLINE

27 │ DEVELOPMENT (hereinafter referred to as "CRESTLLOYD") is and was doing business within

28 │ the jurisdictional limits of this Court.

**2**

1        7.      (b)      If CRESTLLOYD is in fact an LLC, such LLC is in mere form only, having

2 no existence separate and apart from Defendants, and DOES 1 through 20, inclusive, such that

3 there exists and at all times mentioned herein existed a unity of interest and ownership between

4 Defendants CRESTLLOYD , and DOES 1 through 20, inclusive, such that any individuality and

5 separateness between CRESTLLOYD , and DOES 1 through 20, inclusive, have ceased, and

6 Defendants, DOES 1 through 20, inclusive, are the alter ego of CRESTLLOYD .

7        7.      (c)      The assets and properties of CRESTLLOYD are commingled with the

8 separate assets of DOES 1 through 20, inclusive, such that there is no distinction between

9 individual and LLC assets.

10        7.      (d)      Adherence to the fiction of the separate existence of CRESTLLOYD as an

11 entity distinct from Defendants, and DOES 1 through 20, inclusive, would permit an abuse of the

12 LLC privilege and would permit injustice in that they would succeed in avoiding legally incurred

13 liabilities while maintaining the benefits of the LLC.

14        7.      (e)      THE ONE ON AIROLE LLC, a California limited liability company

15 (hereinafter referred to as "THE ONE ") is and was doing business within the jurisdictional limits

16 of this Court.

17        7.      (f)      If THE ONE is in fact an LLC, such LLC is in mere form only, having no

18 existence separate and apart from Defendants, and DOES 1 through 20, inclusive, such that there

19 exists and at all times mentioned herein existed a unity of interest and ownership between

20 Defendants THE ONE, and DOES 51 through 60, inclusive, such that any individuality and

21 separateness between THE ONE , and DOES 51 through 60, inclusive, have ceased, and

22 Defendants, DOES 51 through 60, inclusive, are the alter ego of THE ONE .

23        7.      (g)      The assets and properties of THE ONE are commingled with the separate

24 assets of DOES 51 through 60, inclusive, such that there is no distinction between individual and

25 LLC assets.

26        7.      (h)      Adherence to the fiction of the separate existence of THE ONE as an entity

27 distinct from Defendants, and DOES 51 through 60, inclusive, would permit an abuse of the LLC

28 privilege and would permit injustice in that they would succeed in avoiding legally incurred

1    liabilities while maintaining the benefits of the LLC.

2          7.     (i)     C3 CAPITAL, LLC, a California limited liability company (hereinafter

3    referred to as "C3") is and was doing business within the jurisdictional limits of this Court.

4          7.     (j)     If C3 is in fact an LLC, such LLC is in mere form only, having no existence

5    separate and apart from Defendants, and DOES 61 through 70, inclusive, such that there exists and

6    at all times mentioned herein existed a unity of interest and ownership between Defendants C3 ,

7    and DOES 61 through 70, inclusive, such that any individuality and separateness between C3 , and

8    DOES 61 through 70, inclusive, have ceased, and Defendants, DOES 61 through 70, inclusive, are

9    the alter ego of C3 .

10         7.     (k)    The assets and properties of C3 are commingled with the separate assets of

11    DOES 61 through 70, inclusive, such that there is no distinction between individual and LLC

12    assets.

13         7.     (l)     Adherence to the fiction of the separate existence of C3 as an entity distinct

14    from Defendants, and DOES 61 through 70, inclusive, would permit an abuse of the LLC privilege

15    and would permit injustice in that they would succeed in avoiding legally incurred liabilities while

16    maintaining the benefits of the LLC.

17         7.     (m)    HANKEY CAPITAL, LLC, a California limited liability company (hereinafter

18    referred to as "HANKEY") is and was doing business within the jurisdictional limits of this Court.

19         7.     (n)     If HANKEY is in fact an LLC, such LLC is in mere form only, having no

20    existence separate and apart from Defendants, and DOES 21 through 25, inclusive, such that there

21    exists and at all times mentioned herein existed a unity of interest and ownership between

22    Defendants HANKEY , and DOES 21 through 25, inclusive, such that any individuality and

23    separateness between HANKEY , and DOES 21 through 25, inclusive, have ceased, and

24    Defendants, DOES 21 through 25, inclusive, are the alter ego of HANKEY .

25         7.     (o)     The assets and properties of HANKEY are commingled with the separate

26    assets of DOES 21 through 25, inclusive, such that there is no distinction between individual and

27    LLC assets.

28         7.     (p)     Adherence to the fiction of the separate existence of HANKEY as an entity

<div align="center">4</div>

1  distinct from Defendants, and DOES 21 through 25, inclusive, would permit an abuse of the LLC

2  privilege and would permit injustice in that they would succeed in avoiding legally incurred

3  liabilities while maintaining the benefits of the LLC.

4      7.    (q)    THEODORE LANES, an individual as Agent and Receiver for the benefit

5  of HANKEY, and DOES 26 through 30, inclusive (hereinafter referred to as "LANES") is an

6  individual residing within the jurisdictional limits of the above-entitled Court.

7      7.    (r)    FIRST CREDIT BANK, a California banking corporation; (hereinafter

8  referred to as "FIRST") is and was doing business within the jurisdictional limits of this Court.

9      7.    (s)    If FIRST is, in fact, a corporation, such corporation is in mere form only,

10  having no existence and that there existed a unity of interest and ownership between FIRST and

11  DOES 31 through 35, inclusive, such that any individuality and separateness between FIRST and

12  DOES 31 through 35 have ceased, and DOES 31 through 35 inclusive, are the alter ego of FIRST.

13     7.    (t)    The Assets and properties of FIRST are commingled with the separate assets

14  of DOES 31 through 35 inclusive, such that there is no distinction between individual and

15  corporate assets.

16     7.    (u)    Adherence to the fiction of the separate existence of FIRST as an entity

17  distinct from DOES 31 through 35 inclusive, would permit an abuse of the corporate privilege and

18  would permit injustice, in that they would succeed in avoiding legally incurred liabilities while

19  maintaining the benefits of the corporation.

20     7.    (v)    YOGI SECURITY HOLDINGS LLC, a Nevada limited liability company

21  (hereinafter referred to as "YOGI") is and was doing business within the jurisdictional limits of this

22  Court.

23     7.    (w)    If YOGI is in fact an LLC, such LLC is in mere form only, having no

24  existence separate and apart from Defendants, and DOES 36 through 40, inclusive, such that there

25  exists and at all times mentioned herein existed a unity of interest and ownership between

26  Defendants YOGI , and DOES 36 through 40, inclusive, such that any individuality and

27  separateness between YOGI , and DOES 36 through 40, inclusive, have ceased, and Defendants,

28  DOES 36 through 40, inclusive, are the alter ego of YOGI .

<center>5</center>

1    7.    (x)    The assets and properties of YOGI are commingled with the separate assets

2  of DOES 36 through 40, inclusive, such that there is no distinction between individual and LLC

3  assets.

4    7.    (y)    Adherence to the fiction of the separate existence of YOGI as an entity

5  distinct from Defendants, and DOES 36 through 40, inclusive, would permit an abuse of the LLC

6  privilege and would permit injustice in that they would succeed in avoiding legally incurred

7  liabilities while maintaining the benefits of the LLC.

8    7.    (z)    HILLDUN CORPORATION, a New York corporation (hereinafter referred

9  to as "HILLDUN") is and was doing business within the jurisdictional limits of this Court.

10    7.    (aa)    If HILLDUN is, in fact, a corporation, such corporation is in mere form

11  only, having no existence and that there existed a unity of interest and ownership between

12  HILLDUN and DOES 41 through 45, inclusive, such that any individuality and separateness

13  between HILLDUN and DOES 41 through 45 have ceased, and DOES 41 through 45 inclusive,

14  are the alter ego of HILLDUN.

15    7.    (bb)    The Assets and properties of HILLDUN are commingled with the separate

16  assets of DOES 41 through 45 inclusive, such that there is no distinction between individual and

17  corporate assets.

18    7.    (cc)    Adherence to the fiction of the separate existence of HILLDUN as an entity

19  distinct from DOES 41 through 45 inclusive, would permit an abuse of the corporate privilege and

20  would permit injustice, in that they would succeed in avoiding legally incurred liabilities while

21  maintaining the benefits of the corporation.

22    7.    (dd)    FIRST REPUBLIC BANK, a California corporation (hereinafter referred to

23  as "REPUBLIC ") is and was doing business within the jurisdictional limits of this Court.

24    7.    (ee)    If REPUBLIC is, in fact, a corporation, such corporation is in mere form

25  only, having no existence and that there existed a unity of interest and ownership between

26  REPUBLIC and DOES 46 through 50, inclusive, such that any individuality and separateness

27  between REPUBLIC and DOES 46 through 50 have ceased, and DOES 46 through 50 inclusive,

28  are the alter ego of REPUBLIC .

**COMPLAINT FOR FORECLOSURE OF LIEN; PRIORITY**

1    7.    (ff)    The Assets and properties of REPUBLIC are commingled with the separate

2    assets of DOES 46 through 50 inclusive, such that there is no distinction between individual and

3    corporate assets.

4    7.    (gg)    Adherence to the fiction of the separate existence of REPUBLIC as an

5    entity distinct from DOES 46 through 50 inclusive, would permit an abuse of the corporate

6    privilege and would permit injustice, in that they would succeed in avoiding legally incurred

7    liabilities while maintaining the benefits of the corporation.

8    8.    Plaintiff is informed and believes and based on such information and belief alleges:

9    CRESTLLOYD LLC is the owner or reputed owner and builder of a

10    construction project located at 944 Airole Way, Los Angeles, CA 90077, often

11    referred to as "The One" (hereinafter referred to as "PROJECT"). THE ONE, has

12    expressed its liability under the CONTACT (later defined at page 9, ¶ 20, Exhibit

13    "1") and some unknown interest in the PROJECT. Construction commenced on the

14    PROJECT in 2012, and is still under way. C3, HANKEY, FIRST, YOGI,

15    HILLDUN and REPUBLIC are parties which have allegedly loaned money for

16    construction of the Project or have otherwise claimed a security interest in the

17    Property. LANES is allegedly a Receiver of the PROPERTY, apparently for the

18    benefit of HANKEY. C3 also alleges to be an Assignee of the Plaintiff's

19    CONTRACT, and is liable to Plaintiff for its damages.

20    Plaintiff's claim has priority under Civil Code § 8450, which recognizes that

21    a Mechanic's Lien "...has a priority interest over a lien, mortgage, deed of trust, or

22    other encumbrance on the work of improvement or the real property on which the

23    work of improvement is situated, that attaches (1) after commencement of the work

24    of improvement or (2) was unrecorded at the commencement of the work of

25    improvement and of which the claimant had no notice.

26    FIRST CAUSE OF ACTION

27    FOR GOODS AND SERVICES SOLD AND DELIVERED

28    AGAINST CRESTLLOYD, THE ONE, C3 AND DOES 1-20

**7**

1    9.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1

2    through 8, inclusive, of the Common Allegations and incorporates the same by this reference as

3    though set forth at length herein.

4    10.    Within the last four years in the City of Los Angeles, Los Angeles County,

5    California, Defendants, and each of them, became indebted to Plaintiff in the sum of $85,560.17

6    for equipment, materials and services leased, sold, and delivered to Defendants, and each of them,

7    by Plaintiff, and Defendants, and each of them, then and there agreed to pay said sum and to return

8    the Equipment to Plaintiff.

9    11.    Neither the whole or any part of the above sum has been paid although demand

10    therefor has been made, and there is now due and payable from Defendants, and each of them, to

11    Plaintiff, the sum of $85,560.17 together with interest thereon at the maximum rate allowed per

12    annum from March 10, 2021.

13

14    <div align="center">SECOND CAUSE OF ACTION</div>

15    <div align="center">FOR AN ACCOUNT STATED</div>

16    <div align="center">AGAINST DEFENDANT CRESTLLOYD, THE ONE, C3</div>

17    <div align="center">AND DOES 1 THROUGH 20, AND 51-70</div>

18    12.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1

19    through 8, inclusive, of the Common Allegations and incorporates the same by this reference as

20    though set forth at length herein.

21    13.    Within the last four years in the City of Los Angeles, Los Angeles County,

22    California, an account was stated in writing by and between the Plaintiff and Defendants, and each

23    of them, wherein it was agreed that Defendants, and each of them, were indebted to Plaintiff in the

24    sum of $85,560.17.

25    14.    Neither the whole or any part of the above sum has been paid although demand

26    therefor has been made, and there is now due and payable from Defendants, and each of them, to

27    Plaintiff, the sum of $85,560.17 together with interest thereon at the maximum rate allowed by law

28    per annum from March 10, 2021.

<div align="center">8</div>

1

<u>THIRD CAUSE OF ACTION</u>

2

<u>FOR OPEN BOOK ACCOUNT</u>

3

<u>AGAINST DEFENDANT CRESTLLOYD, THE ONE, C3</u>

4

<u>AND DOES 1 THROUGH 20 AND 51-70</u>

5        15.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1

6    through 8, inclusive, of the Common Allegations and incorporates the same by this reference as

7    though set forth at length herein.

8        16.    Within the last four years in the City of Los Angeles, Los Angeles County,

9    California, Defendants, and each of them, became indebted to Plaintiff on an open book account

10   for money due in the sum of $85,560.17.

11       17.    Neither the whole nor any part of the above sum has been paid although demand

12   therefor has been made, and there is now due and payable from Defendants, and each of them, to

13   Plaintiff, the sum of $85,560.17 together with interest thereon at the maximum rate allowed by law

14   per annum from March 10, 2021.

15       18.    Pursuant to <u>California Civil Code,</u> Section 1717.5, Plaintiff is entitled to recover

16   attorney's fees and costs incurred herein.  Such attorney's fees and costs at this time are unknown,

17   and Plaintiff will seek leave of Court to amend this Complaint to allege same with certainty when

18   ascertained.

19

20

<u>FOURTH CAUSE OF ACTION</u>

21

<u>FOR BREACH OF CONTRACT</u>

22

<u>AGAINST DEFENDANT CRESTLLOYD, THE ONE, C3</u>

23

<u>AND DOES 1 THROUGH 20 AND 51-70</u>

24       19.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1

25   through 8, inclusive, of the Common Allegations and incorporates the same by this reference as

26   though set forth at length herein.

27       20.    On or about August 20, 2018, in the City of Los Angeles, Los Angeles County,

28   California, Plaintiff and Defendants, and each of them, entered into a written agreement entitled

**9**

1  "CONSTRUCTION AGREEMENT" (hereinafter "CONTRACT").  Based upon CONTRACT,

2  Plaintiff agreed to provide labor and material to install plumbing Defendants, and each of them,

3  and Defendants, and each of them, agreed to pay Plaintiff for: labor and material provided by

4  Plaintiff. Attached hereto marked as Exhibit "1" and incorporated herein by reference are true

5  copies of said CONTRACT.

6        21.    On or about March 13, 2018 defendant THE ONE, and each of them, executed a

7  document titled "ASSIGNMENT OF CONTRACT", (hereinafter referred to as "ASSIGNMENT")

8  The ASSIGNMENT allegedly assigns all of THE ONE's right and duties under the CONTRACT

9  to C3. Attached hereto, marked as Exhibit "2" and incorporated by reference, is a true and correct

10  copy of the ASSIGNMENT.

11        22.    Plaintiff has performed all the conditions, promises, and covenants on its part to be

12  performed in accordance with the terms of said CONTRACT, or has been excused from full

13  performance by acts of Defendants and each of them.

14        23.    On or about March 10, 2021, Defendants, and each of them, defaulted in their

15  payments due, under said CONTRACT and despite demand by Plaintiff, have refused to make all

16  payments due to Plaintiff.  The total sum due for the labor and materials performed by Plaintiff to

17  Defendants including the value of Plaintiff's Equipment not returned by Defendants and each of

18  them, is $85,560.17. Plaintiff has notified Defendants of same.  However, Defendants, and each of

19  them, have refused and continue to refuse to pay said sum or any part thereof, and the sum of

20  $85,560.17 together with interest thereon at the maximum rate allowed by law per annum from

21  March 10, 2021 is due and payable from Defendants.

22        24.    Said CONTRACT provide that Defendants, and each of them, will pay all costs and

23  disbursements, incurred by Plaintiff.  Such costs and disbursements are at this time unknown and

24  Plaintiff will seek leave of Court to amend this Complaint to allege same with certainty when

25  ascertained.

26

27                    FIFTH CAUSE OF ACTION

28                FOR FORECLOSURE OF MECHANIC'S LIEN

                              **10**

<div align="center">

AGAINST, CRESTLLOYD, THE ONE, C3, HANKEY, LANES,

FIRST, YOGI, HILLDUN, REPUBLIC

AND DOES 1 THROUGH 100, INCLUSIVE

</div>

25.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 8, inclusive, of the Common Allegations, paragraphs 20 through 24, inclusive, of the Fourth Cause of Action and incorporates the same by this reference as though set forth at length herein.

26.    The Defendants herein named, and each of them, claim some right, title or interest in or to the real property, building and premises hereinafter described; that the claim or title or interest of said Defendants, and each of them, in and to said real property, building and premises is junior to, subsequent to, and subject to Plaintiff's claim and lien as hereinafter set forth.

27.    At all times herein mentioned, CRESTLLOYD, THE ONE, LANES, C3, HANKEY, FIRST, YOGI, HILLDUN, REPUBLIC, and each of them, are or were the owners or reputed owners or claim some interest in the real property commonly known as: The One, located at 944 Airole Way, Los Angeles, CA 90077; LEGAL DESCRIPTION: See Attached Exhibit "3", which is incorporated herein by reference, which is the true and correct Legal Description of The One (hereinafter referred to as "PROPERTY").

28.    The Plaintiff did, between August 1, 2014 and September 30, 2021, at the special instance and request of Defendants, CRESTLLOYD, THE ONE, C3 and each of them, render services, and supply materials in the construction and improvement of the PROPERTY with a value in excess of $656,650.00, and there remains an unpaid balance in the sum of $85,560.17, after all credits have been issued, which sum is the reasonable fair market value for the claim (hereinafter referred to as "MECHANIC'S LIEN BALANCE"), which the Defendants CRESTLLOYD, THE ONE, C3 and each of them, promised and agreed to pay.  Said materials and services were used and furnished in and about said work of improvement upon said PROPERTY and have been incorporated or consumed therein. There remains unpaid the sum of $85,560.17 on the PROPERTY.

29.    No part of said sum of $85,560.17 has been paid, although demand therefor has

<div align="center">11</div>

1   been made and there is now due, owing and unpaid the sum of $85,560.17 together with interest at

2   the maximum rate from March 10, 2021.

3         30.    On or about October 22, 2014, Plaintiff served Defendants CRESTLLOYD,

4   SKYLINE DEVELOPMENT and REPUBLIC, and each of them, either directly or through their

5   authorized agent, partner or other authorized entity, with a California Preliminary 20-Day Notice

6   (private works), by certified, return receipt USPS mail, postage prepaid, in accordance with the

7   provisions of §8200, et seq. of the California Civil Code (hereinafter referred to as "NOTICE").

8   The NOTICE contained substantially the following information:

9         a.    The name of the owner or reputed owner, CRESTLLOYD.

10         b.    A general statement of the kind of work performed and material furnished

11   by Plaintiff, to wit, Plumbing.

12         c.    The name of the person by whom Plaintiff was employed or to whom

13   Plaintiff furnished its material, to wit, CRESTLLOYD and its dba SKYLINE DEVELOPMENT.

14         d.    A description of the property sought to be charged with the Lien sufficient

15   for identification, to wit, 944 Airole Way, Los Angeles, CA 90077.

16         Attached hereto, marked as Exhibit "4" and incorporated herein by reference is a true and

17   correct copy of Plaintiff's NOTICE.

18         31.    The alleged interests of THE ONE, LANES, C3,  HANKEY, FIRST, YOGI and

19   HILLDUN, and each of them, arose at various times after October 22, 2014. Plaintiff was unaware:

20   a. That those alleged interests occurred, b. The names or exact names of the entities at the time that

21   their alleged interests were created, c. When those alleged interests were created, or d.  the amounts

22   of those alleged interests. Pursuant to California Civil Code §8200, et seq, and the cases which

23   interpret them, Plaintiff had no duty to discover this information and therefore was under no duty

24   to serve each of these alleged later created interests in the PROPERTY with NOTICE.

25         32.    Plaintiff, in order to secure its claim, served by certified, return receipt USPS mail,

26   postage prepaid a copy of its Mechanic's Lien, Notice of Mechanic's Lien, Proof of Service and

27   Certificate of Mailing on CRESTLLOYD, LANES, HANKEY, FIRST, YOGI, HILLDUN and

28   REPUBLIC, and each of them, on October 1, 2021; and on C3 and THE ONE, and each of them,

**COMPLAINT FOR FORECLOSURE OF LIEN;  PRIORITY**

1  on October 6, 2021, all were served either directly or through their authorized agent, partner or

2  other authorized entity, in accordance with the provisions of §8200, et seq. of the California Civil

3  Code.

4        33.  Plaintiff, in order to secure its claim caused to be recorded in the office of the

5  County Recorder for the County of Los Angeles, State of California on October 5, 2021, as

6  Instrument No. 20211508207, its Mechanic's Lien, Notice of Mechanic's Lien, Proof of Service

7  and Certificate of Mailing of Mechanic's Lien against the above-described PROPERTY

8  (hereinafter referred to as "MECHANIC'S LIEN"); said claim of lien was duly signed and verified

9  and contained the following information:

10            a.  A statement of Plaintiff's demand after deducting all just credits and offsets,

11  to wit, the sum of $85,560.17.

12            b.  The name of the owners or reputed owners, to wit, and CRESTLLOYD.

13            c.  A general statement of the kind of work performed and material furnished

14  by Plaintiff, to wit, Plumbing.

15            d.  The name of the person by whom Plaintiff was employed or to whom

16  Plaintiff furnished its material, to wit, CRESTLLOYD.

17            e.  A description of the property sought to be charged with the lien sufficient

18  for identification; to wit, 944 Airole Way, Los Angeles, CA 90077; LEGAL DESCRIPTION: See

19  Attached Exhibit "3", which is incorporated by reference, and is a true and correct copy of the

20  Legal Description of the PROPERTY.

21        34.  A true and correct copy of the MECHANIC'S LIEN is attached hereto and

22  incorporated herein by reference, marked as Exhibit "5". Plaintiff paid the sum of $116.00 for

23  verifying and recording said claim of lien, no part of which said sum has been repaid.

24        35.  Plaintiff is informed and believes and based on said information and belief, alleges

25  that no Notice of Completion and no Notice of Cessation has been recorded on the PROPERTY,

26  and no Notice of Completion was served on Plaintiff and no Notice of Cessation was served on

27  Plaintiff.

28        36.  The MECHANIC'S LIEN  was recorded within thirty (30) days after recordation of

**13**

1  any Notice of Completion of the work of improvement, if any was recorded, and within the time

2  required by law.

3       37.    Plaintiff has filed all Notices and has complied with all procedural requisites

4  necessary to establish its claim of MECHANIC'S LIEN and the right to foreclose on the

5  PROPERTY, including the timely filing of this action, within the statutory period.

6       38.    Plaintiff's claim has priority under Civil Code § 8450, which recognizes that a

7  Mechanic's Lien:

8          "...has a priority interest over a lien, mortgage, deed of trust, or other encumbrance

9          on the work of improvement or the real property on which the work of improvement

10          is situated, that attaches (1) after commencement of the work of improvement or (2)

11          was unrecorded at the commencement of the work of improvement and of which the

12          claimant had no notice."

13

14  <center>SIXTH CAUSE OF ACTION</center>

15  <center>FOR VIOLATION OF PROMPT PAY STATUTES</center>

16  <center>AGAINST CRESTLLOYD, THE ONE, C3 AND</center>

17  <center>DOES 1 THROUGH 20, AND DOES 51 THROUGH 70 INCLUSIVE.</center>

18       39.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1

19  through 8, inclusive, of the Common Allegations; paragraphs 26 through 38, inclusive, of the Fifth

20  Cause of Action and incorporates the same herein by this reference.

21       40.    Plaintiff is informed and believes and based upon such information and belief,

22  alleges that the Defendants, and each of them, do not have any dispute with the amounts sought by

23  Plaintiff in this action or if such Defendants, and each of them, do have any dispute with the

24  amounts sought by Plaintiff, that such amounts are less than $85,560.17.

25       41.    Plaintiff is informed and believes and based upon such information and belief;

26  CRESTLLOYD, THE ONE, C3 , and each of them  and  have failed and refused, and continue to

27  refuse to release funds which are retained by each of them for the benefit of Plaintiff.

28       42.    Defendants, and each of them, have improperly withheld payment of $85,560.17, or

<center>14</center>

1  some portion thereof from Plaintiff.  As a direct and proximate result of Defendants, and each of

2  their improperly withholding funds of $85,560.17 from Plaintiff, Plaintiff has been damaged and

3  seeks relief pursuant to California <u>Civil Code</u> Section 8810, et seq. and <u>Business and Professions</u>

4  <u>Code</u> §7108.5.  Such relief includes, but is not limited to payment of $85,560.17 plus a 2 percent

5  charge per month on the improperly withheld amount due to Plaintiff along with all interest,

6  attorney's fees and costs incurred in the recovery of same.  Such amounts to be determined at Trial.

7

8                         <u>SEVENTH CAUSE OF ACTION</u> <u>FOR</u>

9                              <u>DECLARATORY RELIEF</u>

10       <u>TO ESTABLISH PLAINTIFF'S PRIORITY INTEREST IN THE PROPERTY</u>

11                 <u>AGAINST C3, HANKEY, LANES, FIRST, YOGI,</u>

12                            <u>HILLDUN, REPUBLIC</u>

13                    <u>AND DOES 1 THROUGH 100, INCLUSIVE</u>

14       43.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1

15  through 8, inclusive, of the Common Allegations, paragraphs 26 through 38, inclusive, of the Fifth

16  Cause of Action, and incorporates the same as though set forth at length herein.

17       44.    An actual controversy has arisen and now exists between Plaintiff and Defendants

18  and each of them, concerning their respective rights and duties as alleged herein.

19       45.    Plaintiff has no adequate and speedy remedy to resolve the parties' disputes other

20  than by a declaratory judgment from this court. Because of the urgency and importance of the

21  issues presented by the parties' dispute, it is necessary and appropriate for the court to resolve this

22  dispute by issuing a judicial declaration determining the respective rights and obligations of the

23  parties and seeks a judicial determination of its rights and duties and a declaration that:

24       a.    Defendants C3, HANKEY, LANES, FIRST, YOGI, HILLDUN, REPUBLIC

25             (hereinafter collectively referred to as "CONSTRUCTION LENDERS"), and

26             each of them, made Construction Loans to CRESTLLOYD or have taken

27             Security in the Property for some other purpose and to finance the

28             development of the PROPERTY. The collective Deeds of Trust securing the

**15**

1              CONSTRUCTION LENDERS, other then REPUBLIC who Plaintiff is

2              informed and believes and based on such information and belief alleges was

3              Fully Reconveyed, were recorded after construction commenced on the

4              PROJECT;

5      b.    Plaintiff's first commenced work on the Project on or about September 2,

6              2014 and continuing through September 1, 2021;

7      c.    Plaintiff is informed and believes, and based upon such information and belief

8              alleges that construction work was performed on the PROPERTY prior to its

9              first work on  September 2, 2014;

10     d.    Civil Code § 8450 recognizes that a Mechanic's Lien "...has a priority interest

11             over a lien, mortgage, deed of trust, or other encumbrance on the work of

12             improvement or the real property on which the work of improvement is

13             situated, that attaches (1) after commencement of the work of improvement or

14             (2) was unrecorded at the commencement of the work of improvement and of

15             which the claimant had no notice.";

16     e.    On or about March 4, 2021, HANKY recorded a NOTICE of DEFAULT

17             AND ELECTION TO SELL UNDER DEED OF TRUST (hereinafter referred

18             to as "DEFAULT") with the Los Angeles County Recorder. Attached hereto,

19             marked as Exhibit "6" and incorporated by reference, is a true and correct

20             copy of the DEFAULT.

21     f.    On or about June 14, 2021, HANKY recorded a NOTICE of TRUSTEE'S

22             SALE (hereinafter referred to as "SALE") with the Los Angeles County

23             Recorder. Attached hereto, marked as Exhibit "7" and incorporated by

24             reference, is a true and correct copy of the SALE.

25     g.    Notice has been give to the CONSTRUCTION LENDERS on or about

26             October 1, 2021, of Plaintiff's priority interest in the PROPERTY.

27   46.    Absent the Court providing the relief requested, Plaintiff's MECHANIC'S LIEN

28 may become void and Plaintiff will be unlikely to recover its claim through any other theory.

<div align="center">16</div>

1  Plaintiff shall incur damages in the principal amount of $85,560.17, plus costs and interest, and

2  attorney's fees unless the requested relief is granted.

3    47.    Plaintiff requests the Court to declare that Plaintiff's MECHANIC'S LIEN holds a

4  priority interest over the CONSTRUCTION LENDERS and Declare that any transfers and

5  subsequent transfers of the PROPERTY to any person,, whether the by Bonafide Purchasers For

6  Value, Credit Bid oar any other means of transfer be subject to Plaintiff's right to foreclose.

7

8    WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as

9  follows:

10    <u>ON THE FIRST, SECOND, AND THIRD CAUSES OF ACTION</u>

11    1.    For the sum of $85,560.17 together with interest thereon at the maximum rate per

12  annum from March 10, 2021;

13    <u>ON THE THIRD CAUSE OF ACTION</u>

14    2.    For attorney's fees according to Section 1717.5. of the <u>Civil Code;</u>

15    <u>ON THE FOURTH CAUSES OF ACTION</u>

16    3.    For the sum of $85,560.17 together with interest thereon at the maximum rate per

17  annum from March 10, 2021;

18    <u>ON THE FIFTH CAUSE OF ACTION</u>

19    4.    For the sum of $85,560.17, together with interest thereon at the maximum rate from

20  March 10, 2021 as found to be due to the Plaintiff from the Defendants above-named, and each of

21  them, together with costs as above said, be adjudged a lien upon all the land, premises and buildings

22  described in the Complaint herein; that said PROPERTY, land, buildings and improvements, or so

23  much thereof as may be necessary, be sold according to law, and the practice of this Court and that

24  the proceeds of said sale be applied towards the payment of the sum found due to the Plaintiff and

25  that the Plaintiff may have execution against the Defendants above-named, and each of them, for

26  any deficiency remaining after said sale and the application of the proceeds thereof towards the

27  payment of Plaintiff's claim with all costs and expenses of sale; that the Defendants above-named be

28  barred and foreclosed of all rights, title and interest in and to every part and parcel thereof;

**17**

5.     That it be decreed that the claim of the Defendants above-named, and each of them, if any they have, are subsequent to, subject to, and junior to the claim of the Plaintiff herein;

ON THE SIXTH CAUSE OF ACTION

6.     For the sum $85,560.17 principal, together with interest at the maximum rate from March 10, 2021, together with a charge of 2 percent per month on the improperly held amount from March 10, 2021;

7.     For attorney's fees according to proof at the time of trial;

ON THE SEVENTH CAUSE OF ACTION

8.     For a judicial determination of its rights and duties and a declaration that:

    a.     Plaintiff's MECHANIC'S LIEN holds a priority interest over the LENDER'S CONSTRUCTION Deeds of Trust or other security interests. Plaintiff has the right to foreclose on its MECHANIC'S LIEN.

    b.     Any transfers and subsequent transfers of the PROPERTY to any person, whether the by Bonafide Purchasers For Value, Credit Bid oar any other means of transfer is taken subject to Plaintiff's right to foreclose.

ON ALL CAUSES OF ACTION

9.     For costs of suit incurred herein; and

10.     For such other and further relief as the Court deems just and proper.

Dated: October 7, 2021

Law Offices of Gary A. Weis

By: _____
Gary A. Weis
Attorney for Plaintiff,
KENNCO PLUMBING, INC.

**18**

# EXHIBIT   1

# CONSTRUCTION AGREEMENT

THIS CONSTRUCTION AGREEMENT, or "Agreement", entered into September 02, 2014, between Crestlloyd, LLC _____ ("Owner") and Kennco Plumbing, Inc. _____ ("Contractor") for the Work described in the Drawings and Specifications detailed hereinafter.

## WITNESSETH:

## ARTICLE 1. DEFINITIONS:

Contractor: Kennco Plumbing, Inc.

Contractor's License Number: LIC #595570

Owner: Crestlloyd, LLC

Project: 944 Airole Way, Los Angeles, CA 90077

Commencement Date:

Substantial Completion Date:

Contract Sum: $656,650.00

Drawings & Specifications Architect: APPROVED SET

Drawings & Specifications Date:

Pre-Agreed Schedule Failure Damages/Day:

Owner's Representative: NILE

Contract Documents:    The Contract Documents shall consist of this Agreement and the Drawings and Specifications.

## ARTICLE 2. THE WORK:

Contractor shall perform the Work as generally described in Exhibit "A" hereto in a good and workmanlike manner and furnish all labor, materials and equipment as required to complete its portion of the work indicated in the Contract Documents.  The Work may

Y:\NIAMI\Misc\ConstructionAgt.wpd

be changed at any time only by written order of the Owner and Contractor shall comply with all such changes without delay. Any change which results in an adjustment to the Contract Sum shall be accompanied by a detailed itemization of the actual material costs, actual labor costs, reasonable labor benefits, reasonable overhead and reasonable profit. Deviations from the requirements of the Contract Documents indicated on shop drawings, product data, samples or other submittals shall not be valid, even if approved, unless such deviations are clearly highlighted as such therein.

Contractor shall comply in every respect with all laws, codes, ordinances and regulations of any organization having legal jurisdiction over the Work.

If the quality of any existing work will not allow Contractor to complete its Work in a manner that will result in a finished product that complies in all respects with the Contract Documents, Contractor must notify Owner in writing before commencing its Work. By commencing Work, Contractor accepts the condition of the existing work as being a fully satisfactory component to be integrated with Contractor's Work.

Project meetings will be held on a scheduled basis for the purpose of reviewing Project issues and coordinating work schedules.

Contractor shall be responsible for a daily clean-up of all debris created by its Work. If Contractor fails to do so, Owner may perform such clean-up, withholding the cost of same from any money payable to the Contractor.

**ARTICLE 3. THE CONTRACT TIME:**

The Work to be performed under this Agreement shall be executed in accordance with Owner's project schedule and in cooperation with other subcontractor's work to achieve Substantial Completion of the Project by the Project Substantial Completion Date. Upon request, Contractor will supply Owner with an accurate and complete critical path schedule indicating Contractor's Work schedule. Should such schedule indicate Contractor's inability to complete the Work within the required schedule, Contractor shall undertake all necessary steps to meet the schedule, including over-time hours of operation if required. Should Contractor fail to properly staff and execute the Work, Owner, upon written notice and at Contractor's expense, may: (i) terminate this Agreement without penalty; or (ii) supply additional labor to perform Contractor's Work and Contractor shall pay the cost thereof.

Contractor shall be liable to Owner in an amount equal to the Pre-Agreed Schedule Failure Damages for each day the Work is not completed after the Substantial Completion Date, or in the absence of Pre-Agreed Schedule Failure Damages, for the Owner's actual damages suffered as a result of Contractor's failure. Any items of Contractor's Work appearing on what is commonly known as a *Punch List* shall be completed within 48 hours of notice thereof unless the nature of the Work requires additional time in which case Contractor shall diligently commence and pursue the Work to completion.

In the event the Contractor's performance of this Contract is delayed for any reason including acts of the Owner or other contractors, Contractor may request an extension of

time for the performance of the Work in writing within 5 days of the event causing such delay, but shall not be entitled to any increase in the Contract Sum or to damages or to additional compensation as a consequence of such delays or interference. Contractor warrants that it has an effective Hazardous Communications Program and that its employees have received training in that program. Contractor warrants that, before commencement of the Work, it will make available at the job site copies of all Material Safety Data Sheets relative to materials to be used at the Project and all required insurance certificates ("Safety and Insurance Submittals").

<u>ARTICLE 4. CONTRACTOR'S RESPONSIBILITIES:</u>

Contractor acknowledges that it is performing the Work as an independent contractor, is responsible for including any required sales taxes in the Contract Sum and remitting same to the collecting authority, and is solely responsible for the acts and omissions of its employees, for directing their work and for the payment of all their wages and taxes.

Contractor shall take all safety precautions necessary with respect to the performance of this Agreement, shall administer an effective, written safety program for the protection of its employees, shall comply with all safety measures and substance abuse programs initiated by the Owner and with all applicable laws, ordinances, rules, regulations and orders of public authorities for the safety of persons and property. Contractor shall not initiate or proceed with any portion of the Work that a prudent commercial contractor would or should have recognized as unsafe. Contractor shall immediately report any such condition or any injury to an employee or agent of the Contractor that occurred at the site.

<u>ARTICLE 5. REQUIRED INSURANCE COVERAGE:</u>

Contractor shall maintain in full force and effect, at its own expense, the following minimum insurance coverage.

(a)    Statutory Worker's Compensation and Employer's Liability Insurance, but in no event limits of less than $500,000. Contractor shall require its subcontractors to provide Worker's Compensation and Employer's Liability Insurance with the same minimum limits.

(b)    Commercial General Liability Insurance including Broad Form Property Damage Liability Coverage with minimum limits as follows: $1,000,000 Each Occurrence, $1,000,000 Products and Completed Operations Aggregate, $2,000,000 General Aggregate. The Commercial General Liability Policy will include Bodily Injury and Property Damage on an "Occurrence" basis. *"offsite operations only"*

(c)    Commercial Automobile Insurance $1,000,000 Combined single limit for all owned, non-owned, and hired vehicles.

(d)    ~~Commercial Umbrella Liability Insurance including bodily injury~~ and property damage ~~coverage with minimum limits as follows: $1,000,000~~ Each Occurrence and $1,000,000 General Aggregate.

(e)     Contractor's Worker's Compensation policy shall contain a Waiver of Subrogation endorsement in favor of the Owner.

(f)     Contractor's General Liability coverage shall be endorsed as follows:

(1)     Contractor shall name Owner as additional insured, both for ongoing work and completed operations.

(2)     Contractor shall provide a Waiver of Subrogation in favor of Owner.

(3)     Contractor's General Liability policy shall be Primary and Non-Contributory.

(g)     Contractor's Umbrella and Auto policies shall also name Owner as additional insured.

Contractor shall furnish to the Owner certificates of insurance, non-cancelable except in thirty (30) days written notice to the Owner of default providing an opportunity to cure the default to Owner within ten (10) days of receipt of the written notice of election by the Owner.

Contractor shall not commence work at the site under this Agreement until he has obtained all required insurance. Certificates of insurance shall be filed with Owner prior to commencing work but such action shall not relieve or decrease the liability of Contractor hereunder nor be considered approval of any lesser limits of coverage except by specific written agreement of the Owner. Failure to furnish either satisfactory insurance or required certificates within 10 days of notice to proceed shall not be considered cause for modification of any contractual time limits. The required insurance must be written by a company licensed to do business in California at the time the policy is issued, and with a company acceptable to the Owner. Contractor shall not cause any insurance to be canceled nor permit any insurance to lapse. All insurance policies shall include a clause to the effect that the policy shall not be canceled or reduced, restricted or limited until 30 days after Owner has received written notice as evidence by return receipt of registered letter.

If Contractor fails or neglects to obtain or renew the insurance required by this Agreement and furnish Owner an executed Certificate of Insurance form as evidence thereof, Owner may, in its sole discretion, deem such failure or neglect on the part of Contractor as a material breach of this Agreement. Contractor must incorporate all provisions of this Article into its subcontracts so all sub-subcontractors have the same coverage and provisions as required above.

## ARTICLE 6. WARRANTY:

Contractor warrants to the Owner that materials and equipment furnished under this Agreement will be of good quality and new unless otherwise required or permitted by the Contract Documents, that the Work of this Agreement will be free from defects not inherent

Y:\NIAM\Misc\ConstructionAgt.wpd                    4

in the quality required or permitted, and that the Work will conform to the requirements of the Contract Documents.   Work not conforming to these requirements, including substitutions not properly authorized, will be considered defective. Defective Work will be replaced by and at the expense of the Contractor during hours convenient to the Owner. Any damage caused by the defective Work will be restored at the sole expense of Contractor. This warranty shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Contract Documents.

If within the applicable period of the statute of limitations set forth in California Senate Bill 800 for the type of Work performed by Contractor under this Agreement, a defect appears in the Work, Contractor shall be required to, and shall commence to, correct such Work promptly after receipt of written notice from Owner and shall thereafter diligently proceed to correct the defect. Contractor shall be liable to Owner for all liabilities, costs and expenses incurred by Owner due to said defects and/or for failure of Contractor to correct the defects.

## ARTICLE 7, INDEMNITY:

Article 7.1:  TO THE FULLEST EXTENT PERMITTED BY LAW AND SUBJECT TO Article 7.2 BELOW, CONTRACTOR SHALL INDEMNIFY THE OWNER, ARCHITECT, AND ANY THIRD PARTY UNDER THE CONTROL OR SUPERVISION OF ANY OF THEM, AND ANY OF THEIR OFFICERS, MEMBERS, DIRECTORS, EMPLOYEES, AGENTS, AFFILIATES, SUBSIDIARIES, AND PARTNERS (INDIVIDUALLY, AN "INDEMNITEE" AND, COLLECTIVELY, "INDEMNITEES"), FROM AND AGAINST ALL CLAIMS ARISING FROM OR ALLEGED TO ARISE FROM ANY LOSS OF ANY KIND OR NATURE, INCLUDING, BUT NOT LIMITED TO, DAMAGE TO THE PROJECT, BODILY INJURY OR DEATH, RELATING DIRECTLY OR INDIRECTLY TO THE (1) PERFORMANCE OF THE WORK PURSUANT TO THIS AGREEMENT, (2) NEGLIGENCE, (3) FAULT, (4) INTENTIONAL ACTS, (5) BREACH OF THIS AGREEMENT, OR (6) BREACH OR VIOLATION OF A STATUTE, ORDINANCE, GOVERNMENTAL REGULATION, STANDARD, OR RULE, BY CONTRACTOR OR ITS AGENT, EMPLOYEE, OR SUBCONTRACTOR OF ANY TIER, OR ANYONE FOR WHOSE ACTS OR OMISSIONS THEY MAY BE LIABLE (INDIVIDUALLY, AN "INDEMNITOR" AND, COLLECTIVELY, "INDEMNITORS"), BUT ONLY FOR THE PERCENTAGE OF RESPONSIBILITY AN INDEMNITOR CAUSED OR CONTRIBUTED TO CAUSE IN ANY WAY.

Article 7.2:  SUBJECT TO THE TERMS OF THIS ARTICLE 7, CONTRACTOR IS OBLIGATED TO PROVIDE A DEFENSE FOR ANY INDEMNITEE, WITH AN ATTORNEY OF INDEMNITEE'S CHOICE, FOR ALL CLAIMS ARISING FROM OR ALLEGED TO ARISE FROM THE (1) PERFORMANCE OF THE WORK PURSUANT TO THIS AGREEMENT, (2) NEGLIGENCE, (3) FAULT, (4) INTENTIONAL ACT, (5) BREACH OF THIS AGREEMENT, OR (6) BREACH OR VIOLATION OF A STATUTE, ORDINANCE, GOVERNMENTAL REGULATION, STANDARD, OR RULE, BY ANY INDEMNITOR.

Article 7.3:  CONTRACTOR'S OBLIGATIONS SET OUT IN THIS ARTICLE 7 SURVIVE THE PERFORMANCE OF THE PARTIES UNDER THIS AGREEMENT FOR

THAT PERIOD OF TIME NECESSARY FOR THE INDEMNITEES TO RECEIVE THE BENEFITS OF THIS ARTICLE 7.

## ARTICLE 8, THE CONTRACT SUM & PROGRESS PAYMENTS:

For the performance of the Work, Owner shall pay Contractor, subject to additions and deductions by Change Order the Contract Sum. Contractor shall invoice Owner by the 25th day of the month for all material and labor incorporated in the Work, providing written, substantiating backup. If Contractor has failed to correct defective Work, or to satisfy any claims or liens (existing or, on the basis of reasonable evidence, expected to exist in the next 45 days) relative to the Work, Owner may withhold an amount equal to 150% of: the cost to repair the defective work or 150% of the amount of the lien. Owner shall have no obligation whatsoever to pay for any Work not invoiced within 60 days following the month of its installation. Owner shall pay Contractor 90% of all material and labor incorporated in the Work. The remaining 10% shall be withheld by Owner and will be payable to Contractor within _____ (___) days after Contractor's Work has been completed and Contractor has provided Owner with its Unconditional Waiver and Release of Lien and those of its materialmen, and subcontractors. Terms and time of payment to Contractor shall be subject to the requirements of Owner's contruction lender.

## ARTICLE 9, LIENS:

Except for Owner's failure to pay Contractor in accordance with the terms of this Agreement, Contractor will save and keep the Project free from all liens by reason of its Work or of any materials or other things used by it in the Work, and shall indemnify and hold the Owner harmless against any loss, damage, expense or claim arising out of Contractor's failure to do so. If Contractor fails to remove any lien by bonding it or otherwise, the Owner may retain from funds out of any money due or thereafter to become due to Contractor in an amount equal to 150% of the amount of the lien. In addition, the Owner may remove the lien by bonding it, the cost of which shall be paid by the Contractor.

## ARTICLE 10, DEFAULT:

Should Contractor at any time within forty-eight (48) hours after written notice from Owner (i) fail to supply adequate and complete supervision or a sufficient number of properly skilled workmen or materials of the proper quality, or fail in any respect to perform the Work with promptness and diligence; or (ii) fail in the performance of any agreement for the benefit of its creditors; or (iii) fail to pay promptly its obligations; or (iv) if a receiver be appointed for Contractor or its assets; or (v) if Contractor be adjudged a bankrupt; or (vi) should any workmen performing work covered by this Agreement engage in a strike or other work stoppage, or cease to work due to picketing or other activity, the Owner may, in any such events at its option after twenty-four (24) hours written notice to Contractor, provide any such labor and materials required to maintain necessary job progress, and charge the cost thereof to the Contractor and/or may terminate this Agreement.

LIEN(S), PROVIDED CONTRACTOR TIMELY MOVES THE COURT TO COMPEL ARBITRATION AND STAY THE ACTION PENDING THE OUTCOME OF THE ARBITRATION.

BY PLACING MY INITIALS BELOW, I AM AGREEING TO BE BOUND BY THIS ARTICLE

OWNER/OWNER REPRESENTATIVE _____    CONTRACTOR _____

ARTICLE 14. INSURANCE REQUIREMENTS:

The following are mandatory insurance requirements:

General Liability Limits of $1,000,000 per occurrence, $2,000,000 general aggregate, $2,000,000 products / opps, and $1,000,000 personal advertising injury with a minimum deductible of $25,000. *offsite operations only*  $5,000

Enrollment into the project's OCIP or *Wrap Policy*.

ARTICLE 15. MISCELLANEOUS:

A.    Contractor shall not assign this Agreement, nor subcontract any portion of this Agreement, without prior written approval of the Owner.

B.    The laws of the State of California shall govern this Agreement.

C.    This Agreement and all Contract Documents constitute the entire contract and shall supersede all prior agreements, written or oral between the parties hereto and no amendment or modification of this Agreement shall be binding unless executed in writing by the parties hereto.

D.    This Agreement, entered into as of the day and year first written above, shall become binding and of full force and effect upon receipt by Contractor of a fully completed copy executed by both parties, which copy may be a telefacsimile reproduction.

E.    Time is of the essence for any period of time stated for performance of any obligation hereunder.

F.    In the event of any contradiction between Articles 1-15 of this Agreement and Exhibit "A" of this Agreement, Articles 1-15 shall prevail.

**Owner**                                    **Contractor**

By _____                    By _____

Title: _Manager_                    Title: _President_

Y:\NIAM\Misc\ConstructionAgt.wpd                    7 of 7

EXHIBIT "A"

# KENNCO PLUMBING, INC.

**PROPOSAL AND CONTRACT**

26575 RUETHER AVE., SANTA CLARITA, CA 91350     (661) 251-5366, FAX (661) 251-1983
LIC. # 595530, A, C-16, C-36

Builder: ~~Skyline Development~~  *Crestlloyd, LLC*
~~8981 W. Sunset Blvd. Suite 303~~
West Hollywood, CA 90069
(818)598-1330  FAX (818)598-1340
Contact: Reece Hamilton (661)361-9847
E-mail: reece_hamilton@yahoo.com

Date: August 5, 2014     *Crestlloyd, LLC*
Job Address: ~~Airole Residence~~
944 Airole Way
Los Angeles, CA 90077
Revision 1

We propose to install all plumbing materials and labor on the above project based on the plumbing plans provided from McClean Design dated 2/6/13 and two sets of Architectural plans from McClean Design stamped approved on 3-26-2014:

|  |  | **STAFF QUARTERS** |
|---|---|---|
| **Staff Bath 1** | | |
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |
| 1 | Shower | Slope, hot mop & 1standard control valve to be supplied by others |
| **Staff Bath 2** | | |
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |
| 1 | Shower | Slope, hot mop & 1standard control valve to be supplied by others |
| **Staff Bath 3** | | |
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet supplied by others |
| 1 | Shower | Slope, hot mop & 1standard control valve to be supplied by others |
| **Staff Bath 4** | | |
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |
| 1 | Shower | Slope, hot mop & 1standard control valve to be supplied by others |
| **Staff Bath 5** | | |
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |
| 1 | Shower | Slope, hot mop & 1standard control valve to be supplied by others |
| **Staff Residence** | | |
| 1 | Kitchen Sink | Fixture and faucet to be supplied by others |
| 1 | Garbage Disposal | Appliance to be supplied by others |
| **Staff Laundry** | | |
| 1 | Laundry Sink | Fixture and faucet to be supplied by others |
| 1 | Clothes Washer | Recessed Box with valves and waste connection |
| 1 | Dryer Gas | Recessed Box with capped gas control valve |
| 1 | Floor Drain | JR Smith 2005A-Y02 |
| **Staff Kitchen** | | |
| 1 | Kitchen Sink | Fixture and faucet to be supplied by others |
| 1 | Garbage Disposal | Appliance to be supplied by others |

Customer Initial _____

Page 1 of 11

P:\ESTIMATES\ESTIMATE\PROPOSALS\ crestlotts\50-2014\2014-08 August\Skyline Development with Reece Hamilton Airole Way REV 1.doc

*Skyline Development / 944 Airole Way Rev 1*

**Staff Storage 1**
| | | |
|---|---|---|
| 1 | Floor Drain | 2"floor drain with trap primer availability |
| 1 | Water Heater | BLN-80 required by SCAQMD |

**Staff Storage 1**
| | | |
|---|---|---|
| 1 | Floor Drain | 2"floor drain with trap primer availability |

**RECREATION ROOM**

**Bath 1**
| | | |
|---|---|---|
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |
| 1 | Shower | Slope, hot mop & 1standard control valve to be supplied by others |
| 1 | Water Heater | Point of use electric SR30L 3600W, 120 V |

**Mechanical Room**
| | | |
|---|---|---|
| 1 | Floor Drain | 2"floor drain with trap primer availability |

**GUEST HOUSE**

**Bath 1**
| | | |
|---|---|---|
| 1 | Toilet | Fixture to be supplied by others |
| 2 | Lavatory | Fixture and faucet to be supplied by others |
| 1 | Free Standing Tub | Fixture, valve and trim to be supplied by others. |
| 1 | Shower | Slope, hot mop & 1standard control valve to be supplied by others |

**Bath 2**
| | | |
|---|---|---|
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |
| 1 | Shower | Slope, hot mop & 1standard control valve to be supplied by others |

**Bath 3**
| | | |
|---|---|---|
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet supplied by others |
| 1 | Shower | Slope, hot mop & 1standard control valve to be supplied by others |

**Powder Bath**
| | | |
|---|---|---|
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet supplied by others |

**Laundry 1**
| | | |
|---|---|---|
| 1 | Laundry Sink | Fixture and faucet to be supplied by others |
| 1 | Clothes Washer | Recessed Box with valves and waste connection |
| 1 | Dryer Gas | Recessed Box with capped gas control valve |
| 1 | Floor Drain | JR Smith 2005A-Y02 |
| 1 | Water Heater | BLN-80 required by SCAQMD |

**Kitchen**
| | | |
|---|---|---|
| 1 | Kitchen Sink | Fixture and faucet to be supplied by others |
| 1 | Garbage Disposal | Appliance to be supplied by others |

**Guest House Mechanical Area**
| | | |
|---|---|---|
| 1 | Floor Drain | 2"floor drain with trap primer availability |

**MAIN REIDENCE**
**LOWER LEVEL**

**Garage Storage 2**
| | | |
|---|---|---|
| 1 | Floor Drain | 2"floor drain with trap primer availability |

Customer Initial

*Skyline Development / 944 Airole Way Rev 1*

**Mechanical Room at Garage Storage 1**

| | | |
|---|---|---|
| 1 | Floor Drain | 2"floor drain with trap primer availability |
| 1 | Water Heater | BLN-80 required by SCAQMD |
| 1 | Recirculating Pump | Taco 006-BC7-1PNP with timer |

**Mechanical Room at Elevator Equipment Room Near Concessions**

| | | |
|---|---|---|
| 1 | Floor Drain | 2"floor drain with trap primer availability |

**Laundry 1**

| | | |
|---|---|---|
| 1 | Laundry Sink | Fixture and faucet to be supplied by others |
| 2 | Clothes Washer | Recessed Box with valves and waste connection |
| 2 | Dryer Gas | Recessed Box with capped gas control valve |
| 1 | Floor Drain | JR Smith 2005A-Y02 |

**Staff Bath**

| | | |
|---|---|---|
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |
| 1 | Shower | Slope, hot mop & 1standard control valve to be supplied by others |

**Bath 6**

| | | |
|---|---|---|
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |
| 1 | Shower | Slope, hot mop & 1standard control valve to be supplied by others |

**Bath 5**

| | | |
|---|---|---|
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |
| 1 | Shower | Slope, hot mop & 1standard control valve to be supplied by others |

**AV Room**

| | | |
|---|---|---|
| 1 | Floor Drain | 2"floor drain with trap primer availability |

**East Hall Powder Bath 1**

| | | |
|---|---|---|
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |

**East Hall Powder Bath 2**

| | | |
|---|---|---|
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |

**South Hall Storage Room**

| | | |
|---|---|---|
| 1 | Floor Drain | 2"floor drain with trap primer availability |

**Gym Bath**

| | | |
|---|---|---|
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |
| 1 | Shower | Slope, hot mop & 1standard control valve to be supplied by others |

**South Hall Storage Room**

| | | |
|---|---|---|
| 1 | Floor Drain | 2"floor drain with trap primer availability |

**Pool / Spa Walkway Area**

| | | |
|---|---|---|
| 3 | Floor Drain | JR Smith 2005A-Y02 |

**Mechanical Room near Salon**

| | | |
|---|---|---|
| 1 | Floor Drain | 2"floor drain with trap primer availability |
| 1 | Water Heater | BLN-80 required by SCAQMD |
| 1 | Recirculating Pump | Taco 006-BC7-1PNP with timer |

**Service Kitchen**

| | | |
|---|---|---|
| 1 | Kitchen Sink | Fixture and faucet to be supplied by others |
| 1 | Garbage Disposal | Appliance to be supplied by others |

Customer Initial

*Skyline Development / 944 Airole Way* Rev 1

**Salon**
| | | |
|---|---|---|
| 4 | Sink | Fixture and faucet to be supplied by others |

**Salon Bath**
| | | |
|---|---|---|
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |
| 1 | Tub / Shower | Fixture and valve to be supplied by others |

**Mechanical Room at Salon Bath**
| | | |
|---|---|---|
| 1 | Floor Drain | 2"floor drain with trap primer availability |

**Spa Lobby Shower**
| | | |
|---|---|---|
| 1 | Floor Drain | JR Smith 2005A-Y02 |

**Spa Lobby Steam Room**
| | | |
|---|---|---|
| 1 | Floor Drain | JR Smith 2005A-Y02 |

**Spa Lobby Sauna**
| | | |
|---|---|---|
| 1 | Floor Drain | JR Smith 2005A-Y02 |

**Spa Lobby Igloo**
| | | |
|---|---|---|
| 1 | Floor Drain | JR Smith 2005A-Y02 |

**Spa Lobby Hydro Therapy**
| | | |
|---|---|---|
| 1 | Floor Drain | JR Smith 2005A-Y02 |

**Spa Lobby Hot Tub**
| | | |
|---|---|---|
| 1 | Floor Drain | JR Smith 2005A-Y02 |

**Prep Kitchen**
| | | |
|---|---|---|
| 1 | Kitchen Sink | Fixture and faucet to be supplied by others |
| 1 | Garbage Disposal | Appliance to be supplied by others |

**Mechanical Room at Prep Kitchen**
| | | |
|---|---|---|
| 1 | Floor Drain | 2"floor drain with trap primer availability |

**Mechanical Room at Study 2**              **MAIN LEVEL**
| | | |
|---|---|---|
| 1 | Floor Drain | 2"floor drain with trap primer availability |

**Study 2 Bath**
| | | |
|---|---|---|
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |
| 1 | Shower | Slope, hot mop & 1standard control valve to be supplied by others |

**Mechanical Room at Study Stairwell**
| | | |
|---|---|---|
| 1 | Floor Drain | 2"floor drain with trap primer availability |

**Mechanical Room at Study**
| | | |
|---|---|---|
| 1 | Floor Drain | 2"floor drain with trap primer availability |

**Study Bath**
| | | |
|---|---|---|
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |

**Powder Bath 1**
| | | |
|---|---|---|
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |

**Powder Bath 2**
| | | |
|---|---|---|
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |

**Mechanical Room near Butler Pantry**
| | | |
|---|---|---|
| 1 | Floor Drain | 2"floor drain with trap primer availability |

Customer Initial _____

PRESTIMATE\ESTIMATE\PROPOSALS\residential\05-2014\2014-08 August\Skylab Development w\Rem Hamilton Airole Way REV 1.doc

*Skyline Development / 944 Airole Way Rev 1*

| | | |
|---|---|---|
| 1 | Water Heater | BLN-80 required by SCAQMD |
| 1 | Recirculating Pump | Taco 006-BC7-1PNP with timer |

*Powder Bath at Living Room*

| | | |
|---|---|---|
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |

*Family Room Wet Bar*

| | | |
|---|---|---|
| 1 | Sink | Fixture and faucet to be supplied by others |

*Mechanical Room at Family Room*

| | | |
|---|---|---|
| 1 | Floor Drain | 2"floor drain with trap primer availability |

*Main Kitchen*

| | | |
|---|---|---|
| 1 | Kitchen Sink | Fixture and faucet to be supplied by others |
| 1 | Garbage Disposal | Appliance to be supplied by others |

*Powder Bath at Kitchen*

| | | |
|---|---|---|
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |

*Changing Room Bath*

| | | |
|---|---|---|
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |
| 1 | Shower | Slope, hot mop & 1standard control valve to be supplied by others |
| 1 | Water Heater | Chronomite SR30L 120 volt, 3600 watt |

*Pool Bath*

| | | |
|---|---|---|
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |
| 1 | Shower | Slope, hot mop & 1standard control valve to be supplied by others |
| 1 | Water Heater | Chronomite M40 240 volt, 9.6 kw |

**UPPER LEVEL**

*Mechanical Room at Staff Study*

| | | |
|---|---|---|
| 1 | Floor Drain | 2"floor drain with trap primer availability |

*Staff Study Bath*

| | | |
|---|---|---|
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |
| 1 | Shower | Slope, hot mop & 1standard control valve to be supplied by others |

*North Hall Mechanical Room*

| | | |
|---|---|---|
| 1 | Floor Drain | 2"floor drain with trap primer availability |
| 1 | Water Heater | BLN-80 required by SCAQMD |
| 1 | Recirculating Pump | Taco 006-BC7-1PNP with timer |

*Her Closet Mechanical Room 1*

| | | |
|---|---|---|
| 1 | Floor Drain | 2"floor drain with trap primer availability |

*Her Closet Mechanical Room 2*

| | | |
|---|---|---|
| 1 | Floor Drain | 2"floor drain with trap primer availability |

*Master Lounge Mechanical Room*

| | | |
|---|---|---|
| 1 | Floor Drain | 2"floor drain with trap primer availability |

*Her Master Bath*

| | | |
|---|---|---|
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |
| 1 | Freestanding Tub | Fixture, valve and trim to be supplied by others |
| 1 | Shower | Slope, hot mop & 1standard control valve to be supplied by others |
| 1 | Steam Shower | Appliance to be supplied by others |

Customer Initial _____

INVESTDATINESTIDATEPROPOSALS\residents\1000-2014\2014\09 August\Skyline Development with Reese Hamilton Airole Way\REV 1.doc

*Skyline Development / 944 Airole Way Rev 1*

**His Master Bath**
| | | |
|---|---|---|
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |
| 1 | Freestanding Tub | Fixture, valve and trim to be supplied by others |
| 1 | Shower | Slope, hot mop & 1standard control valve to be supplied by others |
| 1 | Steam Shower | Appliance to be supplied by others |

**Bath 1**
| | | |
|---|---|---|
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |
| 1 | Shower | Slope, hot mop & 1standard control valve to be supplied by others |

**Mechanical Room at Bedroom 2**
| | | |
|---|---|---|
| 1 | Floor Drain | 2"floor drain with trap primer availability |

**Bath 2**
| | | |
|---|---|---|
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |
| 1 | Shower | Slope, hot mop & 1standard control valve to be supplied by others |

**Mechanical Room in Bedroom 2**
| | | |
|---|---|---|
| 1 | Floor Drain | 2"floor drain with trap primer availability |

**Bath 3**
| | | |
|---|---|---|
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |
| 1 | Shower | Slope, hot mop & 1standard control valve to be supplied by others |

**Laundry 2**
| | | |
|---|---|---|
| 1 | Laundry Sink | Fixture and faucet to be supplied by others |
| 2 | Clothes Washer | Recessed Box with valves and waste connection |
| 2 | Dryer Gas | Recessed Box with capped gas control valve |
| 1 | Floor Drain | JR Smith 2005A-Y02 |

**Bath 4**
| | | |
|---|---|---|
| 1 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |
| 1 | Shower | Slope, hot mop & 1standard control valve to be supplied by others |

**Mechanical Room near Reading Room**
| | | |
|---|---|---|
| 1 | Floor Drain | 2"floor drain with trap primer availability |

**Roof**
| | | |
|---|---|---|
| 32 | Roof Drain | Watt RD-103-B-SO |
| 32 | Roof Overflow Drain | Watt RD-103-B-R-SO |

**BALLROOM**

**Women's Bath**
| | | |
|---|---|---|
| 2 | Toilet | Fixture to be supplied by others |
| 1 | Lavatory | Fixture and faucet to be supplied by others |
| 1 | Floor Drain | JR Smith 2005A-Y02 |

**Men's Bath**
| | | |
|---|---|---|
| 3 | Toilet | Fixture to be supplied by others |
| 2 | Lavatory | Fixture and faucet to be supplied by others |
| 1 | Floor Drain | JR Smith 2005A-Y02 |

**Mechanical Room near Reading Room**
| | | |
|---|---|---|
| 1 | Floor Drain | 2"floor drain with trap primer availability |

Customer Initial

Page 6 of 11

*Skyline Development / 944 Airole Way Rev 1*

| 1 | Water Heater | BLN-80 required by SCAQMD |
| 1 | Recirculating Pump | Taco 006-BC7-1PNP with timer |

**Roof**

| 3 | Roof Drain | Watt RD-103-B-SO |
| 3 | Roof Overflow Drain | Watt RD-103-B-R-SO |

## Inclusions:

### ---Gas---

o   All gas material to be schedule 40 threaded black steel pipe and related fittings.
o   Install one gas system in the Staff Quarters with 2 openings to service 1 water heater, 2 forced air units, 1 fireplace, 1 dryer and 1 range/oven.
o   Install one gas system in the Recreation Room with 3 openings to service 1 forced air unit, 1 fireplace and 1 outside fire pit.
o   Install one gas system in the Guest Quarters with 8 openings to service 1 water heater, 3 forced air units, 2 fireplace, 1 dryer and 1 range/oven.
o   Install one gas system in the Ballroom with 8 openings to service 1 water heater, 6 forced air units, and 2 fire pits.
o   Install one gas system in the Main Residence with 50 openings to service 6 water heater, 27 forced air units, 10 fireplace, 4 dryer and 3 range/oven.

### ---Site Gas---

o   Install three ¾" medium pressure gas line from the gas meter location as shown on the plumbing plans provided to regulator station 1, 2 and 3 with continuation into the building.
o   Continue from regulator station 1 to the Ballroom and fire feature on the opposite side.
o   Install one 1 ¼" medium pressure gas line from the gas meter location as shown on the plumbing plans provided to regulator station 4 with continuation into the building.
o   Install one 1" medium pressure gas line from the gas meter location as shown on the plumbing plans provided to regulator station 5 with continuation into the building.
o   Install one gas line from regulator station 5 to service the Guest House, Recreation Room and Staff Quarters per the plumbing plans.
o   All gas regulators to be installed above grade with one medium pressure side control valve.
o   All trenching, sand shading up to 12" deep, backfill with natural soil removed during excavation and compaction of trenching over 2' in depth is included.

### ---Condensate---

o   Condensate to be installed with ¾" type "M" copper pipe and related fittings as specified.
o   All condensate drain to be gravity type to the point of termination or approved receptor.
o   Install one condensate drain line for each forced air unit shown on the plans provided.

### ---Water---

o   New water system in the building to be type "L" copper pipe and related fittings.
o   Showerhead height to be installed between 6'2" and 6'8" above the rough floor unless specified otherwise in writing by the Builder or Owner.
o   Install one cold water supply at required refrigerator locations shown on the plumbing plans with a water control valve in a recessed box.
o   Provide water supply for seven coffee makers as listed on Architectural plans sheet SCH7 with final connection to be completed by others.
o   Connect water service at each building and water meter one time only.

Customer Initial_____

P:\ESTIMATES\ESTIMATE\PROPOSALS\ residents\900-2014\2014-08 Ampad\Skyline Development with Rustic Hardware Airole Way REV 1.doc

*Skyline Development / 944 Airole Way Rev 1*

**---Water Service---**

- o  Install one 3" water service from an existing water meter to service the Main Residence and Ballroom only.
- o  Install one 2" water service from and existing water meter to service the Staff Quarters, Recreation Room and Guest House.
- o  All trenching, sand shading up to 12" deep, backfill with natural soil removed during excavation and compaction of trenching over 2' in depth is included.
- o  Water Service to be installed with Schedule 40 PVC pipe and related fittings with copper installed in the last 10" as may be required for electrical ground.

**---Waste---**

- o  All waste and vent material in the staff quarters, recreation room, and guest house to be ABS pipe and related fittings.
- o  All venting to be installed as close as possible to the plumbing plans provided for bidding.
- o  All waste that services the same floor in the main residence to be ABS pipe and related fittings.
- o  All vent material in the main residence to be ABS pipe and related fittings.
- o  All waste material installed between floors to be completed with cast iron pipe and related fittings
- o  Plate straps and safety plates are included for nail protection only, no structural strapping.

**---Roof Drains---**

- o  All roof drain material to be cast iron pipe and related fittings as specified on the plumbing material schedule provided.
- o  All roof drains to terminate and the first floor plate for continuation by others.
- o  All roof overflow drains to terminate a minimum of 6" above grade for continuation by others.

**---Sewer---**

- o  All new sewer material to be ABS pipe and related fittings.
- o  All sewer excavation to be completed prior to exterior backfill or installation of retaining walls to have grade at required building elevation height.
- o  Sewer for the Guest House, Recreation Room and the Staff Quarters to be separate from the Main Residence and be installed down the driveway to the existing sewer lateral near to bottom of the existing drive.
- o  Sewer connection to be completed at the existing sewer lateral located on the driveway entrance.
- o  All trenching, sand shading up to 12" deep, backfill with natural soil removed during excavation and compaction of trenching over 2' in depth is included.

**---Finish---**

- o  Install owner supplied finish when unit is 100% ready or scheduled accordingly for a full day of work to avoid additional trip charges.
- o  Each tank type water heater area must have a clear finish area of 32" for installation of a safety drain pan.
- o  Each tank type water heater to have a drain pan installed under the unit to prevent possible water damage based on age of the water heater.
- o  Each tank type water heater must be installed on a short platform to allow for drainage to the proper location for the drain pan discharge.
- o  Final gas connections to be completed at the water heaters and range only.
- o  Connect owners supplied dishwasher and range/oven delivered to kitchen by others at time of kitchen scheduled finish installation.
- o  Appliances to be uncrated by the builder or owner to check their condition and confirm they are the appliances ordered.

Customer Initial

P:\ESTIMATES\ESTIMATE\PROPOSALS rendepaM00-2014 2014-05 August\Skyline Development with Rene Hamilton Airole Way REV 1.doc

*Skyline Development / 944 Airole Way Rev I*

## *Exclusions:*

- Permits, plan check, design drawings and fees are not included.
- Sand or handling of sand is not included unless specified otherwise in specialty site work areas of this proposal.
- If sand is required or requested for ground work or sewer shading or backfill it will be billed as an extra including labor to relocate, see option.
- Additional gas connections to the barbeque, dryer and fireplaces are not included.
- Final connection of the condensate and secondary lines, including the trap, is not included.
- Condensate pumps and pump discharge lines are not included in this proposal.
- Kennco Plumbing is not responsible for the theft of installed copper material.
- Structural straps and installation of supplied structural strapping is not included.
- Supplying a point of connection for a fire sprinkler system to the domestic water is not included.
- No meters, meter ball valves, rims, sprinklers, hydrants, bumper posts, ejection pumps, dual wastes due to upper manhole elevation, or backwater devices.
- No yard area drains, patio drains, planter drains, garage drains or trench drains in this proposal.
- Installation of sound proof and fire proof material is not included.
- Construction water and power to be furnished by the builder.
- Accessories and fasteners provided and installed by others.
- Bid does not include dewatering of groundwater if applicable.
- Pumping water out of plumbing and sewer trenches during stormy weather is not included.
- Site improvements are not included unless specified within.
- Any and all specialty trough shower drains, if required, to be supplied by others for installation only by Kennco Plumbing.
- Providing and installation of R13 or 3 ½" batt insulation for waste or water pipe in uninsulated stud or joist bays is not included.
- Installation of a hot water recirculation system in the staff quarters is not included, see options.
- Purchase and installation of gas earthquake valves at the service or at any building entry are not included and not called out on the gas design.
- Scheduling or hiring a soil engineer for backfill compaction testing is not included.
- Installation of water supply to each building is not included because of a diagrammatic design flaw of installing the water supply under the building and as required by code it must have an individual water control valve to turn off each building as may be necessary.

## *Notes:*

- All materials and fixtures supplied by the builder or owner will be supplied to the room they belong for installation only by Kennco Plumbing. Any defective or missing parts will be replaced or exchanged by the builder or owner.
- Water service must be installed before any top out inspection is requested to assure full water pressure on the entire water system for as long as possible. If this is not followed Kennco Plumbing cannot be held responsible for any water damage due to a domestic water leak.
- All walls which require plumbing but are designated as "not to be penetrated" such as sheer walls or double shear walls, must have designated plumbing walls adjacent to these walls or furr-outs large enough to cover the plumbing and piping systems as designed by Kennco Plumbing , Inc. prior to underground installation.

Customer Initial _____

Page 9 of 11

P:\ESTIMATE\ESTIMATE\PROPOSALS reddenta\MO-2014\2014-08 August\Skyline Development with Rocco Hamilton Airole Way REV I.doc

*Skyline Development / 944 Airole Way Rev 1*

- All reasonable care shall be taken to prevent construction debris from entering into the plumbing systems., Kennco Plumbing, Inc. shall not be responsible for caps and plugs removed by other trades or construction debris introduced into the plumbing system through the actions of other trades.
- If finish fixtures are to be supplied by the owner or builder it will be necessary that all fixture specification sheets be supplied to Kennco Plumbing prior to the start of top out. All furniture style cabinetry has various rough installation requirements for both the waste and water based on the cabinet design itself. All first floor specialty tub and toilet information would be required prior to the start of groundwork. Without this required information to complete proper installation any changes or adjustments will be at an additional cost.
- Access panels are not included and must be supplied and installed at plumbing connections for all specialty tubs including self-rimming and freestanding. If the plumbing connections are not accessible during tub installation than Kennco Plumbing cannot be held responsible for leaks that may occur after a blind test with no visual inspection.
- Due to the job site conditions any trenching that is not able to be completed under normal conditions with a Caterpillar 420, because of rock or excessive hard material, will be charged at an additional per hour cost.

If we are awarded this contract, our specifications are to become a part of the contract documents, and they will supersede any other specifications.
Any alteration or deviation from the above specifications, including but not limited to any such alteration or deviation involving additional material and or labor costs will be executed only upon a written order for same, signed by builder or project superintendent and if there is any charge for such alteration or deviation, the additional charge will be added to the contract price of this contract.
If any payment is not made when due, *Kennco Plumbing, Inc.* may suspend work on the job until such time as all payments due have been made. A failure to make payment for a period of time in excess of 15 days from the due date shall be a material breach of this contract.
A finance charge of 1-1/2% per month (annual rate of 18%) will be charged on balances over 30 days.

All of the above work is to be completed in a substantial and workmanlike manner according to standard practices for the sum of:

| | |
|---|---|
| **Staff Quarters** | |
| *Thirty eight thousand two hundred sixty dollars and no/100* | $38,260.00 |
| **Recreation Room** | |
| *Fourteen thousand seven hundred sixty five dollars and no/100* | $14,765.00 |
| **Guest Quarters** | |
| *Forty six thousand five hundred fifty dollars and no/100* | $46,550.00 |
| **Ballroom** | |
| *Forty three thousand six hundred sixty five dollars and no/100* | $43,665.00 |
| **Main Residence** | |
| *Four hundred seventeen thousand three hundred twenty five dollars and no/100* | $417,325.00 |
| **Site Gas** | |
| *Fifty three thousand four hundred dollars and no/100* | $53,400.00 |

Customer Initial _____

Page 10 of 11

PROPOSALS\SKYLINE\PROPOSALS residents\05-2014\2014-08 August\Skyline Development with Recess Function Airole Way REV 1.doc

*Skyline Development / 944 Airole Way Rev 1*

### Site Sewer and Water Service

*Forty two thousand six hundred eighty five dollars and no/100*                   $42,685.00

**Options:**

1. If no access provided by builder for self-rimming tub plumbing connections.        add $400.00.each
2. Hourly charge for fixtures and valves not being in position at appropriate time.        $75.00 p/hr.
3. Additional sand to completely backfill trenching above 2' in depth.        $22.00 p/ton, 25-ton min.
4. Cost per laborer to handle or relocate sand.        $55.00 p/hr.
5. Install one series 007 double check valve if required for the steam shower.        add $395.00
6. Install individual floor sink for specialty drains from forced air units or water heater
   Pressure relief not shown on the plumbing plans.        $900.00
7. Provide and install one Taco On Command recirculation pump at the staff quarters
   kitchen sink location.        $790.00
8. Provide Taco On Command remote control with cost specified per controller.        $75.00

These prices are firm until: September 5, 2014

Progress payments shall be made as follows:
35% groundwork
55% top out
10% finish

Respectfully submitted:
Kennco Plumbing, Inc.
Robert L. Kennedy Jr, President

Per: _____

### ACCEPTANCE OF PROPOSAL

The above prices, specifications and conditions are satisfactory and are hereby accepted. You are
authorized to do the work as specified. Payment will be made as outlined above.

Date: 9-2-14          Signature: _____

Title: Manager          Print Name: NILE NIAMI

### RIGHT TO CANCEL

You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this
transaction. See a notice of cancellation form for an explanation of this right.

Contractors are required by law to be licensed and regulated by the Contractors State License Board, 9835 Goethe Road,
Sacramento, CA 95827. Mailing address: P.O. Box 26000, Sacramento, CA 95826.

You as owner or tenant have a right to require the contractor to have a performance and payment bond.

Customer Initial _____

Page 11 of 11

P:\ESTIMATES\ESTIMATE\PROPOSALS reorders\N0-2014\2014-08 August\Skyline Development with Reese Hughson Airole Way REV 1.doc

# EXHIBIT    2

## ASSIGNMENT OF CONTRACT

**DATED: March 13, 2018**

FOR VALUE RECEIVED, THIS ASSIGNMENT OF CONTRACT (this "Assignment")
is made by THE ONE ON AIROLE, LLC, a California limited liability company
("Borrower"), to C3 CAPITAL, LLC, a California limited liability company ("Lender"), as of
the date first written above. Borrower hereby sells, assigns, grants, transfers and sets over to
Lender all of Borrower's right, title and interest in and to that certain *Plumbing* (together with all
attachments and addenda thereto, the "Contract") dated as of *September 2, 2014* by and
between *Kennco plumbing Inc.* ("Contractor"), and Borrower [for the construction project][1]
located at 944 Airole Way in the County of Los Angeles, State of California (the "Project"), on
real property legally described in that certain Construction Deed of Trust, Assignment of Rents,
Security Agreement and Fixture Filing, dated as of March [__], 2018 (the "Deed of Trust"),
which secures certain obligations made by Borrower in favor of Lender as collateral for a loan
(the "Loan") made by Lender to Borrower pursuant to that certain Construction Loan Agreement
between Borrower and Lender dated as of March [__], 2018 (the "Loan Agreement") and
evidenced by that certain Promissory Note dated as of March [__], 2018, in favor of Lender in
the original principal amount of Eighty-Five Million and No/100 Dollars ($85,000,000.00) (the
"Note").

1.    In making this assignment, Borrower hereby represents and warrants that:

   a.    Borrower is the sole owner of the rights, privileges and interests set forth in the
         Contract as being the rights of Borrower;

   b.    Borrower has the right to make this Assignment; the full title and right to
         Borrower's interests in the Contract are vested in Lender hereby; and such rights
         and interests are granted and assigned free from liens, encumbrances, claims and
         setoffs of every kind whatsoever;

   c.    The Contract is valid and in full force and effect in accordance with its terms;

   d.    Borrower is not in default under any of the terms, conditions or covenants of the
         Contract;

   e.    Borrower has not heretofore assigned or pledged its interest in the Contract, and
         Borrower will not further pledge or assign its interest in the Contract; and

   f.    This Assignment is irrevocable and shall remain in full force and effect until and
         unless the Loan is paid in full (for which purpose credit bidding at a foreclosure
         sale under the Deed of Trust shall not constitute payment of the Loan); no event
         of termination or release shall have any effect unless and until Lender shall
         execute, in writing, a certification that such event has occurred; and until such

---

[1] NTD: provide more specific description of services if applicable.

1

certification is so executed by Lender and delivered, all persons may rely upon this document as an effective assignment of the rights, privileges and property interests, as hereinabove described.

2. Borrower hereby covenants and agrees:

    a.    To observe and perform all obligations imposed on Borrower under the Contract hereby assigned, and to indemnify and hold Lender harmless from the consequences of any failure to do so;

    b.    To preserve the Contract in full force and effect for the benefit of Lender;

    c.    Not to execute any other assignment of Borrower's interest in the Contract;

    d.    Not to alter, extend, amend or modify the terms of the Contract without the prior written consent of Lender, which consent Lender may give or withhold in Lender's sole and absolute opinion and judgment;

    e.    Not to terminate, cancel or release the Contract, or Contractor, without the prior written consent of Lender, which consent Lender may give or withhold in its sole and absolute opinion and judgment;

    f.    Lender, at its option, without any requirement that it do so, may enforce the Contract, in its own name or in the name of Borrower;

    g.    Lender may assign its right, title and interest in the Contract to any person or entity, upon notice to Contractor but without any further requirement of Borrower's or Contractor's consent, and any such assignment shall be valid and binding upon Borrower and Contractor as fully as if each had expressly approved the same;

    h.    Borrower hereby agrees to indemnify Lender and hold Lender harmless from and against any and all claims, demands, liabilities, losses, lawsuits, judgments, awards, costs and expenses, including, but not limited to, attorneys' fees, to which Lender may become subject or which Lender may incur, in connection with enforcement of this Assignment or the breach of this Assignment;

    i.    This Assignment is made for security purposes only, and unless and until the same is exercised by Lender, upon notice, in writing, given to Borrower and to Contractor, Lender shall have no obligation of performance under the Contract nor shall Lender be required to enforce any obligations or duties of Contractor under the Contract, and Borrower hereby, specifically, waives any and all right that it may have to require Lender to undertake any duties or obligations of the Contract, to utilize the Contract in any manner whatsoever or to enforce the Contract, whether such duties may arise expressly, impliedly, by operation of law or otherwise; and

2

j.    Lender shall have and possess, without limitation, any and all rights provided by this Assignment and any and all rights and remedies of a secured party under the New York Uniform Commercial Code, the California Uniform Commercial Code, or otherwise provided by law.

3.    Borrower hereby irrevocably constitutes and appoints Lender as its attorney-in-fact, which power is deemed coupled with an interest and is, therefore, irrevocable, to demand, receive and enforce Borrower's rights with respect to the Contract, to make payments under the Contract and to give appropriate receipts, releases and satisfactions for and on behalf of and in the name of Borrower or, at the option of Lender, in the name of Lender, with the same force and effect as Borrower could do if this Assignment had not been made.

4.    This Assignment, together with the agreements, covenants and warranties contained herein shall inure to the benefit of Lender and any subsequent holder of the Note and Deed of Trust, and shall be binding upon Borrower and any subsequent owner of the premises described in the Deed of Trust.

[SIGNATURE PAGE FOLLOWS]

3

IN WITNESS WHEREOF, Borrower has executed this Assignment as of the day and year first set forth above.

BORROWER:

**THE ONE ON AIROLE, LLC,**
a California limited liability company

By: _____
Name: _____
Title: _____

Signature Page to Assignment of
Construction Contract

## CONTRACTOR'S CONSENT AND CERTIFICATION

DATED: Marc, 2018

    The undersigned ("**Contractor**") hereby consents to the assignment (the "**Assignment**") by **THE ONE ON AIROLE, LLC**, a California limited liability company ("**Borrower**"), to **C3 CAPITAL, LLC**, a California limited liability company ("**Lender**"), of Borrower's right, title and interest in and to that certain Framing (together with all attachments and addenda thereto, the "**Contract**") dated as of *September 2, 2014* by and between Borrower and Contractor for [the construction][2] of the project located at 944 Airole Way in the County of Los Angeles, State of California, which Assignment is in respect of a loan from Lender to Borrower (the "**Loan**"), and as an inducement to Lender to make, and in consideration of Lender's making the Loan, agrees with Lender as follows:

1.    In the event of default by Borrower under any instrument, document or agreement relating to the Loan, or in the event of a default by Borrower under the Assignment of Construction Contract to which this Consent is attached, Contractor, at Lender's request, will continue performance under the Contract on behalf of Lender, or Lender's designee, in accordance with the terms of the Contract.

2.    The disbursement provisions contained in or attached to the Loan Agreement will control the disbursement of loan funds in payments to Contractor, notwithstanding any conflicting provisions contained in the Contract.

3.    Lender, or its designee may enforce the obligations of the Contract with the same force and effect as if enforced by Borrower, and may perform the obligations of Borrower, and Contractor will accept such performance in lieu of performance by Borrower in satisfaction of Borrower's obligations thereunder.

4.    Contractor will not terminate, cancel or release the Contract except on the basis of a material breach or default under the Contract by Borrower, and will not terminate, cancel or release the Contract for such material breach or default by Borrower without having given not less than thirty (30) days' prior written notice to Lender of Contractor's intention to so terminate, cancel or release the Contract, and then will not so terminate, cancel or release the Contract if, within such 30 day period, Lender either cures such breach or default or, at its option, commences proceedings to enforce its security interest in the real property, and thereafter promptly completes its enforcement proceedings or accepts a deed in lieu of foreclosure and, upon such completion or deed, gives the notice to Contractor, hereinabove specified, that Lender is undertaking the Contract; or causing the appointment of a receiver who shall offer to undertake the obligations of the Contract, which shall be deemed to be performance by Lender in lieu of the performance hereinabove described.  Notwithstanding anything to the contrary contained in the

---

[2] NTD: provide more specific description of services if applicable.

5

Contract, Lender may terminate the Contract, with or without cause, upon thirty (30) days' written notice to Contractor.

5. Contractor hereby represents and warrants to Lender that (a) the Contract is a valid and enforceable agreement; (b) there has been no prior assignment of the Contract, or of Borrower's interest therein, of which the undersigned has notice or is aware; (c) neither Contractor nor Borrower is in default under the Contract; (d) all covenants, conditions and agreements have been performed as required therein, except those not due to be performed until after the date hereof; [and (e) Contractor is duly licensed to conduct its business in the jurisdiction where such construction is to be performed and will maintain said license in full force and effect throughout the life of the Contract][3].

6. The undersigned is a duly appointed officer or signatory of Contractor signing this Contractor's Consent and Certification, and is duly authorized by all necessary corporate action of Contractor to execute and deliver this Contractor's Consent and Certification.

**[SIGNATURE PAGE FOLLOWS]**

---

[3] To be inserted if contract is with an engineer, architect, or any other party providing services, labor, or materials where a license would be required.

6

IN WITNESS WHEREOF, Contractor has executed this Contractor's Consent and Certification as of the day and year first set forth above.

CONTRACTOR:

**KENNCO PLUMBING INC.**
a

By: _____
Name: _Robert L. Kennedy_
Title: _President_

# EXHIBIT    3

**EXHIBIT A**

**LEGAL DESCRIPTION**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF <u>TRACT NO. 22727</u>, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN <u>BOOK 623 PAGE(S) 81 TO 83</u> INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF <u>TRACT NO. 9745</u>, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN <u>BOOK 141 PAGES 93 TO 96</u> INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET; THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE HAVING A LENGTH OF 115.83 FEET.

APN: 4369-026-021

(Property commonly known as: 944 Airole Way, Los Angeles, CA)

# EXHIBIT    4

This is not a lien. This notice is given pursuant to California civil code section 8034(a), 8102, 8200 et. seq. This form is designed for a private work project. For a public work project, use a "California Preliminary 20-day Notice" (Public Works) form.

## NOTICE TO PROPERTY OWNER

If bills are not paid in full for the labor, services, equipment, or materials furnished or to be furnished, a mechanic's lien leading to the loss, through court foreclosure proceedings, of all or part of your property being so improved may be placed against the property even though you have paid your contractor in full. You may wish to protect yourself against this consequence by (1) requiring your contractor to furnish a signed release by the person or firm giving you this notice before making payment to your contractor or (2) any other method or device which is appropriate under the circumstances. Other than residential homeowners of dwellings containing fewer than five units, private project owners must notify the original contractor and any lien claimant who has provided the owner with a preliminary 20-day lien notice in accordance with Section 8034(a), 8102, 8200 et. seq. of the Civil Code that a notice of completion or notice of cessation has been recorded within 10 days of its recordation.  Notice shall be by registered mail, certified mail, or first-class mail, evidenced by a certificate of mailing.  Failure to notify will extend the deadlines to record a lien.

You are hereby notified:                                                                             Date:   10-22-2014
That the undersigned has furnished or will furnish labor, services, equipment, or material of the following description:

| | | | |
|---|---|---|---|
| Individual or Firm | **KENNCO Plumbing, Inc.**<br>26575 Ruether Ave<br>Santa Clarita CA 91350<br><br>By    Barbara Kennedy<br>Title    Vice President | Description    Plumbing<br><br>Jobsite    **Airole Residence**<br>944 Airole Way<br>Los Angeles CA 90077 | |

The name and address of the person who contracted for the purchase of such labor, service, equipment, or material is
Skyline Development
8981 W. Sunset Blvd #303, West Hollywood,, CA 90069

| | | |
|---|---|---|
| To: construction lender or reputed construction lender | **First Republic Bank**<br>111 Pine Street<br><br>Sant Francisco,<br>CA 94111 | **NOTICE TO CONSTRUCTION LENDER ONLY**<br><br>Estimated total price for the labor, services, equipment, or materials described hereon<br><br>$    656,650.00 |
| To: owner or reputed owner | **Crestlloyd LLC**<br>8981 W. Sunset Blvd #303<br><br>West Hollywood,<br>CA 90069 | Trust funds to which supplemental fringe benefits are payable<br><br>NAME _____<br>ADDRESS _____<br>NAME _____<br>ADDRESS _____ |
| To: original contractor or reputed contractor | **Skyline Development**<br>8981 W. Sunset Blvd #303<br>West Hollywood, CA 90069 | NAME _____<br>ADDRESS _____ |

## DECLARATION OF SERVICE

I,    Barbara Kennedy    , declare that I served the above Preliminary Notice by first class registered/certified mail postage prepaid. I declare under the penalty of perjury of the laws of the State of California that the foregoing  is true and correct on    10/22/14

Executed on    October 22 2014    at    Santa Clarita    , California

Signature of person making service    Barbara Kennedy

### ATTACH RECEIPTS OF CERTIFIED OR REGISTERED MAIL WHEN RETURNED



# EXHIBIT    5

**This page is part of your document - DO NOT DISCARD**



**20211508207**



**Pages:
0009**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**10/05/21 AT 09:00AM**

| | |
|---|---:|
| FEES: | 41.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 116.00 |



**L E A D S H E E T**



**202110050700003**

**00021301197**



**012747879**

**SEQ:
01**

**DAR - Counter (Upfront Scan)**



**THIS FORM IS NOT TO BE DUPLICATED**

RECORDING REQUESTED BY:
Gary A. Weis, Esq.
WHEN RECORDED, MAIL TO:


**Gary A. Weis**

**17451 Sarita Ave.**

**Canyon Country, CA 91387**



10/05/2021

*20211508207*

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE


## TITLE(S)


Mechanic's Lien

RECORDING REQUESTED BY
WHEN RECORDED MAIL TO

Law Offices of Gary A. Weis
17451 Sarita Ave
Canyon Country, CA 91387

SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY

# Mechanics' Lien
## (Claim of Lien)

NOTICE IS HEREBY GIVEN: That __Kennco Plumbing, Inc.__
as claimant claims a lien for labor, service, equipment, or materials under Section 8000 et seq. of the *Civil Code* of the State of California, upon the premises hereinafter described, and upon every estate or interest in such structures, improvements and premises held by any party holding any estate therein. This Mechanic's Lien is entitled to a priority security interest in the Property over the interests of all other lenders and Trust Deed holders, pursuant to Civil Code §8450(a).

Said labor, service, equipment or materials, were furnished for the construction of those certain buildings, improvements, or structures, now upon that certain parcel of land situated in the County of __Los Angeles__ State of California, said land described as follows:

STREET ADDRESS:   __944 Airole Way, Los Angeles, CA 90077__
LEGAL DESCRIPTION: __SEE ATTACHED EXHIBIT "A".__ *& Exhibit B*

Said lien is claimed for the following labor, services, equipment or materials: (describe labor, services, equipment, or materials in detail): __Plumbing labor and materials.__

Amount due after deducting all just credits and offsets ... $ __85,560.17__ .

The name of the person or company by whom claimant was employed or to whom claimant furnished labor, services, equipment, or materials is __CRESTLLOYD LLC, 655 Deep Valley Dr., Ste 125-P; Rolling Hills Estates, CA 90274__ , which is also an owner or reputed owner of said building and/or premises, or holds some interest therein.

Date September __30__ 2021        Claimant: Kennco Plumbing, Inc.

By: _____

Capacity:  __Robert Kennedy, President__

### VERIFICATION
    I, the undersigned, state: I am the _____ __President__ _____ of the claimant named in the foregoing mechanics' lien; I have read said claim of mechanics' lien and know the contents thereof, and I certify that the same is true of my own knowledge.
    I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September __30__ 2021,    at __Santa Clarita__ State of California.

By: _____

__Robert Kennedy__

*Exhibit B*

# ADDITIONAL NOTICE EFFECTING TITLE TO ANY PURCHASER OF THIS PROPERTY

Claimant believes that this Mechanic's Lien will survive any Sale, Foreclosure or any other Transfer of Title. Construction on this property started in or about 2012. Claimant has been regularly making improvements to the Property from 2014 through September 2021. Each of the active Deeds of Trust recorded on the Property by any Lender or other secured creditor was recorded after construction began. This Mechanic's Lien is entitled to a priority security interest in the Property over the interests of all other lenders and Trust Deed holders, pursuant to Civil Code §8450(a).

## EXHIBIT A

### LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623 PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET; THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE HAVING A LENGTH OF 115.83 FEET.

APN: 4369-026-021

(Property commonly known as: 944 Airole Way, Los Angeles, CA)

## NOTICE OF MECHANIC'S LIEN ATTENTION!

Upon the recording of the enclosed MECHANIC'S LIEN with the county recorder's office of the county where the property is located, your property is subject to the filing of a legal action seeking a court-ordered foreclosure sale of the real property on which the lien has been recorded. That legal action must be filed with the court no later than 90 days after the date the mechanic's lien is recorded.

The party identified in the mechanic's lien may have provided labor or materials for improvements to your property and may not have been paid for these items. You are receiving this notice because it is a required step in filing a mechanic's lien foreclosure action against your property. The foreclosure action will seek a sale of your property in order to pay for unpaid labor, materials, or improvements provided to your property. This may affect your ability to borrow against, refinance, or sell the property until the mechanic's lien is released.

BECAUSE THE LIEN AFFECTS YOUR PROPERTY, YOU MAY WISH TO SPEAK WITH YOUR CONTRACTOR IMMEDIATELY, OR CONTACT AN ATTORNEY, OR FOR MORE INFORMATION ON MECHANIC'S LIENS GO TO THE CONTRACTORS' STATE LICENSE BOARD WEB SITE AT www.cslb.ca.gov.

## PROOF OF SERVICE AFFIDAVIT

On October 1, 2021,  I, Gary A. Weis, served true copies of the following documents, copies of which are attached hereto and incorporated by reference and described as:

MECHANIC'S LIEN;
NOTICE OF MECHANIC'S LIEN ATTENTION !
CERTIFICATE OF MAILING

on the following parties by placing a true copy thereof enclosed in a sealed envelope, via First-class Certified mail, postage prepaid and served from Canyon Country, California in accordance with <u>California Civil Code</u> §3084 on the following parties:

<u>SEE ATTACHED SERVICE LIST</u>

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:    October 1, 2021

<u>Gary A. Weis</u>
[print name]

_____
[signature of declarant]

## CERTIFICATE OF MAILING

STATE OF CALIFORNIA                    )

COUNTY OF   LOS ANGELES            )

I am employed in the County of Los Angeles,  State of California.  I am over the age of 18; my business address is 17451 Sarita Avenue; Canyon Country, CA 91387

On October 1, 2021, I served the foregoing documents described as:

MECHANIC'S LIEN (Claim of Lien):

NOTICE OF MECHANIC'S LIEN ATTENTION !

PROOF OF SERVICE AFFIDAVIT

ON ALL INTERESTED PARTIES by placing true copies thereof enclosed in a sealed envelope, via *Certified, Return Receipt* and postage thereon fully prepaid in the United States Mail at Canyon Country,  California, addressed as follows:

### SEE ATTACHED SERVICE LIST

( )        (BY FAX) I caused such document to be sent via facsimile to the offices of the addressee listed above.

( )        (BY Email) I caused such document to be sent via email to the offices of the addressee listed above

(X)        (BY CERTIFIED MAIL) I caused such envelope with postage thereon fully prepaid to be placed in the United States Mail at Canyon Country, California.

(X)        (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Date:    October 1, 2021

   Gary A. Weis

        [print name]                                                    [signature of declarant]

## SERVICE LIST

**CRESTLLOYD LLC**    [owner or reputed owner &Contractor]
655 Deep Valley Dr., Ste 125-P;
Rolling Hills Estates. CA 90274

**HANKEY CAPITAL, LLC**   [Lender]
4751 Wilshire Blvd., Ste 110
Los Angeles, CA 90010
Attn: Eugene M. Leydiker

**THEODORE LANES**   [Court-Appointed Receiver]
655 Deep Valley Dr., Ste 125-P;
Rolling Hills Estates. CA 90274

**1ST CREDIT BANK**    [Lender]
9255 Sunset Blvd.
W. Hollywood, CA 90069

**YOGI SECURITY HOLDINGS LLC** [Lender]
C/O Steven H. Zidell, Esq.
Wolf, Rifkin, Shapiro, Schulman & Rabkin LLP
11400 W. Olympic Blvd., 9th Floor
Los Angeles, CA 90064-1582

**HILLDUN CORPORATION**  [Lender]
225 W. 35th St.
NY, NY 10001
Attn: Joshua W. Kapleman

Addendum:
Loan Review Department
**FIRST REPUBLIC BANK**   [Lender]
111 Pine St.
San Francisco, CA 94111

THE ONE ON AIROLE LLC
8981 W. Sunset Blvd, Suite 303
West Hollywood, CA 90069

Michael Persall
C3 CAPITAL, LLC
850 S. Coast Hwy 101
Encinitas, CA 92024

# EXHIBIT    6

RECORDING REQUESTED BY

Chicago Title Company

AND WHEN RECORDED MAIL TO

CHICAGO TITLE COMPANY
FORECLOSURE DEPARTMENT
560 E. HOSPITALITY LANE
SAN BERNARDINO, CA  92408

---

Trustee Sale No. 4565-40                    Title Order No.
APN: 4369-026-021

Space above this line for recorder's use only

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$110,247,987.99** as of **03/03/2021** and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be

2

RECORDING REQUESTED BY:

CHICAGO TITLE COMPANY

AND WHEN RECORDED MAIL TO :

CHICAGO TITLE COMPANY
FORECLOSURE DEPARTMENT
560 E. HOSPITALITY LANE
SAN BERNARDINO, CA 92408

---

Trustee's Sale No.    4565-40        Title Order No.
APN: 4369-026-021

### NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

### NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO

### TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

### LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

[PURSUANT TO CIVIL CODE SECTION 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO ABOVE IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR, IF APPLICABLE.]

1

**Trustee Sale No. 4565-40**

earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: HANKEY CAPITAL, LLC, Attn: Eugene Leydiker, 4751 Wilshire Blvd., Suite 110, Los Angeles, CA 90010, Phone: (323) 692-4026
Chicago Title Company phone number: (909) 884-0448 / (800) 722-0824
If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

**REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION. NOTICE IS HEREBY GIVEN THAT:** CHICAGO TITLE COMPANY, a California corporation is either the original trustee, or the duly appointed Trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 10/25/2018, executed by CRESTLLOYD, LLC, a California limited liability company, as Trustor, to secure obligations in favor of HANKEY CAPITAL, LLC, a California limited liability company, as Beneficiary recorded on 11/06/2018 as Document No. 20181122917 and that certain Modification of Deed of Trust dated 08/20/2020 and recorded on 08/31/2020 as Document No. 20201030024 of official records in the Office of the Recorder of Los Angeles County, California, as more fully described on said Deed of Trust, including the note(s) and any modifications/ amendments thereto for the modified sum of $106,000,000.00; that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

THE UNPAID PRINCIPAL BALANCE OF $104,529,453.82 DUE AND PAYABLE 10/31/2020 TOGETHER WITH INTEREST, DEFAULT RATE INTEREST AND COMPOUNDED INTEREST DUE THEREON AND FEES, COSTS AND EXPENSES INCURRED. TO CURE THE DEFAULT, YOU MUST PAY ALL SUMS DUE, INCLUDING THE PRINCIPAL BALANCE, INTEREST THEREON AND ANY ADDITIONAL UNPAID AMOUNTS THAT YOU ARE OBLIGATED TO PAY BY THE TERMS OF THE NOTE AND DEED OF TRUST, SUCH AS, BUT NOT LIMITED TO, ADVANCES, TAXES, HAZARD INSURANCE, AND OBLIGATIONS SECURED BY PRIOR ENCUMBRANCES, PLUS TRUSTEE'S AND/OR ATTORNEY'S FEES AND COSTS AND EXPENSES INCURRED IN ENFORCING THE OBLIGATION.

**Trustee Sale No. 4565-40**

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

DATE:  March 4, 2021


Chicago Title Company, Trustee


By: _Teresa M. Drake_____
Name:  Teresa M. Drake
Title:    Vice President

4

.

# EXHIBIT    7



**This page is part of your document - DO NOT DISCARD**



## 20210934061



**Pages:**
**0005**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**06/14/21 AT 08:00AM**

| | |
|---|---|
| FEES: | 36.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 111.00 |



**L E A D S H E E T**



202106140180049

00020659338



012321696

**SEQ:**
**01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**



4565-40 nos

Recording Requested by
Simplifile

and When Recorded Mail to:

CHICAGO TITLE COMPANY
1101 Investment Blvd., Suite 170
El Dorado Hills, CA 95762

---

Trustee Sale No. 4565-40          Loan No: Crestlloyd, LLC
APN 4369-026-021

## NOTICE OF TRUSTEE'S SALE

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY
*(The above statement is made pursuant to CA Civil Code §2923.3(d)(1). The Summary will not be
recorded pursuant to CA Civil Code §2923.3(a). It will be mailed to the Trustor(s) and/or vested
owner(s) only, pursuant to CA Civil Code §2923.3(d)(2).)*

**YOU ARE IN DEFAULT UNDER A CONSTRUCTION DEED OF TRUST, SECURITY
AGREEMENT AND FIXTURE FILING WITH ASSIGNMENT OF RENTS DATED
OCTOBER 25, 2018.    UNLESS YOU TAKE ACTION TO PROTECT YOUR
PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.    IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU
SHOULD CONTACT A LAWYER.**

On July 12, 2021, at 11:00 AM, by the fountain located at 400 Civic Center Plaza, Pomona, CA 91766,
CHICAGO TITLE COMPANY, as the duly appointed Trustee (the "Trustee"), under and pursuant to the
power of sale contained in that certain Construction Deed of Trust, Security Agreement and Fixture Filing
with Assignment of Rents recorded on November 6, 2018, as Instrument No. 20181122917 of official
records in the office of the Recorder of Los Angeles County, CA, executed by: Crestlloyd, LLC, a
California limited liability company, as Trustor (the "Trustor"), in favor of Hankey Capital, LLC, a California
limited liability company, as Beneficiary, together with that certain Modification of Deed of Trust dated as
of August 20, 2020, recorded in the official records in the office of the Recorder of Los Angeles County,
California on August 31, 2020, as Instrument No. 20201030024, and any modifications thereto are
collectively referred to herein from time to time as the "Deed of Trust", WILL SELL AT PUBLIC AUCTION
TO THE HIGHEST BIDDER, in lawful money of the United States, all payable at the time of sale, that
certain property situated in said County, California describing the land therein as:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should
understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not
on the Property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free
and clear ownership of the Property. You should also be aware that the lien being auctioned off may be a

junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the Property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this Property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the Property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this Property, you may call **1.866.684.2727** or visit this Internet Website **www.servicelinkasap.com**, using the file number assigned to this case **4565-40**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Website. The best way to verify postponement information is to attend the scheduled sale.

**NOTICE TO TENANT:** You may have a right to purchase this property after the trustee auction pursuant to Section 2924m of the California Civil Code. If you are an "eligible tenant buyer," you can purchase the property if you match the last and highest bid placed at the trustee auction. If you are an "eligible bidder," you may be able to purchase the property if you exceed the last and highest bid placed at the trustee auction. There are three steps to exercising this right of purchase. First, 48 hours after the date of the trustee sale, you can call **1.866.684.2727**, or visit this internet website **www.servicelinkasap.com**, using the file number assigned to this case **4565-40** to find the date on which the trustee's sale was held, the amount of the last and highest bid, and the address of the trustee. Second, you must send a written notice of intent to place a bid so that the trustee receives it no more than 15 days after the trustee's sale. Third, you must submit a bid so that the trustee receives it no more than 45 days after the trustee's sale. If you think you may qualify as an "eligible tenant buyer" or "eligible bidder," you should consider contacting an attorney or appropriate real estate professional immediately for advice regarding this potential right to purchase.

The real Property heretofore described is being sold "as is". The street address and other common designation, if any, of the real Property described above is purported to be: 944 Airole Way, Los Angeles, CA

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be made without covenant or warranty, express or implied, regarding title, possession, or encumbrances, to pay the remaining unpaid balance of the obligations secured by and pursuant to the power of sale contained in that certain Deed of Trust (together with any modifications thereto).

The total amount of the unpaid balance of the obligations secured by the Property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of this Notice of Trustee's Sale is estimated to be $116,169,627.86 (Estimated), provided, however, prepayment premiums, accrued interest and advances will increase this figure prior to sale. Beneficiary's bid at said sale may include all or part of said amount. In addition to cash, the Trustee will accept a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union or a check drawn by a state or federal savings and loan association, savings association or savings bank specified in Section 5102 of the California Financial Code and authorized to do business in California, or other such funds as may be acceptable to the trustee. In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed Upon Sale until funds become available to the payee or endorsee as a matter of right. The Property offered for sale excludes all funds held on account by the Property receiver, if applicable.

DATE: June 11, 2021

CHICAGO TITLE COMPANY, TRUSTEE
4565-40
1101 Investment Blvd., Suite 170
El Dorado Hills, CA 95762
916-636-0114

Jenny Taylor/Authorized Signor

SALE INFORMATION CAN BE OBTAINED ON LINE AT www.servicelinkasap.com
AUTOMATED SALES INFORMATION PLEASE CALL 1.866.684.2727

4565-40

## EXHIBIT "A"

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623 PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET; THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE HAVING A LENGTH OF 115.83 FEET.

Electronically FILED by Superior Court of California, County of Los Angeles on 10/21/2021 02:47 PM Sherri R. Carter, Executive Officer/Clerk of Court, by B. McClendon,Deputy Clerk

1   Law Offices of Gary A. Weis
    Gary A. Weis - State Bar # 169180
2   17451 Sarita Avenue
    Canyon Country, CA 91387
3   (661) 367-3033 - Telephone
    (661) 251-2764 - Facsimile
4   garyweis@sbcglobal.net

5   Attorneys for Plaintiff
    KENNCO PLUMBING, INC.
6

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                    FOR THE COUNTY OF LOS ANGELES

9                      SANTA MONICA COURTHOUSE

10                   UNLIMITED CIVIL JURISDICTION

11

12  KENNCO PLUMBING, INC., a California        )  CASE NO.: 21SMCV01656
    Corporation,                              )
13                                            )  NOTICE OF LIS PENDENS
                                              )  (C.C.P. §405 et seq.)
               Plaintiff,                     )
14                                            )
15        v.                                  )
                                              )
16  CRESTLLOYD LLC, a California limited liability  )
    company dba SKYLINE DEVELOPMENT; THE      )
17  ONE ON AIROLE LLC, a California limited liability  )
    company; C3 CAPITAL, LLC, a California limited  )
18  liability company; HANKEY CAPITAL, LLC, a  )
    California limited liability company; THEODORE  )
19  LANES, an individual; FIRST CREDIT BANK, a  )
    California banking corporation; YOGI SECURITY  )
20  HOLDINGS LLC, a Nevada limited liability   )
    company; HILLDUN CORPORATION, a New York  )  Filed:    October 7, 2021
21  corporation; FIRST REPUBLIC BANK, a California  )  Dept.:    R
    corporation ;  and DOES 1 TO 100, inclusive,  )  Judge: Hon. Mark H. Epstein
22                                            )
               Defendants.                    )
23                                            )
                                              )
24                                            )
                                              )
25                                            )
                                              )
26  _____        )
27
28

                              **1**

1    NOTICE IS HEREBY GIVEN that the above-entitled action concerning and affecting real

2    property owned by CRESTLLOYD LLC, a California limited liability company dba SKYLINE

3    DEVELOPMENT was commenced on October 7, 2021, in the above titled Court by KENNCO

4    PLUMBING, INC., a California Corporation against the Defendants named in the above-caption,

5    which named Defendants are incorporated herein by reference.  The action is now pending in the

6    above titled Court.

7        THE ACTION CONCERNS OR AFFECTS TITLE TO REAL PROPERTY commonly

8    known as:

9        The One - **944 Airole Way, Los Angeles, CA 90077**; APN: 4369-026-021

10       LEGAL DESCRIPTION:    See attached Exhibit "A", which is attached hereto and

11                             incorporated by reference. (hereinafter referred to as

12                             "PROPERTY"),

13       THE OBJECT OF PLAINTIFF'S ACTION IS TO ESTABLISH PLAINTIFF'S

14   **PRIORITY INTEREST IN THE PROPERTY**, DUE TO CONSTRUCTION WORK

15   COMMENCING PRIOR TO THE RECORDATION OF THE CONSTRUCTION LOANS (Civil

16   Code § 8450), **THE FORECLOSE UPON A MECHANIC'S LIEN** CLAIM IN THE SUM OF

17   $85,560.17.

18

19   Dated: October 15, 2021                Law Offices of Gary A. Weis

20

21                                          By: _____
                                            Gary A. Weis
22                                          Attorney for Plaintiff,
                                            KENNCO PLUMBING, INC.
23

24

25

26

27

28

                                    **2**

## EXHIBIT A

### LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623 PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" 'WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET; THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE HAVING A LENGTH OF 115.83 FEET.

APN: 4369-026-021

(Property commonly known as: 944 Airole Way, Los Angeles, CA)



## This page is part of your document - DO NOT DISCARD



**20211585116**



**Pages: 0007**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**10/21/21 AT 10:04AM**

| | |
|---|---|
| FEES: | 35.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 110.00 |



**L E A D S H E E T**



202110210940003

**00021387584**



012805929

**SEQ:
01**

DAR - Counter (Upfront Scan)



**THIS FORM IS NOT TO BE DUPLICATED**

E528330

RECORDING REQUESTED BY:
Gary A. Weis, Esq.
WHEN RECORDED, MAIL TO:


Gary A. Weis

17451 Sarita Ave.

Canyon Country, CA 91387



10/21/2021

*20211585116*

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE


# TITLE(S)


## NOTICE OF LIS PENDENS (C.C.P. §405 et seq.)

1        <u>PROOF OF SERVICE BY MAIL</u>

2    STATE OF CALIFORNIA        )
                                )
3    <u>COUNTY OF LOS ANGELES</u>    )

4    I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party

5    to the within action; my business address is 17451 Sarita Avenue; Canyon Country, CA 91387.

6            On October 15, 2021, I served the foregoing document described as:

7            <u>NOTICE OF LIS PENDENS (C.C.P. §405 et seq.).</u>

8
     ON ALL INTERESTED PARTIES in this action by placing a true copy thereof enclosed in a sealed
9
     envelope and certified, return receipt postage thereon fully prepaid in the United States Mail at Canyon
10
     Country, California, addressed as follows:
11
                       **SEE ATTACHED SERVICE LIST**
12

13

14   ( )    (BY FAX) I caused such document to be sent via facsimile to the offices of the addressee listed

15          above.

16   ( )    (BY Email) I caused such document to be sent via email to the offices of the addressee listed

17          above

18   (X)    (BY MAIL) I caused such envelope with certified, return receipt postage thereon fully prepaid to be

19          placed in the United States Mail at Canyon Country, California.

20   ( )    (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose

21          direction the service was made.

22   (X)    (STATE) I declare under penalty of perjury under the laws of the State of California that the above

23          is true and correct.

24                                              Gary A. Weis

25

26

27

28

                                    1

## SERVICE LIST

**CRESTLLOYD LLC**                    [owner or reputed owner &Contractor]
655 Deep Valley Dr., Ste 125-P;
Rolling Hills Estates. CA 90274

**HANKEY CAPITAL, LLC**                    [Lender]
4751 Wilshire Blvd., Ste 110
Los Angeles, CA 90010
Attn: Eugene M. Leydiker

**THEODORE LANES**                    [Court-Appointed Receiver]
655 Deep Valley Dr., Ste 125-P;
Rolling Hills Estates. CA 90274

**1ST CREDIT BANK**                    [Lender]
9255 Sunset Blvd.
W. Hollywood, CA 90069

**YOGI SECURITY HOLDINGS LLC**        [Lender]
C/O Steven H. Zidell, Esq.
Wolf, Rifkin, Shapiro, Schulman & Rabkin LLP
11400 W. Olympic Blvd., 9th Floor
Los Angeles, CA 90064-1582

**HILLDUN CORPORATION**                [Lender]
225 W. 35th St.
NY, NY 10001
Attn: Joshua W. Kapleman

Loan Review Department
**FIRST REPUBLIC BANK**                [Lender]
111 Pine St.
San Francisco, CA 94111

**THE ONE ON AIROLE LLC**            [owner or reputed owner]
8981 W. Sunset Blvd, Suite 303
West Hollywood, CA 90069

Michael Persall
**C3 CAPITAL, LLC**                    [Lender]
850 S. Coast Hwy 101
Encinitas, CA 92024

# EXHIBIT 7

 

**This page is part of your document - DO NOT DISCARD**





## 20210722265

**Pages: 0005**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**05/06/21 AT 08:35AM**

| | |
|---|---|
| FEES: | 29.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 104.00 |





**L E A D S H E E T**



202105063910013

**00020383552**



012138158

**SEQ:
01**

**SECURE - Daily - Time Sensitive**



**THIS FORM IS NOT TO BE DUPLICATED**



E13-20210427······63

E490077

Non-Order Search                    Page 1 of 5          Requested By: Shivamma.Sampangi, Printed: 6/7/2021 11:21 PM
Doc: CALOSA:2021 00722265

Recording Requested by JMS AIR
CONDITIONING AND APPLIANCE
SERVICES, INC.
Please Return To:
JMS AIR CONDITIONING AND APPLIANCE
SERVICES, INC.
c/o Mail Center
9450 SW Gemini Dr #7790
Beaverton, Oregon 97008-7105
Reference ID: 5061158
APN: 4369-026-021

SPACE ABOVE FOR RECORDER'S USE

## CLAIM OF MECHANICS LIEN
California Civil Code Section 8416

**Claimant**
JMS AIR CONDITIONING AND APPLIANCE
SERVICES, INC.
7640 Burnet Ave
Van Nuys, California 91405
(818) 274-7344

**Property Owner** (Owner)

Crestlloyd LLC
8981 W Sunset Blvd #303
West Hollywood, CA 90069

**Property Liened** (Property)
County: Los Angeles County
944 Airole Way, Los Angeles, California 90077

**Legal Property Description:**
Property located at the municipal address of 944
AIROLE WAY, LOS ANGELES, CA 90077.In the county
of LOS ANGELES. APN 4369-026-021. Briefly
described as POR OF LOTS 1 AND 2 TR=22727 AND
POR OF LOT 3 BLK 3 TR=9745. Municipality /
Township of WEST /BELAIR/HOLMBY H. Legal Lot
1-3.

**Services:** The lien is claimed for the following labor,
services, equipment or materials: We were hired for
this new construction project to install their HVAC
systems. We provided all the labor and materials. This
includes multiple condensing units, low voltage
communication wiring, multiple concealed fan coils
units, supply diffusers and returns, ductwork,
thermostats, supply and return plenums, dehumidifiers,
exhaust fans, and all the system startups and tests.

**Job Number (if any):**

**Amount Due:** Amount due after deducting all just
credits and offsets: **$51,290.00**

**Hiring Party:** Name and Address of person or entity to
whom Claimant furnished labor, services, equipment
and/or materials:
Crestlloyd LLC
8981 W Sunset Blvd #303
West Hollywood, CA 90069

The following exhibits are attached hereto and made a part hereof:

NOTICE IS HEREBY GIVEN that Claimant claims a lien for labor, service, equipment or materials under Section 8416 et seq. of the Civil Code of the State of California, upon the Property, above-described, and upon every estate or interest in such structures, improvements and premises held by any party holding any estate therein. The labor, service, equipment or materials were furnished for the construction of those certain buildings, improvements, or structures, now upon that certain parcel of land above-described as the Property.

I, the undersigned, as a disclosed and authorized agent of the Claimant, state that I have read the foregoing Claim of Lien, that I have been provided information regarding the facts and contents therein, and that based thereupon, **I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.**

Name of Claimant:
JMS AIR CONDITIONING AND APPLIANCE SERVICES, INC.

Signed:

Signed:

Claimant, JMS AIR CONDITIONING AND APPLIANCE SERVICES, INC.
by authorized limited agent
Print Name: Lloyd Stallard
Date: April 27, 2021
State of Louisiana
Parish of Orleans

Claimant, JMS AIR CONDITIONING AND APPLIANCE SERVICES, INC.
by authorized limited agent
Print Name: Lloyd Stallard
Date: April 27, 2021
State of Louisiana
Parish of Orleans

## IMPORTANT INFORMATION ON THE FOLLOWING PAGE

# NOTICE OF MECHANICS LIEN
## ATTENTION!

Upon the recording of the enclosed MECHANIC'S LIEN with the county recorder's office of the county where the property is located, your property is subject to the filing of a legal action seeking a court-ordered foreclosure sale of the real property on which the lien has been recorded. That legal action must be filed with the court no later than 90 days after the date the Mechanic's Lien is recorded.

The party identified in the Mechanic's Lien may have provided labor or materials for improvements to your property and may not have been paid for these items. You are receiving this notice because it is a required step in filing a Mechanic's Lien foreclosure action against your property. The foreclosure action will seek a sale of your property in order to pay for unpaid labor, materials, or improvements provided to your property. This may affect your ability to borrow against, refinance, or sell the property until the Mechanic's Lien is released.

BECAUSE THE LIEN AFFECTS YOUR PROPERTY, YOU MAY WISH TO SPEAK WITH YOUR CONTRACTOR IMMEDIATELY OR CONTACT AN ATTORNEY, OR FOR MORE INFORMATION ON MECHANIC'S LIENS GO TO THE CONTRACTORS' STATE LICENSE BOARD WEBSITE AT www.cslb.ca.gov.

Affidavit of Delivery

Delivery on behalf of: JMS AIR CONDITIONING AND APPLIANCE SERVICES, INC.
Re: *944 Airole Way, Los Angeles , California 90077*
Item Delivered: Claim of Lien (Mechanics Lien)

Proof of Service Affidavit, California Civil Code § 3084 (a)(6), (c)(1)(A)
I, Lloyd Stallard, declare that on April 27, 2021, I delivered copies of the attached Mechanic's Lien
and Notice of Mechanic's Lien to the property owner identified thereon at the address provided
below, and in the delivery manner provided below. In addition to this delivery, or in the alternative to
said delivery pursuant to California Code §3084(c)(1)(B) if delivery to the owner as required by
§3084(c)(1)(A) could not be performed, I served / also served copies of the Mechanic's Lien and
Notice of Mechanic's Lien to the following parties at the following addresses, and through the
following method of delivery:

**Property Owner / Public Entity**, Crestlloyd LLC
8981 W Sunset Blvd #303
West Hollywood, CA 90069
**By**: US Certified with Return Receipt, **No.** 9314 8699 0430 0081 9854 36 at April 27, 2021

I declare under penalty of perjury that the foregoing is true and correct.

Signature: *Lloyd Stallard*
Agent for Claimant
Signed by: Lloyd Stallard
April 27, 2021

# EXHIBIT 8

 

**This page is part of your document - DO NOT DISCARD**





## 20211373746

Pages:
0006

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**09/08/21 AT 02:53PM**

| | |
|---|---:|
| FEES: | 32.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 107.00 |



**L E A D S H E E T**



202109080200077

00021129168



012635462

**SEQ:
01**

SECURE - Daily - Time Sensitive



**THIS FORM IS NOT TO BE DUPLICATED**



E13-20210903_____46

*E441908*

Recording Requested by Parquet By Dian
Please Return To:
Parquet By Dian
c/o Mail Center
9450 SW Gemini Dr #7790
Beaverton, Oregon 97008-7105
Reference ID: 5796443
APN: 4369-026-021

SPACE ABOVE FOR RECORDER'S USE

## CLAIM OF MECHANICS LIEN
California Civil Code Section 8416

**Claimant**
Parquet By Dian
pbd@parquet.com
Gardena, California 90248
310-497-2804

**Property Owner** (Owner)

Crestlloyd LLC
8981 W Sunset Blvd, Unit 303
West Hollywood, CA 90069

**Property Liened** (Property)
County: Los Angeles County
944 Airole Way, Los Angeles, California 90077

**Legal Property Description:**
Property located at the municipal address of 944
AIROLE WAY, LOS ANGELES, CA 90077.In the county
of LOS ANGELES. APN 4369-026-021. Briefly
described as POR OF LOTS 1 AND 2 TR=22727 AND
POR OF LOT 3 BLK 3 TR=9745. Municipality /
Township of WEST /BELAIR/HOLMBY H. Legal Lot
1-3.

**Services:** The lien is claimed for the following labor,
services, equipment or materials: Wood Flooring

**Job Number (if any):**

**Amount Due:** Amount due after deducting all just
credits and offsets: **$40,846.00**

**Hiring Party:** Name and Address of person or entity to
whom Claimant furnished labor, services, equipment
and/or materials:
Crestlloyd LLC
8981 W Sunset Blvd, Unit 303
West Hollywood, CA 90069

**The following exhibits are attached hereto and made a part hereof:**

Exhibit A Invoice

NOTICE IS HEREBY GIVEN that Claimant claims a lien for labor, service, equipment or materials under Section 8416 et seq. of the Civil Code of the State of California, upon the Property, above-described, and upon every estate or interest in such structures, improvements and premises held by any party holding any estate therein. The labor, service, equipment or materials were furnished for the construction of those certain buildings, improvements, or structures, now upon that certain parcel of land above-described as the Property.

I, the undersigned, as a disclosed and authorized agent of the Claimant, state that I have read the foregoing Claim of Lien, that I have been provided information regarding the facts and contents therein, and that based thereupon, **I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.**

Name of Claimant:
Parquet By Dian

Signed:

Claimant, Parquet By Dian
by authorized limited agent
Print Name: Hannah Newsom
Date: September 03, 2021
State of Louisiana
Parish of Orleans

Signed:

Claimant, Parquet By Dian
by authorized limited agent
Print Name: Hannah Newsom
Date: September 03, 2021
State of Louisiana
Parish of Orleans

## IMPORTANT INFORMATION ON THE FOLLOWING PAGE

# NOTICE OF MECHANICS LIEN
## ATTENTION!

Upon the recording of the enclosed MECHANIC'S LIEN with the county recorder's office of the county where the property is located, your property is subject to the filing of a legal action seeking a court-ordered foreclosure sale of the real property on which the lien has been recorded. That legal action must be filed with the court no later than 90 days after the date the Mechanic's Lien is recorded.

The party identified in the Mechanic's Lien may have provided labor or materials for improvements to your property and may not have been paid for these items. You are receiving this notice because it is a required step in filing a Mechanic's Lien foreclosure action against your property. The foreclosure action will seek a sale of your property in order to pay for unpaid labor, materials, or improvements provided to your property. This may affect your ability to borrow against, refinance, or sell the property until the Mechanic's Lien is released.

BECAUSE THE LIEN AFFECTS YOUR PROPERTY, YOU MAY WISH TO SPEAK WITH YOUR CONTRACTOR IMMEDIATELY OR CONTACT AN ATTORNEY, OR FOR MORE INFORMATION ON MECHANIC'S LIENS GO TO THE CONTRACTORS' STATE LICENSE BOARD WEBSITE AT www.cslb.ca.gov.

Exhibit A

**Parquet by DIAN**
16601 South Main St.
Gardena, CA 90248
PH: (310) 527-3779
FAX (310) 527-4322
www.parquet.com

Yvonne Niami
n:philanthropy


May 24, 2021

## Invoice 52421

Parquet By Dian completed the following for your project: Airole

Refinish "Castle" parquet on upper floor with Ciranova Oculto

| | |
|---|---|
| 8,360 square feet @ $4.85 | $40,546.00 |
| Hand work (sanding) at all edges | Included |
| Stair Treads and Risers | $300.00 |
| Repair of water damaged areas (material and labor) | No Charge |
| **TOTAL** | **$40,846.00** |

Affidavit of Delivery

Delivery on behalf of: Parquet By Dian
Re: *944 Airole Way, Los Angeles , California 90077*
Item Delivered: Claim of Lien (Mechanics Lien)

Proof of Service Affidavit, California Civil Code § 3084 (a)(6), (c)(1)(A)
I, Hannah Newsom, declare that on September 03, 2021, I delivered copies of the attached
Mechanic's Lien and Notice of Mechanic's Lien to the property owner identified thereon at the
address provided below, and in the delivery manner provided below. In addition to this delivery, or in
the alternative to said delivery pursuant to California Code §3084(c)(1)(B) if delivery to the owner as
required by §3084(c)(1)(A) could not be performed, I served / also served copies of the Mechanic's
Lien and Notice of Mechanic's Lien to the following parties at the following addresses, and through
the following method of delivery:

**Property Owner / Public Entity**, Crestlloyd LLC
8981 W Sunset Blvd, Unit 303
West Hollywood, CA 90069
**By**: US Certified with Return Receipt, **No.** 9314 8699 0430 0086 2457 95 **at** September 03, 2021

I declare under penalty of perjury that the foregoing is true and correct.

Signature:
Agent for Claimant
Signed by: Hannah Newsom
September 03, 2021

# EXHIBIT 9

| Fill in this information to identify the case: | |
|---|---|
| Debtor 1   Crestlloyd, LLC | |
| Debtor 2 _(Spouse, if filing)_ | |
| United States Bankruptcy Court   **Central District of California** | |
| Case number:   **21-18205** | |

FILED

**U.S. Bankruptcy Court
Central District of California**

1/13/2022

**Kathleen J. Campbell, Clerk**

## Official Form 410
## Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Powertek Electric, Inc.

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

_____

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Powertek Electric, Inc.

Name

Hart Kienle Pentecost
4 Hutton Centre Drive, Suite 900
Santa Ana, CA 92707
Santa Ana, CA 92707

Contact phone _____ 7144328700 _____

Contact email ___ celliott@hkplawfirm.com ___

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_____

Where should payments to the creditor be sent? (if different)

_____

Name

Contact phone _____

Contact email _____

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____

MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

Official Form 410         Proof of Claim         page 1

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | | |
|---|---|---|
| 6.**Do you have any number you use to identify the debtor?** | ☑ No ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: | _____ |

| | | |
|---|---|---|
| 7.**How much is the claim?** | $ 40480.00 | **Does this amount include interest or other charges?** ☑ No ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

8.**What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Labor, services, equipment and materials

9. **Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.
**Nature of property:**
☑ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410−A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:**    Mechanic's Lien _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

| | | |
|---|---|---|
| Value of property: | $ _____ | |
| Amount of the claim that is secured: | $ 40480.00 | |
| Amount of the claim that is unsecured: | $ 0.00 | (The sum of the secured and unsecured amounts should match the amount in line 7.) |

Amount necessary to cure any default as of the date of the petition:    $ _____

**Annual Interest Rate** (when case was filed)    0.0    %

☑ Fixed
☐ Variable

| | |
|---|---|
| 10.**Is this claim based on a lease?** | ☑ No ☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| 11.**Is this claim subject to a right of setoff?** | ☑ No ☐ Yes. Identify the property: _____ |

Official Form 410                    Proof of Claim                    page 2

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☒ No | | |
|---|---|---|---|---|
| | | ☐ Yes. *Check all that apply:* | | **Amount entitled to priority** |

| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
|---|---|---|
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ _____ |
| | * Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

| **The person completing this proof of claim must sign and date it. FRBP 9011(b).** | Check the appropriate box: |
|---|---|
| If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is. | ☐ I am the creditor. |
| | ☒ I am the creditor's attorney or authorized agent. |
| | ☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. |
| | ☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. |
| **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.** | I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt. |
| | I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct. |
| | I declare under penalty of perjury that the foregoing is true and correct. |

Executed on date    1/13/2022
                    _____
                    MM / DD / YYYY

/s/  Christopher R. Elliott
_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Christopher R. Elliott |
|---|---|
| | First name    Middle name    Last name |
| Title | Attorney |
| Company | Hart Kienle Pentecost |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | 4 Hutton Centre Drive, Ste. 900 |
| | Number   Street |
| | Santa Ana, CA 92707 |
| | City   State   ZIP Code |
| Contact phone | 7144328700    Email   celliott@hkplawfirm.com |



**This page is part of your document - DO NOT DISCARD**

## 20211455960





**Pages:**
**0003**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**09/23/21 AT 04:27PM**

| | |
|---|---|
| FEES: | 23.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 98.00 |



**L E A D S H E E T**

202109230200089

00021199102

012679567

**SEQ:
01**

SECURE - Daily - Time Sensitive

**THIS FORM IS NOT TO BE DUPLICATED**

E447808



FOR REFERENCE ONLY: 20211455960

RECORDING REQUESTED BY:
Powertek Electric, Inc.

AND WHEN RECORDED MAIL TO:
Powertek Electric, Inc.

28364 S. Western Avenue, #414
Rancho Palos Verdes, CA  90275

SPACE ABOVE THIS LINE FOR RECORDER'S USE ··

## MECHANICS LIEN

The undersigned claimant, Powertek Electric, Inc., 28364 S. Western Avenue, #414, Rancho Palos Verdes, CA  90275, claims a lien for labor, services, equipment, and/or materials under California Civil Code Section 8416 et seq., upon the premises hereinafter described, and upon every estate or interest in such structures, improvements and premises held by any party holding any estate therein.

The labor, services, equipment, and/or materials. were furnished for the construction of those buildings, improvements, or structures, now upon that certain parcel of land situated in the County of Los Angeles, State of California, said land described as follows: 944 Airole Way, Los Angeles, CA.

The sum of $40,480.00 together with interest thereon at the rate of 0.00 percent per annum from September 16, 2021, is due claimant (after deducting all just credits and offsets) for the following work and/or material furnished by claimant· Total Electrical System Wiring.

Claimant furnished the work and/or materials at the request of, or under contract with: Crestlloyd, LLC, 8981 W. Sunset Boulevard, #303, West Hollywood, CA  90069.

The owner(s) or reputed owner(s) of the property are: Crestlloyd, LLC, 655 Deep Valley Drive, #125-P, Rolling Hills Estates, CA  90274.

Firm Name: Powertek Electric, Inc.

By: _____
KiVonne Nash / Authorized Agent

## VERIFICATION

I, the undersigned, say: I am the Authorized Agent of the claimant of the foregoing mechanics lien: I have read said claim of mechanics lien and know the contents thereof: the same is true of my own knowledge. I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 16, 2021, at San Diego, California.

Firm Name: Powertek Electric, Inc.

_____
KiVonne Nash / Authorized Agent

Construction Notice Services, Inc. (75091)

### PROOF OF SERVICE AFFIDAVIT
### DECLARATION OF SERVICE BY MAIL
California Civil Code Section 8416 (a)(7) & (c)(1)

I, KiVonne Nash, as Lien Preparer, declare that we, Construction Notice Services, Inc., served copies of this Mechanics Lien and Notice of Mechanics Lien on 944 Airole Way, Los Angeles, CA by first class certified mail, postage prepaid, on September 16, 2021, at the San Diego/Mira Mesa California Post Office.

Copies of this Mechanics Lien and Notice of Mechanics Lien were mailed to the Property Owner(s) or Reputed Owner(s), Crestlloyd, LLC, 655 Deep Valley Drive, #125-P, Rolling Hills Estates, CA 90274.

I declare, under penalty of perjury, that the foregoing is true and correct. Executed on September 16, 2021, at San Diego, California.

Firm Name: Powertek Electric, Inc.

KiVonne Nash / Authorized Agent
(75091)

### NOTICE OF MECHANICS LIEN
### ATTENTION!

Upon the recording of the enclosed MECHANICS LIEN with the county recorder's office of the county where the property is located, your property is subject to the filing of a legal action seeking a court-ordered foreclosure sale of the real property on which the lien has been recorded. The legal action must be filed with the court no later than 90 days after the date the mechanic's lien is recorded.

The party identified in the mechanics lien may have provided labor or materials for improvements to your property and may not have been paid for these items. You are receiving this notice because it is a required step in filing a mechanics lien foreclosure action against your property. The foreclosure action will seek a sale of your property in order to pay for unpaid labor, materials, or improvements provided to your property. This may affect your ability to borrow against, refinance, or sell the property until the mechanics lien is released.

BECAUSE THE LIEN AFFECTS YOUR PROPERTY, YOU MAY WISH TO SPEAK WITH YOUR CONTRACTOR IMMEDIATELY, OR CONTACT AN ATTORNEY, OR FOR MORE INFORMATION ON MECHANICS LIENS GO TO THE CONTRACTORS' STATE LICENSE BOARD WEB SITE AT www.cslb.ca.gov.





# EXHIBIT 10

 

**This page is part of your document - DO NOT DISCARD**





# 20211102584

Pages:
0005

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**07/16/21 AT 11:17AM**

| | |
|---|---|
| FEES: | 29.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 104.00 |



**L E A D S H E E T**



202107161170063

**00020807585**



012420075

**SEQ:
01**

**SECURE - Daily - Time Sensitive**



**THIS FORM IS NOT TO BE DUPLICATED**



F8794#4369-020-021

E583477

RECORDING REQUESTED BY

MILENE C. APANIAN ESQ.

WHEN RECORDED MAIL TO
NAME ABDULAZIZ, GROSSBART & RUDMAN

MAILING 6454 COLDWATER CANYON
ADDRESS AVE.

CITY, STATE NORTH HOLLYWOOD, CA 91606
ZIP CODE

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

# T I T L E(S)

## MECHANIC'S LIEN

LS-201

RECORDING REQUESTED BY

BMC WEST LLC

AND WHEN RECORDED MAIL TO:

MILENE C. APANIAN
ABDULAZIZ, GROSSBART & RUDMAN
(Name)
6454 COLDWATER CANYON AVENUE
(Street Address)
NORTH HOLLYWOOD, CA 91606
(City, State and Zip)

_____ SPACE ABOVE THIS LINE FOR RECORDERS USE _____

# MECHANIC'S LIEN

The undersigned _____ BMC WEST LLC _____, claimant, whose
(Name of Claimant)

address is ___ 6641 SANTA MONICA BLVD., HOLLYWOOD, CA 90038 ___, claims a Mechanic's Lien
(Address of Claimant)

upon the following described real property: 944 AIROLE WAY, LOS ANGELES CA 90077; APN 4369-026-021
(Street Address and/or legal description where work was done or material furnished)

The sum of _$2,398.60_____, together with interest thereon at the highest legal rate per annum from _____April 30, 2021___
(Dollar Amount)                                                                                                                    (Date)

is due claimant (after deducting all just credits and offsets) for the following work, services, equipment and/or material furnished by claimant:

___ FURNISHED BUILDING MATERIALS _____
(Describe what you furnished)

Claimant furnished the work and materials at the request of, or under contract with: ___ SKYLINE    DEVELOPMENT,    8981
SUNSET BLVD, SUITE 303, WEST HOLLYWOOD, CA 90069 _____
(Your customer)

The owner(s) or reputed owner(s) of the property and their addresses is/are:
CRESTLLOYD, LLC, 655 DEEP VALLEY DRIVE, SUITE 125-P, ROLLING HILLS ESTATES CA 90274
(Owners name and address)

Firm Name:    BMC WEST LLC

By: _____ Milene C Apanian, Attorney-in-fact
(Typed Name & Title, if any)

**VERIFICATION**

I, ___ MILENE C. APANIAN _____, say:
I am the claimant or agent of the claimant of the foregoing Mechanic's Lien; I have read said claim of Mechanic's Lien and know the contents
thereof; the same is true of my own knowledge. I am authorized to execute this Claim of Lien.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed on _____June 30, 2021_____, at ___ North Hollywood _____, California.
(DATE OF SIGNATURE)                              (CITY WHERE SIGNED)

MILENE C. APANIAN
Signature and Printed Name of Person Verifying Lien

BMC: 243882                                                                                    AGR: 14993

## NOTICE OF MECHANICS LIEN
## ATTENTION!

The party identified in the enclosed mechanics lien may have provided labor or materials for improvements to your property and may not have been paid for these items. You are receiving this notice because it is a required step in filing a mechanics lien foreclosure action against your property. The foreclosure action will seek a sale of your property in order to pay for unpaid labor, materials, or improvements provided to your property. This may affect your ability to borrow against, refinance, or sell the property until the mechanics lien is released.

**BECAUSE THE LIEN AFFECTS YOUR PROPERTY, YOU MAY WISH TO SPEAK WITH YOUR CONTRACTOR IMMEDIATELY, OR CONTACT AN ATTORNEY, OR FOR MORE INFORMATION ON MECHANICS LIENS GO TO THE CONTRACTORS' STATE LICENSE BOARD WEB SITE AT www.cslb.ca.gov.**

### PROOF OF SERVICE AFFIDAVIT

I, _Gabriela Gomez_, declare that I served copies of the above MECHANIC'S LIEN (check appropriate box).

    (a) [ X ] By First Class Mail
    (b) [ X ] By Certified Mail, Return Requested
    (c) [    ] By Registered Mail

Evidence by a certificate of mailing, postage prepaid, addressed to the following:

**See Exhibit "A, Attached Service List" attached hereto and made a part thereof**

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at _____ North Hollywood, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I deposited such envelope with postage thereon fully prepaid in the United States mail at a facility regularly maintained by the United States Postal Service at _____ North Hollywood _____, California.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

Signed at _N - Hollywood_ California, on _July 2, 2021_

SIGNATURE OF PERSON MAKING SERVICE

BMC: 243882

AGR: 14993

## EXHIBIT "A" ATTACHED SERVICE LIST

**CREDITOR**
SKYLINE DEVELOPMENT
8981 SUNSET BLVD, SUITE 303
WEST HOLLYWOOD, CA 90069

**OWNER**
CRESTLLOYD, LLC
C/O THEODORE LANES
655 DEEP VALLEY DRIVE, 125-P
ROLLING HILLS ESTATES CA 90274

CRESTLLOYD, LLC
8981 SUNSET BLVD, SUITE 303
WEST HOLLYWOOD, CA 90069

**CONSTRUCTION LENDER**
FIRST REPUBLIC BANK
C/O CORPORATION SERVICE COMPANY WHICH WILL DO BUSINESS IN CALIFORNIA AS
CSC - LAWYERS INCORPORATING SERVICE
2710 GATEWAY OAKS DRIVE, SUITE 150N
SACRAMENTO, CA 95833

FIRST REPUBLIC BANK
1888 CENTURY PARK EAST
LOS ANGELES CA 90069

BMC: 243882                                                    AGR: 14993

# EXHIBIT 11

**Fill in this information to identify the case:**

Debtor 1    Crestlloyd, LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:    Central District of California

Case number    2:21-bk-18205 DS

---

Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Fliers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

---

### Part 1:    Identify the Claim

| | |
|---|---|
| **1. Who is the current creditor?** | Hankey Capital, LLC<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| **2. Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes. From whom? _____ |
| **3. Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>Thomas M. Geher c/o JMBM<br>Name<br>1900 Avenue of the Stars, 7th Floor<br>Number    Street<br>Los Angeles        CA        90067<br>City            State        ZIP Code<br><br>Contact phone (310) 712-6820<br>Contact email tgeher@jmbm.com<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br><br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ |  **Where should payments to the creditor be sent?** (if different)<br><br>Name<br><br>Number    Street<br><br>City            State        ZIP Code<br><br>Contact phone _____<br>Contact email _____ |
| **4. Does this claim amend one already filed?** | ☑ No<br>☐ Yes.  Claim number on court claims registry (if known) _____        Filed on _____<br>                                                                MM / DD / YYYY |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes.  Who made the earlier filing? _____ |

---

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**  $ 122,638,623.41 . **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money loaned to Crestlloyd, LLC

**9. Is all or part of the claim secured?**

☐ No

☑ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:**    Deed of Trust; All loan documents were produced to Debtor

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $ 325,000,000.00

**Amount of the claim that is secured:**    $ 122,638,623.41

**Amount of the claim that is unsecured:**  $ 0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $ 122,638,623.41

**Annual Interest Rate** (when case was filed) 16.00 %

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $ _____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check all that apply:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $ _____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:    Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    01/13/2021
                    MM / DD / YYYY

Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Thomas M. Geher | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorneys for Hankey Capital, LLC | | |
| Company | Jeffer Mangels Butler & Mitchell LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 1900 Avenue of the Stars, 7th Floor | | |
| | Number    Street | | |
| | Los Angeles | CA | 90067 |
| | City | State | ZIP Code |
| Contact phone | (310) 712-6820 | Email | tgeher@jmbm.com |

## ATTACHMENT TO PROOF OF CLAIM

On or about October 25, 2018, Hankey Capital, LLC ("Hankey") loaned Crestlloyd, LLC ("Crestlloyd") the principal sum of $82,500,000.00 (the "Hankey Loan") for construction on and the improvement of the real property located at 944 Airole Way, Los Angeles, California (the "Property"). To memorialize the Hankey Loan, on or about October 25, 2018, Hankey and Crestlloyd entered into a written Construction Loan Agreement (the "Construction Loan Agreement"). At the same time, Crestlloyd executed and delivered to Hankey a written Promissory Note (the "October 2018 Note") for the principal sum of $82,500,000.00. Additionally, Hankey and Crestlloyd entered into a written Security Agreement ("Security Agreement"), and Crestlloyd executed and delivered to Hankey a Construction Deed of Trust, Security Agreement and Fixture Filing With Assignment of Rents, recorded on November 6, 2018, in the Los Angeles County Recorder's Office as Doc. No. 20181122917 encumbering the Property and securing, among other things, Crestlloyd's obligations under the October 2018 Note (the "Hankey Deed of Trust"). The Hankey Deed of Trust is attached hereto as Exhibit "A."

On or about December 10, 2019, Hankey and Crestlloyd agreed to increase the principal amount of the Hankey Loan to $91,000,000 for, among other things, the purpose of continuing the construction of the Property's improvements and funding an interest reserve. On or about August 20, 2020, Hankey and Crestlloyd again increased the principal amount of the Hankey Loan to $106,000,000 for, among other things, the construction of the Property's improvements and funding an interest reserve. To memorialize such loan increases, Amended and Restated Promissory Notes, along with a modification of the construction loan agreement, were executed. Additionally, a Modification of Deed of Trust, modifying the Hankey Deed of Trust, was executed, delivered and recorded in the Los Angeles County Recorder's Office as Doc. No. 20201030024 against and with respect to the Property. As a result of the foregoing modifications, the maturity date of the Hankey Loan, as modified, was extended to October 31, 2020 ("Maturity Date"). The Modification of Deed of Trust is attached hereto as Exhibit "B."

On March 5, 2021, as a result of Crestlloyd's defaults under the Hankey Loan documents, including the failure to pay, in full, the Hankey Loan, as modified, on the Maturity Date, Hankey recorded, in the Los Angeles County Recorder's Office as Doc. No. 20210367447, a Notice of Default and Election to Sell Under Deed of Trust commencing a non-judicial foreclosure proceeding with respect to the Property. On June 14, 2021, Hankey recorded, in the Los Angeles County Recorder's Office as Doc. No. 20210934061, a Notice of Trustee's Sale scheduling a non-judicial foreclosure auction sale of the Property for July 12, 2021, which was subsequently postponed to October 27, 2021.

On or about June 24, 2021, and as a result of certain defaults under the Hankey Loan documents, including Crestlloyd's failure to pay, in full, the Hankey Loan, as modified, at the Maturity Date, Hankey commenced a civil action against Crestlloyd in the Superior Court of California for the County of Los Angeles (the "Superior Court"), designated as Case No. 21SMCV01113 (the "Hankey Action"). On or about July 2, 2021, the Superior Court, in the Hankey Action, entered an Order appointing Theodore Lanes (the "Receiver") as Receiver for and over the Property. The Receiver's appointment as receiver for the Property was further confirmed by an Order of the Superior Court entered on or about July 23, 2021.

On October 26, 2021 (the "Petition Date"), Crestlloyd filed its Voluntary Petition commencing its chapter 11 case.  After the Petition Date, Crestlloyd's chapter 11 counsel requested a copy of all of the loan documents and agreements with respect to the Hankey Loan, as modified.  On November 10, 2021, Hankey delivered to Crestlloyd's chapter 11 counsel all of the numerous and voluminous Hankey Loan documents.  Due to the voluminous nature of the Hankey Loan documents, they are all not attached hereto but are available upon request by those entitled thereto.

As a result of the Hankey Loan, as modified, Crestlloyd owes Hankey, with respect to only the Hankey Loan, as modified, the following sums, as of the Petition Date:

    Outstanding Principal Amount:    **$105,402,020.45**

    Accrued Nondefault Interest (11%) through October 26, 2021:    **$10,719,696.45**

    Accrued Default Interest (16%) through October 26, 2021:  **$5,992,640.69**

    Attorney's fees and costs as of October 26, 2021:    **$524,265.82** ($356,663.82 in attorney's fees and $167,602.00 in costs)

    Daily default interest (16%) amount: **$46,845.34**

    **TOTAL AS OF OCTOBER 26, 2021:**    **$122,638,623.41** plus all interest, including default interest, attorney's fees, costs, expenses and all other sums accruing/incurred pursuant to the Hankey Loan documents, as modified, after the Petition Date.

The claim set forth herein includes only prepetition claims with respect to the Hankey Loan, as modified, presently known to Hankey against Crestlloyd.  In addition to such claim, Hankey may have, and may file, other additional and substantial pre-petition claims and postpetition claims against Crestlloyd, which claims are not included herein but which claims are otherwise specifically reserved by Hankey.

Hankey reserves the right to amend this claim as necessary or appropriate to amend, revise, increase or correct the amount and/or details of the claim(s) set forth herein and/or to include any and all other claims that Hankey may now have or may have in the future against Crestlloyd.  Nothing contained herein shall be deemed a waiver of any rights that Hankey has or may have, including, but not limited to, rights to claim and recover interest, attorney's fees, costs and other sums arising or accruing after the Petition Date.

Hankey also expressly reserves all other rights, including, without limitation (i) the right of recoupment, (ii) any other defenses to any cause of action, and (iii) to the extent that this claim is used defensively as a right of setoff, Hankey asserts that such claim(s) are secured claims.

The filing of this claim is not and shall not be deemed or construed as: (a) a waiver or release of Hankey's rights against any person, entity or property; (b) a waiver of the right to withdraw this claim and to have the withdrawal treated as if no claim was filed; (c) an admission of any kind; (d) an election of remedies; or (e) submission to the jurisdiction of this Court.

# EXHIBIT A



**This page is part of your document - DO NOT DISCARD**



## 20181122917



**Pages:**
**0020**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**11/06/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 121.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 346.00 |



**LEADSHEET**



201811060250001

**00015919183**



009447827

**SEQ:**
**17**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

**T72**



Exhibit A - 7

*2*

**RECORDING REQUESTED BY**

**AND WHEN RECORDED MAIL TO:**

HANKEY CAPITAL, LLC
4751 Wilshire Blvd., Suite 110
Los Angeles, CA 90010
Attention: Eugene Leydiker



11/06/2018

*2018112917*

## CONSTRUCTION DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING WITH ASSIGNMENT OF RENTS
### [944 Airole Way]

This CONSTRUCTION DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING WITH ASSIGNMENT OF RENTS (hereinafter the "Deed of Trust") made this 25th day of October, 2018, by CRESTLLOYD, LLC, a California limited liability company (hereinafter referred to as "Trustor"), whose address is c/o Skyline Development, 8981 W. Sunset Blvd., Suite 303, West Hollywood, California 90069 to CHICAGO TITLE COMPANY, hereinafter called "Trustee", for the benefit of HANKEY CAPITAL, LLC, a California limited liability company, hereinafter called "Beneficiary", whose address is 4751 Wilshire Blvd., Suite 110, Los Angeles, California 90010.

This Deed of Trust is given for purpose of securing the following:

(1)    Performance of all obligations of Trustor under any agreements of Trustor incorporated by reference or contained herein.

(2)    Payment of indebtedness in the total principal amount of Eighty-Two Million, Five Hundred Thousand and No/100 Dollars ($82,500,000.00), together with interest thereon, as provided in and evidenced by that certain Promissory Note of even date herewith executed by Trustor in favor of Beneficiary (the "Note"), and any and all modifications, extensions and renewals thereof.

(3)    Performance of such other obligations or payment of such other indebtedness now or hereafter owing to Beneficiary from Trustor, when evidenced by a document reciting that it is so secured.

1

*94109*

Case 2:21-bk-18205-DS    Doc 319    Filed 05/17/22    Entered 05/17/22 15:41:11    Desc
Case 2:21-bk-18205-DS    Main Document   01 Page 249 of 372 Main Document    Page 9 of
35

3

(4)    Payment of all sums advanced or paid out by the Beneficiary under any provision of this Deed of Trust or to protect the security of this Deed of Trust.

This Deed of Trust, and any other instruments given to evidence or further secure the payment and performance of any obligation secured hereby may hereinafter be referred to as the "Trust Documents". The payment obligations of Trustor described in Paragraphs 2, 3, and 4 above are hereinafter referred to as the "Indebtedness".

Trustor, in consideration of the premises and the aforesaid Indebtedness, and in order to secure its obligations under the Note, according to their terms, has granted, bargained, sold, conveyed, confirmed, transferred and assigned and by these presents does grant, bargain, sell, convey, confirm, transfer and assign unto Trustee, his successors and assigns, with power of sale and right of entry and possession, Trustor's interest in and to that certain property described as follows:

(A)    The land described in Exhibit A attached hereto, made a part hereof.

(B)    All buildings and improvements now or hereafter located on said land.

(C)    All easements, tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits of the aforesaid property and all the estate, title and interest, homestead or other claim or demand, as well in law as in equity, which Trustor now has or hereafter may acquire, of, in or to said property, or any part thereof, with the appurtenances thereto.

(D)    All of Trustor's right, title and interest in, to or under the property described in Exhibit B attached hereto, made a part hereof and comprising one page.

Trustor's interest in and to the land, buildings, improvements and the rights and property described in paragraphs (A) through (D) above are hereinafter referred to collectively as the "Property".

TO HAVE AND TO HOLD the same unto Trustee, Trustee's successors and assigns, Trustor hereby covenants and agrees as follows:

## ARTICLE I
## COVENANTS AND AGREEMENTS OF TRUSTOR

Trustor hereby covenants and agrees:

1.00    Payment of Indebtedness. Trustor will pay the Indebtedness hereby secured promptly when and as said Indebtedness becomes due and payable.

1.01    Liens. Trustor, absent the written consent of Beneficiary, will not suffer any lien to

2

Case 2:21-bk-18205-DS    Doc 319    Filed 05/17/22    Entered 05/17/22 15:41:11    Desc
Case 2:21-bk-18205-DS    Main Document    Page 10 of
35

4

be created hereafter upon the Property, or any part thereof, prior to the lien of this Deed of Trust, and will not do or suffer any act or omission whereby the value of the Property, or lien hereof or of any estate or title covered hereby, may be diminished or impaired in any way.

    1.02   Maintenance, Repair and Alterations.  Trustor will keep any buildings and improvements constructed on the Property in good condition and repair, will not remove or demolish any buildings or improvements thereon, and commit or permit no waste thereon. Should said building or buildings, or any part thereof, require inspection, repair or protection other than that given it by Trustor, then, and in that event, Beneficiary may enter or cause entry to be made upon the Property and into said building or buildings for inspection, repair or protection thereof and such repair may be made by Beneficiary and be made or done in such manner as fully to protect the interest of Beneficiary in the opinion of Beneficiary, and any and all sums expended by Beneficiary in doing or causing to be done any of the things above authorized are secured by this Deed of Trust and shall be paid by Trustor on demand. Trustor shall comply with all laws, ordinances, governmental regulations, covenants, conditions and restrictions affecting the Property or requiring any alteration or improvement thereof, and permit no violation, as to the Property, of any such law, ordinance, governmental regulation, covenant, condition or restriction affecting the Property.

    1.03   Title to Property.  Trustor covenants that Trustor is lawfully seized of each and every part and parcel of the Property as described in the granting clauses hereof and has good and indefeasible title to the same; that there are no liens or encumbrances on said property except for such liens and encumbrances that are approved by Beneficiary; and Trustor forever will warrant and defend the title in the same to the Trustee against the claims and demands of all persons. If during the existence of this Deed of Trust there be commenced or pending any suit or action affecting said property, or any part thereof, or the title thereto, or if any adverse claim for or against said property, or any part thereof, be made or asserted, Trustee or Beneficiary may appear in said suit or action and retain counsel therein and defend the same or otherwise take such action therein as Trustee or Beneficiary may deem advisable, and may settle or compromise the same or the said adverse claim, and in that behalf and for any of the said purposes, may pay and expend such sums of money as Trustee or Beneficiary may deem to be necessary.

    1.04   Taxes and Assessments.  Trustor shall pay, satisfy and discharge at maturity all taxes and assessments and all other charges and encumbrances which now are or hereafter shall be or appear to be a lien upon the Property, or any part thereof, or upon the debt secured hereby; and in default thereof, Beneficiary, without demand or notice, may pay, satisfy or discharge said taxes, assessments, charges or encumbrances, and pay and expend such sums of money as Beneficiary may deem to be necessary therefor, and shall be the sole judge of the legality or the validity of such taxes, assessments, charges or encumbrances, and the amount necessary to be paid in the satisfaction or discharge thereof.

    1.05   Evidence of Payment of Taxes and Assessments.  Trustor further agrees to deposit with Beneficiary within thirty (30) days of Beneficiary's request, all receipts or other satisfactory evidence of the payment of taxes, assessments, charges, claims and liens of every nature (hereinafter collectively referred to as "taxes" or "tax") affecting or which may affect the Property or any part thereof. Upon the request of Beneficiary, following Trustor's failure to

3

Case 2:21-bk-18205-DS   Doc 319   Filed 05/17/22   Entered 05/17/22 15:41:11   Desc
Main Document   Page 251 of 372
Case 2:21-bk-18205-DS   Claim 20   Filed 01/14/22   Desc Main Document   Page 11 of
35

5

provide such evidence of payment, Trustor thereafter shall deposit with and pay to Beneficiary, on the first day of each calendar month, a sum equivalent to one-twelfth (1/12) of the estimated annual taxes assessed or levied against the Property and all annual premiums for insurance required by this Deed of Trust to be furnished by Trustor, and upon the date when any such tax or insurance premiums shall become due shall pay to Beneficiary an amount which, taken together with tax and insurance deposits theretofore made and not expended for taxes and insurance, shall be sufficient to pay and discharge such tax and insurance premiums. Beneficiary shall not be liable for interest on any such tax and insurance deposits and may mingle the same with its general funds, and such deposits shall create a debtor-creditor relationship and not that of a trust. Trustor shall procure and deliver to Beneficiary, in advance, statements for such charges. Payments from said account for such purposes may be made by Beneficiary at Beneficiary's discretion, even though subsequent owners of the property described herein may benefit thereby. In the event of any default under the terms of this Deed of Trust, any part or all of the balance of said account may be applied to any part of the indebtedness hereby secured, and, in refunding any part of said account, Beneficiary may deal with whomever is represented to be the owner of said property at that time. The enforceability of the covenants relating to taxes and insurance premiums provided for herein shall not be affected, except to the extent that said obligations have been actually met by compliance with this paragraph.

1.06    Insurance.  Trustor at all times shall keep the buildings and improvements which are now or hereafter erected upon said property insured against loss or damage by vandalism, malicious mischief and fire with extended coverage (and by other hazards as reasonably may be required by Beneficiary) and shall procure and maintain in force such other insurance as may be required by Beneficiary, all in amounts approved by Beneficiary and by an insurance company or companies or governmental agency or instrumentality approved by Beneficiary, and the policies for such insurance shall be made payable, in case of loss, to Beneficiary pursuant to standard mortgagee's loss payable endorsement, and shall be delivered to and held by Beneficiary as further security for payment under the Note and other moneys herein mentioned, said policies shall provide for fifteen days' notice to Beneficiary prior to cancellation or nonrenewal for any reason, including nonpayment of premium; and in default thereof, Beneficiary may procure such insurance to be effected upon Beneficiary's interest as Beneficiary or upon the interest of Trustee or upon the interest of the owners of the Property and in their names; loss, if any, being made payable to Beneficiary, and Beneficiary may pay and expend for premiums for such insurance such moneys as Beneficiary may deem to be necessary. The form of said policies shall be approved by Beneficiary. If Trustor is a co-insurer under any policies of fire and extended coverage insurance, then Trustor covenants and agrees that, upon request of Beneficiary at any time, it will furnish the Beneficiary satisfactory evidence of insurable value of the improvements situated on said Property. In addition, Trustor shall procure and maintain liability insurance insuring Trustor and, if requested, Beneficiary against liability because of personal injury or property damage in amounts and by companies approved by Beneficiary.

1.07    Insurance and Condemnation Proceeds.  Should a loss occur under any policy of insurance required by Paragraph 1.06 hereof, or should all or any portion of the Property be taken or damaged by reason of any public improvement or condemnation proceeding, Beneficiary shall be entitled to all insurance proceeds, compensation, awards, and other payments or relief therefor (all hereinafter referred to as "proceeds"), and, whether or not the

4

security for the Note secured by this Deed of Trust has been impaired, Beneficiary shall be entitled to apply the proceeds collected, after first deducting therefrom all its expenses, including attorneys' fees, in collecting said proceeds, to any and all indebtedness secured hereby and thereafter shall pay the balance remaining, if any, to Trustor. At its option, in its own name, Beneficiary shall be entitled to commence, appear in and prosecute any action or proceedings or to make any compromise or settlement, in connection with such loss, taking or damage. All such proceeds and rights of action hereby are assigned to Beneficiary. Notwithstanding the foregoing, absent an "Event of Default" as set for in Paragraph 4.00 below, in the event of such insurance loss or that only a portion of the Property is taken or damaged by reason of any public improvement or condemnation proceeding, and restoration is necessary, Beneficiary, after deducting from said proceeds received all its expenses, including attorneys' fees, may release to Trustor as restoration progresses, so much of said amount as equals the costs of restoration effected by Trustor, subject to reasonable conditions, including the right of Beneficiary to withhold up to ten percent (10%) of said amount until completion and the expiration of the period within which mechanics' or materialmen's liens may be filed and until receipt of satisfactory evidence that no liens exist. Any amount required to complete such restoration in excess of such proceeds shall be paid to Trustor before such proceeds are used. Trustor agrees to execute such further assignments of any such proceeds and rights of action as Beneficiary or Trustee may require.

1.08    <u>Performance of Other Obligations.</u> Trustor promises and agrees to perform all of the obligations in and under the Note, and any other documents given now or hereafter as security for the Indebtedness secured by this Deed of Trust.

1.09    <u>Restrictions on Transfer or Further Encumbrance.</u> Absent the prior written consent of Beneficiary, Trustor shall not (a) execute or deliver any pledge, security agreement, mortgage, deed of trust or other instrument of hypothecation, covering all or any portion of the Property or any interest therein; (b) sell, convey, alienate, transfer or otherwise dispose of all or any portion of the Property or any interest therein, whether voluntarily or involuntarily, by operation of law or otherwise; (c) in the event Trustor is a corporation or trust or similar entity, sell, convey, transfer or encumber, whether voluntarily, involuntarily or otherwise, more than ten percent (10%) of the issued and outstanding capital stock of Trustor or of the beneficial interest of such trust or similar entity; or (d) in the event Trustor is a limited or general partnership, or a joint venture, change any constituent general partner or any joint venturer whether voluntarily, involuntarily or otherwise, or sell, convey, transfer, change or encumber any such general partner or joint venturer interests.

1.10    <u>Environmental Compliance.</u> Trustor shall keep and maintain the Property in compliance with, and shall not cause or permit the Property to be in violation of any federal, state or local laws, ordinances or regulations relating to industrial hygiene or to the environmental conditions on, under or about the Property including, but not limited to, soil and ground water conditions. Trustor shall not use, generate, manufacture, store or dispose of on, under or about the Property or transport to or from the Property any flammable explosives, radioactive materials, hazardous wastes, toxic substances or related materials, including, without limitation, any substances defined as or included in the definition of "hazardous substances", "hazardous wastes", "hazardous materials" or "toxic substances" under any applicable federal or

5

Exhibit A - 12

Case 2:21-bk-18205-DS    Doc 319    Filed 05/17/22    Entered 05/17/22 15:41:11    Desc
Case 2:21-bk-18205-DS    Main Document    01/14/22    Page 253 of 372    Main Document    Page 13 of
35

*1*

state laws or regulations (collectively referred to hereinafter as "Hazardous Materials"), except only those materials and substances which are usually and customarily used in the operation of a residential construction project so long as the amount of such materials and substances which are used or stored upon the Property shall not exceed the amount reasonably required for the operation of such business in its normal and ordinary course.

Trustor shall immediately advise Beneficiary in writing of (i) any and all enforcement, cleanup, removal or other governmental or regulatory actions instituted, completed or threatened pursuant to any applicable federal, state or local laws, ordinances, or regulations relating to any Hazardous Materials affecting the Property ("Hazardous Materials Laws"); (ii) all claims made or threatened by any third party against Trustor or the Property relating to damage, contribution, cost recovery compensation, loss or injury resulting from any Hazardous Materials (the matters set forth in clauses (i) and (ii) above are hereinafter referred to as "Hazardous Materials Claims"); and (iii) Trustor's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Property that could cause the Property or any part thereof to be classified as "border-zone property" under the provisions of California Health and Safety Code, Sections 25220 et. seq. or any regulation adopted in accordance therewith, or to be otherwise subject to any restrictions on the ownership, occupancy, transferability or use of the Property under any Hazardous Materials Laws.

Beneficiary shall have the right to join and participate in, as a party, if it so elects, any legal proceedings or actions initiated in connection with any Hazardous Materials Claims and to have its reasonable attorneys' fees in connection therewith paid by Trustor.  Trustor shall be solely responsible for, and shall indemnify and hold harmless Beneficiary, its directors, officers, employees, agents, successors and assigns from and against any loss, damage, cost, expense or liability directly or indirectly arising out of or attributable to the use, generation, storage, release, threatened release, discharge, disposal, or presence of Hazardous Materials on, under or about the Property, including, without limitation: (a) all foreseeable consequential damages; (b) the costs of any required or necessary repair, cleanup or detoxification of the Property, and the preparation and implementation of any closure, remedial or other required plans; and (c) all reasonable costs and expenses incurred by Beneficiary in connection with clauses (a) and (b) including, but not limited to, reasonable attorneys' fees.

Without Beneficiary's prior written consent, which shall not be unreasonably withheld, Trustor shall not take any remedial action in response to the presence of any Hazardous Materials on, under, or about the Property, nor enter into any settlement agreement, consent decree, or other compromise in respect to any Hazardous Material Claims, which remedial action, settlement, consent or compromise might, in Beneficiary's reasonable judgment, impair the value of the Beneficiary's security hereunder; provided, however, that Beneficiary's prior consent shall not be necessary in the event that the presence of Hazardous Materials on, under, or about the Property either poses an immediate threat to the health, safety or welfare of any individual or is of such a nature that an immediate remedial response is necessary and it is not possible to obtain Beneficiary's consent before taking such action, provided that in such event Trustor shall notify Beneficiary as soon as practicable of any action so taken. Beneficiary agrees not to withhold its consent, where such consent is required hereunder, if either (i) a particular remedial action is ordered by a court of competent jurisdiction, or (ii) Trustor establishes to the

6

reasonable satisfaction of Beneficiary that there is no reasonable alternative to such remedial action which would result in less impairment of Beneficiary's security hereunder.

1.11    Indemnification.    Trustor hereby agrees to indemnify Beneficiary and hold Beneficiary harmless from and against any and all claims, losses, damages, liabilities, fines, penalties, charges, administrative and judicial proceedings and orders, judgments, remedial action requirements, enforcement actions of any kind, and all costs and expenses incurred in connection therewith (including, but not limited to, reasonable attorneys' fees and expenses) arising directly or indirectly, in whole or in part, out of (i) the presence on or under the Property of any Hazardous Materials (as defined in Paragraph 1.10), or any releases or discharges of any Hazardous Materials on, under or from the Property, or (ii) any activity carried on or undertaken on or off the Property, whether prior to or during the period during which any indebtedness under the Note is outstanding and whether by Trustor or any predecessor in title or any employees, agents, contractors or subcontractors of Trustor or any predecessor in title, or any third persons at any time occupying or present on the Property, in connection with the handling, treatment, removal, storage, decontamination, clean-up, transport or disposal of any Hazardous Materials (as defined in Paragraph 1.10) at any time located or present on or under the Property. The foregoing indemnity shall further apply to any residual contamination on or under the Property, or affecting any natural resources, and to any contamination of any property or natural resources arising in connection with the generation, use, handling, storage, transport or disposal of any such Hazardous Materials, and irrespective of whether any of such activities were or will be undertaken in accordance with applicable laws, regulations, codes and ordinances.

1.12    Environmental Provisions.    Trustor hereby acknowledges and agrees that the provisions of Paragraphs 1.10 and 1.11 hereof are intended to be "environmental provisions" (as defined in Section 736 of the California Code of Civil Procedure), and that Beneficiary is intended to have all of the rights of a secured lender under Section 736 of the California Code of Civil Procedure in respect of such "environmental provisions." Trustor further acknowledges and agrees that the rights afforded to Beneficiary under Section 736 of the California Code of Civil Procedure are in addition to all rights, powers and remedies otherwise available to Beneficiary under any of the Trust Documents or at law or in equity.

1.13    Financial Statements.    Trustor shall deliver to Beneficiary a copy of Trustor's federal and state tax returns, prepared by a certified public accountant, concurrently with Trustor's filing of said returns.

1.14    Covenant to Assign Future Leases.    Until all of the Indebtedness secured by the Deed of Trust shall have been paid in full, Trustor covenants and agrees that it will immediately transfer and assign to Beneficiary any and all other and future leases on all or any portion of the Property. Assignor further covenants and agrees to make, execute and deliver to Assignee on demand, and at any time or times, any and all written assignments and other instruments sufficient for this purpose or that Beneficiary may deem advisable for carrying out the true intent of this covenant.

## ARTICLE II
## ASSIGNMENT OF RENTS, ISSUES AND PROFITS

7

*q*

2.00   <u>Assignments of Rents.</u>   Trustor hereby assigns to Beneficiary the rents, issues, profits, royalties, and payment payable under any lease of the Property, or portion thereof including any oil, gas or mineral lease, or any installments of money payable pursuant to any agreement or any sale of said property or any part thereof, reserving unto Trustor the rights prior to default by Trustor in payment of the Indebtedness secured hereby or in the performance of any agreement hereunder, to collect and retain such rents, issues, profits, royalties, payments and installments of money as they may become due and payable. Upon any such default, Beneficiary, without regard to the adequacy of any security for the Indebtedness hereby secured, shall be entitled to (1) collect such rents, issues, profits, royalties, payments and installments of money and apply the same as more particularly set forth in this Paragraph, all without taking possession of the Property, or (2) enter and take possession of the Property or any part thereof, in person, by agent, or by a receiver to be appointed by the court and to sue for or otherwise collect such rents, issues, profits, royalties, payments and installments of money. Beneficiary may apply any such rents, issues, profits, royalties, payments and installments of money so collected, less costs and expenses of operation and collection, including reasonable attorneys' fees, upon any indebtedness secured hereby, in such order as Beneficiary may determine, and, if such costs and expenses and attorneys' fees shall exceed the amount collected, the excess shall be immediately due and payable. The collection of such rents, issues, profits, royalties, payments and installments of money and the application thereof as aforesaid shall not cure or waive any default or notice of default hereunder or invalidate any  act done pursuant to such notice, except to the extent any such default fully is cured. Failure or discontinuance of Beneficiary at any time, or from time to time, to collect any such moneys shall not impair in any manner the subsequent enforcement by Beneficiary of the right, power and authority herein conferred on Beneficiary. Nothing contained herein, including the exercise of any right, power or authority herein granted to Beneficiary, shall be, or be construed to be, an affirmation by Beneficiary of any tenancy, lease or option, or an assumption of liability under, or the subordination of the lien or charge of this Deed of Trust to any such tenancy, lease or option. Trustor hereby agrees that, in the event Beneficiary exercises its rights as in this Paragraph provided, Trustor waives any right to compensation for the use of Trustor's furniture, furnishings or equipment in the Property for the period such assignment of rents or receivership is in effect, it being understood that the rents, issues, profits, royalties, payments and installments of money derived from the use of any such items shall be applied to Trustor's obligation hereunder as above provided. In the event that Trustor concurrently herewith or hereafter executes any separate assignment of rents or of leases to Beneficiary, then to the extent of any inconsistency between the provisions hereof and any such assignment, the provisions of such assignment shall control.

2.01   <u>Performance of Leases.</u>   Trustor promises and agrees to keep, perform and observe all of the lessor's covenants, agreements and obligations, under the terms of all leases now or hereafter executed relating to all or any portion of the Property, to require that lessees under said leases keep, perform, and observe all of the covenants, agreements and obligations thereunder on their part to be kept, performed and observed; not to alter, amend or modify such leases or any of them without the prior written consent of Beneficiary.

**ARTICLE III**
**SECURITY AGREEMENT AND FIXTURE FILING**

8

Exhibit A - 15

Case 2:21-bk-18205-DS   Doc 319   Filed 05/17/22   Entered 05/17/22 15:41:11   Desc
Case 2:21-bk-18205-DS   Main Document   Claim 26   Filed 01/14/22   Desc Main Document   Page 16 of
35   Page 256 of 372

*10*

3.00   Creation of Security Interest. This Deed of Trust is deemed a Security Agreement as defined in the California Commercial Code, the Trustor being the Debtor and the Beneficiary being the Secured Party, and the remedies for any violation of the covenants, terms and conditions of the agreements herein contained shall be as prescribed (i) herein, or (ii) by general law, or (iii) as to such part of the security which is also reflected in the financing statement which will be filed to perfect the security interest created herein, by the specific statutory consequences now, or hereafter enacted and specified in the California Commercial Code, all at Beneficiary's sole election. Trustor and Beneficiary agree that the filing of a financing statement in the records normally having to do with personal property shall never be construed as in anywise derogating from or impairing this declaration and the hereby-stated intention of the parties hereto that everything used in connection with the operation or occupancy of the Property is and, at all times and for all purposes and in all proceedings, both legal and equitable, shall be regarded as real property, irrespective of whether (1) any such item is physically attached to the buildings and improvements, (2) serial numbers are used for the better identification of certain equipment items capable of being filed by the Beneficiary, or (3) any such item is referred to or reflected in any such financing statement so filed at any time. Such mention in the financing statement is declared to be for the protection of the Beneficiary in the event any court or judge shall at any time hold that notice of Beneficiary's priority of interest must be filed in the California Commercial Code records to be effective against a particular class of persons, including, but not limited to, the federal government and any subdivision or entity of the federal government. Trustor covenants and agrees to reimburse Beneficiary for any costs incurred in filing such financing statement and any continuation statements.

3.01   Fixture Filing. Portions of the Property are goods which are or are to become fixtures relating to the land, buildings and improvements, and Trustor covenants and agrees that the recording of this Deed of Trust in the real estate records of the County where the land is located shall also operate from the time of recording as a Fixture Filing in accordance with Section 9313 of the California Uniform Commercial Code.

## ARTICLE IV
## DEFAULTS AND REMEDIES

4.00   Events of Default. Any of the following events shall be deemed an Event of Default hereunder, upon the expiration of any applicable grace period:

(a)   Default shall be made in the payment of any installment of principal or interest or any other sum secured hereby when due, whether at maturity or by acceleration or as part of any prepayment or otherwise; or

(b)   If the Trustor shall become insolvent or admit in writing its inability to pay its debts as they mature; or make any assignment for the benefit of creditors; or apply for or consent to the appointment of a receiver or trustee for it or for a substantial part of its property or business; or

(c)   If any order, judgment or decree shall be entered against Trustor decreeing its dissolution or diversion; or

9

(d)    If bankruptcy, insolvency, reorganization or liquidation proceedings or other proceedings for relief under any bankruptcy law or any law for the relief of debtors shall be instituted against Trustor; or

(e)    A writ of execution or attachment or any similar process shall be issued or levied against all or any part of or interest in the Property, or any judgment involving monetary damages shall be entered against Trustor which shall become a lien on the Property or any portion thereof or interest therein; or

(f)    There has occurred a breach of or default under any term, covenant, agreement, condition, provision, representation or warranty contained in the Note or the Note, or any loan application or other agreement related thereto or any other now or hereafter existing agreement between Trustor or any affiliate of Trustor and Beneficiary.

4.01    <u>Acceleration upon Default, Additional Remedies.</u>  In the event of any such Event of Default, Beneficiary may declare, by notice given to Trustor, all Indebtedness secured hereby to be due and payable without any further presentment, demand, protest or notice of any kind. Thereafter Beneficiary may:

(a)    Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of any security for the Indebtedness and obligations hereby secured, enter upon and take possession of the Property hereby granted, or any part thereof, in its own name or in the name of the Trustee, and do any acts which it deems necessary or desirable to preserve the rentability or increase the income of such property or protect the security hereof and with or without taking possession of the Property sue for or otherwise collect the rents, issues and profits thereof, including those past due and unpaid, and apply the rents, issues and profits collected, less costs and expenses of operation and collection including reasonable attorneys' fees and accountants' fees, upon any indebtedness secured hereby, all in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits, or the application thereof as aforesaid shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice; and notwithstanding Beneficiary's or Trustee's continuance in possession of the Property or the collection, receipt and application of rents, issues or profits, Trustee or Beneficiary shall be entitled to exercise every right provided for in this instrument or by law upon the occurrence of any default including the right to exercise the power of sale;

(b)    Commence an action to foreclose this Deed of Trust as a mortgage, appoint a receiver, or specifically enforce any of the covenants hereof;

(c)    Deliver to Trustee a written declaration of default and demand for sale, and a written notice of default and election to cause Trustor's interest in the Property to be sold, which notice Trustee or Beneficiary shall cause to be duly filed for record in the Official Records of the County in which the Property is located.

10

*12*

4.02    Foreclosure by Power of Sale.    Should Beneficiary elect to foreclose by exercise of the power of sale herein contained, Beneficiary shall notify Trustee and shall deposit with Trustee this Deed of Trust and the Note, the Note and such receipts with evidence of expenditures made and secured hereby as Trustee may require. Trustee shall then have the following duties and powers:

(a)    Upon receipt of such notice from Beneficiary, Trustee shall cause to be recorded, published and delivered to Trustor such Notice of Default and Election to Sell as then required by law and by this Deed of Trust and after lapse of such time as may then be required by law and after recordation of such notice of default, Trustee, without demand on Trustor, shall, after notice of sale having been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole or in separate parcels or items and in such order as Trustee may determine, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including, without limitation, Trustor, Trustee or Beneficiary, may purchase at such sale.

(b)    After deducting all costs, fees and expenses of Trustee and of this trust, including costs of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of all sums due under the Note, all other sums then secured hereby, and the remainder, if any, to the person or persons legally entitled thereto.

(c)    Trustee may postpone the sale of all or any portion of the Property by public announcement at the time and place first fixed for sale, and from time to time thereafter may postpone such sale by public announcement at the time and place fixed by the preceding postponement, and without further notice make such sale at the time fixed by the last postponement, or may, in its discretion, give new notice of sale.

4.03    Appointment of Receiver.    If any Event of Default described in Paragraph 4.00 of this Deed of Trust shall have occurred and be continuing, Beneficiary, as a matter of right but with notice as provided herein to Trustor, but without notice to anyone claiming under Trustor and without regard to the then value of the Property or the interest of Trustor therein, shall have the right to apply to any court having jurisdiction to appoint a receiver or receivers of the Property.    Any such receiver or receivers shall have all the usual powers and duties of Beneficiary in case of entry as provided in Paragraph 4.01(a) and shall continue as such and exercise such powers until the date of confirmation of sale of the Property unless such receivership is sooner terminated.

4.04    Remedies Not Exclusive.    No remedy herein conferred upon or reserved to Trustee or Beneficiary is intended to be exclusive of any other remedy herein, in the Trust Documents, or by law provided or permitted, but each shall be distinct and cumulative and shall be in addition to every other remedy given hereunder, under the Trust Documents, or now or hereafter existing at law or in equity or by statute. Every power or remedy given by this Deed of Trust or by the Trust Documents to Trustee or Beneficiary or to which either of them may be otherwise entitled,

11

Non-Order Search
Doc: CALOSA:2018 01122917

    Requested By: Shivamma.Sampangi, Printed: 12/3/2021 8:01 PM

*15*

may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by Trustee or Beneficiary and either of them may pursue inconsistent remedies.

4.05    Partial or Late Payment.    The acceptance by Beneficiary of any sum after the same is due shall not constitute a waiver of the right either to require prompt payment, when due, of all other sums secured hereby or to declare a default as herein provided and in either event to assess a late charge or penalty. The acceptance by Beneficiary of any sum in an amount less than the sum then due shall be deemed an acceptance on account only and upon the condition that it shall not constitute a waiver of the obligation of Trustor to pay the entire sum then due, and Trustor's failure to pay said entire sum then due shall be and continue to be a default notwithstanding such acceptance of such amount on account as aforesaid, and Beneficiary or Trustee shall be at all times thereafter and until the entire sum then due shall have been paid, and notwithstanding the acceptance by Beneficiary thereafter of further sums on account, or otherwise, entitled to exercise all rights in this Deed of Trust or the other Trust Documents confirmed upon them or either of them upon the occurrence of a default.

4.06    Failure or Indulgence Not Waiver.    No failure or delay on the part of Beneficiary in the exercise of any power, right or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such power, right or privilege preclude other or further exercise thereof or of any other power, right or privilege.

### ARTICLE V
### MISCELLANEOUS

5.00    Governing Law.    This Deed of Trust shall be governed by the laws of the State of California. In the event that any provision or clause of this Deed of Trust conflicts with applicable laws, such conflicts shall not affect other provisions of this Deed of Trust which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust are declared to be severable. This instrument cannot be waived, changed, discharged or terminated orally, but only by an instrument in writing by the party against whom enforcement of any waiver, change, discharge or termination is sought.

5.01    Statements by Trustor.    Trustor, upon fifteen (15) days' written request shall furnish a duly acknowledged written statement setting forth the amount of the debt secured by this Deed of Trust and stating either that there are no known offsets or defenses existing against the debt, or if such known offsets or defenses are alleged to exist, the nature thereof.

5.02    Repayment.    In the event that Trustor fully satisfies its obligations under the Note, in lawful money of the United States of America, and pays all moneys herein agreed to be paid by Trustor, and the interest thereon, and also the reasonable expenses of this trust, as herein specified, then Trustee at the request and expense of Trustor, shall reconvey to Trustor, Trustor's successors or assigns, all the estate in the Property granted to Trustee by this instrument.

5.03    Change in Taxation Method.    In the event of the passage after the date of this Deed of Trust of any law of the State of California, deducting from the value of land, for the purpose

12

Exhibit A - 19

14

of taxation, any lien thereon, or changing in any way the laws now in force for the taxation of deeds of trust or debts secured by deeds of trust for state or local purposes or the manner of the collection of such taxes so as to cause the assessment of a tax on Beneficiary or a lien or charge on this Deed of Trust, the entire amount due under said Note, at the option of said Beneficiary, without demand or notice, forthwith shall become due and payable; provided, however, that such option shall be ineffective if Trustor is permitted by law to pay the whole of such tax, in addition to all other payments required hereunder and, if prior to such specified date, Trustor does pay such tax and agrees to pay any such tax when hereafter levied or assessed against the Property, and such agreement shall constitute a modification of this Deed of Trust.

5.04    Substitution of Trustee.    Beneficiary, from time to time, may substitute another Trustee in place of the Trustee named herein, to execute the trusts hereby created; and upon such appointment, and without conveyance to the successor trustee, the successor trustee shall be vested with all the title, interest, powers, duties and trusts in the Property hereby vested in or conferred upon Trustee herein named. Each such appointment and substitution shall be made by written instrument executed by the Beneficiary containing reference to this Deed of Trust sufficient to identify it, which, when recorded in the office of the County Recorder of the county or counties in which the Property is situated, shall be conclusive proof of proper appointment of the successor trustee. The recital or statements in any instrument executed by Trustee, in pursuance of any of said trusts of the due authorization of any agent of the Trustee executing the same, shall for all purposes be conclusive proof of such authorization.

5.05    Legal Proceedings by Trustee.    Trustee at any time, at Trustee's option, may commence and maintain suit in any court of competent jurisdiction and obtain the aid and direction of said court in the execution by it of the trusts or any of them, herein expressed or contained, and, in such suit, may obtain the orders or decrees, interlocutory or final of said court directing the execution of said trusts, and confirming and approving Trustee's acts, or any of them, or any sales or conveyance made by Trustee, and adjudging the validity thereof, and directing that the purchasers of the Property sold and conveyed be let into immediate possession thereof, and providing for orders of court or other process requiring the Sheriffs of the counties in which the Property is situated to place and maintain said purchasers in quiet and peaceable possession of the Property so purchased by them, and the whole thereof.

5.06    Reconveyance by Trustee.    Trustee, at any time, upon request of Beneficiary, may reconvey to Trustor or Trustor's successors or assigns, any portion of the Property without affecting the personal liability of any person for the payment of any of the Indebtedness, or the lien of this Deed of Trust upon the remainder of the Property not reconveyed.

5.07    No Estoppel.    Any failure of Trustee or Beneficiary to exercise any right or option by this Deed of Trust given or preserved to Trustee or Beneficiary shall not stop Trustee or Beneficiary from exercising any such right or option upon any subsequent default of Trustor.

5.08    Further Assurances.    Trustor, forthwith upon request, at any and all times hereafter, at the expense of Trustor, will cause to be made, executed, acknowledged and delivered to Trustee, any and every deed or assurance in law which Trustee or counsel of Trustee shall advise

13

Non-Order Search
Doc: CALOSA:2018 01122917

Requested By: Shivamma.Sampangi, Printed: 12/3/2021 8:01 PM

Case 2:21-bk-18205-DS    Doc 319    Filed 05/17/22    Entered 05/17/22 15:41:11    Desc
Case 2:21-bk-18205-DS    Main Document  Claim 20    Filed 01/14/22    Page 261 of 372    Desc Main Document    Page 21 of
35

15

or require for the more sure, effectual and satisfactory granting and confirming of the Property unto Trustee.

5.9  Non-Liability of Trustee.  Trustee shall not be liable or responsible with respect to its acts or omissions hereunder, except for Trustee's own gross negligence or willful default, or be liable or responsible for any acts or omissions of any agent, attorneys or employee by it employed hereunder, if selected with reasonable care.

5.10  Release and Exchange of Security.  In the event that any change or changes occur in the title to all or any part of the Property, Beneficiary, from time to time, without notice to or consent of Trustor and without prejudice to any rights which Beneficiary may have against Trustor, may (a) take, exchange, or release any security for any of the obligations now or hereafter secured hereby; or (b) extend the time for payment of the said obligations.

5.11  Successors and Assigns.  This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their successors and assigns.

5.12  Construction.  This Deed of Trust shall be construed so that, wherever applicable and with reference to any of the parties hereto, the use of the singular number shall include the plural number, the use of the plural number shall include the singular number, the use of one gender shall include the neuter, masculine and feminine gender.

5.13  Notices.  Trustor requests that a copy of any notice of default and of any notice of sale hereunder shall be mailed to Trustor at the address set forth above which is Trustor's address.

14

16

IN WITNESS WHEREOF, Trustor has executed this instrument the day and year first above written.

CRESTLLOYD, LLC
a California limited liability company

By: _____
       Nile Niami, Manager

15

17

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of LOS ANGELES

On October 30, 2018 before me, Nigel Gibbs, a Notary Public, personally appeared Nile Niami, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _____    (Seal)

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

16

18

## EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623 PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

17

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE
THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS
OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS
HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET;
THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE
WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM
THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE
HAVING A LENGTH OF 115.83 FEET.

APN: 4369-026-021

Initials

18

Non-Order Search
Doc: CALOSA:2018 01122917
Page 19 of 20   Requested By: Shivamma.Sampangi, Printed: 12/3/2021 8:01 PM

## EXHIBIT B

(1)    All machinery, equipment, materials (including building materials), appliances, and fixtures now or hereafter installed or placed on or in said land or buildings and improvements for the generation and distribution of air, water, heat, electricity, light, fuel or refrigeration or for ventilating or air conditioning purposes or for sanitary or drainage purposes or for the exclusion of vermin or insects or the removal of dust, refuse or garbage, and all elevators, awnings, window shades, drapery rods and brackets, screens, floor coverings, incinerators, carpeting and all furniture, fixtures, and other property used in the operation or occupancy of said land or buildings and improvements, together with all additions to, substitutions for, changes in or replacements of the whole or any part of any or all of said articles of property, and together with all property of the same character that Trustor may hereafter acquire at any time until the termination of this Deed of Trust and all proceeds received upon the sale, exchange, collection or other disposition of the foregoing.

(2)    All intangible property and rights relating to that land or the operation thereof, or used in connection therewith, including but not limited to all governmental permits relating to construction on said land.

(3)    All reserves, deferred payments, deposits, refunds, cost savings and payments of any kind relating to the construction of any improvements on said land.

(4)    All water stock relating to said property.

(5)    All causes of action, claims, compensation and recoveries for any damage, condemnation or taking of said property, or for any conveyance in lieu thereof, whether direct or consequential, or for any damage or injury to said property, or for any loss or diminution in value of said property.

(6)    All plans and specifications prepared for construction of buildings and improvements on said land and all studies, data and drawings related thereto; and also all contracts and agreements of the Trustor relating to the aforesaid plans and specifications or to the aforesaid studies, data and drawings or to the construction of buildings and improvements on said land.

(7)    All monies on deposit for the payment of real estate taxes or special assessments against said property or for the payment of premiums on policies of fire and other hazard insurance covering the property described herein or said land.

Initials

# EXHIBIT B





**This page is part of your document - DO NOT DISCARD**



## 20201030024



**Pages:
0008**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**08/31/20 AT 02:49PM**

| | |
|---|---|
| FEES: | 38.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 113.00 |



**L E A D S H E E T**



202008311190076

**00018779213**



011100474

**SEQ:
01**

**SECURE - Daily**



**THIS FORM IS NOT TO BE DUPLICATED**

E407026

437_5474171_1_2

Exhibit B - 28

Prepared by and upon recordation
please return to:

HANKEY CAPITAL, LLC
Attention: Eugene Leydiker
4751 Wilshire Blvd., Suite 110
Los Angeles, CA 90010

## MODIFICATION OF DEED OF TRUST

      THIS MODIFICATION OF DEED OF TRUST (this "**Modification**"), is made as of the 20th day of August, 2020 by CRESTLLOYD, LLC, a California limited liability company (the "**Trustor**") in favor of HANKEY CAPITAL, LLC, a California limited liability company ("**Lender**"), with reference to that certain Deed of Trust, Security Agreement and Fixture Filing With Assignment of Rents made as of October 25, 2018 by Trustor in favor of the Lender as Beneficiary securing Trustor's obligations as described therein, recorded November 6, 2018 in the Official Records of the County Recorder of Los Angeles County, California as Instrument Number 20181122917 (the "**Deed of Trust**"). Said Deed of Trust encumbers, among other things, all of those certain lots, pieces or parcels of land described in **Exhibit A** annexed hereto and made a part hereof, together with the buildings and improvements erected thereon.

      WHEREAS, by this Modification, Trustor and Lender are modifying the terms of the Deed of Trust. Capitalized terms used but not defined herein have the meanings given to them in the Deed of Trust.

      NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Lender and Trustor agree as follows:

1.     The Deed of Trust is granted by Trustor for the purpose of securing, in such order of priority as Beneficiary may elect, (1) payment of an indebtedness in the sum of One Hundred Six Million and 00/100 Dollars ($106,000,000.00), evidenced by that certain Amended and Restated Promissory Note of even date herewith executed by Trustor to the order of Beneficiary and any and all modifications, extensions or renewals thereof (the "**Promissory Note**"), whether hereafter evidenced by said Promissory Note or otherwise; (2) payment of interest on said indebtedness according to the terms of said Promissory Note; (3) payment of all other sums, with interest as herein provided, becoming due or payable under the provisions hereof to Trustee or Beneficiary; (4) due, prompt and complete observance, performance and discharge of each and every condition, obligation, covenant and agreement contained herein, or in said note, or in any loan agreement relative to any indebtedness evidenced by said Promissory Note or in any document or instrument evidencing, securing or pertaining to the indebtedness evidenced by said Promissory Note, and all modifications, renewals or extensions of any of the foregoing; and (5)

payment of such additional sums with interest thereon as may be hereafter borrowed from Beneficiary, its successors or assigns by Trustor or the then record owner or owners of the Trust Estate when evidenced by another promissory note or notes or guaranty instrument(s), which are by the terms thereof secured by this Deed of Trust.

2.      The Deed of Trust is hereby further modified with the addition of a new paragraph 4.00(g) as follows:

       (g)      If, without Lender's prior written consent, which may be withheld by Lender in its sole and absolute discretion, (i) any lien is recorded in the County of Los Angeles, State of California, affecting the Property, or (ii) any existing lien affecting the Property is modified so as to evidence an increase in the Trustor's obligation to such lienholder.

3.      This Modification may be executed in one or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same agreement.

4.      Except as expressly amended by this Modification, the terms and provisions of the Deed of Trust are unchanged and hereby ratified and affirmed.


       IN WITNESS WHEREOF, Trustor has caused this Modification to be duly executed as of the day and year above first written.

TRUSTOR:

CRESTLLOYD, LLC,
a California limited liability company


By: _____
     Nile Niami, Manager

Non-Order Search
Doc: CALOSA:2020 01030024
Page 3 of 8      Requested By: Shivamma.Sampangi, Printed: 12/3/2021 8:01 PM

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _LOS ANGELES_

On _AUGUST 20, 2020_ before me, _Nigel Gibbs_ a Notary Public, personally appeared _Nile Niami_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _____    (Seal)

NIGEL GIBBS
Notary Public · California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

Exhibit B  - 31

IN WITNESS WHEREOF, Lender has caused this Modification to be duly executed as of the day and year above first written.

HANKEY CAPITAL, LLC,
a California limited liability company

By: _____
W. Scott Dobbins, President

A notary public or other officer completing this certificate verifies only the identity of
the individual who signed the document to which this certificate is attached, and not the
truthfulness, accuracy, or validity of that document.

State of California

County of Los Angeles

On August 25, 2020 before me, T. Douglas a Notary Public,
personally appeared W. Scott Dittons, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _____    (Seal)

T. DOUGLAS
Notary Public – California
Los Angeles County
Commission # 2184270
My Comm. Expires Mar 22, 2021

Exhibit B - 33

EXHIBIT A
Legal Description

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623 PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS

Non-Order Search
Doc: CALOSA:2020 01030024

Requested By: Shivamma.Sampangi, Printed: 12/3/2021 8:01 PM

OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS
HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET;
THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE
WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM
THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE
HAVING A LENGTH OF 115.83 FEET.

APN: **4369-026-021**

Non-Order Search
Doc: CALOSA:2020 01030024
Requested By: Shivamma.Sampangi, Printed: 12/3/2021 8:01 PM

# EXHIBIT 12

| Fill in this information to identify the case: | |
|---|---|
| Debtor 1 | Crestlloyd, LLC |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 2:21-bk-18205-DS |

Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1:   Identify the Claim

| | | |
|---|---|---|
| 1. | Who is the current creditor? | Yogi Securities Holdings, LLC |
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor _____ |
| 2. | Has this claim been acquired from someone else? | ☑ No<br>☐ Yes. From whom? _____ |

| 3. | Where should notices and payments to the creditor be sent? | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|---|---|
| | Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Milbank LLP, Attn: Mark Shinderman<br>Name | Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP<br>Name   Attn: Mark J. Rosenbaum |
| | | 2029 Century Park East, 33rd Floor<br>Number   Street | 11400 W. Olympic Blvd., 9th Floor<br>Number   Street |
| | | Los Angeles   CA   90067<br>City   State   ZIP Code | Los Angeles   CA   90064<br>City   State   ZIP Code |
| | | Contact phone 424-386-4000 | Contact phone 310-478-4100 |
| | | Contact email mshinderman@milbank.com | Contact email mrosenbaum@wrslawyers.com |
| | | Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |

| 4. | Does this claim amend one already filed? | ☐ No<br>☑ Yes.   Claim number on court claims registry (if known) 15-1 | Filed on 01/13/2022<br>MM / DD / YYYY |
|---|---|---|---|

| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes.   Who made the earlier filing? _____ | |
|---|---|---|---|

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?** $ _____ 24,385,366.77 **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Secured loan to the debtor; Amount above is as of the petition date

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** Deed of Trust _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ 325,000,000.00

**Amount of the claim that is secured:** $ 24,385,366.77

**Amount of the claim that is unsecured:** $ _____ 0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ 24,385,366.77

**Annual Interest Rate** (when case was filed) _____ % See attached.

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| | |
|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br><br>☐ Yes. *Check all that apply:*                                                              **Amount entitled to priority**<br><br>   ☐ Domestic support obligations (including alimony and child support) under<br>      11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).                                    $ _____<br><br>   ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for<br>      personal, family, or household use. 11 U.S.C. § 507(a)(7).                $ _____<br><br>   ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the<br>      bankruptcy petition is filed or the debtor's business ends, whichever is earlier.<br>      11 U.S.C. § 507(a)(4).                                                    $ _____<br><br>   ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $ _____<br><br>   ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).      $ _____<br><br>   ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.       $ _____<br><br>   *  Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. |

---

| **Part 3:** | **Sign Below** |
|---|---|

| | |
|---|---|
| **The person completing this proof of claim must sign and date it. FRBP 9011(b).**<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.** | *Check the appropriate box:*<br><br>☐ I am the creditor.<br>☑ I am the creditor's attorney or authorized agent.<br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct.<br><br>Executed on date   04/29/2022<br>               MM / DD / YYYY<br><br><br>   /s/ Mark Shinderman<br>   Signature<br><br>**Print the name of the person who is completing and signing this claim:**<br><br>Name     Mark Shinderman<br>            First name         Middle name        Last name<br><br>Title      Attorney for Yogi Securities Holdings, LLC<br><br>Company  Milbank LLP<br>            Identify the corporate servicer as the company if the authorized agent is a servicer.<br><br>Address  2029 Century Park East, 33rd Floor<br>            Number     Street<br>            Los Angeles          CA      90067<br>            City                   State     ZIP Code<br><br>Contact phone  424-386-4000          Email  mshinderman@milbank.com |

Case 2:21-bk-18205-DS    Claim 27    Filed 04/29/22    Desc Main Document      Page 4 of 43

| DATE | Secured Principal Note Balance | Interest Dates | Interest Amount | Secured Amount Adjustment | Total Due | Comments |
|------|-------------------------------|----------------|-----------------|---------------------------|-----------|----------|
| October 16, 2018 | $30,188,235.00 | 10/16/18 - 6/17/19 | $800,000.00 | | | Interest rate 3.975%, prepaid $800,000 with note maturity date of June 18, 2019 |
| June 17, 2018 | | | | | $30,188,235.00 | |
| June 18, 2019 | $30,588,235.00 | 6/18/19 -8/17/19 | $201,128.12 | $400,000.00 | | First amendment Note with additional $400,000 principal funding and new interest rate of 4.0% with maturity Aug 17, 2019 |
| August 17, 2019 | | | | | $30,789,363.12 | |
| August 17, 2019 | $31,528,363.12 | 8/18/19 - 10/16/19 | $207,309.60 | $739,000.00 | | Second Amendment Note with additional $739,000 principal funding with maturity date Oct 16, 2019 |
| October 16, 2019 | | | | | $31,735,672.72 | Notice of Default with Default Interest Rate 14% |
| February 7, 2020 | | 10/16/19 -2/7/20 | $1,443,908.15 | | $33,179,580.86 | 115 days of interest at 14% on $31,735,672.72 |
| February 7, 2020 | | | | -$2,917,289.03 | | 1175 N Hillcrest Rd Sold with partial pay down of Note |
| February 7, 2020 | | | | | $30,262,291.83 | |
| April 9, 2021 | | 2/8/20 - 4/9/21 | $4,967,990.74 | | $35,230,282.57 | 428 days at 14% on $30,262,291.83 |
| April 9, 2021 | | | | -$2,500,000.00 | | 10701 Bellagio Road Sold with partial pay down of Note |
| April 9, 2021 | | | | | $32,730,282.57 | |
| April 16, 2021 | | 4/10/21 - 4/16/21 | $81,252.18 | | $32,811,534.75 | 7 days at 14% on $30,262,291.83 |
| April 16, 2021 | | | | -$4,310,057.58 | | 627 N. Carcassonne Road Sold with partial pay down of Note |
| April 16, 2021 | | | | | $28,501,477.17 | |
| July 9, 2021 | | 4/17/21 - 7/9/21 | $918,294.17 | | $29,419,771.34 | 84 days at 14% on $28,501,477.17 |
| July 9, 2021 | | | | -$6,013,000.00 | | 1369 Londonderry Place Sold with partial pay down of Note |
| July 9, 2021 | | | | | $23,406,771.34 | |
| 10/26/2021 | | 7/10/21 - 10/26/21 | $978,595.43 | | $24,385,366.77 | 109 days at 14% on $23,406,771.34 |
| 10/26/2021 | | | | $178,585.00 | | Fees incurred (legal etc) to collect/enforce the Note up until filing of BK |
| 10/26/2021 | | | | | $24,385,366.77 | |

Yogi Securities Holdings, LLC Attachment to Amended Proof of Claim

1

## SECURED PROMISSORY NOTE

$30,188,235.00                                                              Los Angeles, California
                                                                           October 16, 2018

      FOR VALUE RECEIVED, Crestlloyd, LLC, a California limited liability company
("**Borrower**"), promises to pay to the order of YOGI Securities Holdings, LLC, a Nevada limited
liability company ("**Lender**"), the principal sum of up to $30,188,235.00 (the "**Loan Amount**"),
plus interest on the unpaid principal balance thereof as detailed below.

     **1.**     **Interest Rate; Maturity Date; Repayment.**

          **a.**     The outstanding principal amount of the loan evidenced by this Note (the
"**Loan**") shall accrue interest at the rate of 3.975% per annum (the "**Note Rate**").
Notwithstanding the previous sentence, the Note Rate shall be calculated on the entire Loan
Amount, regardless of whether any portion of the Loan Amount has not been advanced pursuant
to Section 2 below.

          **b.**     The outstanding principal balance owing under this Note as well as
interest thereon shall be due and payable in full on the earlier of (i) the sale of either the Hillcrest
Property or the Airole Property (as each such term is defined in Section 3 below) such that the
entire Loan Amount shall be repaid from proceeds of such sale, or (ii) June 18, 2019 (the
"**Maturity Date**"). Additionally: (i) upon the sale of the Londonderry Property (as defined in
Section 3 below) $10,000,000.00 shall be due and payable, (ii) upon the sale of the Bellagio
Property (as defined in Section 3 below) $10,000,000.00 shall be due and payable, (iii) upon the
sale of the Carcassonne Property (as defined in Section 3 below) $15,000,000.00 shall be due
and payable and (iv) upon the sale of the Stone Ridge Property (as such defined in Section 3
below) $5,000,000.00 shall be due and payable.

          **c.**     This Note may be prepaid in whole or in part; however the $800,000.00 of
prepaid interest is guaranteed and no portion shall be refunded upon any principal payments
made prior to the Maturity Date whether obligatory under the terms of this Note or made at
Borrower's option.

     **2.**     **Advances under the Note.**

     2.1   Timing. Advances of Loan proceeds under this Note will be disbursed as follows:

          **a.**     Lender shall retain $800,000.00 as prepaid interest, calculated at the Note
Rate on the entire Loan Amount.

          **b.**     Lender has already advanced $17,499,900.00 under a Promissory Note
dated May 22, 2018 and $2,188,235.00 under a Promissory Note dated August 9, 2017 as
amended previously executed by Borrower in favor of Lender (together, the "**Prior Notes**").

          **c.**     Lender shall advance an amount equal to $4,500,100.00 of the Loan
Amount, to be disbursed in connection with the closing of the Loan contemplated under this
Note upon receipt of confirmation of recording of the Deeds of Trust.

d.     So long as there is no uncured breach by Borrower of any of the covenants or obligations of Borrower under any of the documents executed by Borrower in connection with the Loan (collectively, "**Loan Documents**"), Lender shall advance up to the remaining available Loan Amount, in the amount of $5,200,000.00, to Borrower within five (5) business days after Lender's receipt of a written request from Borrower.

2.2.     Title Endorsements.  As a condition to each advance, at Lender's sole and absolute discretion Lender may require Borrower to obtain, in connection with any or all requested disbursements, at Borrower's sole cost and expense, title endorsements satisfactory to Lender to protect Lender against mechanic's liens, to be attached to and be a part of Lender's title policies.

2.3.     Insurance.  Borrower shall furnish to Lender evidence of builders risk insurance for the Property (as defined below) in amounts and with an insurance company satisfactory to Lender and with a standard mortgagee's endorsement naming Lender as first mortgagee.

2.4.     Inspection.  Lender and its agents shall, at all times until the Note is fully repaid, have the right of entry and free access to the Property and the right to inspect all work done, labor performed and materials furnished in and about the Property and to inspect all books, subcontracts and records of Borrower concerning the Property.  It is expressly understood and agreed that Lender is not under any duty to supervise or to inspect the work or construction or examine any books and records, and that any such inspection or examination is for the sole purpose of protecting the security of Lender and preserving Lender's rights hereunder.  Failure to inspect the work or any part thereof shall not constitute a waiver of any rights of Lender; and inspection not followed by notice of default shall not constitute a waiver of any default then existing.  In no event shall any inspection by Lender constitute a representation that there has been or will be compliance with the plans and specifications or that the construction is free from defective materials or workmanship.

2.5.     Exculpatory Provisions.  Borrower acknowledges, understands and agrees as follows:

2.5.1    Lender neither undertakes nor assumes any responsibility or duty to Borrower to select, review, inspect, supervise, pass judgment upon or inform Borrower of the quality, adequacy or suitability of the following: (a) the plans and specifications or amendments, alterations and additions thereto; (b) architects, contractors, subcontractors, and materialmen employed or utilized in the construction, or workmanship of or the materials used by any of them; or (c) the progress or course of construction and its conformance or nonconformance with the plans and specifications or amendments, alterations and changes thereto.

2.5.2    Lender owes no duty of care to protect Borrower against negligent, faulty, inadequate or defective building or construction.

2.5.3    The consent or approval by Lender to or of any act by Borrower requiring further consent or approval shall not be deemed to waive or render unnecessary the consent or approval to or of any subsequent similar act.

3281722.2                                    - 2 -

2.5.4   By accepting or approving anything required to be observed, performed or fulfilled, or to be given to Lender pursuant hereto or pursuant to the loan documents, Lender shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or representation to anyone with respect thereto by Lender.

2.5.5   Lender shall in no way be liable for any acts or omissions of the Borrower, agent, contractor or any person furnishing labor and/or materials used in relation to the Property.

2.6.   <u>Protection Against Liens</u>.  Borrower agrees to fully pay and discharge all claims for labor done, material and services furnished in connection with the Property, to diligently file or procure the filing of a valid notice of completion upon completion of construction, to diligently file or procure the filing of a notice of cessation upon the event of a cessation of labor on the work of improvement for a continuous period of thirty (30) days or more, and to take all other reasonable steps to forestall the assertion of claims of lien against the Property or any part thereof and/or claims against Lender.  Borrower irrevocably appoints, designates and authorizes Lender as its agent (said agency being coupled with an interest) with the authority, but without any obligation, to file for record any notice of completion, cessation of labor, or any other notice that Lender deems necessary or desirable to protect its interests under the Note or the Loan Documents.  Nothing herein contained shall require Borrower to pay any claims for labor, materials, or services which Borrower in good faith disputes and which Borrower, at its own expense, is currently and diligently contesting; provided that Borrower shall, within ten (10) days after filing of any claim of lien, record in the Office of the County Recorder where the Property is located, obtain a surety bond sufficient to release said claim of lien or post such other security or make such other arrangements as Lender may approve in writing.

2.7.   <u>Books, Records and Plans</u>.  Borrower shall maintain full and complete books of account and other records concerning the Property, and shall furnish to Lender, at any time and from time to time, such financial data, plans and specifications as Lender shall reasonably request relating to the Property.  Borrower shall maintain at all times a full and current set of working drawings on the site of the Property and available for inspection by Lender or its representatives.

2.8.   <u>Relationship</u>.  Nothing contained herein shall be deemed or construed by the parties hereto or any third person to create a partnership or joint venture or any association between the parties other than the relationship of lender and borrower.

3.   **Security**.  This Note is secured by: (i) a Deed of Trust dated of even date herewith (the "**Hillcrest Deed of Trust**"), executed by Borrower, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 1175 North Hillcrest Road, Beverly Hills, California 90210 (the "**Hillcrest Property**"), (ii) a Deed of Trust dated of even date herewith (the "**Airole Deed of Trust**"), executed by Borrower, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 944 Airole Way, Los Angeles, California 90077 (the "**Airole Property**"), (iii) a Deed of Trust dated of even date

herewith (the "*Bellagio Deed of Trust*"), executed by 10701 Bellagio Road, LLC, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 10701 Bellagio Road, Los Angeles, California (the "*Bellagio Property*"); (iv) a Deed of Trust dated of even date herewith (the "*Carcassonne Deed of Trust*"), executed by Carcassonne Fine Homes, LLC, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 627 North Carcassonne Road, Los Angeles, California (the "*Carcassonne Property*"), (v) a Deed of Trust dated of even date herewith (the "*Stone Ridge Deed of Trust*"), executed by Marbella Construction, Inc., as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 3381 Stone Ridge Lane, Los Angeles, California (the "*Stone Ridge Property*") and (vi) a Deed of Trust dated of even date herewith (the "*Londonderry Deed of Trust*"), executed by 1369 Londonderry Estate, LLC, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 1369 Londonderry Place, Los Angeles, California (the "**Londonderry** *Property*"). The Hillcrest Deed of Trust, the Airole Deed of Trust, the Bellagio Deed of Trust, the Carcassonne Deed of Trust, the Stone Ridge Deed of Trust and the Londonderry Deed of Trust are collectively referred to herein as the "*Deeds of Trust*". The Hillcrest Property, the Airole Property, Bellagio Property, the Carcassonne Property, the Stone Ridge Property and the Londonderry Property are collectively referred to herein as the "*Property*".

4.    **Application of Payments.**  All payments on this Note shall, at the option of the holder hereof, be applied first to the payment of accrued and unpaid interest, and after all such interest has been paid, any remainder shall be applied to reduction of the principal balance.

5.    **Address for Payments.**  All payments on this Note are to be made or given to the holder hereof whose address for this purpose is 9701 West Pico Boulevard, Suite 201A, Los Angeles, California 90035, or to such other person or at such other place as the holder hereof may from time to time direct by written notice to Borrower.

6.    **No Offset; Holder in Due Course.**  Borrower waives any right of offset it now has or may hereafter have against the holder hereof and its successors and assigns, and agrees to make the payments called for hereunder in accordance with the terms hereof. The holder hereof and all successors thereof shall have all the rights of a holder in due course as provided in the California Uniform Commercial Code and other laws of the State of California.

7.    **Waivers.**  Borrower and any endorsers, guarantors or sureties hereof severally waive presentment and demand for payment, notice of intent to accelerate maturity, protest or notice of protest or non-payment, bringing of suit and diligence in taking any action to collect any sums owing hereunder or in proceeding against any of the rights and properties securing payment hereunder; expressly agree that this Note, or any payment hereunder, may be extended from time to time; and consent to the acceptance of further security or the release of any security for this Note, all without in any way affecting the liability of Borrower and any endorsers or guarantors hereof. No extension of time for the payment of this Note, or any installment hereof, made by agreement by the holder hereof with any person now or hereafter liable for the payment of this Note, shall affect the original liability under this Note of Borrower, even if Borrower is not a party to such agreement.

3281722.2                                      - 4 -

**8.     Default Interest; Acceleration.**  The failure of Borrower to pay or perform as required hereunder or a default under the Deed of Trust or any other instrument securing this Note or secured by the Deed of Trust shall constitute a default hereunder.  Upon the occurrence of a default hereunder, at the option of the holder hereof, all amounts then unpaid under this Note, the Deed of Trust or any other instrument securing this Note or secured by Deed of Trust shall bear interest for the period beginning with the date of occurrence of such default at a default rate equal to 10.00% above the rate stated herein, payable monthly on the first day of each and every month, and in additional such holder may, at its option, declare immediately due and owing the entire unpaid principal sum together with all interest thereon, plus any other sums owing at the time of such declaration pursuant to this Note, the Deed of Trust or any other instrument securing this Note.  The failure to exercise the foregoing option shall not constitute a waiver of the right to exercise the same at any subsequent time in respect of the same event or any other event.  The acceptance by the holder hereof of any payment hereunder which is less than payment in full of all amounts due and payable at the time of such payment shall not constitute a waiver of the right to exercise any of the foregoing options at that time or at any subsequent time or nullify any prior exercise of any such option without the express consent of such holder, except as and to the extent otherwise provided by law.

**9.     Lawful Money; Costs of Collection.**  All amounts payable hereunder are payable in lawful money of the United States.  Borrower agrees to pay all costs of collection when incurred, including reasonable attorneys' fees and costs, whether or not a suit or action is instituted to enforce this Note, including but not limited to court costs, appraisal fees, the cost of searching records, obtaining title reports and title insurance and trustee's fees, to the extent permitted by applicable law.

**10.     Due on Sale and Encumbrance.**  Borrower acknowledges and agrees that the creditworthiness and expertise of Borrower or Trustor in owning, developing and operating the Property is the basis upon which holder has determined that it is protected against impairment of the security and risk of default and thereby has agreed to lend undersigned the principal sum set forth above.  In order to insure the continued creditworthiness and expertise of the owner of the Property and in order to allow the holder of this Note an opportunity to review and evaluate the same, undersigned agrees, for itself and subsequent owners of the Property, that the Property shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered, whether voluntarily, involuntarily, by operation of law or otherwise, without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion.  Any transaction in violation of the above restrictions shall cause the then outstanding principal balance and interest thereon and other sums secured by the Deeds of Trust, at the option of said holder, to immediately become due and payable.  If Borrower is a corporation, limited liability company or trust, the sale, conveyance, transfer or disposition, whether voluntary or involuntary, of 25% or more of the issued and outstanding common stock or membership interests of Borrower or Trustor, or of the beneficial interest of such trust, or, in the event Borrower or Trustor is a limited or general partnership or a joint venture, a change of any general partner or any joint venturer, either voluntarily or involuntarily, or the sale, conveyance, transfer, disposition, or encumbrance of any such general partnership or joint venture interest shall be deemed to be a transfer of an interest in the Property for purposes of this Section.  Notwithstanding anything to the contrary in this Section 10 upon the sale of the

Londonderry Property, the Bellagio Property, the Carcassonne Property or the Stone Ridge Property the amounts set forth in Section 1(b) above shall be payable.

Borrower agrees, for itself and subsequent owners of the Property, that in the event that the improvements on the Property are altered or demolished without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion then outstanding principal balance and interest thereon and other sums secured by said Deeds of Trust, at the option of said holder, shall immediately become due and payable, in whole or in part, as the holder so determines.

     **11.**    **Usury Protection.** The parties hereto intend to conform strictly to the applicable usury laws. In no event, regardless of any provisions contained therein or in any other document executed or delivered in connection herewith, shall the holder hereof ever be deemed to have contracted for or be entitled to receive, collect or apply as interest on this Note, any amount in excess of the maximum amount permitted by applicable law (the ***"Maximum Rate"***). In no event, whether by reason of demand for payment, prepayment, acceleration of the maturity hereof or otherwise, shall the interest contracted for, charged or received by the holder hereunder or otherwise exceed the Maximum Rate. If for any circumstance whatsoever interest would otherwise be payable to the holder in excess of the maximum lawful amount, the interest payable to the holder shall be reduced automatically to the Maximum Rate and any payment received in excess of such amount shall be applied to the outstanding principal balance of the Note.

     **12.**    **Governing Law; Venue; Joint and Several Liability.** This Note shall be governed by and construed according to the laws of the State of California. The parties agree that, at Lender's option, in any action to enforce or interpret this Note, the courts located in Los Angeles, California shall have exclusive jurisdiction and be the exclusive venue. Nothing contained herein shall affect the rights of Lender to bring a suit, action or proceeding in any other appropriate jurisdiction. In the event Borrower is composed of more than one party, the obligations, covenants, agreements and warranties contained herein as well as the obligations arising therefrom are and shall be joint and several as to each such party.

     **13.**    **Fees and Expenses.** Borrower agrees to pay all costs and expenses incurred by Lender in connection with the preparation, negotiation and execution of this Note and the other Loan Documents and any and all amendments, modifications and supplements thereto, including, without limitation, the costs and fees of Lender's legal counsel, any applicable title company fees, title insurance premiums, filing fees, escrow fees, reconveyance fees, payoff demands and recording costs.

     **14.**    **Commercial Purpose.** Borrower agrees that no funds advanced under this Note shall be used for personal, family or household purposes, and that all funds advanced hereunder shall be used solely for business, commercial, investment or other similar purposes, particularly the development of the Property. Borrower does not occupy, and does not intend to occupy, the Hillcrest Property, the Airole Property, the Bellagio Property, the Carcassonne Property, the Stone Ridge Property and/or the Londonderry Property and no principal or owner of Borrower (including but not limited to Nile Niami) occupies or intends to occupy the Hillcrest Property, the Airole Property, the Bellagio Property, the Carcassonne Property, the Stone Ridge Property and/or the Londonderry Property.

3281722.2                                           - 6 -

15.    **Severability**.  If a court of competent jurisdiction determines that any term or provision of this Note is illegal, unenforceable or invalid in whole or in part for any reason, such illegal, unenforceable, or invalid provisions or part thereof shall be stricken from this Note, and such provision shall not affect the legality, enforceability, or validity of the remainder of this Note.  If any provision or part thereof of this Note is stricken in accordance with the provisions of this Section, then this stricken provision shall be replaced, to the extent possible, with a legal, enforceable, and valid provision that is as similar in tenor to the stricken provision as is legally possible.

16.    **Limits on Senior Loan Balances**.  Borrower agree that at no time while any portion of the Note remains unpaid shall senior indebteness: (i) encumbering the Hillcrest Property exceed $28,700,000.00, (ii) encumbering the Airole Property exceed $115,000,000.00, (iii) encumbering the Londonderry Property exceed $29,000,000.00, (iv) encumbering the Bellagio Property exceed $34,000,000.00, (v) encumbering the Carcassonne Property exceed $34,000,000.00, or (vi) encumbering the Stone Ridge Property exceed $17,100,000.00.

17.    **Prior Notes**.  The Prior Notes are hereby cancelled and superseded by this Note.

> Crestlloyd, LLC,
> a California limited liability company
>
> By: _____
>       Nile Niami, Manager

**CHICAGO TITLE COMPANY**
**COMMERCIAL DIVISION**

This document filed for recording
by Chicago Title Insurance ~~and must~~
as an accommodation only. It has not
been examined as to its execution or
as its effect upon the title.

112434

Recording Requested By
and When Recorded Mail To:

WOLF, RIFKIN, SHAPIRO,
SCHULMAN & RABKIN, LLP
11400 West Olympic Blvd., 9th Floor
Los Angeles, California 90064-1582
Attention: Steven H. Zidell, Esq.

)
)
)
)
)
)
)
)
)

This is to certify that this is a full, true and correct
copy of the original recorded in the office of the
County Recorder of _LOS ANGELES_
8-30-19
as Document No. _2019 0889046_
CHICAGO TITLE
By _Kal Daly_
TITLE OFFICER

Space Above This Line For Recorder's Use

## AMENDMENT OF NOTE AND DEEDS OF TRUST

This Amendment of Note and Deeds of Trust (the "**Amendment**") is entered into as of June 18, 2019, by and between Crestlloyd, LLC, a California limited liability company ("**Borrower**"), 10701 Bellagio Road, LLC, a California limited liability company, Carcassonne Fine Homes, LLC, a California limited liability company, Marbella Construction, Inc., a California corporation, 1369 Londonderry Estate, LLC, a California limited liability company and YOGI Securities Holdings, LLC, a Nevada limited liability company ("**Lender**"), with reference to the following facts:

### Recitals

A.      Borrower executed a Deed of Trust dated October 16, 2018 (the "**Hillcrest Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065783, Official Records of Los Angeles County, California ("**Official Records**").

B.      Borrower executed a Deed of Trust dated October 16, 2018 (the "**Airole Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on November 7, 2018, as Instrument No. 20181126580, Official Records.

C.      10701 Bellagio Road, LLC, a California limited liability company, executed a Deed of Trust dated October 16, 2018 (the "**Bellagio Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065788, Official Records.

D.      Carcassonne Fine Homes, LLC, a California limited liability company, executed a Deed of Trust dated October 16, 2018 (the "**Carcassonne Deed of Trust**"), in favor of Lender, as

3705229.1                                          -1-

beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065789, Official Records.

E.      Marbella Construction, Inc., a California corporation, executed a Deed of Trust dated October 16, 2018 (the "**Stone Ridge Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065790, Official Records.

F.      1369 Londonderry Estate, LLC, a California limited liability company, executed a Deed of Trust dated October 16, 2018 (the "**Londonderry Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065787, Official Records. The Hillcrest Deed of Trust, Airole Deed of Trust, Bellagio Deed of Trust, Carcassonne Deed of Trust, Stone Ridge Deed of Trust and Londonderry Deed of Trust are collectively referred to hereinafter as the "**Deed of Trust**".

G.      The Deed of Trust secures a loan (the "**Loan**") to Borrower in the original principal amount of Thirty Million One Hundred Eighty Eight Thousand Two Hundred Thirty Five Dollars ($30,188,235.00). The Loan is evidenced by a Promissory Note (the "**Original Note**") in the principal amount of the Loan, dated October 16, 2018, made by Borrower in favor of Lender.

H.      Lender is the holder of all beneficial interest under the Loan, the Deed of Trust, the Original Note and all other instruments that evidence and/or secure the Loan.

I.      Borrower and Lender wish to execute and record this Amendment to extend the term of the Original Note upon the conditions set forth herein, and to confirm that the Deed of Trust, as amended, secures the indebtedness evidenced by the Original Note, and other obligations described in the Original Note and Deed of Trust as modified by this Amendment. The Original Note, as amended by this Amendment is hereinafter referred to as the "**Note**". The Loan, the Note, the Deed of Trust, and all other instruments that evidence and/or secure the Loan are collectively referred to herein as the "**Loan Documents**".

NOW, THEREFORE, in consideration of the foregoing Recitals, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      <u>Definitions</u>. Terms which are defined in the Note and Deed of Trust shall have the same meanings when used in this Amendment, unless a different definition is given or referred to herein or unless the context requires otherwise.

2.      <u>Maturity Date Extension</u>. The maturity date of the Note is hereby extended to August 17, 2019 (the "**Maturity Date**"), at which time the outstanding principal balance of the Note and all accrued interest shall be due and payable. By agreeing to extend the Maturity Date, Lender is not committing to any future modifications, extensions, or renewals of any of the Loan Documents.

3.  Interest Rate: Total Payoff Amount. The parties acknowledge and agree that Lender retained Eight Hundred Thousand Dollars ($800,000.00) as prepaid interest pursuant to the terms of the Note, and as of the prior maturity date of June 18, 2019, the current balance of unpaid principal due and owing is Thirty Million One Hundred Eighty Eight Thousand Two Hundred Thirty Five Dollars ($30,188,235.00). Additionally, the parties acknowledge and agree that the interest rate of the Note is being increased by this Amendment to 4.0% per annum, to begin accruing on the unpaid principal balance on June 18, 2019, until the Maturity Date. Additionally, on the date of Lender's execution of this Amendment, the parties acknowledge and agree that Lender shall fund an additional $400,000.00 to Borrower, which shall be added as principal to the current principal balance of $30,188,235.00, such that the total unpaid balance of principal shall be Thirty Million Five Hundred Eighty Eight Thousand Two Hundred Thirty Five Dollars ($30,588,235.00) ("New Principal"), which shall be considered the New Principal as of June 18, 2019. The parties further agree that, pursuant to the interest rate established by this Amendment, on the Maturity Date the total payoff amount due under the Loan Documents shall be Thirty Million Seven Hundred Eighty Nine Thousand Three Hundred Sixty Three and 12/100 Dollars ($30,789,363.12), including the New Principal, and Two Hundred One Thousand One Hundred Twenty Eight and 12/100 Dollars ($201,128.12) in interest accrued at 4.0% per annum on the New Principal between June 18, 2019 and the Maturity Date. Borrower agrees upon demand to pay all costs and expenses incurred by Lender in connection with this Amendment, including but not limited to attorneys' fees and costs, title company charges and recording fees.

4.  Releases, Covenants Not to Litigate, Assignments and Indemnification. As of the Date of this Amendment and in consideration for the renewal, extension and/or restructure of the Note, Borrower hereby agrees as follows:

A.  Borrower: (i) fully and finally acquits, quitclaims, releases and discharges each of the Released Parties (the term **"Released Parties"** shall be defined as Lender and its respective officers, directors, shareholders, representatives, employees, agents and attorneys) of and from any and all obligations, claims, liabilities, damages, demands, debts, liens, deficiencies or cause or causes of action (including claims and causes of action for usury) to, of or for the benefit (whether directly or indirectly) of Borrower, at law or in equity, known or unknown, contingent or otherwise, whether asserted or unasserted, whether now known or hereafter discovered, whether statutory, in contract or in tort, as well as any other kind or character of action now held, owned or possessed (whether directly or indirectly) by Borrower on account of, arising out of, related to or concerning, whether directly or indirectly, proximately or remotely (a) the Note or any of the Loan Documents, or (b) this Amendment; (ii) waives any and all defenses to payment of the Note for any reason; and (iii) waives any and all defenses, counterclaims or offsets to the Loan Documents (collectively, the "Released Claims");

Except as hereinabove limited, it is understood and agreed by Borrower that the claims released hereunder include all claims of every nature and kind whatsoever, known or unknown, suspected or unsuspected, arising out of or related to any and all of the matters referred to in the immediately preceding paragraph, notwithstanding the provisions of Section 1542 of the California Civil Code, which Section provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

Borrower acknowledges that it may hereafter discover facts different from, or in addition to, those which it now knows or believes to be true with respect to the claims released hereunder, and agree that the foregoing release shall be and remain effective in all respects notwithstanding such different or additional facts or the discovery thereof, and waives application of the provisions of Section 1542 with respect to the claims released hereunder.

5.    <u>Continuing Security</u>.  The Deed of Trust, as modified by this Amendment, shall continue to secure the indebtedness evidenced by the Note as amended by this Amendment, and all other indebtedness and obligations secured by the Deed of Trust.  Except as expressly modified by this Amendment, the Deed of Trust shall remain in full force and effect, and this Amendment shall have no effect on the priority or validity of the lien of the Deed of Trust, which shall continue to constitute a lien and charge on the property encumbered by the Deed of Trust as follows:

A.    The Hillcrest Deed of Trust, as modified by this Amendment, shall continue to constitute a seventh position lien and charge on the property encumbered by the Hillcrest Deed of Trust.

B.    The Airole Deed of Trust, as modified by this Amendment, shall continue to constitute a second position lien and charge on the property encumbered by the Airole Deed of Trust.

C.    The Bellagio Deed of Trust, as modified by this Amendment, shall continue to constitute a fourth position lien and charge on the property encumbered by the Bellagio Deed of Trust.

D.    The Carcassonne Deed of Trust, as modified by this Amendment, shall continue to constitute a fourth position lien and charge on the property encumbered by the Carcassonne Deed of Trust.

E.    The Stone Ridge Deed of Trust, as modified by this Amendment, shall continue to constitute a fourth position lien and charge on the property encumbered by the Stone Ridge Deed of Trust.

3705229.1                              -4-

F.    The Londonderry Deed of Trust, as modified by this Amendment, shall continue to constitute a fifth position lien and charge on the property encumbered by the Londonderry Deed of Trust.

6.    <u>No Other Modifications</u>.  Except as modified expressly or by necessary implication hereby and by this Amendment, all of the terms and conditions of the Note and Deed of Trust shall remain unchanged and in full force and effect.  To the extent the provisions of this Amendment are inconsistent with the provisions of the Note or Deed of Trust, the provisions of this Amendment shall control and supersede such inconsistent provisions in the Note and Deed of Trust.

7.    <u>Successors and Assigns</u>.  All of the grants, including the grant of the power of sale, obligations, covenants, agreements, terms, provisions and conditions herein shall apply to, bind and inure to the benefit of the heirs, administrators, executors, legal representatives, successors and assigns of Borrower and the successors in trust of trustee, and the endorsees, transferees, successors and assigns of Lender.

*[Signatures on following page]*

3705229.1

-5-

EXECUTED AND DELIVERED to be effective as of the date first set forth above.

**BORROWER:**

CRESTLLOYD, LLC,
a California limited liability company

By: _____
    Nile Niami, Manager

10701 BELLAGIO ROAD, LLC,
a California limited liability company

By: _____
    Nile Niami, Manager

CARCASSONNE FINE HOMES, LLC,
a California limited liability company

By: _____
    Nile Niami, Manager

MARBELLA CONSTRUCTION, INC.,
a California corporation

By: _____
    Nile Niami, Manager

1369 LONDONDERRY ESTATE, LLC,
a California limited liability company

By: _____
    Nile Niami, Manager

**LENDER:**

YOGI SECURITIES HOLDINGS, LLC,
a Nevada limited liability company

By: YOGI Management Trust, its manager

By: _____
    Joseph Englanoff, Trustee

3705229.1                    -6-

EXECUTED AND DELIVERED to be effective as of the date first set forth above.

BORROWER:                                      LENDER:

CRESTLLOYD, LLC,                               YOGI SECURITIES HOLDINGS, LLC,
a California limited liability company         a Nevada limited liability company

                                               By: YOGI Management Trust, its manager

By:_____
     Nile Niami, Manager                       By: _____
                                                   Joseph Englanoff, Trustee

10701 BELLAGIO ROAD, LLC,
a California limited liability company

By:_____
     Nile Niami, Manager

CARCASSONNE FINE HOMES, LLC,
a California limited liability company

By:_____
     Nile Niami, Manager

MARBELLA CONSTRUCTION, INC.,
a California corporation

By:_____
     Nile Niami, Manager

1369 LONDONDERRY ESTATE, LLC,
a California limited liability company

By:_____
     Nile Niami, Manager

3705229.1                        -6-

**CALIFORNIA ACKNOWLEDGMENT**                                      CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document
> to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of LOS ANGELES

On JUNE 26, 2019 before me, Nigel Gibbs, Notary Public
    *Date*                    *Here Insert Name and Title of the Officer*

personally appeared   Nile Niami
                          *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

**NIGEL GIBBS**
**Notary Public - California**
**Los Angeles County**
**Commission # 2164239**
**My Comm. Expires Oct 4, 2020**

I certify under PENALTY OF PERJURY under the
laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
            *Signature of Notary Public*

*Place Notary Seal and/or Stamp Above*

──────────────────── OPTIONAL ────────────────────
*Completing this information can deter alteration of the document or*
*fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: Amendment of Note & Deeds of Trust(s)
Document Date: 6/26/19 _____ Number of Pages: 6
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General
☐ Individual     ☐ Attorney in Fact
☐ Trustee       ☐ Guardian or Conservator
☐ Other: _____
Signer is Representing: _____

Signer's Name: _____
☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General
☐ Individual     ☐ Attorney in Fact
☐ Trustee       ☐ Guardian or Conservator
☐ Other: _____
Signer is Representing: _____

©2018 National Notary Association

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA        )
                           )
COUNTY OF LOS ANGELES      )

On __7/10/2019__, before me, __Yolanda Chavez-__, a Notary Public in and for said State, personally appeared __Joseph Galanoff__, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

YOLANDA CHAVEZ
Notary Public - California
Los Angeles County
Commission # 2204195
My Comm. Expires Aug 3, 2021

RECORDER MEMO: This COPY has not been QUALITY ASSURED.



**This page is part of your document - DO NOT DISCARD**





# 20190907091

**Pages:**
**0009**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**09/05/19 AT 08:00AM**

| | |
|---|---|
| FEES: | 41.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 116.00 |



**LEADSHEET**



201909050150015

**00017107247**



010099932

**SEQ:**
**16**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

T72



RECORDER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED.    Desc Main Document    Page 22 of
43



**CHICAGO TITLE COMPANY
COMMERCIAL DIVISION**

112434-994-LT2

Recording Requested By                    )
and When Recorded Mail To:                 )
                                           )
                                           )
WOLF, RIFKIN, SHAPIRO,                     )
SCHULMAN & RABKIN, LLP                     )
11400 West Olympic Blvd., 9th Floor        )
Los Angeles, California 90064-1582         )
Attention:  Steven H. Zidell, Esq.         )

Space Above This Line For Recorder's Use

---

### SECOND AMENDMENT OF NOTE AND DEEDS OF TRUST

This Second Amendment of Note and Deeds of Trust (the "**Second Amendment**") is entered into as of August 17, 2019, by and between Crestlloyd, LLC, a California limited liability company ("**Borrower**"), 10701 Bellagio Road, LLC, a California limited liability company, Carcassonne Fine Homes, LLC, a California limited liability company, Marbella Construction, Inc., a California corporation, 1369 Londonderry Estate, LLC, a California limited liability company and YOGI Securities Holdings, LLC, a Nevada limited liability company ("**Lender**"), with reference to the following facts:

#### Recitals

A.    Borrower executed a Deed of Trust dated October 16, 2018 (the "**Hillcrest Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065783, Official Records of Los Angeles County, California ("**Official Records**").

B.    Borrower executed a Deed of Trust dated October 16, 2018 (the "**Airole Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on November 7, 2018, as Instrument No. 20181126580, Official Records.

C.    10701 Bellagio Road, LLC, a California limited liability company, executed a Deed of Trust dated October 16, 2018 (the "**Bellagio Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065788, Official Records.

D.    Carcassonne Fine Homes, LLC, a California limited liability company, executed a Deed of Trust dated October 16, 2018 (the "**Carcassonne Deed of Trust**"), in favor of Lender, as

3781470 1                              -1-

RECORDER MEMO: This COPY has not been QUALITY ASSURED

Case 2:21-bk-18205-DS   Doc 2-1 Filed 12/12/21   Desc Main Document   Page 23 of 43

beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065789, Official Records.

E.      Marbella Construction, Inc., a California corporation, executed a Deed of Trust dated October 16, 2018 (the "**Stone Ridge Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065790, Official Records.

F.      1369 Londonderry Estate, LLC, a California limited liability company, executed a Deed of Trust dated October 16, 2018 (the "**Londonderry Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065787, Official Records. The Hillcrest Deed of Trust, Airole Deed of Trust, Bellagio Deed of Trust, Carcassonne Deed of Trust, Stone Ridge Deed of Trust and Londonderry Deed of Trust are collectively referred to hereinafter as the "**Deed of Trust**".

G.      The Deed of Trust secures a loan (the "**Loan**") to Borrower in the original principal amount of Thirty Million One Hundred Eighty Eight Thousand Two Hundred Thirty Five Dollars ($30,188,235.00). The Loan is evidenced by a Promissory Note (the "**Original Note**") in the principal amount of the Loan, dated October 16, 2018, made by Borrower in favor of Lender.

H.      Borrower and Lender executed an Amendment of Note and Deed of Trust dated June 18, 2019 (the "**First Amendment**"), which extended the term of the Original Note upon the conditions set forth therein, and established a new principal balance of Thirty Million Five Hundred Eighty Eight Thousand Two Hundred Thirty Five Dollars ($30,588,235.00).

I.      Lender is the holder of all beneficial interest under the Loan, the Deed of Trust, the Original Note and all other instruments that evidence and/or secure the Loan.

J.      Borrower and Lender wish to execute and record this Second Amendment to further extend the term of the Original Note upon the conditions set forth herein, and to confirm that the Deed of Trust, as amended, secures the indebtedness evidenced by the Original Note, and other obligations described in the Original Note and Deed of Trust as modified by the First Amendment and this Second Amendment. The Original Note, as amended by the First Amendment and this Second Amendment is hereinafter referred to as the "**Note**". The Loan, the Note, the Deed of Trust, and all other instruments that evidence and/or secure the Loan are collectively referred to herein as the "**Loan Documents**".

NOW, THEREFORE, in consideration of the foregoing Recitals, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      Definitions. Terms which are defined in the Note and Deed of Trust shall have the same meanings when used in this Second Amendment, unless a different definition is given or referred to herein or unless the context requires otherwise.

3781470.1                                      -2-

RECORDER MEMO: This COPY has not been QUALITY ASSURED. Desc Main Document    Page 24 of
43

2.   Maturity Date Extension.  The maturity date of the Note is hereby extended to October 16, 2019 (the "**Maturity Date**"), at which time the outstanding principal balance of the Note and all accrued interest shall be due and payable.  By agreeing to extend the Maturity Date, Lender is not committing to any future modifications, extensions, or renewals of any of the Loan Documents.

3.   Interest Rate; Total Payoff Amount.  The parties acknowledge and agree that Lender retained Eight Hundred Thousand Dollars ($800,000.00) as prepaid interest pursuant to the terms of the Original Note.  The parties acknowledge and agree that pursuant to the terms of the First Amendment, Lender funded an additional $400,000.00 to Borrower, adding such amount to the unpaid principal balance, and increased the interest rate of the Original Note to 4.0% per annum. The parties acknowledge and agree that as of the prior maturity date of August 17, 2019, the current balance of unpaid principal and interest due and owing is Thirty Million Seven Hundred Eighty Nine Thousand Three Hundred Sixty Three and 12/100 Dollars ($30,789,363.12), which includes (i) the principal amount established by the First Amendment of $30,588,235.00 ("**First Amendment Principal**"), and (ii) interest of $201,128.12 accrued at a rate of 4.0% per annum between June 18, 2019, and August 17, 2019.  The parties further acknowledge and agree that on August 17, 2019, the unpaid interest of $201,128.12 shall be added as principal to the First Amendment Principal balance of $30,588,235.00.  Additionally, on the date of Lender's execution of this Amendment, the parties acknowledge and agree that Lender shall fund an additional $739,000.00 to Borrower, which shall also be added as principal to the First Amendment Principal balance of $30,588,235.00.  Accordingly, the total updated unpaid principal balance shall include (i) the First Amendment Principal balance of $30,588,235.00, (ii) the unpaid interest of $201,128.12, and (iii) Lender's additional funding of $739,000.00 to Borrower, for a total updated principal balance of Thirty One Million Five Hundred Twenty Eight Thousand Three Hundred Sixty Three and 12/100 Dollars ($31,528,363.12) ("**New Principal Balance**"), which shall be considered the New Principal Balance as of August 17, 2019.  The parties further acknowledge and agree that pursuant to the interest rate established by the First Amendment and maintained in this Second Amendment, on the Maturity Date the total payoff amount due under the Loan Documents shall be Thirty One Million Seven Hundred Thirty Five Thousand Six Hundred Seventy Two and 72/100 Dollars ($31,735,672.72), including the New Principal Balance, and Two Hundred Seven Thousand Three Hundred Nine and 60/100 Dollars ($207,309.60) in interest accrued at 4.0% per annum on the New Principal Balance between August 17, 2019 and the Maturity Date.  Borrower agrees upon demand to pay all costs and expenses incurred by Lender in connection with this Second Amendment, including but not limited to attorneys' fees and costs, title company charges and recording fees.  Lender may, at its sole option, pay for such attorneys' fees and costs, title company charges and recording fees out of the proceeds of the additional funding of $739,000.00.

4.   Releases, Covenants Not to Litigate, Assignments and Indemnification.  As of the Date of this Amendment and in consideration for the renewal, extension and/or restructure of the Note, Borrower hereby agrees as follows:

A.   Borrower: (i) fully and finally acquits, quitclaims, releases and discharges each of the Released Parties (the term "**Released Parties**" shall be defined as Lender and its respective officers, directors, shareholders, representatives, employees, agents and attorneys)

3781470.1                                     -3-

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

Case 2:21-bk-18205-DS    Doc 319    Filed 05/17/22    Entered    Desc Main Document    Page 25 of
43

of and from any and all obligations, claims, liabilities, damages, demands, debts, liens, deficiencies or cause or causes of action (including claims and causes of action for usury) to, of or for the benefit (whether directly or indirectly) of Borrower, at law or in equity, known or unknown, contingent or otherwise, whether asserted or unasserted, whether now known or hereafter discovered, whether statutory, in contract or in tort, as well as any other kind or character of action now held, owned or possessed (whether directly or indirectly) by Borrower on account of, arising out of, related to or concerning, whether directly or indirectly, proximately or remotely (a) the Note or any of the Loan Documents, or (b) this Second Amendment; (ii) waives any and all defenses to payment of the Note for any reason; and (iii) waives any and all defenses, counterclaims or offsets to the Loan Documents (collectively, the "**Released Claims**");

Except as hereinabove limited, it is understood and agreed by Borrower that the claims released hereunder include all claims of every nature and kind whatsoever, known or unknown, suspected or unsuspected, arising out of or related to any and all of the matters referred to in the immediately preceding paragraph, notwithstanding the provisions of Section 1542 of the California Civil Code, which Section provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

Borrower acknowledges that it may hereafter discover facts different from, or in addition to, those which it now knows or believes to be true with respect to the claims released hereunder, and agree that the foregoing release shall be and remain effective in all respects notwithstanding such different or additional facts or the discovery thereof, and waives application of the provisions of Section 1542 with respect to the claims released hereunder.

5.    Continuing Security. The Deed of Trust, as modified by the First Amendment and this Second Amendment, shall continue to secure the indebtedness evidenced by the Note as amended by the First Amendment and this Second Amendment, and all other indebtedness and obligations secured by the Deed of Trust. Except as expressly modified by the First Amendment and this Second Amendment, the Deed of Trust shall remain in full force and effect, and this Second Amendment shall have no effect on the priority or validity of the lien of the Deed of Trust, which shall continue to constitute a lien and charge on the property encumbered by the Deed of Trust as follows:

A.    The Hillcrest Deed of Trust, as modified by this Amendment, shall continue to constitute a seventh position lien and charge on the property encumbered by the Hillcrest Deed of Trust.

3781470 1                                         -4-

RECORDER MEMO: This COPY has not been QUALITY ASSURED. Desc Main Document    Page 26 of
43

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

     B.     The Airole Deed of Trust, as modified by this Amendment, shall continue to constitute a second position lien and charge on the property encumbered by the Airole Deed of Trust.

     C.     The Bellagio Deed of Trust, as modified by this Amendment, shall continue to constitute a fourth position lien and charge on the property encumbered by the Bellagio Deed of Trust.

     D.     The Carcassonne Deed of Trust, as modified by this Amendment, shall continue to constitute a fourth position lien and charge on the property encumbered by the Carcassonne Deed of Trust.

     E.     The Stone Ridge Deed of Trust, as modified by this Amendment, shall continue to constitute a fourth position lien and charge on the property encumbered by the Stone Ridge Deed of Trust.

     F.     The Londonderry Deed of Trust, as modified by this Amendment, shall continue to constitute a fifth position lien and charge on the property encumbered by the Londonderry Deed of Trust.

     6.     No Other Modifications.  Except as modified expressly or by necessary implication hereby and by this Second Amendment, all of the terms and conditions of the Note and Deed of Trust shall remain unchanged and in full force and effect.  To the extent the provisions of this Second Amendment are inconsistent with the provisions of the Note or Deed of Trust, the provisions of this Second Amendment shall control and supersede such inconsistent provisions in the Note and Deed of Trust.

     7.     Successors and Assigns.  All of the grants, including the grant of the power of sale, obligations, covenants, agreements, terms, provisions and conditions herein shall apply to, bind and inure to the benefit of the heirs, administrators, executors, legal representatives, successors and assigns of Borrower and the successors in trust of trustee, and the endorsees, transferees, successors and assigns of Lender.

*[Signatures on following page]*

3781470.1                          -5-

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

EXECUTED AND DELIVERED to be effective as of the date first set forth above.

BORROWER:                                          LENDER:

CRESTLLOYD, LLC,                                   YOGI SECURITIES HOLDINGS, LLC,
a California limited liability company             a Nevada limited liability company

By:_____                       By: YOGI Management Trust, its manager
    Nile Niami, Manager
                                                   By:_____
                                                       Joseph Englanoff, Trustee

10701 BELLAGIO ROAD, LLC,
a California limited liability company

By:_____
    Nile Niami, Manager


CARCASSONNE FINE HOMES, LLC,
a California limited liability company

By:_____
    Nile Niami, Manager


MARBELLA CONSTRUCTION, INC.,
a California corporation

By:_____
    Nile Niami, Manager


1369 LONDONDERRY ESTATE, LLC,
a California limited liability company

By:_____
    Nile Niami, Manager


3781470.1                                   -6-

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA        )
                           )
COUNTY OF LOS ANGELES      )

On September 5, 2019 before me, Steven H. Zidell , a Notary Public in and for said State, personally appeared Joseph Englanoff , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Steven H. Zidell_ (Seal)



STEVEN H. ZIDELL
Notary Public - California
Los Angeles County
Commission # 2241601
My Comm. Expires Jun 6, 2022

3781470.1                                    -7-

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

Desc Main Document    Page 29 of 43

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
)
COUNTY OF LOS ANGELES )

On September 3, 2019 before me, Nigel Gibbs, a Notary Public in and for said State, personally appeared Nile Niami, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)



NIGEL GIBBS
Notary Public • California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

3781470.1                    -8-



**This page is part of your document - DO NOT DISCARD**





# 20181126580

**Pages:
0014**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**11/07/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 83.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 233.00 |



**LEADSHEET**

**201811070180001**

**00015924543**

**009450611**

**SEQ:
12**

**DAR - Title Company (Hard Copy)**

**THIS FORM IS NOT TO BE DUPLICATED**

**T72**



2



11/07/2018

*20181126580*

**RECORDING REQUESTED BY:**

CHICAGO

**AND WHEN RECORDED MAIL TO:**

WOLF, RIFKIN, SHAPIRO, SCHULMAN
& RABKIN LLP
11400 W OLYMPIC BLVD 9TH FL
L.A. CA 90064

SPACE ABOVE FOR RECORDER'S USE ONLY

DEED OF TRUST

**Title of Document**

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**($3.00 Additional Recording Fee Applies)**

*3*

**CHICAGO TITLE COMPANY**
**COMMERCIAL DIVISION**

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Steven H. Zidell, Esq.
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Blvd.,
9th Floor
Los Angeles, California 90064-1582

---

## DEED OF TRUST AND ASSIGNMENT OF RENTS

---

TITLE ORDER NO. 00094109-997-BS5-KD3                    APN NO. 4369-026-021

     **This Deed of Trust,** made as of October **16**, 2018, between Crestlloyd, LLC, a California limited liability company, herein called Trustor, whose address is 8981 West Sunset Boulevard, Suite 303, West Hollywood, California 90069, Chicago Title Company, herein called Trustee, and YOGI Securities Holdings, LLC, a Nevada limited liability company, herein called Beneficiary,

     Trustor **IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE,** that certain property in Los Angeles County, California, described as:

### SEE EXHIBIT A ATTACHED HERETO,

     **TOGETHER WITH** the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph (10) of the provisions herein to collect and apply such rents, issues and profits.

     **For the Purpose of Securing:**

         1.    Performance of each agreement of Trustor incorporated by reference or contained herein;

         2.    Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $30,188,235.00 executed by Trustor in favor of Beneficiary or order;

         3.    Payment of such further sums as the then record owner of said property may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so secured; and

         4.    Payment of any future advances by Beneficiary regardless of whether such advances were contemplated by the parties at the time of the granting of this Deed of Trust, whether or not such future advances are evidenced by any document, or whether or not any such document specifies that it is secured hereby.

**To Protect the Security of This Deed of Trust, Trustor Agrees:**

(1)     To keep said property in good condition and repair, not to remove or demolish any building thereon, to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor, to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof, not to commit, suffer or permit any act upon said property in violation of law to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2)     To provide maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3)     To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, and to pay all costs and expenses including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4)     To pay at least 10 days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock, and to pay when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto, all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto, and in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5)     To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

3281725.2

2

(6)     That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7)     That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his rights either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8)     That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may reconvey any part of said property, consent to the making of any map or plot thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(9)     That upon written request of Beneficiary state that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "The person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10)    That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, upon any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person , by agent, or by a receiver to be· appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees. Upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11)    That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder. Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

3281725.2                                ·3

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof, all other sums then secured hereby, and the remainder, if any, to the person or persons legally entitled thereto.

(12)    Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(13)    That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby whether or not named as Beneficiary herein in this Deed, whenever the context so requires ,the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14)    That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

**The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.**

**SEE RIDER TO DEED OF TRUST ATTACHED HERETO.**

3281725.2                                      4

7

IN WITNESS WHEREOF, the undersigned has executed this Deed of Trust as of the date first above written.

Crestlloyd, LLC,
a California limited liability company

By:

Nile Niami, Manager

## RIDER TO DEED OF TRUST

1.    Due on Sale and Encumbrance. The Note which is secured by this Deed of Trust contains the following "due on sale" and "due on encumbrance" clauses:

"Borrower acknowledges and agrees that the creditworthiness and expertise of Borrower or Trustor in owning, developing and operating the Property is the basis upon which holder has determined that it is protected against impairment of the security and risk of default and thereby has agreed to lend undersigned the principal sum set forth above. In order to insure the continued creditworthiness and expertise of the owner of the Property and in order to allow the holder of this Note an opportunity to review and evaluate the same, undersigned agrees, for itself and subsequent owners of the Property, that the Property shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered, whether voluntarily, involuntarily, by operation of law or otherwise, without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion. Any transaction in violation of the above restrictions shall cause the then outstanding principal balance and interest thereon and other sums secured by the Deeds of Trust, at the option of said holder, to immediately become due and payable. If Borrower is a corporation, limited liability company or trust, the sale, conveyance, transfer or disposition, whether voluntary or involuntary, of 25% or more of the issued and outstanding common stock or membership interests of Borrower or Trustor, or of the beneficial interest of such trust, or, in the event Borrower or Trustor is a limited or general partnership or a joint venture, a change of any general partner or any joint venturer, either voluntarily or involuntarily, or the sale, conveyance, transfer, disposition, or encumbrance of any such general partnership or joint venture interest shall be deemed to be a transfer of an interest in the Property for purposes of this Section. Notwithstanding anything to the contrary in this Section 10 upon the sale of the Londonderry Property, the Bellagio Property, the Carcassonne Property or the Stone Ridge Property the amounts set forth in Section 1(b) above shall be payable.

Borrower agrees, for itself and subsequent owners of the Property, that in the event that the improvements on the Property are altered or demolished without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion then outstanding principal balance and interest thereon and other sums secured by said Deeds of Trust, at the option of said holder, shall immediately become due and payable, in whole or in part, as the holder so determines."

2.    Insurance.

a.    Liability Insurance. Trustor shall, at Trustor's sole expense, obtain and keep in force during the term of this Deed of Trust a policy of combined single limit, bodily injury and property damage insurance insuring Beneficiary and Trustor against any liability arising out of the ownership, use, occupancy or maintenance of the property upon which this Deed of Trust is

an encumbrance (the "*Property*") and all areas appurtenant thereto. Such insurance shall be a combined single limit policy in an amount not less than $1,000,000 per occurrence. The limits of said insurance shall not, however, limit the liability of Trustor hereunder. Beneficiary shall be designated as an additional insured under the liability insurance required under this Deed of Trust.

b.    Property Insurance. Trustor shall obtain and keep in force during the term of this Deed of Trust a policy or policies of insurance covering loss or damage to the Property, in the amount of the full replacement value thereof, as the same may exist from time to time, as determined by Beneficiary against all perils included within the classification of fire, extended coverage, vandalism, malicious mischief, and special extended perils ("all risk" as such term is used in the insurance industry). Said insurance shall provide for payment of loss thereunder to Beneficiary. A stipulated value or agreed amount endorsement deleting the coinsurance provision of the policy shall be procured with said insurance. If the Trustor shall fail to procure and maintain said insurance the Beneficiary may, but shall not be required to, procure and maintain the same, but at the expense of Trustor. If such insurance coverage has a deductible clause, the deductible amount shall not exceed $1,000 per occurrence, and the Trustor shall be liable for such deductible amount.

c.    Insurance Policies. Insurance required hereunder shall be in companies holding a "General Policyholders Rating" of at least A-, V as set forth in the most current issue of "Best's Insurance Guide." The Trustor shall deliver to the Beneficiary copies of policies of such insurance or certificates evidencing the existence and amounts of such insurance with additional insured and lender's loss payable endorsements as required by this Paragraph 2. No such policy shall be cancelable or subject to reduction of coverage or other modification except after 30 days' prior written notice to Beneficiary. Trustor shall, at least 30 days prior to the expiration of such policies, furnish Beneficiary with renewals or "binders" thereof, or Beneficiary may order such insurance and charge the cost thereof to Trustor, which amount shall be payable by Trustor upon demand. Trustor shall not do or permit to be done anything which shall invalidate the insurance policies referred to in this Paragraph 2.

3.    Remedies.    Beneficiary may exercise any right or remedy available under the Note or this Deed of Trust or at law or in equity. All of Beneficiary's remedies upon the occurrence of an event of default are cumulative. Beneficiary's prosecution of any one of these remedies shall not preclude Beneficiary from simultaneously or subsequently prosecuting any other remedy or remedies under this Deed of Trust or under the Note or any other Loan Documents. No act of Beneficiary shall be construed as an election to proceed under any particular provision of this Deed of Trust to the exclusion of any other provision of this Deed of Trust, or as an election of remedies to the exclusion of any other remedy that may then or thereafter be available to Beneficiary. No delay or failure by Beneficiary to exercise any right or remedy under this Deed of Trust shall be construed to be a waiver of that right or remedy or of any default by Trustor. Beneficiary may exercise any one or more of its rights and remedies at its option without regard to the adequacy of its security.

R-2

\10

4.    Appointment of Receiver.

    a.    Appointment of Receiver. In any action to foreclose this Deed of Trust, or sell all or part of the Property, or upon any event of default, Trustee or Beneficiary shall be entitled to the appointment of a receiver without notice, without regard to the solvency or insolvency of Trustor at the time of application for such receiver, and without regard to the then value of the Property or whether the same shall be then occupied as a homestead or not, and Trustee, Beneficiary hereunder or any holder of the Note may be appointed as such receiver. Such receiver shall have the power to collect any Rents during the pendency of such foreclosure suit, and also during any further times when Trustor, except for the intervention of such receiver, would be entitled to collect any Rents, and any and all other powers which may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Property during the whole of said period. The court from time to time may authorize the receiver to apply the net income in its hands, after deducting reasonable compensation for the receiver and its counsel as allowed by the court, in payment (in whole or in part) of any or all of the indebtedness secured hereby, including, without limitation, the following, in such order of application as Trustee or Beneficiary may elect: (i) amounts due upon the Note secured hereby; (ii) amounts due upon any decree entered in any suit foreclosing this Deed of Trust; (iii) costs and expenses of foreclosure and litigation upon the Property; (iv) insurance premiums, repairs, taxes, special assessments, water charges and interest, penalties and costs in connection with the Property; (v) any other lien or charge upon the Property that may be or become superior to the lien of this Deed of Trust, or of any decree foreclosing the same, provided that such application is made prior to foreclosure sale; and (vi) the deficiency in case of a deficiency.

    b.    Reimbursement of Advances.

        (i)    Trustor agrees to promptly reimburse any monies which Beneficiary advances in connection with the appointment of a receiver or the receiver's operation of the Property, plus interest at the default rate set forth in the Note. Trustor's obligation to reimburse Beneficiary shall be secured by this Deed of Trust.

        (ii)    In the event that Beneficiary advances any monies necessary to preserve the security interest granted by this Deed of Trust arising from a default in any loan secured by the Property that is of higher priority that this Deed of Trust, Trustor agrees to pay Beneficiary a fee in the amount of $5,000. Trustor's obligation to make such payment shall be secured by this Deed of Trust.

    c.    Possession and Operation of Properties. Trustor agrees that the receiver or his agents shall be entitled to enter upon and take possession of, and operate, manage and control, the Property to the same extent and in the same manner as Trustor might lawfully do.

5.    Reserved.

R-3

6.    Conflicts. This Rider shall control in the event of a conflict between the terms hereof and the Deed of Trust.

                    Crestlloyd, LLC,
                    a California limited liability company

                    By: _____
                         Nile Niami, Manager

R-4 .

12

> A notary public or other officer completing this
> certificate verifies only the identity of the
> individual who signed the document to which this
> certificate is attached, and not truthfulness,
> accuracy, or validity of that document.

STATE OF CALIFORNIA            )
                               )
COUNTY OF LOS ANGELES          )

On __October 16__, 2018 before me, Steven H. Zidell, a Notary Public in and for said State, personally appeared Nile Niami, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)


> STEVEN H. ZIDELL
> Notary Public - California
> Los Angeles County
> Commission # 2241601
> My Comm. Expires Jun 6, 2022

13

## REQUEST FOR FULL RECONVEYANCE

To be used only when note has been paid:

To [_____ Title], Trustee                     Dated _____

     The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith together with said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, the estate now held by you under the same.

_____                     MAIL RECONVEYANCE TO:

By: _____                     _____
Name: _____                     _____
Title: _____                     _____

Do not lose or destroy this Deed of Trust OR THE NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made.

14

## EXHIBIT A

### LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623 PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET; THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE HAVING A LENGTH OF 115.83 FEET.

APN: 4369-026-021

(Property commonly known as: 944 Airole Way, Los Angeles, CA)

# EXHIBIT 13

Jennifer L. Kneeland (admitted *pro hac vice*)
Marguerite Lee DeVoll (admitted *pro hac vice*)
Jane Kearl, Bar No. 156560
Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
4 Park Plaza, Suite 1000
Irvine, CA  92614
Telephone: 949-852-6700
jkneeland@watttieder.com
mdevoll@watttieder.com
jkearl@watttieder.com

Attorneys for Creditor
J & E Texture, Inc.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>CRESTLLOYD, LLC,<br><br>         Debtor and Debtor-in-Possession. | Case No.: 2:21-bk-18205-DS<br>Chapter 11 Case<br><br>**OBJECTION TO MOTION FOR ORDER: (1) APPROVING THE SALE OF THE DEBTOR'S REAL PROEPRTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, WITH THE EXCEPTION OF ENUMERATED EXCLUSIONS; (2) FINDING THAT THE BUYER IS A GOOD FAITH PURCHASER; (3) AUTHORIZING AND APPROVING THE PAYMENT OF CERTAIM CLAIMS FROM SALE PROCEEDS; (4) WAIVING THE FOURTEEN-DAY STAY PERIOD SET FORTH IN BANKRUPTCY RULE 6004(h); AND (5) PROVIDING RELATED RELIEF**<br><br>Date:     March 18, 2022<br>Time:    11:00 A.M. PST<br>Place:   Courtroom 1639<br>           255 E. Temple St.<br>           Los Angeles, CA 90012<br>           **VIA ZOOMGOV ONLY** |

Case 2:21-bk-18205-DS    Doc 192    Filed 03/15/22    Entered 03/15/22 10:25:43    Desc
Main Document    Page 2 of 19

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................... 1

II.     STATEMENT OF THE FACTS.................................................................... 3

III.    ARGUMENT .................................................................................................. 5

        A.      Mechanics' Lien Priority Under California State Law. .......................... 5

        B.      The Debtor Cannot Satisfy Section 363 for Approval of the Motion.... 7

                (1)     Section 363(f)(2) Requires Affirmative, Informed Consent. ...... 7

                (2)     Ignoring the Superior Priority of Mechanics' Liens Does Not
                        Equate to a Bona Fide Dispute Under Section 363(f)(4). .......... 9

                (3)     Debtor Cannot Satisfy Section 363(f)(5) Under Controlling Ninth
                        Circuit Case Law.................................................................... 11

IV.     CONCLUSION ........................................................................................... 12

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

# TABLE OF AUTHORITIES

**Federal Cases**

*Greenblatt v. Utley*, 240 F.2d 243, 246 (9th Cir. 1956) ................................................................. 5, 6

*In re Arch Hosp., Inc.*, 530 B.R. 588, 591 (Bankr. W.D.N.Y. 2015) .......................................... 7, 9

*In re Clark*, 266 B.R. 163, 171-72 (9th Cir. BAP 2001) .......................................................... 10, 11

*In re DeCelis*, 349 B.R. 465, 467-69 (Bankr. E.D.Va. 2006) ...................................................... 7, 9

*In re East Airport Dev., LLC*, 443 B.R. 823, 831 (9th Cir. BAP 2011) ...................................... 7, 9

*In re Hassen Imports P'ship*, 502 B.R. 851, 858-59 (C.D. Cal. 2013) .................................... 11, 12

*In re KDR Bldg. Specialties, Inc.*, 76 B.R. 778 (Bankr. S.D. Cal. 1987) ...................................... 6

*In re Kellogg-Taxe*, No. 2:12-bk-51208-RN, 2014 WL 1016045, at *6 (Bankr. C.D.Cal. Mar. 17, 2014) ...................................................................................................................................... 10, 11

*In re Lobolee*, 241 B.R. 655 (9th Cir. BAP 1999) ...................................................................... 3, 7

*In re Mitchell*, 525 B.R. 38, 41 (Bankr. M.D.N.C. 2014) ............................................................ 10

*In re PW, LLC*, 391 B.R. 25, 41-47 (9th BAP 2008) ................................................................ 11, 12

*In re Roberts*, 249 B.R. 152, 155 (Bankr. W.D.Mich. 2000) ...................................................... 7, 9

*In re Smith*, No. BR 13-61627, 2014 WL 738784, at *2 (Bankr. D. Or. Feb. 26, 2014) ......... 11, 12

*In re Taylor*, 198 B.R. 142, 162 (Bankr. D.S.C. 1996) ................................................................ 10

*In re Terrace Chalet Apts., Ltd.*, 159 B.R. 821, 828-29 (Bankr. N.D. Ill.1993) ........................... 10

*Matter of Stroud Wholesale, Inc.*, 47 B.R. 999, 1002 (Bankr. M.D.N.C. 1985) ........................... 10

*Sec. & Exch. Comm'n v. Capital Cove Bancorp LLC*, No. SACV-15-980-JLS (JCx), 2015 WL 9701154, at *5 (C.D. Cal. Oct. 13, 2015) ............................................................................... 10, 11

**California Cases**

*MTC Fin., Inc. v. Nationstar Mortg., LLC*, 19 Cal.App.5th 811, 8117 (1st Dist. 2018) ............... 14

*Parson Brinckerhoff Quade & Douglas, Inc. v. Kern Cty. Emps.' Ret. Ass'n*, 5 Cal.App.4th 1264, 1268-69 (5th Dist. 1992) ............................................................................................................ 6, 7

*Santa Cruz Lumber Co. v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 160 Cal.App.3d 858 (1st Dist. 1984) (unpublished) ..................................................................................................................... 7

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

*Sax v. Clark*, 180 Cal. 287, 288-91, 180 P. 821 (1919) .............................................. 5, 7

*Schrader Iron Works, Inc. v. Lee*, 26 Cal.App.3d 621, 631-32 (3d Dist. 1972) .......................... 6, 7

*Simons Brick Co. v. Hetzel*, 236 P. 357, 360 (Cal. Ct. App. 2d Dist. 1925) ................................ 6, 7

**Federal Statutes**

11 U.S.C. § 1129(b)(2)(A) ............................................................................. 12

11 U.S.C. § 363(f) .................................................................................... 7

11 U.S.C. § 363(f)(2) ......................................................................... 3, 7, 8, 9

11 U.S.C. § 363(f)(4) ........................................................................... passim

11 U.S.C. § 363(f)(5) ..................................................................... 3, 7, 11, 12

**California Constitutional Provisions and Statutes**

Cal. Civ. Code § 2924k ................................................................................ 12

Cal. Civ. Code § 8450(a) ........................................................................ passim

Cal. Const. Art. XIV, § 3 ............................................................................. 5

**Rules**

Fed. R. Bankr. P. 7001 ................................................................................ 9

**Other Authorities**

3 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 363.06[3], 363-51 (16th ed. 2010) ................................................................................................ 7

*Jack Collier East Co. v. E.C. Barton & Co.*, 228 Ark. 300, 307 S.W.2d 863,865-66 (1957) ......... 6

Miller & Starr, *California Real Estate* 4th ed., §§ 32:6, 10:130 (2021) ..................................... 5, 6

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

1    **TO THE HONORABLE DEBORAH SALTZMAN, UNITED STATES**

2    **BANKRUPTCY JUDGE:**

3        J & E Texture, Inc. ("J&E"), the holder of a senior priority pre-petition mechanics' lien

4    against the improvement and real property located at 944 Airole Way, Los Angeles, CA 90077 (the

5    "Property" or "The One") submits this *Objection* (the "Objection") to the *Motion for an Order: (1)*

6    *Approving the Sale of the Debtor's Real Property Free and Clear of All Liens, Claims,*

7    *Encumbrances, and Interests, with the Exception of Enumerated Exclusions; (2) Finding that the*

8    *Buyer is a Good Faith Purchaser; (3) Authorizing and Approving the Payment of Certain Claims*

9    *from Sale Proceeds; (4) Waiving the Fourteen-Day Stay Period Set Forth in Bankruptcy Rule*

10   *6004(h); and (5) Providing Related Relief* [Dkt. No. 142] (the "Motion").

11   **I.    INTRODUCTION**

12       "The One," a Bel-Air mansion, sits on 4-acres of land and boasts of, among other luxuries,

13   21 bedrooms, 42 full and 7 half bathrooms, a 30-car garage, five swimming pools, a two-story

14   waterfall, two restaurant-grade kitchens, a movie theater, and a four-lane bowling alley. (Dkt. No.

15   142, Declaration of Lawrence R. Perkins).  There is no question that construction of "The One"

16   was a massive undertaking that required the skills and hard work of numerous of trades, suppliers,

17   contractors, and materialmen, like J&E.  It is, however, these very trades, suppliers, contractors,

18   and materialmen that built "The One" that the Debtor ignores in the Motion.  For responding party,

19   J&E, it installed over 6,000 sheets of drywall, the equivalent of drywalling a hotel property, and

20   was not paid for its work or materials.  On June 30, 2020, J&E recorded its verified Claim of Lien,

21   Instrument No. 20200712043 (the "Mechanics' Lien"), in the Los Angeles County Recorder's

22   Office (the "Recorder's Office") against "The One."  (Declaration of Francisco Javier Gonzalez

23   ("Gonzalez Decl."), ¶ 10, Ex. C).  The J&E Mechanics' Lien, as explained below, is a priority,

24   secured claim pursuant to Cal. Civ. Code § 8450(a).

25       Construction of "The One" began as early as March 2, 2014.  (Declaration of Reece

26   Hamilton ("Hamilton Decl."), ¶ 5).  By May/June 2016, the project site was a hub of activity with

27   all sorts of trades and contractors working to bring Nile Niami's dream to life, by demolishing the

28   pre-existing structure on the property, site grading, laying foundation, putting-up framing, and

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

installing a roof. (Gonzalez Decl., ¶ 6). At this time, the Debtor and Mr. Niami began meeting with J&E to arrange for the purchase and installation of exterior and interior drywall for the project. (*Id.*, ¶ 5). In May/June 2016, J&E went to the project site and walked the Property to measure for what ultimately resulted in over 6,000 sheets of drywall being hung, an amount akin to "doing a hotel." (*Id.*, ¶ 6).

After negotiating a price, on July 1, 2016, the Debtor and J&E entered into a contract for $925,000, plus change orders, for J&E to install the exterior and interior drywall for "The One." (*Id.*, ¶ 7, Ex. A). J&E joined the fervor of activity at the project site and started work on July 7, 2016. (*Id.*, ¶ 8, Ex. B). Over the next several years, J&E performed under the massive contract and hung over 6,000 sheets of drywall. (*Id.*, ¶ 9). The Debtor, however, failed to pay several of J&E's invoices. (*Id.*, ¶ 10). As a result, on June 30, 2020, J&E was forced to protect its rights. It timely recorded its Mechanics' Lien against "The One", which holds a priority, secured position pursuant to Cal. Civ. Code § 8450(a). (*Id.*, ¶ 10, Ex. C; *see also* J&E's POC No. 13). When the Debtor failed to satisfy the Mechanics' Lien, on September 4, 2020, J&E timely initiated case number 20SMCV01229 (the "Foreclosure Suit"), in the Los Angeles County, California Superior Court (the "State Court") to foreclose its Mechanics' Lien. (*Id.*, ¶ 11). J&E was preparing to obtain a default judgment in the Foreclosure Suit against the Debtor when the Debtor filed the instant bankruptcy case. (*Id.*, ¶ 12).

To date, J&E, and at least 7 other trades and contractors who were similarly forced to protect their rights, have recorded verified mechanics' liens in the Recorders' Office. None of the mechanics' liens, including the J&E Mechanics' Lien, however, are satisfied. All of the mechanics liens enjoy priority secured status pursuant to Cal. Civ. Code § 8450(a). Yet, in the Motion, the Debtor ignores the hardworking people who built "The One" and their mechanics' lien rights and seeks approval of the sale of "The One" for $126 million (the "Sale Price") free and clear of all liens and interests, including these senior priority mechanics' liens. The Debtor also seeks an order that steamrolls past J&E and the other mechanics' lien claimants and allows for the Sale proceeds to be distributed to junior priority, pre-petition creditors, namely, Hankey Capital, LLC ("Hankey").

Hankey's pre-petition security interest, however, was not recorded until November 6, 2018. (*See* Motion, Ex. 1, Title Report). Under California law, mechanics' liens have "off record" priority such that mechanics' liens relate back to the date that work (by any party) commenced at the project. *See* Cal. Civ. Code § 8450(a). The Debtor knows this and even acknowledges that this is the law in its Motion. (*See* Motion, p. 31). The Debtor, however, in a flawed interpretation of §§ 363(f)(2), (4), and (5), argues that it can skip the senior priorities of the mechanics' lien claimants to pay Hankey. The Debtor's position is wholly without legal or factual merit.

Perhaps most alarming is that the Motion and the Notice of Motion (Dkt. 150) ("Notice") hide-the-ball and do not make clear to mechanics' lien claimants that their rights are about to be eviscerated. There is no dispute that the Debtor's primary asset is "The One", and the sale proceeds are needed to pay creditors. As the Debtor has acknowledged to the Court, the Sale Price is not sufficient to satisfy all the secured creditors. Thus, if the Motion is approved, as proposed, the practical effect is that the Court will be determining priority rights of secured creditors without proper notice or due process, *i.e.*, an adversary proceeding, and in a manner that violates the priority scheme. *See, e.g.*, *In re Lobolee*, 241 B.R. 655 (9th Cir. BAP 1999). As such, the Motion cannot be approved as currently presented to the Court.

## II.    STATEMENT OF THE FACTS

1.      Construction of "The One" began as early as March 2, 2014 when United Excavation demolished the existing house and began site grading. (Hamilton Decl., ¶ 5).

2.      Indeed, on April 23, 2014, the City of Los Angeles conducted the first inspection for grading. (*Id.*, ¶ 6).

3.      By May/June 2016, the project site was a hub of activity with all sorts of trades and contractors working to bring Mr. Niami's dream to life, by demolishing the pre-existing structure on the Property, site grading, laying foundation, putting-up framing, and installing the roof. (Gonzalez Decl., ¶ 6, Ex. B).

4.      Numerous trades, suppliers, contractors, including electrical and plumbing, were at the project site working to bring Nile Niami's dream to life. (*Id.*, ¶ 6).

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

5. Around this time, the Debtor and Mr. Niami began meeting with J&E, a drywaller, to arrange for the purchase and installation of exterior and interior drywall for the project. (*Id.*, ¶¶ 4, 5).

6. In May/June 2016, J&E went to the project site and walked the Property to measure for the drywall and provide a pricing proposal to the Debtor. (*Id.*, ¶ 6).

7. After negotiating a price, on July 1, 2016, the Debtor and J&E entered into a contract for $925,000, plus change orders, for J&E to install the exterior and interior drywall for "The One." (*Id.*, ¶ 7, Ex. A).

8. J&E joined the fervor of activity at the project site and started work on July 7, 2016. (*Id.*, ¶ 8, Ex. B).

9. Over the next several years, J&E performed under its contract and hung over 6,000 sheets of drywall, an amount akin to "doing a hotel." (*Id.*, ¶¶ 6, 9).

10. J&E was not the only contractor working on the project during this time. (*Id.*, ¶ 9). There was always someone working at the Property, and sometimes 50-60 different people representing different trades at the Property. (*Id.*).

11. The Debtor, however, failed to pay several of J&E's invoices. (*Id.*, ¶ 10). As a result, on June 30, 2020, J&E protected its rights and timely filed its Mechanics' Lien against "The One" in the Recorder's Office. (*Id.*, Ex. C; *see also* J&E's POC No. 13).

12. When the Debtor failed to satisfy J&E's Mechanics' Lien, J&E timely initiated the Foreclosure Suit on September 4, 2020 in the State Court. (*Id.*, ¶ 11).

13. J&E was preparing to obtain a default judgment against the Debtor in the Foreclosure Suit when the Debtor filed its instant bankruptcy case. (*Id.*, ¶ 12).

14. To date, J&E remains unpaid for its drywall work at "The One." (*Id.*, ¶ 14).

15. Its secured claim when it filed its proof of claim no. 13 on January 7, 2022 totaled $284,086.99, inclusive of interest. Interest, however, continues to accrue at a rate of $58.67/day. (*See* J&E's POC No. 13).

16. Hankey recorded its Construction Deed of Trust (the "Hankey DOT") on November 6, 2018. (*See* Motion, Ex. 1, Title Report.)

17.  That same day, Hankey and Inferno Investment Inc. ("Inferno") recorded a subordination agreement whereby Inferno agreed to be subordinated to the Hankey debt. (*See id.*).

18.  Inferno had also previously entered into a Memorandum of Agreement dated January 1, 2016 with the Debtor whereby Inferno agreed that "[a]ll proceeds receive from a sale, condemnation, financing or refinancing of the [Property] shall be distributed in the following manner: First, to repay the loan(s) obtained from a bank or third parties (excluding Crestlloyd and Inferno) and all other unpaid costs of construction of the [Property]." (*See* Motion, Ex. 6).

19.  On March 7th and March 8th, 2022, J&E, by counsel, sent letters (the "J&E Letters") to the Debtor asking the Debtor to engage in discussions with J&E so that J&E could be informed of the Debtor's intentions in light of the scant, Sale Price derived from the auction sale. (Gonzalez Decl., ¶¶ 15, 16, Exs. D and E).

## III.  ARGUMENT

### A.  Mechanics' Lien Priority Under California State Law.

A California constitutional right, a mechanic's lien is entitled to "off-record priority", such that the priority of the mechanic's lien relates back to the commencement of work and not the date of recordation of the lien. *See* Cal. Const. Art. XIV, § 3; Cal. Civ. Code § 8450(a); *Sax v. Clark*, 180 Cal. 287, 288-91, 180 P. 821 (1919); *Greenblatt v. Utley*, 240 F.2d 243, 246 (9th Cir. 1956) ("[t]he lien dates from the time of the commencement of the work"); Miller & Starr, *California Real Estate* 4th ed., §§ 32:6, 10:130 (2021) ("Miller & Starr"). Specifically, Cal. Civ. Code § 8450(a) provides that a mechanic's lien –

> … has priority over a lien, mortgage, deed of trust, or other encumbrance on the work of improvement or the real property on which the work of improvement is situated, that (1) attaches ***after*** commencement of the work of improvement or (2) was unrecorded at the commencement of the work of improvement and of which the claimant had no notice.

Cal. Civ. Code § 8450(a) (emphasis added).

Further, the lien attaches and relates back to when any work is commenced on the project, not when the lien claimant itself actually performed its work. *See Simons Brick Co. v. Hetzel*, 236 P. 357, 360 (Cal. Ct. App. 2d Dist. 1925); *Schrader Iron Works, Inc. v. Lee*, 26 Cal.App.3d 621,

631-32 (3d Dist. 1972); *Parson Brinckerhoff Quade & Douglas, Inc. v. Kern Cty. Emps.' Ret. Ass'n*, 5 Cal.App.4th 1264, 1268-69 (5th Dist. 1992); *In re KDR Bldg. Specialties, Inc.*, 76 B.R. 778 (Bankr. S.D. Cal. 1987); *Miller & Starr*, §§ 32:6, 10:130 ("[t]he priority of a mechanic's lien relates back to the date work commenced for *all* claimants, no matter when the claimant's work actually began"). Consequently, ***all*** mechanic's liens relate back to the date of commencement of work at a project, regardless of when any individual claimant may have commenced work at the project. Notably, the Debtor does not dispute the well-established law regarding a mechanic's lien's priority over subsequent deeds of trust, liens, and other encumbrances. (*See* Motion, p. 31).

Work started on "The One" as early as March 2, 2014. (Hamilton Decl., ¶ 5). When J&E entered into its contract with the Debtor on July 1, 2016 and started work on July 7, 2016, the project site was already a hub of activity. (Gonzalez Decl., ¶¶ 6-8, Exs. A, B). Indeed, when J&E started its work on "The One", the previous structure had been demolished, site grading had been completed, the foundation was already laid, the framing was up, and the roof had been installed. (*Id.*, ¶¶ 6-8, Ex. B; *see also* Hamilton Decl., ¶¶ 5,6). In contrast, the Hankey DOT was not recorded until November 6, 2018 – nearly 4 ½ years ***after*** work started on "The One" and 2 ½ years ***after*** J&E commenced work on "The One". (*See* Motion, Ex. 1, Title Report, Item No. 13).[1] As a result, although J&E's Mechanics' Lien was not filed until June 30, 2020 (*id.*, ¶ 10, Ex. C), the priority of J&E's Mechanics' Lien – as well as the priority of all other mechanics' liens – relates back to at least March 2, 2014 and is senior in priority to the Hankey DOT. *See* Cal. Civ. Code § 8450(a); *Sax*, 180 Cal. at 288-91; *Greenblatt*, 240 F.2d at 246; *Simons Brick Co.*, 236 P. at 360; *Schrader Iron Works, Inc.*, 26 Cal.App.3d at 631-32; *Parson*, 5 Cal.App.4th at 1268-69; *Miller & Starr*, §§ 32:6, 10:130.

---

[1] In pre-Motion correspondence, the Debtor side-stepped J&E's inquiries as to the payment of its mechanics' lien claim by asking about Inferno's priority interests. Inferno, however, agreed not to be paid until "all other unpaid costs of construction of the Residence" are paid. (*See* Motion, Ex. 6). Inferno also separately agreed to be subordinated to Hankey. (*See* Motion, Ex. 1, Title Report, Item No. 7). Thus, Inferno's junior and subordinated interests are a red herring. *See Miller & Starr*, § 10:202, n. 9 (citing *Jack Collier East Co. v. E.C. Barton & Co.*, 228 Ark. 300, 307 S.W.2d 863,865-66 (1957)); *see also Santa Cruz Lumber Co. v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 160 Cal.App.3d 858 (1st Dist. 1984) (unpublished) (holding mechanic's lien claimant who had priority over lienholder that agreed to be subordinated to a lienholder that was junior to the mechanic's lien claimant).

**B.    The Debtor Cannot Satisfy Section 363 for Approval of the Motion.**

A chapter 11 debtor may sell property "free and clear of any interest" only if the debtor satisfies one or more of the five requirements set forth under § 363(f). *See* 11 U.S.C. § 363(f)(1)-(5). Here, the Debtor only seeks approval of the Sale pursuant to §§ 363(f)(2) (consent), (4) (bona fide dispute), and (5) (money satisfaction). The Debtor, however, cannot satisfy any part of section 363(f), and, therefore, the Motion, as presented, cannot be approved.

**(1)    Section 363(f)(2) Requires Affirmative, Informed Consent.**

Under § 363(f)(2), unless a different subsection is satisfied, a sale can only be approved "free and clear" of an interest with the impacted entity's consent. 11 U.S.C. § 363(f)(2); *In re East Airport Dev., LLC*, 443 B.R. 823, 831 (9th Cir. BAP 2011); *In re Arch Hosp., Inc.*, 530 B.R. 588, 591 (Bankr. W.D.N.Y. 2015). As evidenced by this Objection, J&E does not consent to the Sale of "The One" free and clear of its Mechanics' Lien.

Beyond the issue of J&E's specific consent, the Debtor suggests that other interested parties, in particular, the other mechanic's lien claimants "may also consent … or not oppose the Motion." (*See* Motion, p. 30). Silence or the failure to oppose the Motion, however, does not constitute consent under § 363(f)(2). To constitute "consent", § 363(f)(2) requires an unequivocal manifestation of a lienholder's affirmation to the sale free and clear. *In re East Airport Dev., LLC*, 443 B.R. at 831 (citing *In re Roberts*, 249 B.R. 152, 155 (Bankr. W.D.Mich. 2000)). In that vein, consent and a failure to object or oppose a motion "are not synonymous." *In re Arch Hosp., Inc.*, 530 B.R. at 591 (citing *In re Roberts*, 249 B.R. at 155) (holding that failing to object is not the same as consent); *see also In re DeCelis*, 349 B.R. 465, 467-69 (Bankr. E.D.Va. 2006) (holding that non-opposition is not consent).

Affirmative consent, and not mere silence or non-opposition, is necessary to protect the due process rights of the affected lienholders and to ensure that they are consenting "to a sale free of liens or interest, [and] not merely … to the sale of assets." *In re East Airport Dev., LLC*, 443 B.R. at 831 (quoting 3 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 363.06[3], 363-51 (16th ed. 2010)); *see also In re Lobolee*, 241 B.R. 655 (9th Cir. BAP 1999).

1    For example, in *Lobolee*, the Ninth Circuit Bankruptcy Appellate Panel ("BAP") addressed

2    the need to protect lienholders' due process rights in the context of a § 363 sale. 241 B.R. at 661.

3    The trustee sought to sell real property for less than the total amount of the liens against the

4    property. *Id.* at 657. The sale price exceeded the lien of a secured lender appearing on the title

5    report as holding a first priority position. *Id.* at 658. The lien priorities, however, were disputed

6    by certain of the lienholders. *Id.* Instead of filing an adversary proceeding under Fed. R. Bankr.

7    P. 7001 to determine the lien priorities, the trustee pushed through a sale motion that effectively

8    determined one of the lien claimant's priorities so that they could receive the proceeds from the

9    sale. *Id.* at 658-59.

10    The Ninth Circuit BAP reversed the lower court's rulings and explained that "notice is to

11    be taken particularly seriously when liens are being affected in bankruptcy … [h]olders of liens

12    that may be adversely affected are entitled ***to unambiguous notice and an adequate opportunity***

13    ***to reflect and to respond.***" *Id.* at 662 (emphasis added). Unambiguous notice "is required in order

14    to satisfy the due process clause of the Fifth Amendment," and such notice "must be reasonably

15    calculated, under all the circumstances, to apprise interested parties of the pendency of the action

16    and to afford them an opportunity to present their objection." *Id.* at 660-61. The Ninth Circuit

17    BAP further noted that "it was not irrational for [the lienholder] to assume that the priorities were

18    what they were under nonbankruptcy law and would continue to be honored" through the course

19    of the sale, particularly when the sale price exceeded the lienholder's claim. *Id.* at 661.

20    The Ninth Circuit BAP's due process reasoning is echoed in the Bankruptcy Court's

21    decision in *Arch Hospitality* holding that non-opposition is not consent under § 363(f)(2). In *Arch*

22    *Hospitality*, the Bankruptcy Court explained that the need for affirmative consent is imperative

23    when considering the sale of a property free and clear of a perfected interest –

24    Both creditors took the necessary steps to perfect their liens. Having perfected their
25    liens, both could understandably expect that their interest would survive any
     subsequent transfer of title. Under these circumstances, the more reasonable
26    inference is that silence would here imply the absence of consent.

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
- 8 -

*In re Arch Hosp., Inc.*, 530 B.R. at 591. In other words, to ensure that a party is consenting to having their lien rights determined, and not just to the sale of an asset, affirmative consent, and not mere silence or non-opposition, is needed. *Id.*; *see also In re East Airport Dev., LLC*, 443 B.R. at 831 (citing *In re Roberts*, 249 B.R. at 155); *In re DeCelis*, 349 B.R. at 467-69.

Here, the Court is presented with facts similar to *Lobolee* and *Arch Hospitality*. The Notice and Motion presented by the Debtor seeking approval of the Sale are, at best, ambiguous, if not misleading, as to how approval will impact mechanics' lien claimants' rights. The Notice lists the Sale Price, which exceeds the mechanics' liens filed against "The One" but fails to address the impact of disbursing the sale proceeds on mechanics' lien claimants. Specifically, the Notice, and the Motion, fail to explain that the Debtor essentially seeks an order fixing lien priorities in a manner inconsistent with California law in that it seeks to disburse the Sale proceeds to Hankey's junior, pre-petition security interest without paying the mechanics' lien claimants.

As in *Lobolee*, such ambiguous and misleading information in the Notice is not sufficient "notice" to effectuate a result that effectively strip mechanic's lien claimants of their rights without proper due process under the Fifth Amendment or the Bankruptcy Rules, *i.e.*, an adversary proceeding pursuant to Fed. R. Bankr. P. 7001. Without effective "notice," there cannot be informed consent, particularly informed consent in the form of silence. As such, the Debtor fails to satisfy § 363(f)(2).

**(2)    Ignoring the Superior Priority of Mechanics' Liens Does Not Equate to a Bona Fide Dispute Under Section 363(f)(4).**

The Debtor asks the Court to approve the sale of "The One" free and clear of all liens, including J&E's Mechanics' Lien under § 363(f)(4), asserting that J&E's Mechanics' Lien is in "bona fide dispute." The Debtor's request is nonsensical. The Debtor, in one breath, acknowledges that under California law, mechanics' liens have superior priority to subsequently recorded deeds of trust because mechanics' liens relate back to the first date work commenced on the project. (*See* Motion, p. 31). In the next breath, the Debtor conclusively says that because J&E so bold as to write a letter and inquire as to how proceeds from the auction sale would be distributed creates a "bona fide dispute." (*Id.*). This is not the standard for determining whether

1   a "bona fide dispute" exists under § 363(f)(4). If it was, then every time any lienholder wrote a

2   letter to opposing counsel to inquire into a debtor's plans for handling sale proceeds or otherwise

3   asserted its rights in the context of a § 363 sale, such actions would equate to a "bona fide dispute."

4   Indeed, the J&E Letters themselves merely ask for the Debtor for information and to

5   engage in discussions with J&E so that J&E could be informed of the Debtor's intentions in light

6   of the scant, Sale Price derived from the paltry auction sale. (*See* Gonzalez Decl., ¶¶ 15, 16, Exs.

7   D and E). A request for information to the Debtor does not create a "bona fide dispute" within the

8   meaning of § 363(f)(4). It should be noted that the Debtor never provided a meaningful response

9   and instead replied with glib one-sentence emails, evidencing its cavalier approach and lack of

10  care or diligence in addressing the rights of bona fide priority lienholders.

11  Indeed, under § 363(f)(4), the dispute must concern "the validity of the lien," and "evidence

12  must be provided [by the debtor] to show factual grounds that there is an 'objective basis' for the

13  dispute." *See In re Clark*, 266 B.R. 163, 171-72 (9th Cir. BAP 2001); *In re Kellogg-Taxe*, No.

14  2:12-bk-51208-RN, 2014 WL 1016045, at *6 (Bankr. C.D.Cal. Mar. 17, 2014); *In re Mitchell*, 525

15  B.R. 38, 41 (Bankr. M.D.N.C. 2014); *In re Terrace Chalet Apts., Ltd.*, 159 B.R. 821, 828-29

16  (Bankr. N.D. Ill.1993); *Matter of Stroud Wholesale, Inc.*, 47 B.R. 999, 1002 (Bankr. M.D.N.C.

17  1985). In other words, § 363(f)(4) requires "at a minimum that the [debtor] believe a dispute exists

18  [because otherwise i]t would be nonsensical for a court to allow the [debtor] to sell property

19  pursuant to section 363(f)(4) when the [debtor] believes the secured party's interest to be valid."

20  *In re Terrace Chalet Apts., Ltd.*, 159 B.R. at 828.

21  The Debtor presents no evidence to dispute the validity of J&E's Mechanics' Lien. Rather,

22  the "dispute" is that the Debtor completely ignores the rights of mechanics' lien claimants – the

23  very people responsible for constructing "The One" – in order to pay-off Hankey. This is not a

24  dispute. *See Sec. & Exch. Comm'n v. Capital Cove Bancorp LLC*, No. SACV-15-980-JLS (JCx),

25  2015 WL 9701154, at *5 (C.D. Cal. Oct. 13, 2015) (quoting *In re Taylor*, 198 B.R. 142, 162

26  (Bankr. D.S.C. 1996)) (§ 363(f)(4) "clearly entails some sort of meritorious, existing conflict").

27  The lack of any merit to the Debtor's contention that there is a "bona fide dispute" with

28  J&E is evidenced by the Debtor's own proposal to disburse the proceeds from the Sale. It is well-

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

1  established that if there were a "bona fide dispute", then the appropriate course of action would be

2  for the proceeds of the sale to be escrowed pending resolution of any alleged dispute.  *See In re*

3  *Kellogg-Taxe*, 2014 WL 1016045, at *6 (holding that sale proceeds should be escrowed pending

4  resolution of bona fide dispute); *Capital Cove Bancorp LLC*, 2015 WL 9701154, at *8; *In re Clark*,

5  266 B.R. at 171 ("proceeds of sale are held subject to the disputed interest and then distributed as

6  dictated by the resolution of the dispute").  The Debtor, however, does not propose to escrow the

7  Sale proceeds.  Thus, the Debtor fails to satisfy § 363(f)(4).

8  **(3)    Debtor Cannot Satisfy Section 363(f)(5) Under Controlling Ninth Circuit Case Law.**

9  Under § 363(f)(5), a sale of property may be made free and clear of an interest if the entity

10  holding such interest "could be compelled, in a legal or equitable proceeding, to accept a money

11  satisfaction of such interest."  11 U.S.C. § 363(f)(5); *In re PW, LLC*, 391 B.R. 25, 41-47 (9th BAP

12  2008); *In re Hassen Imports P'ship*, 502 B.R. 851, 858-59 (C.D. Cal. 2013); *In re Smith*, No. BR

13  13-61627, 2014 WL 738784, at *2 (Bankr. D. Or. Feb. 26, 2014).  In *In re PW*, the leading Ninth

14  Circuit case interpreting § 363(f)(5), the Ninth Circuit BAP established three prongs a debtor needs

15  to satisfy to utilize § 363(f)(5): "that (1) a proceeding exists or could be brought, in which (2) the

16  nondebtor could be compelled to accept a money satisfaction of (3) its interest." *Id.* at 41.

17  As to the first prong, the Ninth Circuit explained that it is not simply that some hypothetical

18  proceeding exists by which a hypothetical interest in property may be compelled to accept money

19  to release its lien, rather "[t]he question is [] whether there is an available type of legal or equitable

20  proceeding in which a court could compel [that specific entity] to release its lien for payment of an

21  amount that was less than full value of [that entity's] claim." *In re PW, LLC*, 391 B.R. at 45-46;

22  *see also In re Smith*, 2014 WL 738784, at *2.

23  Here, in presenting this prong to the Court in the Motion, the Debtor asserts without

24  addressing the priority of mechanics' liens, that such a hypothetical proceeding exists. (*See Motion*,

25  pp. 31-33).  Specifically, the Debtor argues that two such proceedings exist: (a) a foreclosure under

26  state law; and (b) cramdown under 11 U.S.C. § 1129(b)(2)(A). (*See id.*).  The Debtor's argument

27  is flawed in several respects.

28

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 11 -

1    First, the Debtor's argument ignores the question as to whether there exists a hypothetical

2    proceeding in which a senior priority mechanics' lien claimant can be compelled to accept less than

3    the full value of its senior priority mechanic's lien. *See, e.g.*, *In re PW, LLC*, 391 B.R. at 45-46; *In*

4    *re Smith*, 2014 WL 738784, at *2. No such proceeding exists under state law. Either the senior

5    mechanics' lien claimant is paid in full, or its lien survives the foreclosure. *See MTC Fin., Inc. v.*

6    *Nationstar Mortg., LLC*, 19 Cal.App.5th 811, 8117 (1st Dist. 2018) (holding that when a junior

7    lienholder forecloses on property the senior lienholder is not entitled to surplus funds because under

8    Cal. Civ. Code § 2924k, the property is purchased subject to the senior lien); *see In re Hassen*

9    *Imports P'ship*, 502 B.R. at 861-62; *In re Smith*, 2014 WL 738784, at *2.

10    Second, the Debtor ignores the holding of *PW*, which expressly rejects the Debtor's second

11    argument – that cramdown under § 1129(b)(2)(A) qualifies as a proceeding by which an entity can

12    be compelled to accept money for less than the full value of their lien. *In re PW, LLC*, 391 B.R. at

13    46-47. The Ninth Circuit BAP explained that –

14    > [U]se of the cramdown mechanism to allow a sale free and clear under § 363(f)(5)
> uses circular reasoning – it sanctions the effect of cramdown without requiring any
15    > of § 1129(b)'s substantive and procedural protections … [i]f the proceeding
> authorizing the satisfaction was found elsewhere in the Bankruptcy Code, then an
16    > estate would not need § 363(f)(5) at all; it could simply use the other Code
> provision.
17
> In addition, this reasoning undercuts the required showing of a separate proceeding.
18    > For example, it is correct that § 1129(b)(2) permits a cramdown of a lien to the
> value of the collateral, but it does so only in the context of plan confirmation. To
19    > isolate and separate the cramdown from the checks and balances inherent in the
> plan process undermines the entire confirmation process, and courts have been
20    > leery of using § 363(b) to gut plan confirmation or render it superfluous.

21    *Id.* at 46. Thus, the Debtor cannot rely on the existence of cramdown under § 1129(b)(2)(A) to
22
23    satisfy § 363(f)(5) in order to sell "The One" free and clear of mechanics' lien claimants' interests.

24    **IV.    CONCLUSION**

25    WHEREFORE, J & E Texture, Inc. hereby requests that the Court (i) either: (a) deny the

26    Motion's request that the sale of the Property be free and clear of J&E's Mechanics' Lien; (b)

27    require that J&E's Mechanics' Lien be paid from the proceeds of the sale of the Property prior to

28    Hankey Capital, LLC's junior, pre-petition secured claim; or (c) require the Debtor to escrow the

1    sale proceeds until such time as the secured creditor priorities are determined; and (ii) grant such

2    further relief the Court deems just and proper.

3    Dated: March 15, 2022                          Respectfully submitted,

4                                                   */s/ Marguerite Lee DeVoll*
                                                    Jennifer L. Kneeland (admitted *pro hac vice*)
5                                                   Marguerite Lee DeVoll (admitted *pro hac vice*)
                                                    Watt, Tieder, Hoffar & Fitzgerald, LLP
6                                                   1765 Greensboro Station Place, Suite 1000
                                                    McLean, Virginia, 22102
7                                                   Telephone: 703-749-1000
                                                    Fax: 703-893-8029
8                                                   jkneeland@watttieder.com
                                                    mdevoll@watttieder.com
9
                                                    -and-
10
                                                    Jane Kearl, Bar No. 156560
11                                                  Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
                                                    4 Park Plaza, Suite 1000
12                                                  Irvine, CA  92614
                                                    Telephone: 949-852-6700
13                                                  jkearl@watttieder.com

14                                                  Attorneys for Creditor
                                                    J & E Texture, Inc.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 13 -

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 1765 Greensboro Station Place, Suite 1000, McLean, Virginia 22102. A true and correct copy of the foregoing document entitled: *Objection of J &E Texture, Inc. to Debtor's the Motion for an Order: (1) Approving the Sale of the Debtor's Real Property Free and Clear of All Liens, Claims, Encumbrances, and Interests, with the Exception of Enumerated Exclusions; (2) Finding that the Buyer is a Good Faith Purchaser; (3) Authorizing and Approving the Payment of Certain Claims from Sale Proceeds; (4) Waiving the Fourteen-Day Stay Period Set Forth in Bankruptcy Rule 6004(h); and (5) Providing Related Relief* will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On March 15, 2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Kyra E Andrassy    kandrassy@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- Todd M Arnold    tma@lnbyg.com
- Jerrold L Bregman    jbregman@bg.law, ecf@bg.law
- Danielle R Gabai    dgabai@danninggill.com, dgabai@ecf.courtdrive.com
- Thomas M Geher    tmg@jmbm.com, bt@jmbm.com;fc3@jmbm.com;tmg@ecf.inforuptcy.com
- David B Golubchik    dbg@lnbyg.com, stephanie@lnbyb.com
- James Andrew Hinds    jhinds@hindslawgroup.com;mduran@hindslawgroup.com, mduran@hindslawgroup.com
- Robert B Kaplan    rbk@jmbm.com
- Michael S Kogan    mkogan@koganlawfirm.com
- Noreen A Madoyan    Noreen.Madoyan@usdoj.gov
- Ryan D O'Dea    rodea@shulmanbastian.com, lgauthier@shulmanbastian.com
- Sharon Oh-Kubisch    sokubisch@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- Hamid R Rafatjoo    hrafatjoo@raineslaw.com, bclark@raineslaw.com
- Ronald N Richards    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- Victor A Sahn    vsahn@sulmeyerlaw.com, pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;cblair@ecf.inforuptcy.com
- William Schumacher    wschumac@milbank.com, autodocketecf@milbank.com
- David Seror    dseror@bg.law, ecf@bg.law
- Zev Shechtman    zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
- Mark Shinderman    mshinderman@milbank.com, dmuhrez@milbank.com;dlbatie@milbank.com
- Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Genevieve G Weiner    gweiner@sidley.com, laefilingnotice@sidley.com;genevieve-weiner-0813@ecf.pacerpro.com
- Jessica Wellington    jwellington@bg.law, ecf@bg.law

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:** On March 15, 2022, I served the following persons and/or

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

1

entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

None.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on March 15, 2022, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

None.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 15, 2022 | Marguerite Lee DeVoll | /s/ Marguerite Lee DeVoll |
|---|---|---|
| Date | Printed Name | Signature |

1  Jennifer L. Kneeland (admitted *pro hac vice*)
   Marguerite Lee DeVoll (admitted *pro hac vice*)
2  Jane Kearl, Bar No. 156560
   Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
3  4 Park Plaza, Suite 1000
   Irvine, CA 92614
4  Telephone: 949-852-6700
   jkneeland@watttieder.com
5  mdevoll@watttieder.com
   jkearl@watttieder.com
6
   Attorneys for Creditor
7  J & E Texture, Inc.

8              UNITED STATES BANKRUPTCY COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10                  LOS ANGELES DIVISION

11  In re:                              Case No.: 2:21-bk-18205-DS
                                        Chapter 11 Case
12  CRESTLLOYD, LLC,
                                        DECLARATION OF FRANCISCO JAVIER
13              Debtor and Debtor-in-   GONZALEZ IN SUPPORT OF J & E
                Possession.            TEXTURE, INC.'S OBJECTION TO
14                                      MOTION FOR ORDER: (1) APPROVING
                                        THE SALE OF THE DEBTOR'S REAL
15                                      PROEPRTY FREE AND CLEAR OF ALL
                                        LIENS, CLAIMS, ENCUMBRANCES, AND
16                                      INTERESTS, WITH THE EXCEPTION OF
                                        ENUMERATED         EXCLUSIONS;    (2)
17                                      FINDING THAT THE BUYER IS A GOOD
                                        FAITH PURCHASER; (3) AUTHORIZING
18                                      AND APPROVING THE PAYMENT OF
                                        CERTAIM    CLAIMS    FROM    SALE
19                                      PROCEEDS;     (4)    WAIVING    THE
                                        FOURTEEN-DAY STAY PERIOD SET
20                                      FORTH IN BANKRUPTCY RULE 6004(h);
                                        AND (5) PROVIDING RELATED RELIEF
21
                                        Date:    March 18, 2022
22                                      Time:    11:00 A.M. PST
                                        Place:   Courtroom 1639
23                                               255 E. Temple St.
24                                               Los Angeles, CA 90012
                                        **VIA ZOOMGOV ONLY**
25

26      I, FRANCISCO JAVIER GONZALEZ, declare as follows:

27      1.      I am over 18 years of age.  I have personal knowledge of the facts set forth below

28  and, if called to testify, would and could competently testify thereto.

1  2.  I am the President of J & E Texture, Inc. ("J&E").

2  3.  I submit this declaration in support of J&E's *Objection* (the "Objection") to the

3 *Motion for an Order: (1) Approving the Sale of the Debtor's Real Property Free and Clear of All*

4 *Liens, Claims, Encumbrances, and Interests, with the Exception of Enumerated Exclusions; (2)*

5 *Finding that the Buyer is a Good Faith Purchaser; (3) Authorizing and Approving the Payment of*

6 *Certain Claims from Sale Proceeds; (4) Waiving the Fourteen-Day Stay Period Set Forth in*

7 *Bankruptcy Rule 6004(h); and (5) Providing Related Relief* [Dkt. No. 142] (the "Motion") filed by

8 Crestlloyd, LLC (the "Debtor").

9  4.  J&E is a drywall supplier and installation company.

10  5.  In May/June 2016, the Debtor and Nile Niami began meeting with me to arrange for

11 the purchase and installation of exterior and interior drywall for the residential home being

12 constructed on the real property located at 944 Airole Way, Los Angeles, CA 90077 (the "Property"

13 or "The One").

14  6.  In May/June 2016, I went to the project site and walked the Property to measure for

15 what ultimately resulted in over 6,000 sheets of drywall being hung, an amount akin to doing a

16 hotel. When I visited the project site and walked the Property, I observed that the project site was

17 a hub of activity with numerous trades, suppliers, contractors, including electrical and plumbing

18 working to bring Nile Niami's dream to life. I observed that the foundation had been laid, framing

19 had been put-up, and the roof had been installed.

20  7.  After negotiating a price, on July 1, 2016, the Debtor and J&E entered into a contract

21 (the "Contract") for $925,000, plus change orders, for J&E to install the exterior and interior

22 drywall for "The One." A true and correct copy of the Contract is attached hereto and incorporated

23 herein as **Exhibit "A"**.

24  8.  On July 7, 2016, J&E joined the fervor of activity at the project site and started work.

25 Attached hereto and incorporated herein as **Exhibit "B"** are two pictures of The One's construction

26 status that I took on July 7, 2016, the day J&E started work on The One.

27  9.  Over the next several years, J&E performed under the Contract and hung over 6,000

28 sheets of drywall. During this time, J&E was not the only contractor working on the project. There

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 2 -

1    was always someone working at the Property, and sometimes 50-60 different people representing

2    different trades at the Property.

3        10.    Despite performing under the Contract, the Debtor, however, failed to pay several

4    of J&E's invoices.  As a result, on June 30, 2020, J&E protected its rights and timely recorded its

5    verified Claim of Lien, Instrument No. 20200712043 (the "Mechanics' Lien"), in the Los Angeles

6    County Recorder's Office (the "Recorder's Office") against "The One.".  A true and correct copy

7    of J&E's Mechanics' Lien is attached hereto and incorporated herein as **Exhibit "C"**.

8        11.    When the Debtor failed to satisfy the Mechanics' Lien, on September 4, 2020, J&E

9    timely initiated case number 20SMCV01229 (the "Foreclosure Suit"), in the Los Angeles County,

10    California Superior Court (the "State Court") to foreclose its Mechanics' Lien.

11        12.    J&E was preparing to obtain a default judgment against the Debtor in the

12    Foreclosure Suit when the Debtor filed its instant bankruptcy case.

13        13.    On January 7, 2022, J&E filed its proof of claim no. 13 in the Debtor's bankruptcy

14    case asserting among other things, a secured claim totaling $284,086.99, inclusive of interest.

15    Interest, however, continues to accrue at a rate of $58.67/day.  J&E also asserted an unsecured

16    claim under its Contract for attorneys' fees.

17        14.    To date, J&E remains unpaid for its drywall work at "The One."

18        15.    Attached hereto and incorporated herein as **Exhibit "D"** is a true and correct copy

19    of a letter sent on March 7, 2022 by J&E's counsel to counsel for the Debtor.

20        16.    Attached hereto and incorporated herein as **Exhibit "E"** is a true and correct copy

21    of a letter sent on March 8, 2022 by J&E's counsel to counsel for the Debtor.

22        I declare under penalty of perjury that the foregoing is true and correct to the best of my

23    knowledge.

24

25        Dated: March 14, 2022

                                            Francisco Javier Gonzalez

26

27

28

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 3 -

# EXHIBIT A

## CONSTRUCTION AGREEMENT

THIS CONSTRUCTION AGREEMENT, or "Agreement", entered into <u>July</u>
<u>1st</u>, 201<u>6</u>, between <u>Crestlloyd, LLC</u> ("Owner")
and <u>J & E Texture Inc.</u> ("Contractor")
for the Work described in the Drawings and Specifications detailed hereinafter.

### WITNESSETH:

ARTICLE 1, DEFINITIONS:

Contractor: J & E Texture Inc.

Contractor's License Number: 1004691

Owner: Crestlloyd, LLC

Project: 944 Airole Way Los Angeles, CA 90077

Commencement Date: 07/05/2016

Substantial Completion Date:

Contract Sum: $925,000.00

Drawings & Specifications Architect: Approved set

Drawings & Specifications Date:

Pre-Agreed Schedule Failure Damages/Day:

Owner's Representative: Tony Camarena

Contract Documents:    The Contract Documents shall consist of this Agreement
and the Drawings and Specifications.

ARTICLE 2, THE WORK:

Contractor shall perform the Work as generally described in Exhibit "A" hereto in a
good and workmanlike manner and furnish all labor, materials and equipment as required
to complete its portion of the work indicated in the Contract Documents. The Work may

Y:\N\AMI\Misc\ConstructionAgt.wpd

be changed at any time only by written order of the Owner and Contractor shall comply with all such changes without delay. Any change which results in an adjustment to the Contract Sum shall be accompanied by a detailed itemization of the actual material costs, actual labor costs, reasonable labor benefits, reasonable overhead and reasonable profit. Deviations from the requirements of the Contract Documents indicated on shop drawings, product data, samples or other submittals shall not be valid, even if approved, unless such deviations are clearly highlighted as such therein.

Contractor shall comply in every respect with all laws, codes, ordinances and regulations of any organization having legal jurisdiction over the Work.

If the quality of any existing work will not allow Contractor to complete its Work in a manner that will result in a finished product that complies in all respects with the Contract Documents, Contractor must notify Owner in writing before commencing its Work. By commencing Work, Contractor accepts the condition of the existing work as being a fully satisfactory component to be integrated with Contractor's Work.

Project meetings will be held on a scheduled basis for the purpose of reviewing Project issues and coordinating work schedules.

Contractor shall be responsible for a daily clean-up of all debris created by its Work. If Contractor fails to do so, Owner may perform such clean-up, withholding the cost of same from any money payable to the Contractor.

ARTICLE 3, THE CONTRACT TIME:

The Work to be performed under this Agreement shall be executed in accordance with Owner's project schedule and in cooperation with other subcontractor's work to achieve Substantial Completion of the Project by the Project Substantial Completion Date. Upon request, Contractor will supply Owner with an accurate and complete critical path schedule indicating Contractor's Work schedule.    Should such schedule indicate Contractor's inability to complete the Work within the required schedule, Contractor shall undertake all necessary steps to meet the schedule, including over-time hours of operation if required.  Should Contractor fail to properly staff and execute the Work, Owner, upon written notice and at Contractor's expense, may:  (i) terminate this Agreement without penalty; or (ii) supply additional labor to perform Contractor's Work and Contractor shall pay the cost thereof.

Contractor shall be liable to Owner in an amount equal to the Pre-Agreed Schedule Failure Damages for each day the Work is not completed after the Substantial Completion Date, or in the absence of Pre-Agreed Schedule Failure Damages, for the Owner's actual damages suffered as a result of Contractor's failure. Any items of Contractor's Work appearing on what is commonly known as a *Punch List* shall be completed within 48 hours of notice thereof unless the nature of the Work requires additional time in which case Contractor shall diligently commence and pursue the Work to completion.

In the event the Contractor's performance of this Contract is delayed for any reason including acts of the Owner or other contractors, Contractor may request an extension of

Y:\NIAMI\Misc\Construction\Agr w/-d                    2

time for the performance of the Work in writing within 5 days of the event causing such delay, but shall not be entitled to any increase in the Contract Sum or to damages or to additional compensation as a consequence of such delays or interference. Contractor warrants that it has an effective Hazardous Communications Program and that its employees have received training in that program. Contractor warrants that, before commencement of the Work, it will make available at the job site copies of all Material Safety Data Sheets relative to materials to be used at the Project and all required insurance certificates ("Safety and Insurance Submittals").

ARTICLE 4, CONTRACTOR'S RESPONSIBILITIES:

Contractor acknowledges that it is performing the Work as an independent contractor, is responsible for including any required sales taxes in the Contract Sum and remitting same to the collecting authority, and is solely responsible for the acts and omissions of its employees, for directing their work and for the payment of all their wages and taxes.

Contractor shall take all safety precautions necessary with respect to the performance of this Agreement, shall administer an effective, written safety program for the protection of its employees, shall comply with all safety measures and substance abuse programs initiated by the Owner and with all applicable laws, ordinances, rules, regulations and orders of public authorities for the safety of persons and property. Contractor shall not initiate or proceed with any portion of the Work that a prudent commercial contractor would or should have recognized as unsafe. Contractor shall immediately report any such condition or any injury to an employee or agent of the Contractor that occurred at the site.

ARTICLE 5, REQUIRED INSURANCE COVERAGE:

Contractor shall maintain in full force and effect, at its own expense, the following minimum insurance coverage.

(a)    Statutory Worker's Compensation and Employer's Liability Insurance, but in no event limits of less than $500,000. Contractor shall require its subcontractors to provide Worker's Compensation and Employer's Liability Insurance with the same minimum limits.

(b)    Commercial General Liability Insurance including Broad Form Property Damage Liability Coverage with minimum limits as follows: $1,000,000 Each Occurrence, $1,000,000 Products and Completed Operations Aggregate, $2,000,000 General Aggregate. The Commercial General Liability Policy will include Bodily Injury and Property Damage on an "Occurrence" basis.

(c)    Commercial Automobile Insurance $1,000,000 Combined single limit for all owned, non-owned, and hired vehicles.

(d)    Commercial Umbrella Liability Insurance including bodily injury and property damage coverage with minimum limits as follows: $1,000,000 Each Occurrence and $1,000,000 General Aggregate.

Y:\NIAMI\Misc\ConstructionAgt.wpd    3

    (e)    Contractor's Worker's Compensation policy shall contain a Waiver of Subrogation endorsement in favor of the Owner.

    (f)    Contractor's General Liability coverage shall be endorsed as follows:

    (1)    Contractor shall name Owner as additional insured, both for ongoing work and completed operations.

    (2)    Contractor shall provide a Waiver of Subrogation in favor of Owner.

    (3)    Contractor's General Liability policy shall be Primary and Non-Contributory.

    (g)    Contractor's Umbrella and Auto policies shall also name Owner as additional insured.

Contractor shall furnish to the Owner certificates of insurance, non-cancelable except in thirty (30) days written notice to the Owner of default providing an opportunity to cure the default to Owner within ten (10) days of receipt of the written notice of election by the Owner.

Contractor shall not commence work at the site under this Agreement until he has obtained all required insurance. Certificates of Insurance shall be filed with Owner prior to commencing work but such action shall not relieve or decrease the liability of Contractor hereunder nor be considered approval of any lesser limits of coverage except by specific written agreement of the Owner. Failure to furnish either satisfactory insurance or required certificates within 10 days of notice to proceed shall not be considered cause for modification of any contractual time limits. The required insurance must be written by a company licensed to do business in California at the time the policy is issued, and with a company acceptable to the Owner. Contractor shall not cause any insurance to be canceled nor permit any insurance to lapse. All insurance policies shall include a clause to the effect that the policy shall not be canceled or reduced, restricted or limited until 30 days after Owner has received written notice as evidence by return receipt of registered letter.

If Contractor fails or neglects to obtain or renew the insurance required by this Agreement and furnish Owner an executed Certificate of Insurance form as evidence thereof, Owner may, in its sole discretion, deem such failure or neglect on the part of Contractor as a material breach of this Agreement. Contractor must incorporate all provisions of this Article into its subcontracts so all sub-subcontractors have the same coverage and provisions as required above.

## ARTICLE 6, WARRANTY:

Contractor warrants to the Owner that materials and equipment furnished under this Agreement will be of good quality and new unless otherwise required or permitted by the Contract Documents, that the Work of this Agreement will be free from defects not inherent

Y:\NIAMI\Misc\ConstructionAct.wpd

4

in the quality required or permitted, and that the Work will conform to the requirements of the Contract Documents.  Work not conforming to these requirements, including substitutions not properly authorized, will be considered defective.  Defective Work will be replaced by and at the expense of the Contractor during hours convenient to the Owner. Any damage caused by the defective Work will be restored at the sole expense of Contractor. This warranty shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Contract Documents.

If within the applicable period of the statute of limitations set forth in California Senate Bill 800 for the type of Work performed by Contractor under this Agreement, a defect appears in the Work, Contractor shall be required to, and shall commence to, correct such Work promptly after receipt of written notice from Owner and shall thereafter diligently proceed to correct the defect. Contractor shall be liable to Owner for all liabilities, costs and expenses incurred by Owner due to said defects and/or for failure of Contractor to correct the defects.

ARTICLE 7, INDEMNITY:

Article 7.1: TO THE FULLEST EXTENT PERMITTED BY LAW AND SUBJECT TO Article 7.2 BELOW, CONTRACTOR SHALL INDEMNIFY THE OWNER, ARCHITECT, AND ANY THIRD PARTY UNDER THE CONTROL OR SUPERVISION OF ANY OF THEM, AND ANY OF THEIR OFFICERS, MEMBERS, DIRECTORS, EMPLOYEES, AGENTS, AFFILIATES, SUBSIDIARIES, AND PARTNERS (INDIVIDUALLY, AN "INDEMNITEE" AND, COLLECTIVELY, "INDEMNITEES"), FROM AND AGAINST ALL CLAIMS ARISING FROM OR ALLEGED TO ARISE FROM ANY LOSS OF ANY KIND OR NATURE, INCLUDING, BUT NOT LIMITED TO, DAMAGE TO THE PROJECT, BODILY INJURY OR DEATH, RELATING DIRECTLY OR INDIRECTLY TO THE (1) PERFORMANCE OF THE WORK PURSUANT TO THIS AGREEMENT, (2) NEGLIGENCE, (3) FAULT, (4) INTENTIONAL ACTS, (5) BREACH OF THIS AGREEMENT, OR (6) BREACH OR VIOLATION OF A STATUTE, ORDINANCE, GOVERNMENTAL REGULATION, STANDARD, OR RULE, BY CONTRACTOR OR ITS AGENT, EMPLOYEE, OR SUBCONTRACTOR OF ANY TIER, OR ANYONE FOR WHOSE ACTS OR OMISSIONS THEY MAY BE LIABLE (INDIVIDUALLY, AN "INDEMNITOR" AND, COLLECTIVELY, "INDEMNITORS"), BUT ONLY FOR THE PERCENTAGE OF RESPONSIBILITY AN INDEMNITOR CAUSED OR CONTRIBUTED TO CAUSE IN ANY WAY.

Article 7.2: SUBJECT TO THE TERMS OF THIS ARTICLE 7, CONTRACTOR IS OBLIGATED TO PROVIDE A DEFENSE FOR ANY INDEMNITEE, WITH AN ATTORNEY OF INDEMNITEE'S CHOICE, FOR ALL CLAIMS ARISING FROM OR ALLEGED TO ARISE FROM THE (1) PERFORMANCE OF THE WORK PURSUANT TO THIS AGREEMENT, (2) NEGLIGENCE, (3) FAULT, (4) INTENTIONAL ACT, (5) BREACH OF THIS AGREEMENT, OR (6) BREACH OR VIOLATION OF A STATUTE, ORDINANCE, GOVERNMENTAL REGULATION, STANDARD, OR RULE, BY ANY INDEMNITOR.

Article 7.3:  CONTRACTOR'S OBLIGATIONS SET OUT IN THIS ARTICLE 7 SURVIVE THE PERFORMANCE OF THE PARTIES UNDER THIS AGREEMENT FOR

THAT PERIOD OF TIME NECESSARY FOR THE INDEMNITEES TO RECEIVE THE BENEFITS OF THIS ARTICLE 7.

## ARTICLE 8, THE CONTRACT SUM & PROGRESS PAYMENTS:

For the performance of the Work, Owner shall pay Contractor, subject to additions and deductions by Change Order the Contract Sum. Contractor shall invoice Owner by the 25th day of the month for all material and labor incorporated in the Work, providing written, substantiating backup. If Contractor has failed to correct defective Work, or to satisfy any claims or liens (existing or, on the basis of reasonable evidence, expected to exist in the next 45 days) relative to the Work, Owner may withhold an amount equal to 150% of: the cost to repair the defective work or 150% of the amount of the lien. Owner shall have no obligation whatsoever to pay for any Work not invoiced within 60 days following the month of its installation. Owner shall pay Contractor 90% of all material and labor incorporated in the Work. The remaining 10% shall be withheld by Owner and will be payable to Contractor within _____ (___) days after Contractor's Work has been completed and Contractor has provided Owner with its Unconditional Waiver and Release of Lien and those of its materialmen, and subcontractors. Terms and time of payment to Contractor shall be subject to the requirements of Owner's contruction lender.

## ARTICLE 9, LIENS:

Except for Owner's failure to pay Contractor in accordance with the terms of this Agreement, Contractor will save and keep the Project free from all liens by reason of its Work or of any materials or other things used by it in the Work, and shall indemnify and hold the Owner harmless against any loss, damage, expense or claim arising out of Contractor's failure to do so. If Contractor fails to remove any lien by bonding it or otherwise, the Owner may retain from funds out of any money due or thereafter to become due to Contractor in an amount equal to 150% of the amount of the lien. In addition, the Owner may remove the lien by bonding it, the cost of which shall be paid by the Contractor.

## ARTICLE 10, DEFAULT:

Should Contractor at any time within forty-eight (48) hours after written notice from Owner (i) fail to supply adequate and complete supervision or a sufficient number of properly skilled workmen or materials of the proper quality, or fail in any respect to perform the Work with promptness and diligence; or (ii) fail in the performance of any agreement for the benefit of its creditors; or (iii) fail to pay promptly its obligations; or (iv) if a receiver be appointed for Contractor or its assets; or (v) if Contractor be adjudged a bankrupt; or (vi) should any workmen performing work covered by this Agreement engage in a strike or other work stoppage, or cease to work due to picketing or other activity, the Owner may, in any such events at its option after twenty-four (24) hours written notice to Contractor, provide any such labor and materials required to maintain necessary job progress, and charge the cost thereof to the Contractor and/or may terminate this Agreement.

Y:\NIAMI\Misc\ConstructionAgt.wpd                                   6

ARTICLE 11, CHANGE ORDERS:

Owner may make changes in the Work in which event Owner and Contractor shall execute a written Change Order setting forth the change and the price to be paid by Owner for the change. Under no circumstances will Contractor be entitled to receive any compensation for changes in the Work or extra work unless the same is subject to a Change Order, executed by both Contractor and Owner prior to performance of the additional work, and the amount to be paid by Owner is specified therein. Contractor is deemed to have waived its claim for additional compensation, overhead or profit where it has performed additional work for which a written change order was not obtained. If Owner unreasonably delays in executing a Change Order, the time of the delay will extend the Delivery Date for a period of time equal to the delay.

ARTICLE 12, ATTORNEY'S FEES:

In the event litigation or arbitration should arise out of the Contract, the Court or the arbitrator in such litigation or arbitration shall award reasonable attorney's fees, all costs (including, but not limited to, travel costs, deposition costs and photocopying), and expert witness fees to the prevailing party. The attorney's fees award shall not be computed in accordance with any Court schedule, but shall be such as to fully reimburse all reasonable attorney's fees, actually incurred in good faith, regardless of the size of the judgment or award, it being the intention of the parties to fully compensate the prevailing party for all reasonable attorney's fees paid or incurred including those paid or incurred on appeal.

ARTICLE 13, BINDING ARBITRATION.

IN ORDER TO EXPEDITE THE RESOLUTION OF ANY DISPUTE BETWEEN THE PARTIES, AND TO REDUCE THE COSTS TO THE PARTIES OF ADJUDICATING ANY CLAIM OR DISPUTE CONCERNING THE INTERPRETATION, ENFORCEMENT OR BREACH OF THIS CONTRACT OR ANY PROVISION(S) OF THIS CONTRACT AS IT NOW EXISTS OR MAY BE MODIFIED, OR ANY CLAIM RELATING IN ANY WAY TO THIS CONTRACT OR THE PROJECT, OR ANY WORK ON THE PROJECT, WHETHER SOUNDING IN CONTRACT, TORT OR EQUITY, ANY SUCH CLAIM OR DISPUTE SHALL BE SUBJECT TO BINDING ARBITRATION TO THE FULLEST EXTENT ALLOWED BY LAW BEFORE THE AMERICAN ARBITRATION ASSOCIATION PURSUANT TO ITS CONSTRUCTION RULES IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, RATHER THAN ADJUDICATION BEFORE A JUDGE OR JURY IN ANY COURT OF ANY STATE OR THE UNITED STATES. THE FINAL AWARD OR DETERMINATION OF ANY ARBITRATOR(S) SHALL BE FINAL AND BINDING AND CONCLUSIVE UPON THE PARTIES, AND SHALL BE MADE IN SUCH FORM THAT IT SHALL BE CONFIRMED AND JUDGMENT THEREON MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. THE PARTIES UNDERSTAND AND AGREE THAT BY AGREEING TO BINDING ARBITRATION THEY ARE GIVING UP ANY RIGHT THEY MIGHT OTHERWISE HAVE TO TRIAL BY JURY. THIS PROVISION SHALL BE CONSTRUED SO AS NOT TO PREVENT OR IMPEDE CONTRACTOR FROM PURSUING MECHANIC'S LIEN RIGHTS AND OTHER PRE-JUDGMENT REMEDIES UNDER CALIFORNIA LAW, INCLUDING, BUT NOT LIMITED TO, RECORDING MECHANIC'S LIENS AND FILING AN ACTION(S) TO FORECLOSE THE MECHANIC'S

LIEN(S), PROVIDED CONTRACTOR TIMELY MOVES THE COURT TO COMPEL ARBITRATION AND STAY THE ACTION PENDING THE OUTCOME OF THE ARBITRATION.

BY PLACING MY INITIALS BELOW, I AM AGREEING TO BE BOUND BY THIS ARTICLE

OWNER/OWNER REPRESENTATIVE_____    CONTRACTOR _____

## ARTICLE 14, INSURANCE REQUIREMENTS:

The following are mandatory insurance requirements:

General Liability Limits of $1,000,000 per occurrence, $2,000,000 general aggregate, $2,000,000 products / opps, and $1,000,000 personal advertising injury with a minimum deductible of $25,000.

Enrollment into the project's OCIP or *Wrap Policy*.

## ARTICLE 15, MISCELLANEOUS:

A.    Contractor shall not assign this Agreement, nor subcontract any portion of this Agreement, without prior written approval of the Owner.

B.    The laws of the State of California shall govern this Agreement.

C.    This Agreement and all Contract Documents constitute the entire contract and shall supersede all prior agreements, written or oral between the parties hereto and no amendment or modification of this Agreement shall be binding unless executed in writing by the parties hereto.

D.    This Agreement, entered into as of the day and year first written above, shall become binding and of full force and effect upon receipt by Contractor of a fully completed copy executed by both parties, which copy may be a telefacsimile reproduction.

E.    Time is of the essence for any period of time stated for performance of any obligation hereunder.

F.    In the event of any contradiction between Articles 1-15 of this Agreement and Exhibit "A" of this Agreement, Articles 1-15 shall prevail.

**Owner**

By_____

Title: _Manager_

**Contractor**

By_____

Title: _President_

"Exhibit A"

# J & E TEXTURE INC.

ST LIC # 1004691

181 EXETER WAY CORONA CA. 92882 & 13441 CORCORAN ST. SAN FERNANDO CA. 91340

**BUILDER :CRESTLLOYD LLC**
**PROJECTS ADDRESSES: 944 AIROLE WAY LOS ANGELES CA 90077**
06/30/2016

## DRYWALL PROPOSAL

SPECIFICATIONS:

* Walls will receive 5/8" type x board

* Ceilings will receive 5/8" type x board

* metal at corners & windows

* Tape walls & ceilings

* Bathrooms will receive green board where need it by code

* Walls & ceilings will receive level 5 finish Throughout

* Densglass at all fascia metal

EXCLUSIONS: contract does not include ceiling "T" bar, acoustic ceilings and
Framing

## SCHEDULE OF PAYMENTS

* Deposit of $ 92 500 .00 on execution of contract

* Builder will paid material on a joint account on the 30th of each month to the building
material supplier

* After hanging densglass requesting $ 50 000.00

* After hanging upper floor requesting $ 75 000.00

* After taping upper floor requesting $ 75 000.00

* After hanging main floor requesting $ 75 000.00

* After taping main floor requesting $ 75 000.00

* After hanging guest house and pool house requesting $ 25 000.00

* After taping guest house and pool house requesting $ 25 000.00

* After hanging staff area requesting $ 25 000.00

* After taping staff area requesting $ 25 000.00

* After hanging basement requesting $ 100 000.00

* After taping basement requesting remaining of contract balance

* J & E Texture understands that they will have to come back for door frames

* J & E Texture will supply life or scaffolding as needed.

06/30/2016

DRYWALL WITH LEVEL 5 FINISH:  $ 925 000.00
NOTE: this price is good for one week due to material price increase

Respectfully Submitted:

Francisco Javier Gonzalez & Elias Wences                    Contractor
( 951 ) 903 7301        (818) 339 0117

# EXHIBIT B





# EXHIBIT C



**This page is part of your document - DO NOT DISCARD**

## 20200712043





Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**06/30/20 AT 08:44AM**

**Pages:**
**0004**

| | |
|---|---|
| FEES: | 26.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 101.00 |



**L E A D S H E E T**



**202006302870010**

**00018454212**



**010890375**

**SEQ:**
**01**

**DAR - Mail (Intake)**



**THIS FORM IS NOT TO BE DUPLICATED**

E625091

ORIGINAL

Recording requested by:
J&E Texture, Inc.
c/o Watt, Tieder, Hoffar & Fitzgerald, LLP

18454212

Batch Number: 10890375

And when recorded mail this document to:

Robert C. Shaia, Esq.
Watt, Tieder, Hoffar & Fitzgerald, LLP
4 Park Plaza, Suite 1000
Irvine, CA 92614

For recorder's use

# MECHANICS' LIEN
## (Cal. Civ. Code § 8416, et seq.)

1.    J&E Texture, Inc. ("Claimant") claims a mechanics lien for the labor, services, equipment and/or materials described in paragraph 2, furnished for a work of improvement on that certain real property located in the City of West Hollywood, County of Los Angeles, State of California, and more particularly described as:

Property Description:  944 Airole Way, Los Angeles, CA 90077

2.    After deducting all just credits and offsets, the sum of $214,147.50, together with interest at the rate of 10% per annum from dates of various unpaid invoices, is due Claimant for labor, materials, services and equipment relating to installation of drywall at the above-mentioned residential property.

3.    Claimant furnished the labor, services, equipment and/or materials, at the request of:

Crestlloyd, LLC

4.    The name and address of the owner(s) or reputed owner(s) of the real property is/are:

Crestlloyd, LLC
8981 W. Sunset Blvd., Suite 303
West Hollywood, CA 90069

5.    Claimant's address is:  181 Exeter Way, Corona, CA 92882

Dated ___6/22___, 2020

J&E Texture, Inc.

By: _____
Francisco Javier Gonzalez, President

## VERIFICATION

I, Francisco Javier Gonzalez, am the President of Claimant on the foregoing Mechanics Lien and am authorized to make this verification for and on its behalf. I have read the foregoing Mechanics Lien and know the contents of the Mechanics Lien to be true of my own knowledge.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated ___6/22/___ , 2020                    _____
                                                                    Francisco Javier Gonzalez

## NOTICE OF MECHANICS LIEN

## ATTENTION!

Upon the recording of the enclosed MECHANICS LIEN with the county recorder's office of the county where the property is located, your property is subject to the filing of a legal action seeking a court-ordered foreclosure sale of the real property on which the lien has been recorded. That legal action must be filed with the court no later than 90 days after the date the mechanics lien is recorded.

The party identified in the enclosed mechanics lien may have provided labor or materials for improvements to your property and may not have been paid for these items. You are receiving this notice because it is a required step in filing a mechanics lien foreclosure action against your property. The foreclosure action will seek a sale of your property in order to pay for unpaid labor, materials, or improvements provided to your property. This may affect your ability to borrow against, refinance, or sell the property until the mechanics lien is released.

BECAUSE THE LIEN AFFECTS YOUR PROPERTY, YOU MAY WISH TO SPEAK WITH YOUR CONTRACTOR IMMEDIATELY, OR CONTACT AN ATTORNEY, OR FOR MORE INFORMATION ON MECHANICS LIENS GO TO THE CONTRACTORS STATE LICENSE BOARD WEB SITE AT www.cslb.ca.gov.

## PROOF OF SERVICE AFFIDAVIT
California Civil Code section 8416

Failure to serve the Mechanic's Lien and Notice of Mechanic's Lien on the owner, or alternatively if the owner cannot be served on the lender or direct contractor, shall cause the Mechanic's Lien to be unenforceable as a matter of law (Civil Code Section 8024(d)). Service of the Mechanic's Lien and Notice of Mechanic's Lien must be by (1) registered mail, (2) certified mail, or (3) first-class mail evidenced by a certificate of mailing, postage prepaid, and to a residence or business address for the owner, lender or contractor. Further, a Proof of Service Affidavit (below) must be completed and signed by the person serving the Mechanic's Lien and Notice of Mechanic's Lien. This page should be completed (either one of the sections below) and recorded with the County Recorder along with the Mechanic's Lien and Notice of Mechanic's Lien.

PROOF OF SERVICE AFFIDAVIT (ON OWNER)
California Civil Code section 8416(a)(7) and (c)(1)

I, _Julie Benton_, declare that I served a copy of this Mechanic's Lien and Notice of Mechanic's Lien by registered mail, certified mail, or first-class mail evidenced by a certificate of mailing, postage prepaid, addressed as follows to the owner(s) or reputed owner(s) of the property:

Company/Person Served:   Crestlloyd, LLC
(Title or capacity of person):   Owner

Service address:  8981 W. Sunset Blvd., Suite 303, West Hollywood, CA 90069

Said service address is the owner's residence, place of business, or address showed by the building permit on file with the permitting authority for the work.

Executed on _June 24_, 2020, at Irvine, Orange County, California.

_Julie Benton_
Julie Benton

# EXHIBIT D

1765 Greensboro Station Place, Suite 1000
McLean, Virginia 22102

# WATT TIEDER

WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.

Telephone: 703-749-1000
Facsimile: 703-893-8029
www.watttieder.com

March 7, 2022

Jennifer Kneeland
jkneeland@watttieder.com

**VIA EMAIL**
David B. Golubchik (dbg@lnbyg.com)
Todd M. Arnold (tma@lnbyg.com)
Levene, Neale, Bender, Yoo & Golubchik, L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034

Re:   *In re Crestlloyd, LLC* (Bankr. C.D.Cal. 21-18205) – **Outcome of the Auction of 944 Airole Way, Los Angeles, California 90077 aka "The One" (the "Property")**

Dear David and Todd:

As you know, I represent J & E Texture, Inc. ("J&E") in the above-referenced chapter 11 bankruptcy case filed by Crestlloyd, LLC (the "Debtor"). J&E holds a priority, pre-petition mechanic's lien against the Property ahead of all other pre-petition secured lenders.[1] I am writing regarding the outcome of the March 3, 2022 auction (the "Auction") of the Property.

It is my understanding that the Auction concluded and derived a price that is significantly less than the total secured debt against the Property. This price shortfall appears to present an obstacle under section 363(f)(3) of the Bankruptcy Code for the Debtor, as it must now obtain consent from the creditors secured by the Property in order to sell it free and clear of all liens. *See* 11 U.S.C. § 363(f)(3); *see also In re PW, LLC*, 391 B.R. 25 (9th Cir. 2008).

As such, I ask that you confirm that J&E's mechanic's lien will be treated as having priority ahead all pre-petition secured creditors, subordinate only to the interests of the post-petition DIP-financing lender. Also, please let me know if the Debtor intends to go forward with the sale process via confirmation of the Auction, or if the Debtor will attempt to close the sale under other possibilities provided for under the Bankruptcy Code.

Very truly yours,

**Watt, Tieder, Hoffar & Fitzgerald, L.L.P.**

*/s/ Jennifer Kneeland*

Jennifer Kneeland

cc:    Robert Shaia, Esq.
       Marguerite Lee DeVoll, Esq.

---

[1] *See* J&E's proof of claim no. 13 filed on January 7, 2022. *See also* Cal. Civ. Code § 8450 (providing that a mechanic's lien priority relates back to the time of commencement of work).

# EXHIBIT E

1765 Greensboro Station Place, Suite 1000
McLean, Virginia 22102

# WATT TIEDER

WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.

Telephone: 703-749-1000
Facsimile: 703-893-8029
www.watttieder.com

March 8, 2022

Jennifer Kneeland
jkneeland@watttieder.com

**VIA EMAIL**
Todd M. Arnold (tma@lnbyg.com)
David B. Golubchik (dbg@lnbyg.com)
Levene, Neale, Bender, Yoo & Golubchik, L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034

> Re:  ***In re Crestlloyd, LLC*** **(Bankr. C.D.Cal. 21-18205) – Response to March 7, 2022
> Email from Todd Arnold Re: Outcome of the Auction of 944 Airole Way, Los
> Angeles, California 90077 aka "The One" (the "Property")**

Dear Todd:

I am in receipt of your March 7, 2022 email sent in response to my March 7, 2022 letter regarding
the outcome of the March 3, 2022 auction (the "Auction") of the Property. In your email, you
inquired as to the basis of J & E Texture, Inc.'s ("J&E") position that it is a priority pre-petition
secured lien creditor by virtue of its mechanic's lien that only sits below the post-petition DIP
financing lender.

First, every mechanic lien filed against the Property primes the pre-petition lender, Hankey
Capital, LLC's ("Hankey") security interest against the Property. As you know, California Civil
Code § 8450(a) provides that a mechanic's lien –

> … has priority over a lien, mortgage, deed of trust, or other
> encumbrance on the work of improvement or the real property on
> which the work of improvement is situated, that (1) attaches ***after***
> commencement of the work of improvement or (2) was unrecorded
> at the commencement of the work of improvement and of which the
> claimant had no notice.

Consequently, ***all*** mechanic's liens relate back to the date of commencement of work at a project,
regardless of when any individual claimant may have commenced work at the project. *See* Cal.
Civ. Code § 8450(a); *see also Simons Brick Co. v. Hetzel*, 72 Cal. App. 1, 9, 236 P. 357, 360 (2nd
Dist. 1925); *Schrader Iron Works, Inc. v. Lee*, 26 Cal.App.3d 621, 631-32, 103 Cal. Rptr. 106,
112-13 (3rd Dist. 1972); *In re KDR Bldg. Specialties, Inc.*, 76 B.R. 778, (Bankr. S.D. Cal. 1987).

Further, regardless of when any other party first commenced work at the Property, as evidenced
by its Proof of Claim No. 13, J&E entered into its contract with the Debtor on July 1, 2016. (*See*
POC No. 13). J&E promptly commenced work on the Property four days later on July 5, 2016.
Thus, J&E commenced work on the Property approximately 2 ½ years ***before*** Hankey obtained its
security interest in the Property.

March 8, 2022
Page 2


As such, I renew my request that you: (1) confirm that J&E's mechanic's lien will be treated as having priority ahead of all pre-petition secured lenders, subordinate only to the interests of the post-petition DIP-financing lender; and (2) let me know if the Debtor intends to go forward with attempting to approve the sale via section 363 of the Bankruptcy Code, and if so, please explain how the Debtor will overcome its apparent inability to meet the requirements of section 363(f) of the Bankruptcy Code to have the sale approved, or if the Debtor will attempt to close the sale under other possibilities provided for under the Bankruptcy Code.

Very truly yours,

**Watt, Tieder, Hoffar & Fitzgerald, L.L.P.**

*/s/ Jennifer Kneeland*

Jennifer Kneeland

cc:    Robert Shaia, Esq.
        Marguerite Lee DeVoll, Esq.

Case 2:21-bk-18205-DS    Doc 319    Filed 05/17/22    Entered 05/17/22 15:41:11    Desc
Case 2:21-bk-18205-DS    Main Document    Filed 03/15/23    Page 367 of 372    03/15/22 10:25:43    Desc
Declaration of Reece Hamilton    Page 1 of 2

1  Jennifer L. Kneeland (admitted *pro hac vice*)
   Marguerite Lee DeVoll (admitted *pro hac vice*)
2  Jane Kearl, Bar No. 156560
   Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
3  4 Park Plaza, Suite 1000
   Irvine, CA  92614
4  Telephone: 949-852-6700
   jkneeland@watttieder.com
5  mdevoll@watttieder.com
   jkearl@watttieder.com
6
   Attorneys for Creditor
7  J & E Texture, Inc.

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10             **LOS ANGELES DIVISION**

11  In re:                          | Case No.: 2:21-bk-18205-DS
                                     | Chapter 11 Case
12  CRESTLLOYD, LLC,
                                     | **DECLARATION OF REECE HAMILTON
13             Debtor and Debtor-in- | IN SUPPORT OF J & E TEXTURE, INC.'S
               Possession.          | OBJECTION TO MOTION FOR ORDER:
14                                   | (1) APPROVING THE SALE OF THE
                                     | DEBTOR'S REAL PROEPRTY FREE AND
15                                   | CLEAR OF ALL LIENS, CLAIMS,
                                     | ENCUMBRANCES, AND INTERESTS,
16                                   | WITH THE EXCEPTION OF
                                     | ENUMERATED EXCLUSIONS; (2)
17                                   | FINDING THAT THE BUYER IS A GOOD
                                     | FAITH PURCHASER; (3) AUTHORIZING
18                                   | AND APPROVING THE PAYMENT OF
                                     | CERTAIM CLAIMS FROM SALE
19                                   | PROCEEDS; (4) WAIVING THE
                                     | FOURTEEN-DAY STAY PERIOD SET
20                                   | FORTH IN BANKRUPTCY RULE 6004(h);
                                     | AND (5) PROVIDING RELATED RELIEF**
21
                                     | Date:      March 18, 2022
22                                   | Time:      11:00 A.M. PST
                                     | Place:     Courtroom 1639
23                                   |            255 E. Temple St.
                                     |            Los Angeles, CA 90012
24                                   | **VIA ZOOMGOV ONLY**
25

26  I, REECE HAMILTON, declare as follows:

27  1.    I am over 18 years of age.  I have personal knowledge of the facts set forth below

28  and, if called to testify, would and could competently testify thereto.

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

1    2.    I am the President and CEO of Hamilton Brothers Construction.

2    3.    I submit this declaration in support of J & E Texture, Inc.'s ("J&E") *Objection* (the

3    "Objection") to the *Motion for an Order: (1) Approving the Sale of the Debtor's Real Property*

4    *Free and Clear of All Liens, Claims, Encumbrances, and Interests, with the Exception of*

5    *Enumerated Exclusions; (2) Finding that the Buyer is a Good Faith Purchaser; (3) Authorizing*

6    *and Approving the Payment of Certain Claims from Sale Proceeds; (4) Waiving the Fourteen-Day*

7    *Stay Period Set Forth in Bankruptcy Rule 6004(h); and (5) Providing Related Relief* [Dkt. No. 142]

8    (the "Motion") filed by Crestlloyd, LLC (the "Debtor").

9    4.    I was employed by the Debtor as one of the original project managers and

10   supervisors for the construction of the residential home upon the real property located at 944 Airole

11   Way, Los Angeles, CA 90077 (the "Property" or "The One"). I worked for the Debtor for four to

12   five years, and was involved in the project from when constructions started through the drywall

13   phase.

14   5.    Construction of "The One" began as early as March 2, 2014 when United

15   Excavation demolished the existing house and began site grading.

16   6.    On April 23, 2014, the City of Los Angeles conducted the first inspection for

17   grading.

18   I declare under penalty of perjury that the foregoing is true and correct to the best of my

19   knowledge.

20
21   Dated: March 14, 2022                    *Reece Hamilton*
                                               Reece Hamilton
22
23
24
25
26
27
28

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 2 -

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034

A true and correct copy of the foregoing document entitled **NOTICE OF MOTION AND MOTION FOR AUTHORITY TO PAY CERTAIN SENIOR SECURED CREDITORS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF LAWRENCE R. PERKINS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 5, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Kyra E Andrassy    kandrassy@swelawfirm.com,**
  **lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com**
- **Todd M Arnold    tma@lnbyg.com**
- **Jerrold L Bregman    jbregman@bg.law, ecf@bg.law**
- **Marguerite Lee DeVoll    mdevoll@watttieder.com, zabrams@watttieder.com**
- **Karol K Denniston    karol.denniston@squirepb.com,**
  **travis.mcroberts@squirepb.com;sarah.conley@squirepb.com;karol-k-denniston-**
  **9025@ecf.pacerpro.com**
- **Danielle R Gabai    dgabai@danninggill.com, dgabai@ecf.courtdrive.com**
- **Thomas M Geher    tmg@jmbm.com,**
  **bt@jmbm.com;fc3@jmbm.com;tmg@ecf.inforuptcy.com**
- **David B Golubchik    dbg@lnbyg.com, stephanie@lnbyb.com**
- **James Andrew Hinds    jhinds@hindslawgroup.com;mduran@hindslawgroup.com,**
  **mduran@hindslawgroup.com**
- **Robert B Kaplan    rbk@jmbm.com**
- **Jane G Kearl    jkearl@watttieder.com**
- **Jennifer Larkin Kneeland    jkneeland@watttieder.com, zabrams@watttieder.com**
- **Michael S Kogan    mkogan@koganlawfirm.com**
- **Noreen A Madoyan    Noreen.Madoyan@usdoj.gov**
- **Samuel A Newman    sam.newman@sidley.com, samuel-newman-**
  **2492@ecf.pacerpro.com;laefilingnotice@sidley.com**
- **Ryan D O'Dea    rodea@shulmanbastian.com, lgauthier@shulmanbastian.com**
- **Sharon Oh-Kubisch    sokubisch@swelawfirm.com,**
  **gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com**
- **Hamid R Rafatjoo    hrafatjoo@raineslaw.com, bclark@raineslaw.com**
- **Ronald N Richards    ron@ronaldrichards.com, 7206828420@filings.docketbird.com**
- **Victor A Sahn    vsahn@sulmeyerlaw.com,**
  **pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;c**
  **blair@sulmeyerlaw.com;cblair@ecf.inforuptcy.com**
- **William Schumacher    wschumac@milbank.com, autodocketecf@milbank.com**
- **David Seror    dseror@bg.law, ecf@bg.law**
- **Zev Shechtman    zshechtman@DanningGill.com,**
  **danninggill@gmail.com;zshechtman@ecf.inforuptcy.com**
- **Mark Shinderman    mshinderman@milbank.com,**
  **dmuhrez@milbank.com;dlbatie@milbank.com**
- **Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**
- **Genevieve G Weiner    gweiner@sidley.com, laefilingnotice@sidley.com;genevieve-**
  **weiner-0813@ecf.pacerpro.com**
- **Jessica Wellington    jwellington@bg.law, ecf@bg.law**

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                   **F 9013-3.1.PROOF.SERVICE**

1

2   **2. SERVED BY UNITED STATES MAIL**: On **May 5, 2022**, I served the following persons and/or entities
at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and
3   correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and
addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be
completed</u> no later than 24 hours after the document is filed.

4

5                                                    ☒ *Service information continued on attached page*

6

7   **3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR
EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR,
8   on **May 5, 2022**, I served the following persons and/or entities by personal delivery, overnight mail
service, or (for those who consented in writing to such service method), by facsimile transmission and/or
email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight
9   mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

10   *None.*

11
I declare under penalty of perjury under the laws of the United States of America that the foregoing is
12   true and correct.

13   | May 5, 2022 | Todd Arnold | /s/ Todd Arnold |
| --- | --- | --- |
| *Date* | *Type Name* | *Signature* |

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    **F 9013-3.1.PROOF.SERVICE**

In re Crestlloyd, LLC
RSN + Secured Creditors
File No. 9562

County of Los Angeles
(MRCA-Brush Fire Clear'g Dist #1)
200 North Main Street, 16th Fl
Los Angeles, CA 90012

County of Los Angeles
(Wildlife Corridor and Open Space
Protection)
c/o SCI Consulting Group
4745 Mangels Blvd.
Fairfield, CA 94534

Los Angeles County Tax Collector
PO Box 54110
Los Angeles, CA 90054

Counsel to Hankey Capital
Jeffer Mangels Butler & Mitchell LLP
Neil C. Erickson
1900 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Inferno Investment Inc.
Attn: Julien Remillard, President
4-95 Kandahar, Mont Tremblant
Quebec J8E 1E2, Canada

County of Los Angeles
(Local Fire Prevention, Water Quality
and Open Space Measure )
c/o SCI Consulting Group
4745 Mangels Blvd.
Fairfield, CA 94534

Rolls Scaffold, Inc.
Michael Rolls, CEO
11351 County Dr. Ste B
Ventura, CA 93004

American Truck & Tool Rentals
Inc./American Rentals
c/o Caprenos Inc., Cindee Wood,
Authorized Agent
4345 Murphy Canyon Road #200
San Diego, CA 92123

YOGI Securities Holdings, LLC
Steve Oshins, Authorized Agent
1645 Village Center Circle, Ste. 170
Las Vegas, NV 89131

Calgrove Rentals Inc.
Guadalupe Gomez, President
456 Glenoaks Blvd.
San Fernando, CA 91340

Hilldun Corporation
Jeffrey D. Kapelman, CEO
225 West 35th St.
New York, NY 10001

J&E Texture, Inc.
Francisco Gonzalez, CEO
181 Exter Way
Corona, CA 92882

City of Los Angeles
Mike Feuer, City Attorney
City Hall East, Suite 800
Los Angeles, CA 90012

BMC West LLC
David Filtman, CEO
4800 Falls of Neuse Rd., Ste. 400
Raleigh, NC 27609

JMS Air Conditioning and Appliance
Services, Inc.
Yosi Hesica, CEO
7640 Burnet Ave.
Van Nuys, CA 91405

Kennco Plumbing, Inc.
Robert L. Kennedy, Jr., CEO
21366 Placerita Canyon Rd.
Newhall, CA 91321

Parquet By Dian
Dima Efros, CEO
16601 S. Main St.
Gardena, CA 90248

Powertek Electric, Inc.
Mike Moshrefi, CEO
28364 S, Western Ave. #414
Rancho Palos Verdes, CA 90275

County of Los Angeles (Wildlife Corridor
and Open Space Protection)/Clerk of the
Governing Board, Mountains Recreation
& Conservation Authority
5750 Ramirez Canyon Road
Malibu, CA 90265

County of Los Angeles
(Local Fire Prevention, Water Quality
and Open Space Measure )
Conejo Recreation and Park District
403 W Hillcrest Drive
Thousand Oaks, CA 91360

YOGI Securities Holdings, LLC
c/o Daniel Wiesel, Esq.
Wolf, Rifkin, Shapiro, Schulman &
Rabkin, LLP
11400 W. Olympic Blvd., 9th Fl.
Los Angeles, CA 90064-1582

American Truck & Tool Rentals
Inc./American Rental
Tom Murray, CEO and President
88 W. Victoria St.
Long Beach, CA 90805

Buchalter, APC
Jeffrey S. Wruble
1000 Wilshire Blvd., Suite 1500
Los Angeles, CA 90017

Calgrove Rentals Inc.
21627 Roscoe Bl.
Canoga Park, CA 91304

BMC West LLC
3250 N. San Fernando Rd.
Los Angeles, CA 90065

Kennco Plumbing, Inc.
Robert L. Kennedy, Jr., CEO
26575 Ruether Ave.
Santa Clarita, CA 91350

Los Angeles County Tax Collector
PO Box 54018
Los Angeles, CA 90054

Los Angeles County Tax Collector
225 N. Hill Street # 1
Los Angeles, CA 90012

SHULMAN BASTIAN FRIEDMAN &
BUI LLP
Ryan D. O'Dea
100 Spectrum Center Drive, Ste. 600
Irvine, CA 92618

MIKE FIELDS BRONZES LLC
2715 E. 36TH, APT 6203
SPOKANE, WA 99223

**Attorneys for Richard Saghian**
Amy P. Lally, Esq. **RSN**
Sidley Austin LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067

**Attorneys for Richard Saghian**
Samuel A. Newman, Esq. **RSN**
Genevieve G. Weiner, Esq.
Sidley Austin LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013

Counsel For Receiver
Brutzkus Gubner Rozansky Seror
Weber LLP
David Seror/Jessica Wellington
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367

Noreen A Madoyan
Office of the United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

Debtor
Crestlloyd, LLC
c/o SierraConstellation Partners LLC
355 S. Grand Avenue Suite 1450
Los Angeles, CA 90071