DAVID B. GOLUBCHIK (State Bar No. 185520)
TODD M. ARNOLD (State Bar No. 221868)
JONATHAN D. GOTTLIEB (State Bar No. 339650)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234
Facsimile:   (310) 229-1244
Email: DBG@LNBYG.COM; TMA@LNBYG.COM; JDG@LNBYG.COM

Attorneys for Crestlloyd, LLC, the Debtor and Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>CRESTLLOYD, LLC,<br><br>        Debtor and Debtor-in-Possession | Chapter No.: 11<br><br>Case No.: 2:21-bk-18205-DS<br><br>**REPLY TO LIMITED OPPOSITION OF SECURED CREDITOR INFERNO INVESTMENT, INC. TO FIRST INTERIM APPLICATION OF LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P. FOR APPROVAL OF FEES AND REIMBURSEMENT OF EXPENSES**<br><br>Hearing:<br>  Date:      May 26, 2022<br>  Time:     11:30 a.m.<br>  Place:    Courtroom 1639<br>             255 E. Temple Street<br>             Los Angeles, CA 90012<br>             **VIA ZOOMGOV ONLY** |

Levene, Neale, Bender, Yoo & Golubchik L.L.P. ("LNBYG") hereby files its reply to the limited opposition (the "Opposition") filed by Inferno Investment, Inc. ("Inferno") to LNBYG's *First Interim Application Of Levene, Neale, Bender, Yoo & Golubchik L.L.P. For Approval Of Fees And Reimbursement Of Expenses* (the "Application").[1]

## I.

## INTRODUCTION

The Opposition contends that this Court should not approve the Application to the extent LNBYG seeks authorization to pay fees and costs exceeding the amount for restructuring costs for professional and UST fees set forth in the budget (the "Budget") approved by Hankey Capital, LLC ("Hankey") as the lender on the Debtor's debtor in possession loan (the "DIP Loan") and by the Court pursuant to a final order (the "Final DIP Order") granting the motion to approve the DIP Loan (the "DIP Motion"). (Opposition, 1:24-28) More specifically, Inferno argues that, after paying amounts owed to SierraConstellation Partners, LLC, the Debtor's Non-Member Manager ("SCP"), the Budget only leaves $263,444.50 in DIP Loan proceeds that are available for professional and UST fees. (Opposition; 3:9-28)

As discussed below, Inferno's argument is flawed for three reasons. First, the DIP Loan was repaid so there are no longer any restrictions on the use of the DIP Loan proceeds or requirement to adhere to the Budget. Even if there were, Hankey has indicated that it consents to any required amendment to the Budget to allow the payment of the fees and expenses requested by LNBYG.

Second, the Budget only runs through March 11, 2022, whereas the Application runs through April 15, 2022. Thus, at minimum, an additional $415,037 would be included in the

---

[1] Capitalized terms not otherwise defined herein have the same meanings ascribed to them in the Application.

Budget for the extended period for professional and UST fees, which, together with the admitted $263,444.50 of availability, exceeds the amount requested by LNBYG.

Third, Inferno ignores that the Budget includes a $1,250,000 "Contingency/Other" line item that is available for payment of professional and UST fees, including those requested by LNBYG.

In short, there are no Budget restrictions on the amount available to pay LNBYG or UST fees, because the DIP Loan was paid in full. Even if there were, there is more than adequate availability under the Budget to pay the fees and expenses requested by LNBYG and, in any event, Hankey indicated it consents to any amendments to the budget necessary to pay LNBYG. Therefore, the Court should overrule Inferno's Opposition and approve the Application and payment of the fees and expenses requested therein.

## II.

## STATEMENT OF FACTS

In addition to the facts set forth in the Application, LNBYG provides the following additional facts relevant to Inferno's Opposition and this Reply:

1.     On December 8, 2021, the Debtor filed its DIP Motion to approve the DIP Loan. [Dkt. 66][2]

2.     The loan agreement for the DIP Loan (the "DIP Loan Agreement"), required, *inter alia*, that the DIP Loan proceeds were only to be used in accordance with the Budget. *See* DIP Loan Agreement, a true and correct copy of which is attached hereto without exhibits as **Exhibit "1,"** at ¶ 3.2. The DIP Loan Agreement also provided that (a) the Debtor was entitled to a 15% variance on a litem and weekly basis and (b) the terms of the DIP Loan (and thus the Budget)

---

[2] Pursuant to Fed. R. Evid. 201, the Debtor requests that the Court take judicial notice of the DIP Motion.

3

could be amended by agreement of the Debtor and Hankey.  DIP Loan Agreement, at p.2 definition of "Budget" and ¶ 11.2.

3.    The Budget covers 13 weeks but only runs through March 11, 2022 (the "Limited Budget Period").  *See* the Budget, a true and correct copy of which is attached to the Objection as Exhibit "B."  The Budget includes (a) a line item in the total amount of $949,743 for "Professional and UST Fees" and (b) a line item in the total amount of $1,250,000 for "Contingency/Other" amounts during the Limited Budget Period.  *Id.*

4.    On January 27, 2022, the Court entered its Final DIP Order, granting the DIP Motion and approving the DIP Motion on a final basis.  A true and correct copy of the DIP Order is attached to the Opposition as Exhibit "C."

5.    As set forth in the *Statement Of Sale Closing For The Debtor's Real Property Located At 944 Airole Way, Los Angeles, CA 90077* (the "Sale Closing Statement")[3] [Dkt. 286], (a) on March 28, 2022, the Court entered its order (the "Sale Order") [Dkt. 247] granting the Debtor's motion (the "Sale Motion")1 [Dkt. 142] to sell the Debtor's real property (the "Property"), (b) on March 30, 2022, the sale of the Property closed, (c) the Debtor received consideration in the amount of $137.97 million for the sale of the Property (the "Sale Proceeds"), and (c) pursuant to the Sale Motion and the Sale Order, escrow paid from the Sale Proceeds, *inter alia*, $12,084,999.98 to payoff the DIP Loan from Hankey, in full.

**III.**

**ARGUMENT**

As noted above, Inferno's argument that, after paying amounts owed to SCP, the Budget only leaves $263,444.50 in DIP Loan proceeds available for professional and UST fees is fatally

---

[3] Pursuant to Fed. R. Evid. 201, the Debtor requests that the Court take judicial notice of the Sale Closing Statement and the pleadings referenced therein.

flawed for three reasons.

First, and most importantly, the DIP Loan was paid in full upon the close of escrow of the Debtor's Property.  As a result, the terms of the DIP Loan Agreement, including any spending limitations based on the Budget, are no linger in effect and in no way govern the Debtor's use of the balance of the DIP Loan proceeds, which are to be used to pay the fees and expenses requested in the Application.  Assuming *arguendo* that there were any such restrictions, Hankey has indicated that it consents to any required amendment to the Budget to allow the payment of the fees and expenses requested by LNBYG in the Application.

Second, as noted above, the Budget only runs through March 11, 2022, whereas the Application runs through April 15, 2022.[4]  Since the Budget ends at March 11, 2022, at minimum, an additional $415,037,[5] would have to be included in the Budget for professional and UST fees through April 15, 2022, which, together with the admitted $263,444.50 of availability for a total of $678,481.50, exceeds the amount requested by LNBYG.

Third, in addition to the foregoing availability, the Budget includes an additional $1,250,000 "Contingency/Other" line item that is available for payment of professional and UST fees, including those requested by LNBYG.  As with the line item for professional and UST fees this amount would increase substantially once extension of the Budget and the 15% variance are factored in.

Based on the foregoing, there are no Budget restrictions on the amount available to pay LNBYG or UST fees.  However, even if there were such restrictions Hankey has agreed to amend the Budget to pay LNBYG and, in any event, there is availability under the Budget when

---

[4] From March 12, 2022 to April 15, 2022, LNBYG incurred fees in the amount of $158,642.50.
[5] Budget of 13 weeks / 5 additional weeks = 38%. $949,743 line item for professional and UST fees x 38% = $360,902 x 15% allowed variance of $54,135 = $415,037.

extended to the period covered by LNBYG's Application.

   **WHEREFORE**, for the reasons stated above, LNBYG respectfully requests that the

Court overrule the Opposition and approve the Application in its entirety.

Dated:  May 19, 2022                           LEVENE, NEALE, BENDER, YOO
                                                         & GOLUBCHIK L.L.P.

                                          By:____/s/ *David B. Golubchik*_____
                                               DAVID B. GOLUBCHIK
                                               TODD M. ARNOLD
                                               JONATHAN D. GOTTLIEB
                                               LEVENE, NEALE, BENDER,
                                               YOO & GOLUBCHIK L.L.P.
                                               Attorneys for Crestlloyd, LLC,
                                               the Debtor and Debtor-in-Possession

## DECLARATION OF DAVID B. GOLUBCHIK, ESQ.

I, DAVID B. GOLUBCHIK, Esq., hereby declare as follows:

1.     I am over 18 years of age.  I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.     I am a partner of the law firm of Levene, Neale, Bender, Yoo & Golubchik L.L.P. ("LNBYG").  I am an attorney licensed to practice law in the State of California, in the United States District Court and the Bankruptcy Courts for the Southern, Central, Northern and Eastern Districts of California, and in the United States Court of Appeals for the Ninth Circuit.

3.     I make this Declaration in support of the Application to which this Declaration is attached.  Unless otherwise stated, all capitalized terms herein have the same meaning as in the Application.

4.     On December 8, 2021, the Debtor filed its DIP Motion to approve the DIP Loan. [Dkt. 66]

5.     The loan agreement for the DIP Loan (the "DIP Loan Agreement"), required, *inter alia*, that the DIP Loan proceeds were only to be used in accordance with the Budget.  *See* DIP Loan Agreement, a true and correct copy of which is attached hereto without exhibits as **Exhibit "1,"** at ¶ 3.2.  The DIP Loan Agreement also provided that (a) the Debtor was entitled to a 15% variance on a litem and weekly basis and (b) the terms of the DIP Loan (and thus the Budget) could be amended by agreement of the Debtor and Hankey.  DIP Loan Agreement, at p.2 definition of "Budget" and ¶ 11.2.

6.     The Budget covers 13 weeks but only runs through March 11, 2022 (the "Limited Budget Period").  *See* the Budget, a true and correct copy of which is attached to the Objection as Exhibit "B."  The Budget includes (a) a line item in the total amount of $949,743 for "Professional and UST Fees" and (b) a line item in the total amount of $1,250,000 for "Contingency/Other" amounts during the Limited Budget Period.  *Id.*

7.    On January 27, 2022, the Court entered its Final DIP Order, granting the DIP Motion and approving the DIP Motion on a final basis.  A true and correct copy of the DIP Order is attached to the Opposition as Exhibit "C."

8.    As set forth in the *Statement Of Sale Closing For The Debtor's Real Property Located At 944 Airole Way, Los Angeles, CA 90077* (the "Sale Closing Statement")[6] [Dkt. 286], (a) on March 28, 2022, the Court entered its order (the "Sale Order") [Dkt. 247] granting the Debtor's motion (the "Sale Motion")1 [Dkt. 142] to sell the Debtor's real property (the "Property"), (b) on March 30, 2022, the sale of the Property closed, (c) the Debtor received consideration in the amount of $137.97 million for the sale of the Property (the "Sale Proceeds"), and (c) pursuant to the Sale Motion and the Sale Order, escrow paid from the Sale Proceeds, *inter alia*, $12,084,999.98 to payoff the DIP Loan from Hankey, in full.

9.    Hankey's counsel has advised me that, if any Budget or other restrictions under the DIP Loan are still in effect, Hankey consents to amend the Budget to pay LNBYG the amount requested in the Application.

I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 19th day of May 2022, at Los Angeles, California.

*/s/ David B. Golubchik*
DAVID B. GOLUBCHIK

---

[6] Pursuant to Fed. R. Evid. 201, the Debtor requests that the Court take judicial notice of the Sale Closing Statement and the pleadings referenced therein.

**EXHIBIT "1"**

# SENIOR SECURED SUPER-PRIORITY DEBTOR IN POSSESSION
# CREDIT AGREEMENT

Borrower:    CRESTLLOYD, LLC

Lender:    HANKEY CAPITAL, LLC

## TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| ARTICLE 1 | INCORPORATION AND DEFINITIONS | 1 |
| | 1.1    Definitions | 1 |
| ARTICLE 2 | REPRESENTATIONS AND WARRANTIES | 9 |
| | 2.1    Representations and Warranties | 9 |
| | 2.2    Continuation of Representations and Warranties | 11 |
| ARTICLE 3 | AMOUNT AND TERMS OF COMMITMENT | 11 |
| | 3.1    The Loan; Maturity Date | 11 |
| | 3.2    Use of Loan Proceeds | 12 |
| | 3.3    Payment; Prepayments and Reduction of Aggregate Commitment | 12 |
| | 3.4    Super-Priority Nature of Obligations and Status of Lender's Liens | 13 |
| | 3.5    No Discharge; Survival of Liens and Claims; Waiver of Priming Rights | 13 |
| | 3.6    Payment of Obligations | 14 |
| | 3.7    No Marshaling | 14 |
| ARTICLE 4 | PRINCIPAL; INTEREST; SPECIAL PROVISIONS | 14 |
| | 4.1    Interest on the Loan | 14 |
| | 4.2    Terms of Payment of Principal and Interest | 14 |
| | 4.3    Method and Place of Payment | 15 |
| | 4.4    Reserved | 15 |
| | 4.5    Taxes | 15 |
| | 4.6    Loan Indemnification | 16 |
| | 4.7    Fees and Expenses | 16 |
| | 4.8    Advances | 17 |
| | 4.9    No Waiver | 17 |
| | 4.10   Advances Secured by Loan Documents | 17 |
| ARTICLE 5 | CONDITIONS PRECEDENT TO EACH ADVANCE | 17 |
| | 5.1    Conditions Precedent to Each Advance | 17 |
| ARTICLE 6 | CONDITIONS TO CLOSING | 18 |
| | 6.1    Conditions to Closing | 18 |
| ARTICLE 7 | FUNDING CONDITIONS AND MECHANICS | 19 |
| | 7.1    Funding Conditions and Mechanics | 19 |
| ARTICLE 8 | FURTHER AGREEMENTS OF BORROWER | 19 |
| | 8.1    Furnishing Information | 19 |
| | 8.2    Affirmative Covenants | 20 |
| | 8.3    Negative Covenants | 22 |
| ARTICLE 9 | ASSIGNMENTS; CONFIDENTIALITY | 23 |
| | 9.1    Successors and Assigns | 23 |
| | 9.2    Confidentiality | 23 |

i

SENIOR SECURED SUPER-PRIORITY
DEBTOR IN POSSESSION CREDIT AGREEMENT

**TABLE OF CONTENTS**
**(CONTINUED)**

**Page**

|  |  |  |  |
|---|---|---|---|
| | 9.3 | Dissemination of Information | 23 |
| | 9.4 | Non-Disclosure and Confidentiality Agreements | 23 |
| ARTICLE 10 | | EVENTS OF DEFAULT BY BORROWER | 24 |
| | 10.1 | Events of Default | 24 |
| | 10.2 | Remedies | 26 |
| | 10.3 | Right of Lender to Make Advances to Cure Events of Default; Obligatory Advances | 27 |
| | 10.4 | Attorneys' Fees | 27 |
| | 10.5 | No Waiver | 28 |
| ARTICLE 11 | | MISCELLANEOUS | 28 |
| | 11.1 | Time is of the Essence | 28 |
| | 11.2 | Amendments, Etc. | 28 |
| | 11.3 | Determination of Facts | 28 |
| | 11.4 | Prior Agreements | 28 |
| | 11.5 | Disclaimer by Lender | 28 |
| | 11.6 | Captions; Section References | 28 |
| | 11.7 | Inconsistent Terms and Partial Invalidity | 29 |
| | 11.8 | Approvals | 29 |
| | 11.9 | References and Other Terms | 29 |
| | 11.10 | Notices | 29 |
| | 11.11 | Effect of Agreement | 30 |
| | 11.12 | Governing Law | 30 |
| | 11.13 | Waiver of Defenses | 30 |
| | 11.14 | Consent to Jurisdiction | 31 |
| | 11.15 | Waiver of Jury Trial | 31 |
| | 11.16 | Lender's Right to Credit Bid | 31 |
| | 11.17 | Usury Savings Clause | 31 |
| | 11.18 | Counterparts; Facsimile Signatures | 32 |
| | 11.19 | Final Agreement | 32 |

<u>EXHIBITS</u>

| | |
|---|---|
| Exhibit A: | Promissory Note |
| Exhibit B: | Senior Secured Superior-Priority Construction Deed of Trust, Security Agreement and Fixture Filing with Assignment of Rents |
| Exhibit C: | Security Agreement – Senior Super-Priority Lien |
| Exhibit D: | Interim Order |
| Exhibit E: | Final Order |
| Exhibit F: | Budget |

ii

SENIOR SECURED SUPER-PRIORITY
DEBTOR IN POSSESSION CREDIT AGREEMENT

## SENIOR SECURED SUPER-PRIORITY DEBTOR IN POSSESSION
## CREDIT AGREEMENT

THIS SENIOR SECURED SUPER-PRIORITY DEBTOR IN POSSESSION CREDIT AGREEMENT (this "**Agreement**"), is made and entered into as of December __, 2021, by and between **CRESTLLOYD, LLC**, a California limited liability company ("**Borrower**"), and **HANKEY CAPITAL, LLC**, a California limited liability company ("**Lender**").

## RECITALS

A.     On October 26, 2021 (the "**Filing Date**"), Borrower commenced a case under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, case number 21-18205 (the "**Chapter 11 Case**").  Borrower has retained possession of its assets and is authorized under the Bankruptcy Code to continue operating its business as a debtor in possession.

B.     Borrower has requested that Lender provide a debtor in possession term loan to Borrower in the principal amount of Twelve Million and No/100ths Dollars ($12,000,000.00), which is intended to provide short-term bridge financing so that Borrower can operate while marketing substantially all its assets for a sale, which the parties currently envision will occur under an auction process or other sale under Bankruptcy Code section 363.

C.     Lender has indicated its willingness to extend the Loan to Borrower, all on the terms and conditions set forth herein and in the other Loan Documents and in accordance with the Bankruptcy Code, so long as, *inter alia*, such post-petition loan obligations are (a) secured by Liens on all of Borrower's assets, whether now owned or hereafter acquired, as set forth herein, and subject in priority only to the Carve Out, and (b) given super-priority status and priming liens; all as described below and as same shall be provided for in the Final Order.

**NOW, THEREFORE,** in consideration of the mutual representations, warranties, covenants and agreements herein contained, the sufficiency of which hereby is acknowledged, the parties hereto represent and agree as follows:

## ARTICLE 1
## INCORPORATION AND DEFINITIONS

**1.1     Definitions.**  The following terms shall have the following meanings in this Agreement:

**Advance:**  Any advance of Loan Proceeds made by Lender to or for the benefit of Borrower as required or permitted under this Agreement or any other Loan Document.

**Affiliate:**  As applied to any Person, any other Person that, directly or indirectly, controls or is controlled by or is under common control with such Person.  A Person shall be deemed to control another Person if the controlling Person is the "beneficial owner" (as defined in Rule 13d-3 under the Exchange Act) of ten percent (10%) or more of any class of voting securities (or other voting interests) of the controlled Person, or possesses, directly or indirectly, the power to direct

1

or cause the direction of the management or policies of the controlled Person, whether through ownership of stock, any other equity interest or membership interest, by contract or otherwise.

**Aggregate Commitment:**  The aggregate of the Commitment for this Loan, as reduced from time to time by any principal payments made by or on behalf of Borrower and any principal reductions otherwise required under and pursuant to the terms of the Loan Documents.  The Aggregate Commitment as of the Closing Date is Twelve Million and No/100ths Dollars ($12,000,000.00) plus the amount of the Facility Fee; provided, however, that in no event shall the Aggregate Commitment exceed the maximum principal amount of the Loan approved by the Bankruptcy Court pursuant to the Final Order.

**Agreement:**  As defined in the Preamble.

**Asset Sale:**  The sale, lease, conveyance, disposition or other transfer or assignment by Borrower of any of its assets (including by way of a sale-leaseback transaction and including the sale or other transfer of any of the equity interests or membership interests of any Subsidiary of such Person), including any or all of the Collateral, and the assignment of any its executory contracts and unexpired leases.

**Availability Period:**  The period commencing on the Closing Date and ending on the Maturity Date.

**Avoidance Actions:**  Claims and causes of action that first arise on or after the Filing Date under Bankruptcy Code chapter 5 and the proceeds thereof and property received thereby, whether by judgment, settlement, or otherwise.

**Bankruptcy Code:**  Title 11 of the United States Code.

**Bankruptcy Court:**  The United States Bankruptcy Court for the Central District of California, Central Division, or any other court then having jurisdiction over the Chapter 11 Case.

**Borrower:**  As defined in the Preamble.

**Borrowing Date:**  Any date that an Advance is made.

**Budget:**  Budget shall refer to that certain cash budget of expenditures contemplated by Borrower to be made out of the Advance, attached hereto as **Exhibit F**, and also attached to the Interim Order and the Final Order.  Borrower shall comply with the Budget, but may have a variance by line item and by each weekly time period of fifteen percent (15.0%) per line item, with any negative variances to carry forward to the next weekly time period.

**Business Day:**  Any day other than a Saturday, Sunday, or a legal holiday on which banks in the State of California are required or permitted to close.

**Carve Out:**  All fees and costs incurred by the Borrower after the Filing Date as a debtor in possession, including, without limitation, fees and costs required to be paid to the Clerk of the Bankruptcy Court and the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a) in the Chapter 11 Case, except such fees that result from the sale of Collateral or any portion thereof,

SENIOR SECURED SUPER-PRIORITY
DEBTOR IN POSSESSION CREDIT AGREEMENT

which shall be paid out of the proceeds from such sale, and Chapter 11 fees and costs of professionals employed by the Borrower as a debtor in possession without prejudice to Lender's right to object to any fee requests, as specified in the Budget.

**Chapter 11 Case:**  As defined in the Recitals.

**Closing Date:**  The date on which the Interim Order is entered by the Bankruptcy Court in the Chapter 11 Case.

**Collateral:**  Collectively, all **"Collateral"** as that term is defined in the Security Documents.  Collateral shall not include Avoidance Actions, except that (a) actions under Bankruptcy Code section 549 (and the proceeds thereof) shall be included in the Collateral to the extent they concern the recovery of what was, before the avoided transfer, any of the Collateral, and (b) any lien or security interest avoided pursuant to any or all of Bankruptcy Code sections 550, 551 and 552 shall have the same priority as such avoided lien.

**Collateral Sale:**  As defined in <u>Section 11.16</u> of this Agreement.

**Commitment:**  Lender's commitment to make the Loan under the terms of the Loan Documents.

**Contingent Obligation:**  As applied to any Person, (a) any Contractual Obligation, contingent or otherwise, of that Person with respect to any Indebtedness of another or other obligation or liability of another, including, without limitation, any such Indebtedness, obligation or liability of another directly or indirectly guaranteed, endorsed (other than for collection or deposit in the ordinary course of business), co-made or discounted or sold with recourse by that Person, or in respect of which that Person is otherwise directly or indirectly liable, including Contractual Obligations (contingent or otherwise) arising through any agreement to purchase, repurchase, or otherwise acquire such Indebtedness, obligation or liability or any security therefor, or to provide funds for the payment or discharge thereof (whether in the form of loans, advances, stock purchases, capital contributions or otherwise), or to maintain solvency, assets, level of income or other financial condition or to make payment other than for value received; and (b) any other contingent obligation or liability of such Person, whether or not reflected in financial statements of such Person as a liability.

**Contractual Obligation:**  As applied to any Person, any provision of any equity or debt securities issued by that Person or any indenture, mortgage, deed of trust, security agreement, pledge agreement, guaranty, contract, undertaking, agreement or instrument, in any case in writing, to which that Person is a party or by which it or any of its properties is bound, or to which it or any of its properties is subject.

**Deed of Trust:**  Deed of Trust means the Senior Secured Superior-Priority Construction Deed of Trust, Security Agreement and Fixture Filing with Assignment of Rents in the form attached hereto as **Exhibit B**.

**Default:**  Any condition or event that, after notice or lapse of time or both, would constitute an Event of Default.

3

**Default Rate:**  Five percent (5.0%) in excess of the Interest Rate.  The Default Rate shall become effective without further notice upon the occurrence of an Event of Default.

**Deferred Extension Fee:**  As defined in Section 3.1(d) of this Agreement.

**Event of Default:**  Has the meaning set forth in Section 10.1 of this Agreement.

**Exchange Act:**  The Securities Exchange Act of 1934, as amended, and regulations promulgated thereunder.

**Extension Fee:**  The Extension Fee is the sum of $120,000.00, which is equal to one percent (1.0%) of the Aggregate Commitment.  The Extension Fee must be paid in good United States funds.

**Extension Option:**  On or before February 28, 2022, Borrower has a one-time option to elect to extend the Maturity Date from February 28, 2022 to April 30, 2022.  The sole method by which Borrower may exercise its one-time option is to give written notice to Lender that Borrower elects to extend the Maturity Date pursuant to the Extension Option, in the manner and at the time set forth in Section 3.1(d).

**Facility Fee:**  Has the meaning set forth in Section 4.7 of this Agreement.

**Filing Date:**  As defined in the Recitals.

**Final Order:**  A final order of the Bankruptcy Court entered in the Chapter 11 Case after a final hearing under Bankruptcy Rule 4001(c)(2), granting final approval of and authorizing Borrower to enter into and perform under this Agreement and the other Loan Documents and granting the priming liens and Super-Priority Claim and other benefits and protections with respect to Borrower described herein and in the other Loan Documents in favor of Lender, consistent with local rules in the jurisdiction of the Bankruptcy Court, as are satisfactory to Lender.

The Final Order shall be in form and substance approved by Lender in substantially the form of **Exhibit E** attached hereto, and shall include the granting of perfected first priority liens and Super-Priority Claim, as well as provisions:  (a) modifying the automatic stay to permit the creation and perfection of the Liens in and to the Collateral; (b) providing for shortened notice to seek a lifting of the automatic stay to permit the enforcement of Lender's remedies under the Loan Documents; (c) prohibiting the assertion of claims arising under Bankruptcy Code section 506(c) (during the period that Borrower is authorized to borrow under the Loan) against Lender or the commencement of other actions adverse to Lender or its rights and remedies under the Loan Documents; (d) prohibiting the incurrence of debt with priority equal to or greater than Lender has under the Loan Documents, except and to the extent as expressly provided in the Loan Documents; (e) prohibiting any grant or imposition of Liens other than Permitted Liens; (f) providing Lender with the right to credit bid as set forth in this Agreement; and (g) finding that Lender is extending credit to Borrower in good faith within the meaning of Bankruptcy Code section 364(e).

**Final Order Entry Date:**  The date on which the Final Order is entered in the Chapter 11 Case.

4

**GAAP:** Generally accepted accounting principles in the United States of America in effect from time to time as applied by nationally recognized accounting firms.

**Governmental Authority:** Any nation or government, any state or other political subdivision thereof and any entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government.

**Highest Lawful Rate:** The maximum lawful interest rate, if any, that at any time or from time to time may be contracted for, charged or received under the laws applicable to Lender or Borrower that are presently in effect or, to the extent allowed by law, under such applicable laws that hereafter may be in effect and allow a higher maximum nonusurious interest rate than applicable laws now allow.

**Indebtedness:** As to any Person at a particular time, without duplication, all of the following, whether or not included as indebtedness or liabilities in accordance with GAAP:

(a)     all obligations of such Person for borrowed money and all obligations of such Person evidenced by bonds, debentures, notes, loan agreements, or other similar instruments;

(b)     all direct or Contingent Obligations of such Person arising under letters of credit (including standby and commercial), bankers' acceptances, bank guaranties, surety bonds and similar instruments;

(c)     all obligations of such Person to pay the deferred purchase price of property or services (other than trade accounts payable in the ordinary course of business);

(d)     indebtedness (excluding prepaid interest thereon) secured by a Lien on property owned or being purchased by such Person (including indebtedness arising under conditional sales or other title retention agreements), whether or not such indebtedness shall have been assumed by such Person or is limited in recourse;

(e)     capital leases and synthetic lease obligations;

(f)     all obligations of such Person to purchase, redeem, retire, defease, or otherwise make any payment in respect of any equity interest or membership interest in such Person or any other Person, valued, in the case of a redeemable preferred interest, at the greater of its voluntary or involuntary liquidation preference plus accrued and unpaid dividends; and

(g)     all guarantees of such Person in respect of any of the foregoing.

For all purposes hereof, the Indebtedness of any Person shall include the Indebtedness of any partnership or joint venture (other than a joint venture that is itself a corporation or limited liability company) in which such Person is a general partner or a joint venturer, unless such Indebtedness is expressly made non-recourse to such Person.

**Indemnified Party:** As defined in <u>Section 4.6</u> of this Agreement.

**Intellectual Property:** As defined in <u>Section 2.1(b)</u> of this Agreement.

5

**Interest Rate:** The Interest Rate is a fixed rate of eight and one-half percent (8.50%) per annum, calculated on the basis of a 360-day year and actual days elapsed. Immediately upon the occurrence of an Event of Default, the Interest Rate shall be increased by the Default Rate without notice.

**Interim Order:** An interim order of the Bankruptcy Court entered in the Chapter 11 Case after a hearing under Bankruptcy Rule 4001(c)(2), granting approval of and authorizing Borrower to enter into and perform under this Agreement and the other Loan Documents and granting the priming liens and Super-Priority Claim and other benefits and protections with respect to Borrower described herein and in the other Loan Documents in favor of Lender, consistent with local rules in the jurisdiction of the Bankruptcy Court, as are satisfactory to Lender.

The Interim Order shall be in form and substance approved by Lender in substantially the form of **Exhibit D** attached hereto, and shall include the granting of perfected first priority liens and Super-Priority Claim, as well as provisions: (a) modifying the automatic stay to permit the creation and perfection of the Liens in and to the Collateral; (b) providing for shortened notice to seek a lifting of the automatic stay to permit the enforcement of Lender's remedies under the Loan Documents; (c) prohibiting the assertion of claims arising under Bankruptcy Code section 506(c) (during the period that Borrower is authorized to borrow under the Loan) against Lender or the commencement of other actions adverse to Lender or its rights and remedies under the Loan Documents; (d) prohibiting the incurrence of debt with priority equal to or greater than Lender has under the Loan Documents, except and to the extent as expressly provided in the Loan Documents; (e) prohibiting any grant or imposition of Liens other than Permitted Liens; (f) providing Lender with the right to credit bid as set forth in this Agreement; and (g) finding that Lender is extending credit to Borrower in good faith within the meaning of Bankruptcy Code section 364(e).

**Legal Requirements:** As to any Person, the certificate of incorporation and bylaws or other organizational or governing documents of such Person, and any law, treaty, rule or regulation or determination of an arbitrator or a court or other Governmental Authority, in each case applicable to or binding upon such Person or any of its property or to which such Person or any of its property is subject.

**Lender:** As defined in the Preamble.

**Lien:** With respect to any property or assets of any kind whatsoever, (a) any mortgage, deed of trust, lien, pledge, encumbrance, claim, charge, assignment, hypothecation, security interest or encumbrance of any kind, any other type of preferential arrangement having the practical effect of any of the foregoing in respect of such property or any filing of any financing statement under the UCC or any other similar notice of Lien under any similar notice or recording statute of any Governmental Authority, in each of the foregoing cases whether voluntary or imposed by law, and any agreement to give any of the foregoing; (b) the interest of a vendor or a lessor under any conditional sale agreement, capital lease or title retention agreement (or any financing lease having substantially the same economic effect as any of the foregoing) relating to such property; and (c) in the case of securities, any purchase option, call or similar right of a third party with respect to such securities. "Lien" shall exclude any right of offset that arises without agreement in the ordinary course of business with trade creditors.

6

**Loan:**  As defined in <u>Section 3.1(a)</u> of this Agreement.

**Loan Documents:**  This Agreement, the Note, and the Security Documents.

**Loan Proceeds:**  All amounts advanced as part of the Loan, whether advanced directly to Borrower or otherwise.

**Material Adverse Effect:**  Any event, condition, obligation, liability, or circumstance or set of events, conditions, obligations, liabilities, or change that:

(a)     has or reasonably could be expected to have a material adverse effect upon or change in (i) the legality, validity, or enforceability of any Loan Document, or (ii) the perfection or priority of any Lien granted to Lender under the Security Documents;

(b)     has or reasonably could be expected to have a material and adverse effect upon the value of any of the Collateral, or the business, operations, prospects, properties, assets, liabilities, or condition (financial or otherwise) of Borrower; or

(c)     materially impairs or reasonably could be expected to materially impair the ability of Borrower to pay or perform any of the Obligations, or to consummate the transactions under the Loan Documents.

Notwithstanding the foregoing, any changes attributable solely to the commencement of the Chapter 11 Case or any defaults under the Prepetition Indebtedness shall not constitute a Material Adverse Effect.

**Maturity Date:**  The earlier of:

(a)     February 28, 2022 or if Borrower has duly and timely elected the Extension Option in writing, April 30, 2022;

(b)     the closing date of any Asset Sale affecting all or substantially all of the Real Property;

(c)     the effective date of any Restructuring Plan of Borrower confirmed by the Bankruptcy Court; and

(d)     the acceleration of the Loan as a result of the occurrence of an Event of Default.

**Net Cash Proceeds:**  Cash or cash equivalents (including securities) received by Borrower from any Asset Sale (including cash received as consideration for the assumption or incurrence of liabilities incurred in connection with or in anticipation of such Asset Sale), after (a) in connection with any Asset Sale, provision for all income or other taxes actually paid by such Person with respect to such Asset Sale in the taxable year thereof or in the following taxable year, (b) payment of all reasonable brokerage and underwriting commissions and other fees and expenses related to such Asset Sale, including transaction fees payable to Borrower's professional advisors, financial advisors and restructuring advisors, excluding Borrower's Chapter 11 counsel, and (c) in connection with any Asset Sale, all amounts used to repay Indebtedness secured by a prior Lien

SENIOR SECURED SUPER-PRIORITY
DEBTOR IN POSSESSION CREDIT AGREEMENT

on any asset disposed of in such Asset Sale or which is or may be required (by the express terms of a post-petition instrument governing such Indebtedness or an order of the Bankruptcy Court) to be repaid in connection with such Asset Sale (including payments made to obtain or avoid the need for the consent of any holder of such Indebtedness).

**Note:**  The Promissory Note dated as of the Closing Date executed and delivered by Borrower and payable to Lender in the form of **Exhibit A**.

**Obligations:**  All obligations of every nature and kind of Borrower from time to time owed or owing to Lender or any Indemnified Party under any Loan Document, whether for principal, interest (including interest that, but for the filing of the Chapter 11 Case with respect to Borrower, would have accrued on any Obligation, whether or not a claim is allowed against Borrower for such interest in the related bankruptcy proceeding), fees, expenses, indemnification, or otherwise.

**Permitted Liens:**  Liens in favor of Lender securing the Obligations and any of the following that are found by the Bankruptcy Court to be legal, valid, enforceable, perfected and non-avoidable:

(a)     Statutory Liens of landlords and Liens of suppliers, mechanics, carriers, materialmen, warehousemen or workmen and other similar Liens imposed by law created in the ordinary course of Borrower's business for amounts not yet due or that are being contested in good faith by appropriate proceedings properly instituted and diligently conducted and with respect to which adequate reserves or other appropriate provisions are being maintained;

(b)     Liens incurred or deposits made in the ordinary course of Borrower's business in connection with worker's compensation, unemployment insurance or other types of social security benefits or to secure the performance of bids, tenders, sales, contracts (other than for the repayment of borrowed money), surety, appeal and performance bonds, but only if all such Liens do not in the aggregate materially detract from the value of Borrower's assets or property taken as a whole or materially impair the use thereof in the operation of Borrower's business taken as a whole;

(c)     Any interest or title of the lessor in the property subject to any operating lease entered into by Borrower in the ordinary course of business; and

(d)     All pre-petition Liens or encumbrances against the Collateral, including the Real Property.

**Person:**  Natural persons, corporations, limited partnerships, general partnerships, limited liability companies, limited liability partnerships, joint stock companies, joint ventures, associations, companies, trusts, banks, trust companies, land trusts, business trusts or other legal entities and Governmental Authorities.

**Prepetition Indebtedness:**  All Indebtedness and any other obligations of Borrower outstanding on the Filing Date.

**Real Property:**  Real Property shall mean that certain real property and the improvements located thereon commonly known as 944 Airole Way, Los Angeles, California, as more particularly described in Exhibit A to the Deed of Trust.

SENIOR SECURED SUPER-PRIORITY
DEBTOR IN POSSESSION CREDIT AGREEMENT

**Restructuring Plan:**  A plan of reorganization or plan of liquidation subject to confirmation under Bankruptcy Code section 1129 in the Chapter 11 Case.

**Security Documents:**  Collectively, (a) that certain Deed of Trust in the form of **Exhibit B**; (b) that certain Security Agreement, substantially in the form of **Exhibit C**; (c) the Interim Order substantially in the form of **Exhibit D**; (d) the Final Order substantially in the form of **Exhibit** E; and (e) the applicable provisions of this Agreement that grant or purport to grant a Lien on any assets of Borrower in favor of Lender to secure the Obligations.  Security Documents that do not consist of the Interim order and the Final Order shall supplement, and shall not limit, the grant of a Lien on and security interest in the Collateral pursuant to the Interim Order and the Final Order.

**Senior Secured Super-Priority Construction Deed of Trust, Security Agreement and Fixture Filing with Assignment of Rents**:  The Senior Secured Superior-Priority Construction Deed of Trust, Security Agreement and Fixture Filing with Assignment of Rents (sometime referred to herein as the "**Deed of Trust**") shall be in the form attached hereto as **Exhibit B**.

**Subsidiary:**  As to any Person, (a) any corporation more than fifty percent (50%) of the outstanding securities having ordinary voting power of which shall at the time be owned or controlled, directly or indirectly, by such Person or by one or more of its Subsidiaries or by such Person and one or more of its Subsidiaries, or (b) any partnership, association, joint venture or similar business organization more than fifty percent (50%) of the membership or ownership interests of which shall at the time be so owned or controlled.  For purposes of this Agreement, a Person or Persons shall be deemed to have a majority ownership interest in a partnership, association, joint venture, or similar business organization if such Person or Persons shall be allocated a majority of the partnership, association, joint venture, or similar business organization gains or losses or shall be or control the managing general partner of such partnership, association, joint venture or similar business organization.

**Super-Priority Claim:**  As defined in <u>Section 3.4(c)</u> of this Agreement.

## ARTICLE 2
## REPRESENTATIONS AND WARRANTIES

**2.1**    **Representations and Warranties.**  To induce Lender to execute and perform this Agreement, Borrower hereby represents, covenants, and warrants to Lender as follows:

(a)    As of the Closing Date and at all times thereafter until the Obligations are paid in full and the Commitment is terminated, Borrower will have good title to the Collateral, subject only to the Permitted Liens.

(b)    Borrower owns, or is licensed to use, all patents, patent applications, trademarks, trade names, servicemarks, copyrights, technology, trade secrets, proprietary information, information technology, software, databases, domain names, know-how, plans and specifications, and processes necessary for the conduct of its business as currently conducted (the "**Intellectual Property**"), except for those the failure to own or license which, individually or in the aggregate, could not reasonably be expected to result in a Material Adverse Effect.  No claim has been asserted and is pending by any Person challenging or questioning the use of any Intellectual Property or the validity or effectiveness of any such Intellectual Property, nor does

SENIOR SECURED SUPER-PRIORITY
DEBTOR IN POSSESSION CREDIT AGREEMENT

Borrower know of any valid basis for any such claim except as would not reasonably be expected to have a Material Adverse Effect. The use of such Intellectual Property by Borrower does not infringe the rights of any Person, except for such claims and infringements that, individually or in the aggregate, could not reasonably be expected to result in a Material Adverse Effect. On and as of the date hereof (i) Borrower owns and possesses the right to use, and has done nothing to authorize or enable any other person to use, any copyright, patent, or trademark listed in Exhibit B to the Deed of Trust and (ii) all material registrations listed in Exhibit B to the Deed of Trust are valid and in full force and effect. To Borrower's knowledge, on and as of the date hereof, there is no material violation by others of any right of Borrower with respect to any copyright, patent or trademark listed in Exhibit A to the Deed of Trust, respectively, pledged by it under the name of Borrower.

(c)    Borrower is a limited liability company duly formed under the laws of California and is duly qualified to do business under the laws of each jurisdiction in which failure to be so qualified could reasonably be expected to have a Material Adverse Effect.

(d)    Subject to the approval of the Bankruptcy Court, the execution, delivery and performance of this Agreement and the other Loan Documents have been duly authorized by all necessary action on the part of Borrower, and no consent of any other party is required for the performance by Borrower of its Obligations hereunder and under the other Loan Documents.

(e)    The Loan Documents, when executed and delivered, will constitute the duly authorized, valid and legally binding obligations of Borrower and will be enforceable strictly in accordance with their respective terms, subject to the approval of the Final Order by the Bankruptcy Court in the Chapter 11 Case.

(f)    The execution, delivery and performance of this Agreement and the other Loan Documents do not and will not, and the use of the Collateral by Borrower does not and will not (i) violate any Legal Requirements, or (ii) upon entry of the Final Order, conflict with, be inconsistent with or result in any breach or default of any of the terms, covenants, conditions or provisions of any Contractual Obligation of any kind to which Borrower is a party or by which it or its assets may be bound.

(g)    Upon the entry of the Final Order by the Bankruptcy Court and the occurrence of the Closing Date, the Loan Documents are effective to create in favor of Lender, a legal, valid and enforceable first priority security interest in and Lien on the Collateral), and the Liens thereby created shall constitute a fully perfected first priority Lien on, and security interest in, all right, title and interest of Borrower in the Collateral, in each case encumbered by no Liens other than Permitted Liens.

(h)    No condition, circumstance, event, agreement, document, instrument, restriction, litigation or proceeding (or to the best knowledge of Borrower, litigation threatened) exists that does or could (i) adversely affect the validity or priority of the Liens and security interests granted to Lender under the Loan Documents; (ii) reasonably be expected to have a Material Adverse Effect; or (iii) constitute an Event of Default or a Default under any of the Loan Documents.

SENIOR SECURED SUPER-PRIORITY
DEBTOR IN POSSESSION CREDIT AGREEMENT

(i)    Reserved.

(j)    There is no claim, action, litigation, arbitration or other proceeding pending or, to the best of Borrower's knowledge, threatened, against Borrower that (i) relates to the Collateral or that could result in a Lien against the Collateral that is either *pari passu* or senior to the Liens granted to Lender under the Loan Documents or (ii) if adversely determined, could give rise to an event, condition, liability or circumstance that could constitute a Material Adverse Effect.

(k)    Borrower is not, as of the Closing Date and, after giving effect to the transactions contemplated by the Loan Documents, will not be, an "investment company" within the meaning of the Investment Company Act of 1940, as amended.

(l)    Borrower maintains and has paid all necessary premiums for the insurance required to be maintained pursuant to Section 8.2(f) of this Agreement.

**2.2    Continuation of Representations and Warranties.**  Borrower represents and warrants to Lender that each of the foregoing statements is true and correct on the date hereof and will be true and correct at all times thereafter until the Commitment has terminated and the Obligations have been paid or performed in full.

# ARTICLE 3
# AMOUNT AND TERMS OF COMMITMENT

**3.1    The Loan; Maturity Date.**

(a)    Subject to the terms and conditions set forth herein, Lender agrees to lend and Borrower agrees to borrow the principal sum of up to Twelve Million and No/100ths Dollars ($12,000,000.00) (the "**Loan**").  The Loan shall be fully disbursed in one Advance, in the maximum principal amount of $12,000,000.00 on the Closing Date.  Amounts repaid in respect of the Loan may not be reborrowed.

(b)    The Loan and all Advances shall be evidenced by the Note.  The date and amount of each Advance and the payment or prepayment of principal and interest with respect thereto shall be recorded by Lender on its books.  Each such recordation shall constitute prima facie evidence of the accuracy of the information so recorded in the absence of manifest error.

(c)    The Loan will mature on the Maturity Date, at which time the Commitment shall automatically terminate, and all Obligations shall be paid in full, without further application to or order of the Bankruptcy Court.

(d)    On or before February 28, 2022, Borrower has a one-time option to elect to extend the Maturity Date from February 28, 2022 to April 30, 2022.  The sole method by which Borrower may exercise its one-time option is to give written notice to Lender on or before February 28, 2022 that Borrower elects to extend the Maturity Date pursuant to the Extension Option, accompanied by payment of the Extension Fee by wire transfer in accordance with instructions of Lender; provided, however, Borrower may elect to defer payment of the Extension Fee at the time of giving its written notice to elect the Extension Option, in which case the Extension Fee shall be added to the principal balance of the Loan on the date of such written notice

11

(the "**Deferred Extension Fee**"). The Deferred Extension Fee shall be payable on the Maturity Date, as extended by the Extension Option. The Deferred Extension Fee shall bear interest at the Interest Rate from the date on which notice to elect to defer the Extension Fee is given until paid. The Extension Option shall expire unless duly and timely exercised by Borrower on or before February 28, 2022. For avoidance of doubt, in the event Borrower duly and timely exercises the Extension Option, the Maturity Date shall become April 30, 2022, and Borrower's obligation to make monthly interest payments shall continue.

**3.2     Use of Loan Proceeds.** Loan Proceeds shall be used solely in accordance with the Budget, including for payment of the Facility Fee, Lender's reasonable attorneys' fees and costs incurred in making and documenting the Loan, title insurance premiums, escrow fees, the Extension Fee, and the Carve Out and Borrower's working capital needs and to administer the Chapter 11 Case, including insurance, repair, maintenance and construction costs with respect to the Property. With respect to the fees and costs of the Manager of the Debtor, Manager shall file monthly fee statements and, absent an objection within seven (7) days thereafter, the fees and costs may be paid in full. In the event of an objection, the undisputed portion may be paid without prejudice to the balance subject to order of the Court. Without limiting the foregoing, no Loan Proceeds or proceeds of the Collateral may be used: (a) to finance in any way any investigation, action, suit, arbitration, proceeding, application, motion, or litigation of any type, provided that the Loan Proceeds may be used to review and investigate claims asserted against the estate, including claims of Lender: (i) adverse to the interests of Lender or its rights or remedies under this Agreement, or the other Loan Documents, (ii) adverse to the interests of Lender under any pre-petition financing arrangement with, or equity interest in, Borrower, (iii) for monetary, injunctive or any other relief whatsoever against Lender, or (iv) to prevent, hinder, or otherwise delay the exercise by Lender of any rights and remedies under the Loan Documents, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Bankruptcy Court or otherwise) by Lender upon any of the Collateral; (b) to make any distribution under a Restructuring Plan; (c) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consent of Lender; or (d) to pay any fees or similar amount to any Person in connection with any Asset Sale (including so-called "topping" or "breakup" fees) without the prior written consent of Lender.

**3.3     Payment; Prepayments and Reduction of Aggregate Commitment.**

(a)     **Mandatory Prepayments.**

(i)     Asset Sale Prepayments. Upon the consummation of any Asset Sale, other than sales of assets to the extent permitted pursuant to Section 8.3(b) of this Agreement, Borrower shall make a mandatory prepayment of the Loan from the Net Cash Proceeds in an amount equal to the lesser of such Net Cash Proceeds and the aggregate outstanding Obligations.

(ii)     Proceeds of any Indebtedness. Upon receipt of any proceeds arising from the incurrence of any Indebtedness, Borrower shall make a mandatory prepayment of the Loan in an amount equal to the lesser of (x) one hundred percent (100%) of the proceeds so received and (y) the aggregate amount of the outstanding Obligations.

12

(b)     **Reserved.**

**3.4     Super-Priority Nature of Obligations and Status of Lender's Liens.**

(a)     On and after the Closing Date, subject to <u>Section 3.4(b)</u> of this Agreement, the provisions of the Loan Documents shall be effective to create in favor of Lender, legal, valid and perfected Liens on and security interests in all right, title and interest of Borrower in the Collateral, enforceable against Borrower, including as follows:

(i)     Pursuant to Bankruptcy Code section 364(c)(2) and (d), the Interim Order, and the Final Order, all Obligations shall be secured by a perfected first-priority senior Lien on all Collateral.

(ii)     Reserved.

Subject to the Interim Order and the Final Order, no filings, recordings or other actions shall be necessary to perfect and maintain the perfection and status of such Liens.

(b)     Notwithstanding anything in this Agreement to the contrary, Lender's Liens pursuant to Bankruptcy Code section 364(c)(2) and (d) shall be subject to the Carve Out; <u>provided</u>, <u>however</u>, that (i) payment of the Carve Out shall not reduce the amounts payable to Lender hereunder or under the other Loan Documents or affect the rights of Lender to receive such payment; and (ii) under no circumstances shall Lender be responsible or liable for, or itself obligated to pay, any of the fees or other items constituting the Carve Out.

(c)     Pursuant to Bankruptcy Code section 364(c)(1), the Interim Order, and the Final Order, all Obligations at all times shall constitute allowed super-priority administrative expense claims in the Chapter 11 Case and any successor case (without need to file a proof of claim), having priority in payment over any and all allowed administrative expense claims, secured claims, unsecured claims, and all other claims against Borrower, whensoever arising, of any kind or nature, subject only to the Carve Out (the "**Super-Priority Claim**").

(d)     Except for the Carve Out (and as subject to <u>Section 3.4(b)(ii)</u> above), no costs or expenses of administration shall be imposed against Lender or any of the Collateral under Bankruptcy Code sections 105 or 506(c), or otherwise, and Borrower hereby waives for itself and on behalf of its estate in bankruptcy, any and all rights under Bankruptcy Code sections 105 or 506(c), or otherwise, to assert or impose or seek to assert or impose, any such costs or expenses of administration against Lender or the Collateral, except that the waiver of Bankruptcy Code section 506(c) shall be effective only during the period in which Borrower is authorized to borrow under the Loan.

**3.5     No Discharge; Survival of Liens and Claims; Waiver of Priming Rights.**

(a)     The Obligations shall not be discharged by (i) the entry of an order confirming a Restructuring Plan (and Borrower pursuant to Bankruptcy Code section 1141(d)(4), hereby waives any such discharge), (ii) the conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or (iii) the dismissal of the Chapter 11 Case or any such subsequent chapter 7 case.

(b)    The Liens and Super-Priority Claim granted to Lender pursuant to any of Loan Documents shall continue in full force and effect and not be affected in any manner by (i) the entry of an order confirming a Restructuring Plan; (ii) the appointment of an examiner or trustee in the Chapter 11 Case; or (iii) the conversion of the Chapter 11 Case to a case proceeding under chapter 7 of the Bankruptcy Code.

**3.6    Payment of Obligations.**    On the Maturity Date, the Commitment shall automatically terminate, and Borrower shall pay to Lender in cash all the Obligations in full, without further application to or order of the Bankruptcy Court.

**3.7    No Marshaling.**    Lender shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral or otherwise, and Borrower shall not assert any such theory of law or equity as it relates to the Collateral or collection of the Loan or any other Obligations.

## ARTICLE 4
## PRINCIPAL; INTEREST; SPECIAL PROVISIONS

**4.1    Interest on the Loan.**

(a)    Borrower shall pay to Lender interest on the unpaid principal balance of the Note computed at the Interest Rate.  The Deferred Extension Fee shall be added to the principal balance of the Loan on that date on which Borrower elects the Extension Option and elects the Deferred Extension Fee.  Interest shall be computed on the basis of a 360-day year plus the actual number of days the Note's principal is unpaid, using a 31-day month.  Lender's internal records of applicable interest rates shall be determinative in the absence of manifest error.

(b)    During the continuance of any Event of Default, the aggregate amount of all outstanding principal on the Note and, to the extent permitted by law, all accrued and unpaid interest in respect thereof, and any other amounts due pursuant to the Loan Documents, will at Lender's option and without need for notice to Borrower, accrue interest at the Default Rate, calculated from the occurrence of the Event of Default.

**4.2    Terms of Payment of Principal and Interest.**

(a)    **Interest.**    Interest on the outstanding principal balance of the Note will accrue from and including the date of the first Advance and shall be due and payable by Borrower in arrears on the first day of each successive calendar month and on the Maturity Date in each case, in good United States funds.

(b)    **Principal.**    Except for mandatory prepayments as set forth in <u>Section 3.3</u> of this Agreement, all principal advanced under the Note shall be due and payable by Borrower on the Maturity Date.  Immediately upon any repayment of principal under the Note, the Aggregate Commitment shall be permanently reduced by the principal amount then repaid.

14

SENIOR SECURED SUPER-PRIORITY
DEBTOR IN POSSESSION CREDIT AGREEMENT

### 4.3     Method and Place of Payment.

(a)     All payments and prepayments of principal, interest, fees, expenses, and other Obligations under the Loan Documents payable to Lender shall be made, without deduction, setoff, or counterclaim, by wire transfer in immediately available United States Dollars not later than 1:00 p.m., prevailing Eastern time on the dates due, to Lender at the office specified by it from time to time.  Funds received on any day after 1:00 p.m., prevailing Eastern time will be deemed to have been received on the next Business Day.  Whenever any payment to be made hereunder or under any other Loan Document is stated to be due on a day that is not a Business Day, such payment shall be made on the next succeeding Business Day and such extension of time will be included in the computation of any interest or fees.

(b)     So long as no Event of Default has occurred and is then continuing, all payments received by Lender for application to the Obligations shall be applied as follows:

(i)     **First,** to payment of that portion of the Obligations constituting fees, indemnities and other amounts (other than principal and interest) payable to Lender, including fees, charges and disbursements of counsel or other professionals to Lender and other amounts payable under <u>Sections 4.7</u> and <u>10.4</u> of this Agreement;

(ii)     **Second,** to payment of accrued and unpaid interest on the Loan and the other Obligations; and

(iii)     **Third,** to payment of unpaid principal on the Loan and the other Obligations.

During the continuance of an Event of Default, all amounts received by Lender will be applied in such amounts, order, and priority as Lender determines at its discretion.

### 4.4     Reserved.

**4.5     Taxes.**  All payments made by Borrower under the Loan Documents shall be made free and clear of, and without deduction or withholding for or on account of, any present or future income, stamp or other taxes, levies, impositions, duties, charges, fees, deductions or withholdings, now or hereafter imposed, levied, collected, withheld or assessed by any Governmental Authority, excluding net income taxes and franchise taxes (imposed in lieu of net income taxes) imposed on Lender as a result of a present or former connection between Lender and the jurisdiction of the Governmental Authority imposing such tax or any political subdivision or taxing authority thereof or therein (other than any such connection arising solely from Lender having executed, delivered or performed its obligations or received a payment under, or enforced, this Agreement or the other Loan Documents).  If any such non-excluded taxes, levies, imposts, duties, charges, fees, deductions or withholdings ("**Non-Excluded Taxes**") are required to be withheld from any amounts payable to Lender hereunder or under the other Loan Documents, the amounts so payable to Lender shall be increased to the extent necessary to yield to Lender (after payment of all Non-Excluded Taxes) interest or any such other amounts payable hereunder at the rates or in the amounts specified in this Agreement.  Whenever any Non-Excluded Taxes are payable by Borrower, as promptly as possible thereafter, Borrower shall send to Lender a certified copy of an original official receipt received by Borrower showing payment thereof.  If Borrower fails to pay

SENIOR SECURED SUPER-PRIORITY
DEBTOR IN POSSESSION CREDIT AGREEMENT

any Non-Excluded Taxes when due to the appropriate taxing authority or fails to remit to Lender the required receipts or other required documentary evidence, Borrower shall indemnify Lender for any incremental taxes, interest or penalties that may become payable by Lender as a result of any such failures. This <u>Section 4.4</u> shall survive the termination of this Agreement and the payment of the Obligations, as set forth in the Loan Documents. Notwithstanding anything to the contrary contained in this Section, Borrower shall not be required to pay any additional amounts to Lender pursuant to this Section to the extent such additional amounts result from such Lender's gross negligence or willful misconduct as found in a final non-appealable judgment by a court of competent jurisdiction.

**4.6     Loan Indemnification.**  Borrower shall indemnify and hold harmless Lender and its Affiliates, officers, directors, employees, agents, advisors, attorneys, and representatives (each, an "**Indemnified Party**") from and against any and all claims, damages, losses, liabilities and expenses (including reasonable fees of counsel and disbursements), joint or several, that may be incurred by or asserted or awarded against any Indemnified Party, in each case arising out of or in connection with or relating to any investigation, litigation or proceeding, or the preparation of any defense with respect thereto, arising out of or in connection with or relating to this Agreement, the other Loan Documents, or the transactions contemplated hereby or thereby, or any use made or proposed to be made with the proceeds of the Loan, whether or not such investigation, litigation or proceeding is brought by Borrower, any of its shareholders, or creditors, an Indemnified Party, or any other Person, or an Indemnified Party is otherwise a party thereto and whether or not the transactions contemplated hereby or thereby are consummated, except to the extent such claim, damage, loss, liability, or expense is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted from such Indemnified Party's gross negligence or willful misconduct.  No Indemnified Party shall have any liability (whether direct or indirect, in contract, tort, or otherwise) to Borrower or any of its shareholders or creditors for or in connection with the transactions contemplated hereby or thereby, except to the extent such liability is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted from such Indemnified Party's gross negligence or willful misconduct.  In no event, however, shall any Indemnified Party be liable on any theory of liability for any special, indirect, consequential, or punitive damages.  Borrower hereby grants each Indemnified Party permission to select counsel of such Indemnified Party's own choosing.  Borrower permits each Indemnified Party to negotiate, mediate, arbitrate, and/or settle any and all claims, damages, losses, liabilities, and expenses (including reasonable fees of counsel and disbursements), joint or several, that may be alleged or asserted against any Indemnified Party, subject only to Borrower's reasonable consent, and Borrower shall not unreasonably withhold its consent to such settlement.  The provisions set forth in this Section shall survive the payment of the Obligations, the termination of the Commitment, and any cancellation of this Agreement.  Without limiting the foregoing, Borrower shall pay, and hold each Indemnified Party harmless from, any and all claims of any brokers, finders or agents claiming a right to any fees in connection with arranging the financing contemplated hereby. Nothing set forth herein shall be deemed to be an obligation to indemnify Lender in any manner with respect to any obligations or claims of Lender unrelated to the Loan, including, without limitation, claims of Lender with respect to financing extended prior to the Filing Date.

**4.7     Fees and Expenses.**  On the Closing Date, Borrower shall pay Lender all reasonable costs and expenses of Lender incurred in the preparation of this Agreement and the other Loan Documents, including attorneys' fees, which on the Closing Date Lender shall be

16

authorized to advance to itself from the Loan Proceeds. In addition Borrower shall pay all costs of closing this Loan, including title insurance premiums, escrow fees and other fees incurred in closing, and Borrower shall owe Lender a fee of $120,000.00, which is equal to one percent (1%) of the Aggregate Commitment (the **"Facility Fee"**), which Lender shall be authorized to advance to itself from the Loan Proceeds. From time to time thereafter, upon demand by Lender, and on the Maturity Date, Borrower shall pay or reimburse Lender for all fees (including attorneys' fees), costs, and expenses associated with the enforcement of rights and remedies set forth in this Agreement and the other Loan Documents.

**4.8    Advances.** The Loan Proceeds will be advanced by Lender for the benefit of Borrower in accordance with the terms and conditions set forth in this Agreement. All monies advanced by Lender will constitute a loan made to Borrower under this Agreement, evidenced by the Note and secured by the Security Documents, and interest will be computed thereon, as prescribed by this Agreement, from the date Lender makes, or is deemed to have made, the Advance.

**4.9    No Waiver.** The making of an Advance will not constitute a waiver of any condition precedent to the obligation of Lender to make any Advance or preclude Lender from thereafter declaring the failure of Borrower to satisfy any such condition precedent to be an Event of Default. All conditions precedent to the obligation of Lender to make an Advance are imposed hereby solely for the benefit of Lender, and no other party may require satisfaction of any such condition precedent or will be entitled to assume that Lender will make or refuse to make any Advance in the absence of strict compliance with such condition precedent. Lender may waive any requirement of this Agreement for any Advance.

**4.10    Advances Secured by Loan Documents.** It is expressly agreed that any Advance made by Lender will, as and when made, be deemed authorized by Borrower and made pursuant to this Agreement and will become and remain secured by the Security Documents and considered part of the obligations secured thereby.

## ARTICLE 5
## CONDITIONS PRECEDENT TO EACH ADVANCE

**5.1    Conditions Precedent to Each Advance.** The obligation of Lender to make an Advance is subject to the following conditions precedent:

(a)    Lender has obtained a copy of the Interim Order as entered on the Bankruptcy Court's docket in the Chapter 11 Case.

(b)    There exists no Default or Event of Default under this Agreement or any other Loan Document.

(c)    Reserved.

(d)    The representations and warranties in this Agreement and the other Loan Documents are true and correct in all material respects as of such requested Borrowing Date except for changes thereto as the result of actions required by the terms of this Agreement and the other Loan Documents or with the prior written consent of Lender; provided, however, that the words

17

"in all material respects" in this <u>Section 5.1(e)</u> shall, as to any representation or warranty that contains a materiality standard, operate without duplication with such standard.

(e)     Following the entry of the Interim Order and during the Availability Period, (i) the Interim Order is in full force and has not been reversed, modified, amended, rescinded, vacated or subject to a presently effective stay pending appeal, without the prior written consent of Lender, and (ii) the aggregate of all Advances does not exceed the Aggregate Commitment.

(f)     There is no event, condition, obligation, liability, litigation, or circumstance that would constitute a Material Adverse Effect.

(g)     Lender has received such information and materials relating to the Collateral as Lender reasonably requires.

(h)     Borrower has complied with the funding conditions and procedures described in <u>Section 7.1</u> of this Agreement.

Each request for an Advance shall constitute a representation and warranty by Borrower that the conditions contained in this <u>Section 5.1</u> have been satisfied unless waived in writing by Lender.

**ARTICLE 6**
**CONDITIONS TO CLOSING**

**6.1     Conditions to Closing.**  The obligation of Lender to close the Loan and to make any Advance is further subject to the satisfaction, or waiver in accordance with <u>Section 11.2</u> of this Agreement, of the following conditions, which must be completed and fulfilled to the satisfaction of Lender at its discretion on or before the Closing Date:

(a)     **Delivery of Documents.**  Borrower has furnished to Lender, in form and substance satisfactory to Lender, duly executed copies of this Agreement and each of the other Loan Documents required to be executed and delivered to Lender by Borrower.

(b)     **Fees and Expenses.**  All costs, charges, fees, expenses (including legal fees and expenses) and other compensation payable or reimbursable to Lender, to the extent due as of the Closing Date have been paid to Lender, or provisions satisfactory to Lender have been made to pay such amounts to Lender.

(c)     **Entry of the Final Order.**  No later than December 10, 2021, Borrower has filed a motion for approval of the Loan Documents and entry of the Interim Order, and, no later than seven (7) calendar days after the filing of that motion, the Interim Order has been entered and no later than thirty (30) calendar days after the filing of that motion, the Final Order has been entered.

(d)     **Motions and Other Documents.**  Borrower has provided Lender with a copy of all motions and other documents to be filed by Borrower with and submitted to the Bankruptcy Court in connection with the Loan, which motions and other documents shall be in form and substance reasonably satisfactory to Lender.  Borrower has not filed any motion or

18

SENIOR SECURED SUPER-PRIORITY
DEBTOR IN POSSESSION CREDIT AGREEMENT

pleading that has or may have an effect on the rights granted to Lender under the Loan Documents without first providing Lender with sufficient and reasonable notice of such motion or pleading.

(e)    **No Material Adverse Effect.**  No change has occurred that results in a Material Adverse Effect.

(f)    **Additional Documents.**  Lender has received such other papers, reports and documents regarding Borrower or the Collateral as Lender or its counsel reasonably may require.

## ARTICLE 7
## FUNDING CONDITIONS AND MECHANICS

**7.1    Funding Conditions and Mechanics.**

(a)    Upon satisfaction of the applicable conditions set forth in this <u>Section 7.1</u>, and <u>Sections 5.1</u> and <u>6.1</u> above, Lender shall disburse the Advance to Borrower (less sums advanced to Lender as provided in this Agreement) by wire transfer not later than 1:00 p.m. prevailing Eastern Time on the second Business Day after the Interim Order is entered.

## ARTICLE 8
## FURTHER AGREEMENTS OF BORROWER

While this Agreement is in effect, and until Lender has been paid all Obligations in full, Borrower agrees to comply with, observe and keep the following covenants and agreements:

**8.1    Furnishing Information.**  Borrower shall:

(a)    Deliver to Lender, as soon as practicable, and in advance of filing with the Bankruptcy Court:  (i) the proposed Interim Order; (ii) the proposed Final Order, (iii) all other proposed orders and pleadings related to the Collateral or the Loan, (iv) any offers, bids, letters of interest, or proposals to purchase assets or restructure obligations, (v) any Restructuring Plan, and (vi) any disclosure statement related to such plan.  All of the foregoing (except for (iv)) must be in form and substance reasonably satisfactory to Lender;

(b)    Promptly notify Lender in writing of any condition or event that constitutes a Default or an Event of Default;

(c)    Promptly notify Lender of any circumstance or condition that constitutes or, unless abated, could constitute a Material Adverse Effect, and of any material adverse change in the financial condition of Borrower;

(d)    Promptly after the same is available (to the extent not otherwise previously delivered), furnish to Lender's counsel all pleadings, motions, applications, judicial information, financial information and other documents filed by or on behalf of Borrower with the Bankruptcy Court or the United States Trustee in the Chapter 11 Case, or distributed by or on behalf of Borrower to any committee appointed in the Chapter 11 Case; and

19

SENIOR SECURED SUPER-PRIORITY
DEBTOR IN POSSESSION CREDIT AGREEMENT

(e)     Promptly upon receiving a request therefor from Lender, prepare and deliver to Lender such other information with respect to Borrower or the Collateral, including schedules identifying and describing the Collateral and any dispositions thereof or any Asset Sale and the use of the Net Cash Proceeds thereof, as from time to time reasonably may be requested by Lender.

**8.2     Affirmative Covenants.**

(a)     **Existence, Etc.**  Borrower shall at all times maintain its organizational existence and preserve and keep, or cause to be preserved and kept, in full force and effect, all rights and franchises material to its business, and shall be in good standing under the law of California.

(b)     **Powers; Conduct of Business.**  Borrower shall qualify and remain qualified to do business in each jurisdiction in which the nature of its business requires it to be so qualified and where the failure to be so qualified could reasonably be expected to have a Material Adverse Effect.  Borrower shall carry on and conduct its business in substantially the same manner and in substantially the same fields of enterprise as it is presently conducted.

(c)     **Compliance with Laws, Etc.**  Borrower shall (i) comply with all Legal Requirements and all restrictive covenants affecting Borrower or its business, properties, assets or operations, and (ii) obtain, as needed, all permits necessary for its operations and maintain such permits in good standing unless the failure to comply or obtain same could not reasonably be expected to have a Material Adverse Effect.

(d)     **Use of Proceeds.**  Borrower shall solely and exclusively use the Loan Proceeds in the manner specified in this Agreement, and the Final Order, as applicable.

(e)     **Payment of Taxes.**  Borrower shall pay as and when due all post-petition taxes (other than property taxes contemplated to be paid upon consummation of a sale of the Real Property or the effectiveness of a plan in the Chapter 11 Case), assessments and other governmental charges imposed upon it or on any of its properties or assets or in respect of any of its franchises, business, income or property before any penalty or interest accrues thereon; provided, however, that no such taxes, assessments and governmental charges (and interest, penalties or fines relating thereto) need be paid if being contested in good faith by appropriate proceedings diligently instituted and conducted and for which adequate reserves are maintained.

(f)     **Insurance.**  Lender has been advised and understands that as of the date of execution of this document, insufficient insurance coverage exists on the Property and that Borrower is using best efforts to procure sufficient coverage.  Subject to the foregoing, Borrower shall maintain in full force and effect insurance policies and programs or other policies and programs as reflect coverage that is consistent with prudent industry practice.  In the event Borrower at any time or times hereafter fails to obtain or maintain any of the policies of insurance required herein or to pay any premium in whole or in part relating thereto, then Lender, without waiving or releasing any obligation of Borrower therefor or resulting Event of Default and without obligation to do so, may at any time or times thereafter obtain and maintain such policies of

insurance and pay such premiums and take any other action with respect thereto that Lender deems advisable. All sums so disbursed by Lender shall constitute part of the Obligations.

(g) **Inspection of Property; Books and Records; Discussions.** Upon reasonable advance notice, Borrower shall permit any authorized representative(s) designated by Lender to visit and inspect any of the properties of Borrower to examine, audit, check and make copies of its financial and accounting records, books, journals, orders, receipts and any correspondence and other data relating to its business, the Collateral, or the transactions contemplated by the Loan Documents (including in connection with environmental compliance, hazard or liability), and to discuss its affairs, finances and accounts with its officers and independent certified public accountants, all upon reasonable notice and at such reasonable times during normal business hours, as often as reasonably may be requested. Without limiting the foregoing, Borrower shall permit any authorized representatives designated by Lender to complete each such audit, collateral analysis, appraisal, field examination, environmental survey or other business analysis with respect to Borrower as Lender shall request, all upon reasonable notice and at such reasonable times during normal business hours, as often as reasonably may be requested.

(h) **Insurance.** Borrower hereby directs all insurers under policies of insurance relating to the Collateral to pay all proceeds payable under such policies directly to Lender.

(i) **Maintenance of Property.** Borrower shall cause all property used or useful in the conduct of its business to be maintained and kept in good condition, repair and working order and supplied with all necessary equipment and shall cause to be made all necessary repairs, renewals, replacements, betterments and improvements thereof, all as in the judgment of Borrower may be necessary so that the business carried on in connection therewith may be properly and advantageously conducted at all times; provided, however, that nothing contained herein shall prevent Borrower from discontinuing the operation or maintenance of any of such property if such discontinuance is, in the judgment of Borrower, desirable in the conduct of its business and not disadvantageous in any material respect to the interests of Lender.

(j) **Further Assurance.** At Lender's reasonable request, Borrower shall execute and deliver such documents as may be necessary (i) to perfect and maintain perfected and valid Liens upon the Collateral and the personal property located thereon and the Liens granted to Lender pursuant to this Agreement or any of the other Loan Documents, and (ii) to fully consummate the transactions contemplated by this Agreement.

(k) **Other Reports.** Borrower shall promptly deliver to Lender, and no less frequently than every four (4) weeks, updates with respect to Asset Sales (including notice of all offers and terms thereof), cost savings and other matters reasonably requested by Lender, including as soon as practicable in advance of filing, all motions, related pleadings, and proposed orders relating to the Loan, any proposed sale of Borrower's assets, and any plan of reorganization or liquidation (all in form and substance reasonably satisfactory to Lender).

(l) **Auction Sale.** Borrower shall schedule an Auction Sale of the Real Property to be conducted by a duly qualified auctioneer on or before February 10, 2022. Terms of the Auction Sale shall include, but shall not be limited to, a closing of the sale of the Real Property on or before February 28, 2022.

21

SENIOR SECURED SUPER-PRIORITY
DEBTOR IN POSSESSION CREDIT AGREEMENT

### 8.3    Negative Covenants.

(a)    **Indebtedness.**   Borrower shall not directly or indirectly create, incur, assume or otherwise become or remain directly or indirectly liable with respect to any Indebtedness, except the Obligations and the Prepetition Indebtedness (including intercompany Indebtedness).

(b)    **Sales of Assets.**   Borrower shall not sell, transfer, lease, exchange, alienate or dispose of any or all Collateral, other than in accordance (or not inconsistent) with the Final Order or any other order entered in the Chapter 11 Case.

(c)    **Liens.**   Borrower shall not directly or indirectly create, incur, assume or permit to exist any Lien on or with respect to any of its property or assets, except  for Permitted Liens.

(d)    **Contingent Obligations.**   Neither Borrower nor its Subsidiaries, if any, shall directly or indirectly create or become or be liable with respect to any Contingent Obligation.

(e)    **Reserved.**

(f)    **Restriction on Fundamental Changes.**   Borrower shall not enter into any merger or consolidation, or liquidate, wind-up or dissolve (or suffer any liquidation or dissolution), discontinue or otherwise change any of its lines of business or, except as otherwise permitted or required by this Agreement, the other Loan Documents, or by order of the Bankruptcy Court, convey, lease, sell, transfer or otherwise dispose of, in one transaction or series of transactions, all or substantially all of Borrower's business or property, whether now or hereafter acquired.

(g)    **Corporate Documents.**   Borrower shall not amend, modify or otherwise change (i) in any material manner the nature and type of its business or the manner in which such business is conducted or (ii) its organizational documents, except as required by the Bankruptcy Code or order of the Bankruptcy Court.

(h)    **Prohibition Against Additional Recordings.**   Borrower shall not record or permit to be recorded any document, instrument, agreement or other writing against the Collateral, other than Liens in favor of Lender that secure the Obligations.

(i)    **Chapter 11 Claims.**   Borrower shall not incur, create, assume, suffer to exist or permit any administrative expense, unsecured claim, or other super-priority claim or Lien on the Collateral that is *pari passu* with or senior to the claims of Lender against Borrower or the Collateral, or apply to the Bankruptcy Court for authority to do so, except for Permitted Liens and the Carve Out.

(j)    **Limitation on Prepayments of Prepetition Indebtedness.**   Other than payments authorized by the Bankruptcy Court, Borrower shall not (i) make any payment or prepayment on or redemption or acquisition for value of any Prepetition Indebtedness, (ii) pay any interest on any Prepetition Indebtedness (whether in cash, in in-kind securities or otherwise), or (iii) make any payment or create or permit any Lien pursuant to Bankruptcy Code section 361 (or pursuant to any other provision of the Bankruptcy Code authorizing adequate protection).

22

(k)    **Orders.**  Borrower shall not make or permit to be made any change, amendment or modification, or make any application or motion for any change, amendment or modification, to the Final Order other than as approved in writing by Lender.

(l)    **Fiscal Year.**  Borrower shall not change its fiscal year.

## ARTICLE 9
## ASSIGNMENTS; CONFIDENTIALITY

**9.1    Successors and Assigns.**  The terms and provisions of the Loan Documents shall be binding upon and inure to the benefit of Borrower, Lender and their respective successors and assigns, except that Borrower shall not have the right to assign its rights or obligations under the Loan Documents. Lender may at any time, and from time to time, assign or transfer the Loan and the Loan Documents, upon prior notice to Borrower.  No assignment by Lender shall release Lender from its obligations hereunder arising prior to the date of assignment but shall release Lender of all obligations first accruing or arising thereafter.  Any assignee or transferee agrees by acceptance thereof to be bound by all the terms and provisions of the Loan Documents.  Any request, authority or consent of any Person, who at the time of making such request or giving such authority or consent is the holder of the Notes, shall be conclusive and binding on any subsequent holder, transferee or assignee of such Notes or of any instruments issued in exchange therefor.

**9.2    Confidentiality.**  Subject to Section 9.3 of this Agreement, Lender and its representatives, consultants, and advisors shall hold all nonpublic information obtained pursuant to the requirements of this Agreement and identified as such by Borrower in accordance with such Person's customary procedures for handling confidential information of that nature; provided, however, that such Persons may make disclosures (a) to Affiliates of Lender, (b) to prospective transferees or participants in connection with a contemplated participation or assignment, or (c) as required or requested by any Governmental Authority or representative thereof or pursuant to legal process, and shall require any such Affiliate or transferee to agree (and require any of its transferees to agree in writing) to comply with this Section. In no event shall Lender or any of its Affiliates be obligated or required to return any materials furnished by Borrower; provided, however, that each prospective transferee shall be required to agree that if it does not become a participant or assignee, it shall return all materials furnished to it by or on behalf of Borrower in connection with this Agreement.

**9.3    Dissemination of Information.**  Borrower authorizes Lender and its Affiliates to disclose to any prospective participant or transferee any and all information in the possession of Lender or its Affiliates concerning Borrower and the Collateral; provided, however, that prior to any such disclosure, such prospective participant or transferee shall agree in writing to preserve, in accordance with Section 9.2 of this Agreement, the confidentiality of any confidential information therein.

**9.4    Non-Disclosure and Confidentiality Agreements.**  Notwithstanding any terms herein, in any other Loan Document or in any other agreement between Lender and Borrower or between any third party and Borrower regarding non-disclosure and confidentiality, Lender is hereby granted the right, at its sole discretion (and Borrower hereby agrees that it shall not be a violation of any such non-disclosure or confidentiality agreement if Lender exercises such right),

to communicate with, and request and receive information from and use information received from, third parties relating to the transactions described herein, the Collateral and any other matters relating to Borrower, provided, however, that Lender shall hold and use such information subject to the terms of Sections 9.2 and 9.3 of this Agreement.

## ARTICLE 10
## EVENTS OF DEFAULT BY BORROWER

**10.1    Events of Default.**  Notwithstanding the provisions of Bankruptcy Code section 362, the occurrence of any one or more of the following shall constitute an "**Event of Default**" hereunder, and any Event of Default that may occur hereunder shall also constitute an Event of Default under each of the other Loan Documents:

(a)    Borrower fails to pay any of the Obligations when due according to the terms of this Agreement or any other Loan Document;

(b)    Borrower fails to perform or cause to be performed any obligation or observe any condition, covenant, term, agreement or provision required to be performed or observed by Borrower under Sections 8.2(g), 8.2(i), 8.2(j) or 8.2(l) of this Agreement;

(c)    Except as otherwise provided in this Section 10.1, Borrower fails to perform or cause to be performed any other obligation or observe any other condition, covenant, term, agreement or provision required to be performed or observed by Borrower under this Agreement or under the other Loan Documents;

(d)    The existence of any inaccuracy or untruth in any material respect in any representation or warranty contained in this Agreement or any of the other Loan Documents or of any statement or certification as to facts delivered to Lender by Borrower, except for changes thereto as the result of actions required by the terms of this Agreement and the other Loan Documents or with the written consent of Lender; provided, however, that the words "in any material respect" in this Section 10.1(d) shall, as to any representation or warranty that contains a materiality standard, operate without duplication with such standard;

(e)    The dissolution, termination, or merger of Borrower;

(f)    Borrower is in default under any term, covenant, or condition of the Note, the Security Documents, or any other Loan Document, other than a default described elsewhere in this Section 10.1;

(g)    Any security interest and Lien purported to be granted by the Security Documents ceases to be in full force and effect or of first priority in favor of Lender, or is asserted by Borrower not to be a valid, perfected, first-priority security interest in or Lien on the Collateral covered thereby;

(h)    The Bankruptcy Court dismisses the Chapter 11 Case, converts the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or appoints a trustee or examiner in the Chapter 11 Case;

24

(i)     Borrower files, supports or fails to oppose a motion seeking, or the Bankruptcy Court enters, an order in the Chapter 11 Case appointing a trustee or an examiner under chapter 11 of the Bankruptcy Code;

(j)     Borrower files, supports or fails to oppose a motion seeking, or the Bankruptcy Court enters, an order in the Chapter 11 Case (i) approving additional financing under Bankruptcy Code sections 364(c) or (d) not otherwise permitted pursuant to this Agreement (unless such financing is proposed to refinance and pay in full the Obligations with the termination of the Commitment), (ii) granting any Lien (other than Permitted Liens) upon or affecting any Collateral that is *pari passu* or senior to the Liens on the Collateral granted in favor of Lender, (iii) granting any claim priority senior to or *pari passu* with the claims of Lender under the Loan Documents or any other claim having priority over any or all administrative expenses of the kind specified in Bankruptcy Code sections 503(b) or 507(b), other than the Carve Out, or (iv) granting any other relief that is adverse to Lender's interests under any Loan Document, its rights and remedies hereunder or thereunder or its interests in the Collateral;

(k)     Borrower fails to comply with the terms of the Interim Order, Final Order or any other Bankruptcy Court order in any material respect;

(l)     Any material term of this Agreement or the other Loan Documents ceases to be valid and binding on Borrower, or Borrower so asserts in any pleading filed in any court;

(m)     If the Interim Order is not confirmed *in toto* by the Final Order, or if the Final Order is (i) reversed, stayed for a period in excess of fourteen (14) days, vacated or rescinded or (ii) amended, supplemented or otherwise modified without the written consent of Lender;

(n)     Borrower, or any of its Affiliates, files a motion for reconsideration or other motion that seeks to materially and adversely affect Lender's rights;

(o)     The right of Borrower to borrow under this Agreement is terminated by an order entered by the Bankruptcy Court;

(p)     Borrower seeks to, or supports (in any such case by way of any motion or other pleading filed with the Bankruptcy Court or any other writing to another party in interest executed by or on behalf of Borrower), any other Person's motion to disallow, in whole or in part, Lender's claim in respect of the Obligations or to challenge the validity, perfection, priority, non-avoidability or enforceability of the Liens in favor of Lender;

(q)     Unless in connection with a duly-confirmed Restructuring Plan, the Bankruptcy Court enters an order granting relief from the automatic stay to any creditor or party in interest to permit actions that would have a Material Adverse Effect on Borrower, the Collateral, the estate in the Chapter 11 Case, or Lender;

(r)     Any judgment rendered against Borrower that, to the extent not covered by insurance, exceeds or, in the aggregate with other judgments exceeds, Ten Thousand Dollars ($10,000.00) as to any postpetition obligation, and the enforcement thereof is not stayed (by court ordered stay or by consent of the party litigants), or there is rendered against Borrower a non-

SENIOR SECURED SUPER-PRIORITY
DEBTOR IN POSSESSION CREDIT AGREEMENT

monetary judgment with respect to a postpetition event that causes or would reasonably be expected to cause a Material Adverse Effect;

(s)     Absent the prior written consent of Lender and unless in connection with a duly-confirmed Restructuring Plan, the Bankruptcy Court enters an order under Bankruptcy Code sections 363 or 365 authorizing or approving the sale or assignment of any of Borrower's assets, or procedures in respect thereof, or Borrower seeks, supports or fails to contest in good faith, the entry of such an order in the Chapter 11 Case, unless, immediately, upon the closing of any such sale or assignment, the proceeds thereof are used to repay the Obligations in full in cash and the Commitment is terminated;

(t)     A Restructuring Plan is filed by Borrower or any other Person, and such plan (including amendments thereto) does not provide for the termination of the Commitment and indefeasible payment in full in cash of all Obligations on or before the effective date thereof;

(u)     The entry of an order in the Chapter 11 Case confirming a plan of reorganization or liquidation that does not contain a provision for termination of the Commitment and repayment in full in cash of all the Obligations on or before the effective date of such plan;

(v)     The sale without Lender's consent, of all or substantially all of Borrower's assets under an Asset Sale that does not provide for payment in full in cash of all Obligations on the closing date thereof, and termination of the Commitment (or Borrower seeks or acquiesces to such relief);

(w)     Borrower is in default under any commitment or Indebtedness (other than in connection with any Prepetition Indebtedness) that could reasonably be expected to have a Material Adverse Effect;

(x)     The entry of an order in the Chapter 11 Case avoiding or requiring repayment of any portion of the payments made on account of the Obligations;

(y)     The payment by Borrower of, or the application by Borrower for authority to pay, any Prepetition Indebtedness without Lender's prior written consent;

(z)     The allowance of any claim under Bankruptcy Code section 506(c) against Lender or any of the Collateral; or

(aa)     Borrower is named a defendant in any complaint, adversary proceeding, litigation, action or other proceeding, or otherwise is subject to a complaint filed with a court of competent jurisdiction, and such complaint, litigation, action or proceeding could reasonably result in a Material Adverse Effect and is not dismissed as to Borrower within one hundred twenty (120) days from the latest of the date of filing, or commencement or service of such complaint on Borrower, unless otherwise stayed by the Bankruptcy Court or Bankruptcy Code.

**10.2     Remedies.**  Upon the occurrence and during the continuance of any Event of Default, at the sole discretion of Lender without the need for further order of or application to the Bankruptcy Court, and (1) with respect to items (a) and (b) of this Section 10.2, upon notice to Borrower; or (2) with respect to items (c) and (d) of this Section 10.2, upon five (5) Business Days'

SENIOR SECURED SUPER-PRIORITY
DEBTOR IN POSSESSION CREDIT AGREEMENT

notice to Borrower, any committee appointed in the Chapter 11 Case and the United States Trustee for the Central District of California, Lender shall have the right to take any or all of the following actions, at the same or different times:

      (a)    immediately terminate the Commitment;

      (b)    declare any or all Obligations (in whole or in part), including the unpaid principal amount of and accrued interest on the Loan, to be immediately due and payable, whereupon the same shall become immediately due and payable, in each case without presentment, demand, protest or other requirements of any kind, all of which are hereby expressly waived by Borrower;

      (c)    subject to Bankruptcy Code section 362, exercise its remedies as a secured party against the Collateral pursuant to the Security Documents and applicable law; and

      (d)    subject to Bankruptcy Code section 362, enforce its other rights and remedies under the Loan Documents or applicable law.

      **10.3    Right of Lender to Make Advances to Cure Events of Default; Obligatory Advances.**  If Borrower fails to perform any of its covenants or agreements herein or in any of the other Loan Documents, Lender may (but shall not be required to) perform any of such covenants and agreements, and any amounts expended by Lender in so doing, and any amounts advanced by Lender pursuant to this Agreement, shall be deemed to be an Advance under the Note even though it may cause the Loan to exceed the Aggregate Commitment or the face amount of the Note regardless of the identity of the person or persons to whom said funds are disbursed.  Loan Proceeds advanced by Lender to protect its security for the Loan are obligatory advances hereunder and shall constitute an Advance and additional indebtedness payable on demand and evidenced and secured by the Loan Documents, regardless of whether such amounts advanced cause the balance due to exceed the Aggregate Commitment or the face amount of the Note.  Such Advances will bear interest at the Default Rate.

      **10.4    Attorneys' Fees.**  Borrower shall pay Lender's reasonable attorneys' fees and costs and professionals' fees and costs in connection with the negotiation, preparation, administration and enforcement of this Agreement and the other Loan Documents.  Without limiting the generality of the foregoing, if at any time or times hereafter Lender employs counsel or other professionals for advice or other representation with respect to any matter concerning Borrower, the Collateral, this Agreement or the Loan Documents (including any bankruptcy proceeding) or if Lender employs one or more counsel or other professionals to protect, collect, lease, sell, take possession of or liquidate any of the Collateral, or to attempt to enforce or protect any security interest or Lien or other right in any of the Collateral or under any of the Loan Documents, or to enforce any rights of Lender or obligations of Borrower or any other Person that may be obligated to Lender by virtue of this Agreement or under any of the other Loan Documents or any other agreement, instrument or document heretofore or hereafter delivered to Lender in furtherance hereof, then in any such event, all of the attorneys' or other professionals' fees arising from such services, and any expenses, costs and charges relating thereto, shall constitute an Advance and additional indebtedness owing by Borrower to Lender payable on demand and evidenced and secured by the Loan Documents and bearing interest at the Default Rate.

                        SENIOR SECURED SUPER-PRIORITY
DEBTOR IN POSSESSION CREDIT AGREEMENT

**10.5     No Waiver.**  No failure by Lender to exercise, and no delay by Lender in exercising, any right, remedy, power or privilege hereunder shall operate as a waiver thereof.  No single or partial exercise of any right, remedy, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.  The rights, remedies, powers and privileges herein provided are cumulative and not exclusive of any rights, remedies, powers and privileges provided by law.

# ARTICLE 11
## MISCELLANEOUS

**11.1     Time is of the Essence.**  Borrower agrees that time is of the essence with respect to all of its covenants and Obligations under this Agreement.

**11.2     Amendments, Etc.**  No amendment or waiver of any provision of this Agreement or any other Loan Document, and no consent to any departure by Borrower therefrom, shall be effective unless in writing and signed by Lender and Borrower, and each such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

**11.3     Determination of Facts.**  Lender shall be free at all times to establish independently to its satisfaction and at its sole and absolute discretion the existence or nonexistence of any fact or facts, the existence or nonexistence of which is a condition of this Agreement.

**11.4     Prior Agreements.**  This Agreement and the other Loan Documents, and any other documents or instruments executed pursuant hereto or thereto, or contemplated hereby or thereby, represent the entire, integrated agreement between the parties hereto with respect to the transactions contemplated hereby and thereby, and shall supersede all prior negotiations, representations or agreements pertaining thereto, either oral or written.  For avoidance of doubt, nothing in this Agreement or the other Loan Documents affects the terms of any pre-petition agreement.

**11.5     Disclaimer by Lender.**  Lender shall not be liable to any subcontractor, supplier, laborer, architect, engineer or any other Person for services performed or materials supplied, nor shall Lender be liable for any debts or claims accruing in favor of any such Persons against Borrower or against the Collateral.  Borrower is not and shall not be an agent of Lender for any purposes, nor shall it be a venture partner with Lender in any manner whatsoever.  Lender shall not be deemed to be in privity of contract with any subcontractor, or provider of services on or to any Collateral, nor shall any payment of funds directly to a subcontractor or provider of services be deemed to create any third party beneficiary status or recognition of same by Lender unless and until Lender expressly assumes such status in writing.  No subcontractor, supplier, laborer, architect, engineer or other Person shall be deemed to be a third party beneficiary of this Agreement or any of the other Loan Documents.

**11.6     Captions; Section References.**  The captions and headings of various articles and sections of this Agreement and exhibits pertaining hereto are for convenience only and are not to be considered as defining or limiting in any way the scope or intent of the provisions hereof.

SENIOR SECURED SUPER-PRIORITY
                                                    DEBTOR IN POSSESSION CREDIT AGREEMENT

Section references in this Agreement refer to sections of this Agreement, unless otherwise provided.

**11.7    Inconsistent Terms and Partial Invalidity.**  In the event of any inconsistency among the terms hereof (including incorporated terms), or between such terms and the terms of any other Loan Document, Lender may elect which terms shall govern and prevail.  If any provision of this Agreement, or any paragraph, sentence, clause, phrase or word, or the application thereof, in any circumstances, is adjudicated by a court of competent jurisdiction to be invalid, the validity of the remainder of this Agreement shall be construed as if such invalid part were never included herein.

**11.8    Approvals.**  All consents and approvals required in this Agreement shall be in writing.  Any approval granted by Lender for any matter covered under this Agreement shall be narrowly construed to cover only the Persons and facts identified in such approval.

**11.9    References and Other Terms.**  Any word herein that is expressed in the masculine or neuter gender shall be deemed to include the masculine, feminine and neuter genders.  Any word herein that is expressed in the singular or plural number shall be deemed, whenever appropriate in the context, to include the singular and the plural.  Any defined term used in the plural in any Loan Document refers to all members of the relevant class and any defined term used in the singular refers to any number of the members of the relevant class.  Any accounting term used and not specifically defined in any Loan Document will be construed in conformity with, and all financial data required to be submitted under any Loan Document must be prepared in conformity with GAAP or in accordance with such other principles or methods as are consistently applied and reasonably acceptable to Lender.  Any reference to any Loan Document or other document includes such document both as originally executed and as it may from time to time be amended, restated, supplemented or modified.  References herein to Articles, Sections and Exhibits will be construed as references to this Agreement unless a different document is named.  References to subsections will be construed as references to the same Section in which the reference appears.  The term "document" is used in its broadest sense and encompasses agreements, certificates, opinions, consents, instruments and other written material of every kind.  The terms "including" and "include" mean "including (include) without limitation."  The terms "hereof," "herein" and "hereunder," and words of similar import when used in this Agreement refers to this Agreement as a whole and not to any particular provision of this Agreement.  All exhibits to this Agreement, as now existing and as the same may from time to time be modified, are incorporated herein by this reference.

**11.10    Notices.**  Any notices, communications and waivers under this Agreement shall be in writing and (1) shall be either (a) delivered in person; (b) mailed, postage prepaid, (c) transmitted by overnight express carrier, addressed in each case as follows; or (d) transmitted via electronic mail, followed by a telephone call by sender, within 24 hours of transmission, to confirm receipt of such electronic mail transmission:

SENIOR SECURED SUPER-PRIORITY
DEBTOR IN POSSESSION CREDIT AGREEMENT

| To Lender: | Hankey Capital, LLC |
| | Attn: Eugene Leydiker |
| | 4751 Wilshire Blvd., Suite 110 |
| | Los Angeles, CA 90010 |
| | Email: eugenel@hankeyinvestments.com |

With copy to:
Jeffer Mangels Butler & Mitchell LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067
Attn: Thomas M. Geher, Esq.
Email: tgeher@jmbm.com
Tel: (310) 712-6820

To Borrower:
Crestlloyd, LLC
c/o SierraConstellation, LLC
355 S. Grand Avenue, Suite 1450
Los Angeles, CA 90071
Attn: Larry Perkins
Email: lperkins@scpllc.com

With copy to:
Levene, Neale, Bender, Yoo & Golubchik LLP
2818 La Cienega Ave.
Los Angeles, CA 90034
Attn: David B. Golubchik, Esq.
Email: dbg@lnbyg.com
Tel: (310) 229-3393

or to any other address as to any party hereto, as such party shall designate in a written notice to the other party hereto. All notices sent pursuant to the terms of this Section 11.10 shall be deemed received (i) if personally delivered or sent by email transmission, then on the date of delivery, (ii) if sent by overnight express carrier, then on the next Business Day immediately following the day sent, or (iii) if sent by mail, then on the earlier of the third day following the day sent or when actually received.

**11.11  Effect of Agreement.**  The submission of this Agreement and the other Loan Documents to Borrower for examination does not constitute a commitment or an offer by Lender to lend money to Borrower. This Agreement shall become effective only after entry of the Final Order and upon execution and delivery hereof by Lender to Borrower.

**11.12  Governing Law.**  This Agreement shall be construed and enforced in accordance with the laws of the State of California, without reference to the choice of law or conflicts of law principles of the State of California.

**11.13  Waiver of Defenses.  OTHER THAN CLAIMS BASED UPON THE FAILURE OF LENDER TO ACT IN A COMMERCIALLY REASONABLE MANNER, BORROWER HEREBY WAIVES EVERY PRESENT AND FUTURE DEFENSE (OTHER THAN THE DEFENSE OF PAYMENT OR PERFORMANCE IN FULL, AS**

30

SENIOR SECURED SUPER-PRIORITY
DEBTOR IN POSSESSION CREDIT AGREEMENT

APPLICABLE), CAUSE OF ACTION, COUNTERCLAIM OR SETOFF THAT BORROWER NOW MAY HAVE OR HEREAFTER MAY HAVE TO ANY ACTION BY LENDER IN ENFORCING THIS AGREEMENT. PROVIDED THAT LENDER ACTS IN GOOD FAITH, BORROWER RATIFIES AND CONFIRMS WHATEVER LENDER MAY DO PURSUANT TO THE TERMS OF THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER GRANTING ANY FINANCIAL ACCOMMODATION TO BORROWER.

**11.14   Consent to Jurisdiction.** TO INDUCE LENDER TO ACCEPT THE NOTE, BORROWER IRREVOCABLY AGREES THAT ALL ACTIONS OR PROCEEDINGS IN ANY WAY ARISING OUT OF OR RELATED TO THE LOAN DOCUMENTS WILL BE LITIGATED BEFORE THE BANKRUPTCY COURT OR, IF THAT COURT DECLINES JURISDICTION, IN COURTS HAVING SITUS IN THE STATE OF CALIFORNIA. LENDER AND BORROWER HEREBY CONSENT AND SUBMIT TO THE JURISDICTION OF ANY COURT LOCATED WITHIN THE STATE OF CALIFORNIA.

**11.15   Waiver of Jury Trial.** EACH OF BORROWER AND LENDER, HAVING BEEN REPRESENTED BY COUNSEL, KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS (A) UNDER THIS AGREEMENT, ANY OTHER LOAN DOCUMENT OR ANY RELATED AGREEMENT OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH IN THE FUTURE MAY BE DELIVERED IN CONNECTION WITH THIS AGREEMENT OR (B) ARISING FROM ANY CREDIT RELATIONSHIP EXISTING IN CONNECTION WITH THIS AGREEMENT, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. BORROWER AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST LENDER OR ANY OTHER PERSON INDEMNIFIED UNDER THIS AGREEMENT ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.

**11.16   Lender's Right to Credit Bid.** Borrower hereby irrevocably authorizes Lender (in each case, acting alone or together) to bid and in such manner purchase (either directly or through one or more acquisition entities) all or any portion of the Collateral at any sale thereof conducted (a) by Lender under the provisions of California Uniform Commercial Code 9604, 9610 or 9620, (b) under the provisions of the Bankruptcy Code, including sales pursuant to Bankruptcy Code sections 363, 365, and/or 1129 (including as part of any Restructuring Plan), or (c) by Lender, whether by judicial action or otherwise, including a foreclosure sale, in accordance with applicable law (collectively, a "**Collateral Sale**"). In connection with any Collateral Sale, Lender shall have the right to credit bid and to offset all or any portion of the Obligations then outstanding against the purchase price of such Collateral, at Lender's discretion.

**11.17   Usury Savings Clause.** Notwithstanding any other provision herein, the aggregate interest rate charged with respect to any of the Obligations, including all charges or fees in connection therewith deemed in the nature of interest under applicable law, shall not exceed the Highest Lawful Rate. If the rate of interest (determined without regard to the preceding sentence)

31

under this Agreement at any time exceeds the Highest Lawful Rate, the outstanding amount of the Loan made hereunder shall bear interest at the Highest Lawful Rate.

**11.18  Counterparts; Facsimile Signatures.**  This Agreement may be executed in any number of counterparts and by the parties hereto on separate counterparts.  Each such counterpart shall be deemed to be an original, but all such counterparts together shall constitute but one and the same agreement.  Receipt of an executed signature page to this Agreement by facsimile or other electronic transmission shall constitute effective delivery thereof.  Electronic records of executed Loan Documents maintained by Lender shall be deemed to be originals thereof.

**11.19  Final Agreement.  THIS AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

*[Signature Page Follows]*

32

SENIOR SECURED SUPER-PRIORITY
DEBTOR IN POSSESSION CREDIT AGREEMENT

**IN WITNESS WHEREOF,** Lender and Borrower have caused this Agreement to be executed on the day and year first above written.

**BORROWER:**

CRESTLLOYD LLC,
a California limited liability company
By its Manager, SierraConstellation Partners, LLC


By:_____
    Larry Perkins,
    Chief Executive Officer of Manager


**LENDER:**

HANKEY CAPITAL, LLC,
a California limited liability company


By:_____
Name: _____
Title: _____

SENIOR SECURED SUPER-PRIORITY
DEBTOR IN POSSESSION CREDIT AGREEMENT

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034

A true and correct copy of the foregoing document entitled **REPLY TO LIMITED OBJECTION OF SECURED CREDITOR INFERNO INVESTMENT, INC. TO FIRST INTERIM APPLICATION OF LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P. FOR APPROVAL OF FEES AND REIMBURSEMENT OF EXPENSES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 19, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Kyra E Andrassy    kandrassy@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com**
- **Todd M Arnold    tma@lnbyg.com**
- **Jerrold L Bregman    jbregman@bg.law, ecf@bg.law**
- **Marguerite Lee DeVoll    mdevoll@watttieder.com, zabrams@watttieder.com**
- **Karol K Denniston    karol.denniston@squirepb.com, travis.mcroberts@squirepb.com;sarah.conley@squirepb.com;karol-k-denniston-9025@ecf.pacerpro.com**
- **Danielle R Gabai    dgabai@danninggill.com, dgabai@ecf.courtdrive.com**
- **Thomas M Geher    tmg@jmbm.com, bt@jmbm.com;fc3@jmbm.com;tmg@ecf.inforuptcy.com**
- **David B Golubchik    dbg@lnbyg.com, stephanie@lnbyb.com**
- **James Andrew Hinds    jhinds@hindslawgroup.com;mduran@hindslawgroup.com, mduran@hindslawgroup.com**
- **Robert B Kaplan    rbk@jmbm.com**
- **Jane G Kearl    jkearl@watttieder.com**
- **Jennifer Larkin Kneeland    jkneeland@watttieder.com, zabrams@watttieder.com**
- **Michael S Kogan    mkogan@koganlawfirm.com**
- **Noreen A Madoyan    Noreen.Madoyan@usdoj.gov**
- **Samuel A Newman    sam.newman@sidley.com, samuel-newman-2492@ecf.pacerpro.com;laefilingnotice@sidley.com**
- **Ryan D O'Dea    rodea@shulmanbastian.com, lgauthier@shulmanbastian.com**
- **Sharon Oh-Kubisch    sokubisch@swelawfirm.com, gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com**
- **Hamid R Rafatjoo    hrafatjoo@raineslaw.com, bclark@raineslaw.com**
- **Ronald N Richards    ron@ronaldrichards.com, 7206828420@filings.docketbird.com**
- **Victor A Sahn    vsahn@sulmeyerlaw.com, pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;cblair@ecf.inforuptcy.com**
- **William Schumacher    wschumac@milbank.com, autodocketecf@milbank.com**
- **David Seror    dseror@bg.law, ecf@bg.law**
- **Zev Shechtman    zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com**
- **Mark Shinderman    mshinderman@milbank.com, dmuhrez@milbank.com;dlbatie@milbank.com**
- **Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**
- **Genevieve G Weiner    gweiner@sidley.com, laefilingnotice@sidley.com;genevieve-weiner-0813@ecf.pacerpro.com**
- **Jessica Wellington    jwellington@bg.law, ecf@bg.law**

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

**2.  SERVED BY UNITED STATES MAIL**: On **May 19, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

*None.*

☐ *Service information continued on attached page*

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 19, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

*None.*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 19, 2022 | Lourdes Cruz | /s/ Lourdes Cruz |
| --- | --- | --- |
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**